|    |    |
|----|----|
| 1  | John B. Sganga (State Bar No. 116,211) |
|    | Frederick S. Berretta (State Bar No. 144,757) |
| 2  | Joshua J. Stowell (State Bar No. 246,916) |
|    | KNOBBE, MARTENS, OLSON & BEAR, LLP |
| 3  | 550 West C Street |
|    | Suite 1200 |
| 4  | San Diego, CA 92101 |
|    | (619) 235-8550 |
| 5  | (619) 235-0176 (FAX) |
| 6  | Vicki S. Veenker (State Bar No. 158,669) |
|    | Adam P. Noah (State Bar No. 198,669) |
| 7  | SHEARMAN & STERLING LLP |
|    | 1080 Marsh Road |
| 8  | Menlo Park, CA 94025 |
|    | (650) 838-3600 |
| 9  | (650) 838-3699 (FAX) |
| 10 | Attorneys for Plaintiffs |
|    | THE LARYNGEAL MASK COMPANY LTD. |
| 11 | and LMA NORTH AMERICA, INC. |

IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF CALIFORNIA

| THE LARYNGEAL MASK COMPANY LTD. and LMA NORTH AMERICA, INC., | ) Civil Action No. 07 CV 1988 DMS (NLS) |
|---|---|
| Plaintiffs, | ) **DECLARATION OF WENDY ACKERMAN IN SUPPORT OF PLAINTIFFS' MOTION TO DISQUALIFY FINNEGAN HENDERSON FARABOW GARRETT & DUNNER, LLP** |
| v. | |
| AMBU A/S, AMBU INC., AMBU LTD., and AMBU SDN. BHD., | ) Date: January 11, 2008 |
| Defendants. | ) Time: 1:30 p.m. |
|  | ) Courtroom 10, 2nd Floor |
|  | ) Hon. Judge Dana M. Sabraw |
| AMBU, INC., | |
| Counterclaimant, | |
| v. | |
| THE LARYNGEAL MASK COMPANY LTD. and LMA NORTH AMERICA, INC., | |
| Counter-Defendant | |

-1-

Decl. of W. Ackerman in Supp. of Mot. to Disqualify
Case No. 07-1988 DMS (NLS)

I, Wendy Ackerman, declare and state as follows:

1.  I am a counsel in the Washington, D.C. office of the law firm of Shearman & Sterling LLP ("Shearman") and provide legal representation to LMA International N.V. ("LMA") and its two subsidiary companies that are the Plaintiffs in this action, The Laryngeal Mask Company Ltd. ("LMC") and LMA North America, Inc. ("LMA NA"). I submit this Declaration in Support of Plaintiffs' Motion to Disqualify Finnegan Henderson Farabow Garrett & Dunner, LLP ("Finnegan") from representing Defendants in this action. The following statements are based on my personal knowledge unless otherwise indicated.

2.  From early to mid November 2006, I had several discussions with Stephen Marzen, a partner in the Washington, D.C. office of Shearman and a director of LMA, about the possibility of filing, on behalf of LMA, a patent infringement action in the United States against Ambu A/S and its subsidiaries (collectively, "Ambu"). Specifically, the action would seek remedies for infringement of patents owned by LMC and exclusively licensed by LMA NA for a medical device known as the "Laryngeal Mask Airway Device."

3.  In addition to discussing the potential claims and venues for such an action, Mr. Marzen and I discussed the need to hire counsel with substantial patent trial experience to represent the client in the suit. In mid-November 2006, I mentioned the possibility of hiring Finnegan to serve as trial counsel. I told Mr. Marzen that I would call a patent trial attorney I knew at Finnegan to explore the possibility of retaining either him or someone else at his firm to represent LMA in its action against Ambu.

4.  On November 20, 2006, I called Charles Lipsey, a partner in the Reston, Virginia office of Finnegan who is a social acquaintance of mine, regarding the anticipated litigation. In particular, I told him that we were exploring the filing of a patent action involving a medical device in a particular jurisdiction. I asked him whether he thought he or someone else at his firm might be a good fit to serve as trial counsel in the case. Mr. Lipsey recommended I contact J. Michael Jakes, a partner in the Washington, D.C. office of Finnegan. Mr. Lipsey told me Mr. Jakes had substantial experience in both medical-device patent litigation and in the particular jurisdiction.

