```
 1  John B. Sganga (State Bar No. 116,211)
    Frederick S. Berretta (State Bar No. 144,757)
 2  Joshua J. Stowell (State Bar No. 246,916)
    KNOBBE, MARTENS, OLSON & BEAR, LLP
 3  550 West C Street
    Suite 1200
 4  San Diego, CA  92101
    (619) 235-8550
 5  (619) 235-0176 (FAX)

 6  Vicki S. Veenker (State Bar No. 158,669)
    Adam P. Noah (State Bar No. 198,669)
 7  SHEARMAN & STERLING LLP
    1080 Marsh Road
 8  Menlo Park, CA  94025
    (650) 838-3600
 9  (650) 838-3699 (FAX)

10  Attorneys for Plaintiffs
    THE LARYNGEAL MASK COMPANY LTD.
11  and LMA NORTH AMERICA, INC.
```

## IN THE UNITED STATES DISTRICT COURT

## FOR THE SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| THE LARYNGEAL MASK COMPANY LTD. and LMA NORTH AMERICA, INC.,<br><br>Plaintiffs,<br><br>v.<br><br>AMBU A/S, AMBU INC., AMBU LTD., and AMBU SDN. BHD.,<br><br>Defendants. | Civil Action No. 07 CV 1988 DMS (NLS)<br><br>**DECLARATION OF ELLEN PECK IN SUPPORT OF PLAINTIFFS' MOTION TO DISQUALIFY FINNEGAN HENDERSON FARABOW GARRETT & DUNNER, LLP**<br><br>Date:     January 11, 2008<br>Time:    1:30 pm<br>Courtroom 10, 2nd Floor<br><br>Honorable Dana M. Sabraw |
| AMBU, INC.,<br><br>Counterclaimant,<br><br>v.<br><br>THE LARYNGEAL MASK COMPANY LTD. and LMA NORTH AMERICA, INC.,<br><br>Counter-Defendant | |

-1-

## DECLARATION OF ELLEN R. PECK

I, Ellen R. Peck, declare:

1. I have been licensed to practice law in the State of California since 1979, practicing only in the field of lawyers' professional responsibilities. My qualifications as an expert in the field of lawyers' professional responsibilities are set forth in paragraph 5 below.

2. This declaration is submitted in support of Plaintiffs' Motion to Disqualify Finnegan Henderson Farabow Garrett & Dunner, LLP ("Finnegan").

### SUMMARY OF OPINIONS

3. Based upon my experience, knowledge and study in the field of professional responsibility and my review of the documents listed below, it is my opinion that (a) California's professional standards apply to Finnegan's conduct and determination of its disqualification; (b) Finnegan has engaged in side-switching in this case, thereby failing to comply with Rule 3-310(E), California Rules of Professional Conduct; (c) Finnegan has breached a duty of loyalty to LMA in representing its adversary, Ambu in the same matter in which it gave legal advice to LMA against Ambu; (d) California's standards of professional conduct do not permit an ethical wall or screening to substitute for disqualification in a side-switching case; and (e) as a result of the foregoing, Finnegan should be disqualified from representing or assisting Ambu in any manner in this litigation.

4. Assumptions: I have assumed the facts set forth in the Declaration of Wendy Ackerman in Support of Plaintiffs' Motion to Disqualify Finnegan Henderson Farabow Garrett & Dunner, LLP ("Ackerman Dec.") and Declaration of Stephen Marzen in Support of Plaintiffs' Motion to Disqualify Finnegan Henderson Farabow Garrett & Dunner, LLP ("Marzen Dec.") and exhibits thereto.

### STATEMENT OF EXPERT QUALIFICATIONS

5. The following is a summary of certain of my qualifications as an expert in the field of lawyers' professional responsibilities, which are more fully set forth in my curriculum

///

vitae a true and correct copy of which is attached as Appendix A to this declaration and incorporated herein by this reference:

    5.1. I have been admitted to the practice of law in the State of California since November 1979, and I have devoted my entire professional career to providing professional services within the field of lawyers' professional responsibilities and ethics.