5. After speaking to Mr. Lipsey, on November 20, 2006, I contacted Mr. Jakes to discuss the potential patent infringement action against Ambu and to determine whether he had any interest in representing LMA in the case. He expressed interest and we set up a meeting for November 22 in Finnegan's D.C. office. I understood that Mr. Jakes intended to run a conflict check in anticipation of the meeting to ensure that there would be no problems taking on the representation of LMA adverse to Ambu. In particular, I recall that Mr. Jakes asked me for the specific names of the potential plaintiffs and potential defendants in the anticipated patent infringement action so that his secretary could run a conflict check on the matter.

6. On November 22, 2006, Mr. Marzen and I went to the Washington, D.C. office of Finnegan to meet with Mr. Jakes and an associate named John Williamson. We met with the Finnegan lawyers for a little under two hours. Mr. Marzen led the discussion for LMA, and described the background to LMA's dispute with Ambu, showed samples of laryngeal masks produced by both LMA and Ambu, and discussed the patent claims and the prior art. Mr. Marzen, the Finnegan attorneys, and I then discussed litigation strategy and options in the case, including potential plaintiffs and defendants, potential claims, potential venues, and potential remedies available to LMA. Throughout the meeting, the Finnegan attorneys offered their advice and suggestions regarding the issues we discussed and related legal strategy. If necessary, I can provide additional information about the confidences we disclosed with the Finnegan lawyers and the legal advice that they provided in a supplemental declaration to be filed *in camera* with the Court.

7. During the meeting, neither Finnegan attorney ever stated that he did not want to hear or receive any privileged or confidential information from LMA. To the best of my recollection, one or both of the Finnegan attorneys took notes about our discussions. Throughout the meeting I understood that all our discussions would be treated as privileged attorney-client communications. The Finnegan attorneys never expressed any reservations about representing LMA or any of its subsidiaries in the litigation adverse to Ambu.

8. At the end of the meeting, Mr. Marzen told the Finnegan lawyers that he would let them know about moving forward with the lawsuit after discussing the matter with LMA

management. I understood that Finnegan was ready and willing to take on the litigation. No one from the Finnegan firm ever contacted me after the meeting regarding any conflicts problems or any desire on their part to withdraw from representing LMA and its subsidiaries in this litigation.

9. I understand that Mr. Marzen did ultimately contact Mr. Jakes sometime in January 2007 about moving forward with the lawsuit against Ambu. I also understand that Mr. Jakes got back to Mr. Marzen and told him that Finnegan had acquired a non-waivable conflict sometime after our November 22, 2006 meeting.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on December 6, 2007 in Washington, D.C.

_/s/ Wendy Ackerman_
Wendy Ackerman

## CERTIFICATE OF SERVICE

I hereby certify that on December 6, 2007, I caused the foregoing **DECLARATION OF WENDY ACKERMAN IN SUPPORT OF PLAINTIFFS' MOTION TO DISQUALIFY FINNEGAN HENDERSON FARABOW GARRETT & DUNNER, LLP** to be electronically filed with the Clerk of the Court using the CM/ECF system which will send electronic notification of such filing to the applicable registered filing users.

VIA ECF:

John L'Estrange, Jr.
j.lestrange@wllawsd.com
WRIGHT & L'ESTRANGE

VIA E-MAIL:

Bryan C. Diner
bryan.diner@finnegan.com
Gerald Ivey
gerald.ivey@finnegan.com
P. Andrew Riley
andrew.riley@finnegan.com
Robert Burns
robert.burns@finnegan.com
FINNEGAN, HENDERSON, FARABOW, GARRETT & DUNNER LLP

VIA E-MAIL:

Sean M. SeLegue
sselegue@howardrice.com
HOWARD, RICE, NEOROVSKI, CANADY, FALK & RABIN

I declare that I am employed in the office of a member of the bar of this Court at whose direction the service was made.

Dated: December 6, 2007

*/s/ Megan Placin*
Megan Placin

4509363

-5-
Decl. of W. Ackerman in Supp. of Mot. to Disqualify
Case No. 07-1988 DMS (NLS)