    5.2. From July 1, 1989 through November 2, 1995, I served, at the pleasure of the California Supreme Court, as a judge of the State Bar Court in the trial department in Los Angeles. During my tenure, I participated in over 1,200 cases involving the professional responsibilities of members of the bar.

    5.3. I have served as ethics counsel to the ethics committees of the State Bar of California and the American Bar Association. I have also served as a member of three California lawyer ethics committees.

    5.4. From 1987-1989 and 2001 to the present, I have served as a member of the State Bar's Commission on Revision of the Rules of Professional Conduct Conduct.

    5.5 I am a co-author of The Rutter Group's *California Practice Guide to Professional Responsibility* along with Paul Vapnek, Mark Tuft, and Justice Howard B. Weiner (Ret.) of the California Court of Appeal, published in July, 1997 and updated annually since then.

### BASIS FOR OPINIONS

6. California's professional standards apply to Finnegan's conduct and to the determination of Finnegan's disqualification.

    6.1 In my opinion, the legal standard for determining whether lawyers practicing before this Court will be disqualified for conduct constituting conflicts of interest, are the standards of professional conduct required of members of the State Bar of California and decisions of California courts interpreting those standards. The bases for this opinion are:

    6.2 The applicable professional conduct standards for attorneys practicing in the United States District Court for the Southern District of California, included

those admitted *pro hac vice* pursuant to CivLR 83.3.c.5, are professional conduct required of members of the State Bar of California provided by this Court's Local Rule 83.4.b:

> **Standards of Professional Conduct.** Every member of the bar of this court and any attorney permitted to practice in this court shall be familiar with and comply with the standards of professional conduct required of members of the State Bar of California, and decisions of any court applicable thereto, which are hereby adopted as standards of professional conduct of this court. This specification shall not be interpreted to be exhaustive of the standards of professional conduct. In that connection, the Code of Professional Responsibility of the American Bar Association should be noted. No attorney permitted to practice before this court shall engage in any conduct which degrades or impugns the integrity of the court or in any manner interferes with the administration of justice therein. (See also *Lucent Technologies Inc. v. Gateway, Inc.*, Civil Nos. 02CV2060-B(CAB), 03CV0699-B (CAB), 03CV1108-B (CAB) (S.D. Cal. May 15, 2007) [2007 WL 1461406], slip copy, p. 2 ("*Lucent*"))

   6.3 California standards of professional conduct govern the activities of an attorney engaged in litigation in a California court. (Rule 1-100(D)(2), California Rules of Professional Conduct.)

   6.4 The policies adopted by the forum court generally are the dominant factor in determining the qualification of counsel to appear in that forum. Therefore, the forum court's local rules (without consideration of choice of law rules) determine the standards to which a lawyer must adhere to appear as counsel in that court. It is therefore irrelevant whether another jurisdiction where the lawyer practices has standards that are more demanding or less demanding. (*In re Wheatfield Business Park LLC*, 286 B.R. 412, 419-420 (Bankr.C.D.Cal.1996); *Value Property Trust v. Zim Co. (In re Mortgage & Realty Trust)*, 195 B.R. 740, 749 (Bankr.C.D.Cal.1996).)

///

-4-

Declaration of Ellen Peck
Case No. 07-1988 DMS (NLS)

   6.5 Important policy grounds support this rule: The representation of interests that may be conflicting directly impacts the quality of justice provided by this court and impacts the appearance of justice in the eyes of the public. (*Value Property Trust v. Zim Co. (In re Mortgage & Realty Trust)*, 195 B.R. 740, 749 (Bankr.C.D.Cal.1996).)

   6.6 Even if disqualification may not be required as a result of the conduct in the jurisdiction where the attorney is licensed to practice, the forum court cannot permit the representation to go forward if there is a disabling conflict under the forum's rules. Since by seeking admission *pro hac vice*, out of state lawyers submit themselves to the rules of this Court, including the governing professional standards, such applicants could have no other expectations. (*Value Property Trust v. Zim Co. (In re Mortgage & Realty Trust)*, 195 B.R. 740, 749 (Bankr.C.D.Cal.1996).

   6.7 For all of the foregoing reasons, I conclude that by applying for admission to this court, thereby submitting to the jurisdiction of this court and the standards of conduct it has adopted, the Finnegan Firm's adherence to the standards of conduct in any other jurisdiction is not relevant to the determination of whether it should be disqualified from representing or assisting defendant Ambu.

   7. **California has a very strong policy of protecting confidential communications between attorney and client and the attorney's duty of loyalty to a client.**

   7.1 The California Supreme Court has stressed the importance of protecting attorney-client confidentiality, which is fundamental to California's legal system. The attorney-client privilege, a hallmark of our jurisprudence, supports the public policy of client access to adequate legal advice or a proper defense, by encouraging free and full conferences with a person knowledgeable about the law and skilled in its practice. To this end, a basic obligation of every California attorney is to "maintain inviolate the confidence, and at every peril to himself or herself to preserve the secrets, of his or her client." (*People ex rel. Dept. of Corporations v. SpeeDee Oil Change Systems, Inc.*, 20 Cal.4th 1135, 1146 (1999) ("*SpeeDee*"); Bus. & Prof.Code, § 6068, subd. (e).)

      7.2    The Supreme Court has also adopted Rule 3-100, Rules of Professional Conduct, to protect confidentiality, which includes the following excerpt from Discussion, paragraph [1]:

> A member's duty to preserve the confidentiality of client information involves public policies of paramount importance. (*In Re Jordan* (1974) 12 Cal.3d 575, 580 [116 Cal.Rptr. 371].) Preserving the confidentiality of client information contributes to the trust that is the hallmark of the client-lawyer relationship. The client is thereby encouraged to seek legal assistance and to communicate fully and frankly with the lawyer even as to embarrassing or legally damaging subject matter. The lawyer needs this information to represent the client effectively and, if necessary, to advise the client to refrain from wrongful conduct. Almost without exception, clients come to lawyers in order to determine their rights and what is, in the complex of laws and regulations, deemed to be legal and correct.

      7.3    The purpose of another rule, Rule 3-310(E), California Rules of Professional Conduct is to protect the confidential relationship which exists between attorney and client, a relationship which continues after the formal relationship ends (*David Welch Co. v. Erskine & Tulley*, 203 Cal.App.3d 884, 891, (1988)) and provides:

> A member shall not, without the informed written consent of the client or former client, accept employment adverse to the client or former client where, by reason of the representation of the client or former client, the member has obtained confidential information material to the employment.[1]

---

[1] Rule 1.9, ABA Model Rules of Professional Conduct, differs from its California counterpart, Rule 3-310(E), by applying only to former clients, and provides:

    (a)    A lawyer who has formerly represented a client in a matter shall not thereafter represent another person in the same or a substantially related matter in which that person's interests are materially adverse to the interests of the former client unless the former client gives informed consent, confirmed in writing.

7.4    Another fundamental value of our legal system is an attorney's duty to maintain undivided loyalty to their clients to avoid undermining public confidence in the legal profession and the judicial process. Because the effective functioning of the attorney-client relationship depends on the client's trust and confidence in counsel, courts will protect clients' legitimate expectations of loyalty to preserve this essential basis for trust and security in the attorney-client relationship. (*SpeeDee, supra,* at p. 1146.)

**8.    Side-switching cases involve the most egregious conflicts of interest, involving both disloyalty to the client and endangerment of the client's confidential information.**

8.1    The Supreme Court has also observed that the most egregious conflict of interest is side-switching (representation of clients whose interests are directly adverse in the same litigation) since side-switching violates both fundamental duties of confidentiality and loyalty:

> Such patently improper dual representation suggests to the clients-and to the public at large-that the attorney is completely indifferent to the duty of loyalty and the duty to preserve confidences. However, the attorney's actual intention and motives are immaterial, and the rule of automatic disqualification applies. "The rule is designed not alone to prevent the dishonest practitioner from fraudulent conduct," but also to keep honest attorneys from having to choose between conflicting duties, or being tempted to reconcile conflicting interests, rather than fully pursuing their clients' rights. (*Anderson v. Eaton* (1930) 211 Cal. 113, 116, 293 P. 788.) The loyalty the attorney owes one client cannot be allowed to compromise the duty owed another. . . . (*SpeeDee, supra,* p. 1146.)

8.2    This case involves side-switching at the outset of litigation, including Finnegan's releasing LMA as a client, in favor of Ambu, regarding this very case. Finnegan's side-switching also endangers the sanctity of LMA's communication of substantial confidential information to Finnegan concerning its proposed litigation strategy, expectations and legal issues concerning this case.

-7-

   8.3 Although many cases interpreting the application of Rule 3-310(E) for disqualification purposes use the "substantial relationship" test, in a side-switching case, because the factual and legal issues are identical, there is no need to apply the substantial relationship test. (*Henriksen Great American Savings & Loan,* 11 Cal.App.4th 109, 114 (1992) ("*Henriksen*"); *Dill v. Superior Court,* 158 Cal.App.3d 301, 304 (1984) ("*Dill*"); see *Cal. Compendium on Professional Responsibility,* State Bar Formal Opinion No. SD 1975-1, pp. II C-144-146.)

   **9. Finnegan had a prima facie attorney-client relationship for conflict purposes under California law, based upon the following:**

   9.1 Because the duties in Rule 3-310(E) are owed to a "client," several California cases have discussed the circumstances under which an attorney can be subject to disqualification for a conflict of interest based upon a consultation in which the attorney-client relationship does not go forward. (See *SpeeDee, supra,* p. 1147; *In re Marriage of Zimmerman,* 16 Cal.App.4th 556 (1993); *Pound v. DeMera DeMera Cameron,* 135 Cal.App.4th 70, 74, 76 (2005) ("*Pound*"); and *Med-Trans Corp., Inc. v. City of California City,* 156 Cal.App.4th 655 (2007), mod. 11/19/2007 ("*Med-Trans*").) The fiduciary relationship existing between lawyer and client includes preliminary consultations with a prospective client who seeks to retain a lawyer even though actual employment does not result. Therefore, courts typically focus upon the earliest development of the attorney-client relationship. (*SpeeDee, supra,* pp. 1147-1148)

   9.2 For purposes of a conflict-of-interest analysis, when an attorney knowingly obtains material confidential information from the client and renders legal advice or services as a result, a prima facie attorney client relationship exists. (*SpeeDee, supra,* p. 1147.)

   9.3 The fact that there is no fee charged or no further attorney relationship results does not prevent the relationship from arising or the attorneys from acquiring fiduciary obligations of loyalty and confidentiality, which commence when discussions between attorney and client exceed initial or peripheral contacts. (*SpeeDee, supra,* pp. 1147-1148.)

      9.4    In determining whether discussions between attorney and client have proceeded beyond initial or peripheral contacts, the focus is upon the nature and extent of the attorney's acquisition of confidential information from a prospective client and not the amount of time involved. (*SpeeDee, supra*, p. 1148 ["Even the briefest conversation between a lawyer and a client can result in the disclosure of confidences."])

      9.5    **Confidential information:** The following factors, among others, include confidential information: strategy discussions, analysis of substantive allegations, procedural status, a prospective client's theories of the case, discovery strategy, analyses of the issues, and assessment of the state of the case. (*SpeeDee, supra*, p. 1149)

      9.6    In determining that a lawyer ("Disner") represented the prospective client ("Mobil") as a result of consultation seeking legal services, the California Supreme Court observed:

> The record here shows without contradiction that Disner received material confidential information concerning respondents' claims against Mobil. In his first telephone conversation with one of Mobil's attorneys, Disner discussed the substantive allegations, the procedural status, and Mobil's theories of the case. During their luncheon meeting, Mobil's attorneys again briefed Disner on Mobil's theories and on its attorneys' discovery strategy, analyses of the issues, and assessment of the state of the case. Moreover, he acted on some of that information and provided Mobil's attorneys with the results of his own research. . . .Therefore, the undisputed facts established that, for purposes of a conflict of interest analysis, Disner represented Mobil. (*SpeeDee, supra*, p. 1152.)

      9.7    The Court also noted that when the consultation is by and through attorneys rather than laypersons, the transfer of material confidential information and attorney work-product is rendered far more efficient and likely. (*Id.*)

/ / /

/ / /

9.8     In the instant case, LMA's agents contacted Finnegan for the purpose of seeking legal representation and advice and had a consultation with Finnegan lawyers Jakes and Williamson, based upon the following:

– Wendy Ackerman, a Shearman & Sterling LLP attorney, representing LMC and its affiliates, contacted Charles Lipsey, a Finnegan partner in the Reston, Virginia office, seeking legal representation on behalf of LMA and its affiliates regarding a potential patent infringement action against Ambu. Mr. Lipsey recommended Finnegan partner J. Michael Jakes. (Ackerman Dec., ¶1, ¶4.)

– On November 20, 2006, Ms. Ackerman contacted Mr. Jakes on behalf of LMA, determined that he was interested in representing LMA regarding a potential patent infringement action against Ambu and set up a meeting on November 22, 2006 to discuss that potential representation. (Ackerman Dec., ¶5.)

– Ms. Ackerman and Mr. Marzen believed that Mr. Jakes had run a conflict check prior to their November 22, 2006 meeting and gave him the appropriate information to facilitate that conflict check. (Ackerman Dec., ¶5.)

– On November 22, 2006, LMA's attorneys (Mr. Marzen and Ms. Ackerman) met with Finnegan's attorneys (Mr. Jakes and associate, John Williamson) for approximately two hours regarding Finnegan's potential representation of LMA in a potential patent infringement action against Ambu. (Marzen Dec., ¶¶5-6; Ackerman Dec., ¶6.)

9.9     The information communicated by LMA's attorneys to Finnegan's attorneys was confidential and included attorney work product. The bases of this opinion are:

– LMA's attorney's communicated the background of the LMA's dispute with Ambu, including the products, prior art and patent claims; related litigation in Germany; LMA's litigation objectives; who should be parties to the proposed litigation; whether LMA should assert non-patent claims; anticipated Ambu counterclaims; expectations regarding potential recovery; expectations concerning

potential legal fees, costs and expenses; length of the litigation; potential remedies against Ambu. (Marzen Dec., ¶¶7-10; Ackerman Dec., ¶6.)

– LMA's attorneys believed that their communications would be confidential and privileged. (Marzen Dec., p. 3, ¶7, lines 11-14; Ackerman Dec., ¶7.)

– Finnegan's attorneys never stated or implied that what LMA's attorneys disclosed would not be confidential or privileged; therefore LMA's attorneys did not limit their discussion. (Marzen Dec., p. 3, ¶7, lines 11-14; Ackerman Dec., ¶7.)

9.10   The foregoing information is the same type of information disclosed in *SpeeDee*, which the California Supreme Court found was "confidential." *SpeeDee, supra*, at pp.1149, 1152; see also *Pound v. DeMera DeMera Cameron*, 135 Cal.App.4th 70, 74, 76 (Lawyer who had a one hour consultation with corporate counsel acting on behalf of officers, discussing the case in specific terms, including issues, personalities, vulnerabilities, and other topics which were attorney work product, was properly disqualified when, three years later lawyer was associated by the lawyer representing opposing parties in the same litigation. The associating firm was also disqualified.).[2]

9.11   The Finnegan lawyers also offered their suggestions and provided legal advice to LMA's lawyers concerning strategy and issues in this very litigation. (Marzen Dec., ¶10; Ackerman Dec., ¶6.)

9.12   The nature and extent of LMA's communication of confidential information and of Finnegan's legal advice and observations is in marked contrast with that of the attorney who was not disqualified in *Zimmerman*. In *Zimmerman*, pp. 560-561, 564-

---

[2] In *Med-Trans, supra,* a lawyer was not disqualified as a result of a consultation with an opposing party in the same litigation since (1) the party seeking disqualification failed to establish that confidential information was actually imparted to the attorney or that there was a reasonable inference that the attorney acquired confidential information; (2) the initial discussion never went beyond the preliminary stages; (3) the attorney was not approached by the party seeking disqualification for representation, and (4) no actual representation occurred for conflict of interest purposes. This case is markedly different since LMA actually imparted confidential information to Finnegan; LMA's initial consultation went well beyond preliminary stages and Finnegan rendered legal advice concerning the proposed litigation constituting representation for conflict of interest purposes.

566, the moving party failed to demonstrate that her previous 20 minute telephone call with a partner in the firm that later represented her opposing party in a post dissolution of marriage proceedings, imparted any confidential information or that the attorney ever imparted any legal strategy concerning the case, or that the matters discussed during the dissolution were even relevant to the later post-dissolution proceedings.

9.13  LMA's two hour detailed discussion of strategy, options, remedies, damages and projected legal fees, costs and expenses, between two sets of lawyers are still timely and relevant to this recently commenced litigation. Discussions clearly went beyond the initial stages, to the heart of the dispute between LMA and Ambu, Finnegan's current client regarding the very subject of the consultation and legal advice.

9.14  Based upon the foregoing and for purposes of a conflict of interest analysis, Finnegan attorneys Jakes and Williamson knowingly obtained material confidential information from LMA and rendered legal advice, resulting in a prima facie attorney-client relationship, precluding Jakes' and Williamson's representation of Ambu in the instant matter pursuant to Rule 3-310(E), California Rules of Professional Conduct.

10. **Finnegan's conduct would constitute breaches of duties of loyalty to LMA under California law.**

10.1  A fundamental fiduciary duty of a lawyer to a *current* client is the duty of loyalty. (*Flatt v. Superior Court*, 9 Cal.4th 275, 283, (1994).) As the Court of Appeal for the Fifth Appellate District stated in *State Farm Mutual Automobile Insurance Company v. Federal Insurance Company* (1999) 72 Cal.App.4th 1422, 1431, 86 Cal.Rptr.2d 20 ("*State Farm*"):

> . . .where an attorney's representation of one client is adverse to the interests of another *current* client, the primary value at stake is the attorney's duty of loyalty. (*Flatt v. Superior Court, supra,* 9 Cal.4th at p. 284, 36 Cal.Rptr.2d 537, 885 P.2d 950.) "[R]epresentation adverse to a *present* client must be measured not so much against the similarities in litigation, as against the duty of undivided loyalty which an attorney owes to each of his clients." (*Truck*

*Ins. Exchange v. Fireman's Fund Ins. Co., supra,* 6 Cal.App.4th at p. 1056, 8 Cal.Rptr.2d 228.)

10.2   In this matter, Finnegan's lawyers, Jakes and Williamson, gave legal advice to LMA concerning its dispute and proposed litigation with Ambu in anticipation of the instant litigation. (Marzen Dec., ¶¶ 7-10; Ackerman Dec., ¶6.)

10.3   Finnegan's lawyers, Jakes and Williamson, gave LMA the impression that Finnegan would be ready, willing and able to represent LMA on the terms and conditions discussed during the consultation. (Marzen Dec., ¶¶ 7, 11-17; Ackerman Dec., ¶¶7-9.)

10.4   Under California law cited above, for purposes of conflict analysis, a prima facie attorney-client relationship had been formed between Finnegan and LMA, in which the fiduciary duty of loyalty attached and would have required Finnegan not to assume a position adverse or antagonistic to LMA without the client's free and intelligent consent given after full knowledge of all the facts and circumstances. (*Flatt v. Superior Court, supra,* 9 Cal.4th at p. 289.)

10.5   Absent such informed consent, under California law, Finnegan would have had a duty to prevent a conflict of interest by not accepting adverse representation (*State Farm Mutual Automobile Insurance Company v. Federal Insurance Company, supra,* 72 Cal.App.4th at p. 1435), and refusing to represent Ambu against LMA. (*Truck Ins. Exchange v. Fireman's Fund Ins. Co., supra,* 6 Cal.App.4th at p. 1056, 8 Cal.Rptr.2d 228.)

10.6   Even assuming that Finnegan's dropping LMA like a "hot potato" to represent Ambu in the same matter was not a fundamental breach of the duty of loyalty, under California law, limited duties of loyalty still existed.

10.7   Even after the termination of a client relationship, an attorney may not do anything which will injuriously affect the attorney's former client in any matter in which the attorney formerly represented the client (*City National Bank v. Adams* (2002) 117 Cal.Rptr.2d 125, 132 citing *Wutchumna Water Co. v. Bailey* (1932) 216 Cal. 564, 573-574, 15 P.2d 505.)

///

10.8  In the instant matter, Finnegan gave legal advice to LMA adverse to Ambu concerning a proposed patent infringement action which is the same as this action. In this litigation, Finnegan proposes to represent Ambu regarding the same issues about which it gave advice to LMA, concerning proposed litigation strategy, expectations, damages, and related issues.

10.9  Based upon the foregoing, under California law, Finnegan's representation of Ambu in this litigation would entail breaches of several aspects of the duty of loyalty.

11. **All Finnegan lawyers are vicariously disqualified from representing Ambu adverse to LMA regarding the subject matter of this lawsuit.**

11.1  California has adopted principles of vicarious disqualification through common law, judicially-made decisional law. (*City and County of San Francisco v. Cobra Solutions, Inc.*, 38 Cal.4th 839, 847,("Vicarious disqualification rules are a product of decisional law.").

11.2  "When a conflict of interest requires an attorney's disqualification from a matter, the disqualification normally extends vicariously to the attorney's entire law firm." (*SpeeDee*, *supra*, pp. 1139; *Henriksen, supra,* p.114.) Thus, under these principles, the ineligibility of Jakes and Williamson to represent Ambu in this same matter extends to all other Finnegan lawyers.

11.3  Based upon the foregoing factors, the Finnegan lawyers representing Ambu are in violation of Rule 3-310(E), Rules of Professional Conduct and the principles set forth in *SpeeDee* and *Pound*, since no informed written consent from LMA has been obtained.

/ / /

/ / /

/ / /

12. **Ethical screens and walls are inconsistent with California's strong interest in protecting the communication of confidential information and loyalty in a side-switching case.**

    12.1    I understand that Finnegan may rely upon its erection of an ethical wall or screen to rebut the presumption that confidential information was imputed from Jakes and Williamson to all other Finnegan lawyers. (See *SpeeDee*, at p. 997.)

    12.2    California has not adopted a screening rule similar to Rule 1.18, ABA Model Rules of Professional Conduct. California courts have been hostile to permitting ethical walls or screens to rebut the presumption that a firm has obtained confidential information from a current or former client in private law firms not involving former governmental, judicial or non-attorney personnel or expert witnesses.[3] (*Lucent, supra*, at p. 4-5; *Hitachi, Ltd. v. Tatung Co.*, 419 F.Supp.2d 1158, 1161-1165 (N.D.Cal.,2006); *Pound, supra*, at pp. 76-77; *Henriksen, supra*, at pp. 115-116; *Dill, supra*. at p. 306; *Klein v. Superior Court*, 198 Cal.App.3d 894, 914 (1988).)

///

///

///

---

[3] Judicial acceptance of screening in specialized circumstances not present here has occurred, including (1) permitting government lawyers to obtain private employment in firms without being subjected to automatic disqualification (*Chambers v. Sup. Ct. (State of Calif.)*, 121 Cal.App.3d 893, 902, (1981); State Bar Formal Opinion No. 1993-128); (2) permitting a private law firm representing a party to continue its affiliation with a former judge who heard public portions of the same case (*Higdon v. Superior Ct. (Higdon)*, 227 Cal.App.3d 1667, 1680 (1991)); (3) employing non-lawyer law firm assistants who had previously worked at an adversary law firm on the same case (*In re Complex Asbestos Litigation*, 232 Cal.App.3d 572, 592-593, 283 Cal.Rptr. 732 (1991)); and (4) screening within an expert firm preventing vicarious disqualification of a law firm that employed one expert where the screened expert had consulted with another expert in the firm on the same case. (*Western Digital Corp. v. Sup. Ct (Amstrad plc)*, 60 Cal.App4th 1471, 1488 (1998)).

12.3    In a "side-switching" case, even a timely placed, adequate ethical wall would be insufficient, since an ethics wall relates to shared confidences, and does not address a breach of the duty of loyalty. (*SpeeDee*, at p. 1151[4]; *Henriksen v. Great American Savings & Loan, supra*, 11 Cal.App.4th at pp. 114-116.)

12.4    Indeed, in *Hitachi, supra*, pp. 1164-1165, the Northern District observed that because of the close proximity of the facts and law in the former and present representations, it would not have permitted an ethics wall to prevent disqualification, even if California law permitted it. The Southern District, in *Lucent, supra*, p. 4-5, refused to permit an ethics wall to prevent disqualification in a side-switching case.

12.5    From the foregoing, ethical screens and walls are not consistent with California's strong interest in protecting the communication of confidential information and loyalty in a side-switching case.

## CONCLUSION

13.    Based upon the foregoing, it is my professional opinion that California law requires the disqualification of the Finnegan firm from representing or assisting Ambu in this litigation.

I declare under penalty of perjury under the laws of the United States of America and the State of California that the foregoing is true and correct.

Executed this 6th day of December, 2007 at Escondido, California in the County of San Diego.

*Ellen R. Peck*
Ellen R. Peck

---

[4] In dicta in *SpeeDee*, p. 1151, the California Supreme Court did not consider whether screening could rebut disqualification, noting that no ethics wall or screen had been erected or put into place.

## CERTIFICATE OF SERVICE

I hereby certify that on December 6, 2007, I caused the foregoing **DECLARATION OF ELLEN PECK** to be electronically filed with the Clerk of the Court using the CM/ECF system which will send electronic notification of such filing to the applicable registered filing users.

VIA ECF:

John L'Estrange, Jr.
j.lestrange@wllawsd.com
WRIGHT & L'ESTRANGE

VIA E-MAIL:

Bryan C. Diner
bryan.diner@finnegan.com
Gerald Ivey
gerald.ivey@finnegan.com
P. Andrew Riley
andrew.riley@finnegan.com
Robert Burns
robert.burns@finnegan.com
FINNEGAN, HENDERSON, FARABOW, GARRETT & DUNNER LLP

VIA E-MAIL:

Sean M. SeLegue
sselegue@howardrice.com
HOWARD, RICE, NEOROVSKI, CANADY, FALK & RABIN

I declare that I am employed in the office of a member of the bar of this Court at whose direction the service was made.

Dated: December 6, 2007

Megan Ptacin

4618031