# EXHIBIT A

# DCBAR

## For Lawyers

▶ **For Lawyers**

▶ **For the Public**

▶ **Inside the Bar**

Home > For Lawyers > Ethics > Legal Ethics > Rules of Professional Conduct > Rule One

## Rule 1.10 — Imputed Disqualification: General Rule

**This Rule governed the practice of law in the District of Columbia from January 1, 1991, through January 31, 2007. As of February 1, 2007, the New Rules took effect.**

(a) While lawyers are associated in a firm, none of them shall knowingly represent a client when any one of them practicing alone would be prohibited from doing so by Rules 1.7, 1.8(b), 1.9, or 2.2; provided, however, that this paragraph shall not apply if an individual lawyer's disqualification results solely from the fact that the lawyer consulted with a potential client for the purpose [of] enabling that potential client and the firm to determine whether they desired to form a client-lawyer relationship, but no such relationship was ever formed.

(b) When a lawyer becomes associated with a firm, the firm may not knowingly represent a person in a matter which is the same as, or substantially related to, a matter with respect to which the lawyer had previously represented a client whose interests are materially adverse to that person and about whom the lawyer has in fact acquired information protected by Rule 1.6 that is material to the matter. The firm is not disqualified if the lawyer participated in a previous representation or acquired information under the circumstances covered by the proviso to paragraph (a) of this rule or by Rule 1.6(g).

(c) When a lawyer has terminated an association with a firm, the firm is not prohibited from thereafter representing a person with interests materially adverse to those of a client represented by the formerly associated lawyer during the association unless the matter is the same or substantially related to that in which the formerly associated lawyer represented the client during such former association.

(d) A disqualification prescribed by this Rule may be waived by the affected client under the conditions stated in Rule 1.7.

(e) A lawyer who, while affiliated with a firm, is made available to assist the Office of Corporation Counsel or the District of Columbia Financial Responsibility and Management Assistance Authority in providing legal services to that agency is not considered to be associated in a firm for purposes of paragraph (a), provided, however, that no such lawyer shall represent the Office of Corporation Counsel or the District of Columbia Financial Responsibility and Management Assistance Authority with respect to a matter in which the lawyer's firm appears on behalf of an adversary.

## Comment

### Definition of "Firm"

[1] For purposes of the Rules of Professional Conduct, the term "firm" includes lawyers in a private firm, and lawyers employed in the legal department of a corporation or other organization, or in a legal services organization, but does not include a government agency or other government entity.

whether two or more lawyers constitute a firm within this definition can depend on the specific facts. For example, two practitioners who share office space and occasionally consult or assist each other ordinarily would not be regarded as constituting a firm. However, if they present themselves to the public in a way suggesting that they are a firm or conduct themselves as a firm, they should be regarded as a firm for purposes of the Rules. The terms of any formal agreement between associated lawyers are relevant in determining whether they are a firm, as is the fact that they have mutual access to confidential information concerning the clients they serve. Furthermore, it is relevant in doubtful cases to consider the underlying purpose of the Rule that is involved. A group of lawyers could be regarded as a firm for purposes of the Rule that the same lawyer should not represent opposing parties in litigation, while it might not be so regarded for purposes of the Rule that information acquired by one lawyer is attributed to another.

[2] With respect to the law department of an organization, there is ordinarily no question that the members of the department constitute a firm within the meaning of the Rules of Professional Conduct. However, there can be uncertainty as to the identity of the client. For example, it may not be clear whether the law department of a corporation represents a subsidiary or an affiliated corporation, as well as the corporation by which the members of the department are directly employed. A similar question can arise concerning an unincorporated association and its local affiliates.

[3] Similar questions can also arise with respect to lawyers in legal aid organizations. Lawyers employed in the same unit of a legal service organization constitute a firm, but not necessarily those employed in separate units. As in the case of independent practitioners, whether the lawyers should be treated as associated with each other can depend on the particular Rule that is involved, and on the specific facts of the situation.

[4] Where a lawyer has joined a private firm after having represented the government, the situation is governed by Rule 1.11. The individual lawyer involved is bound by the Rules generally, including Rules 1.6, 1.7, and 1.9.

[5] Different provisions are thus made for movement of a lawyer from one private firm to another and for movement of a lawyer from the government to a private firm. The government is entitled to protection of its client confidences, and therefore to the protections provided in Rules 1.6 and 1.11. However, if the more extensive disqualification in Rule 1.10 were applied to former government lawyers, the potential effect on the government would be unduly burdensome. The government deals with all private citizens and organizations, and thus has a much wider circle of adverse legal interests than does any private law firm. In these circumstances, the government's recruitment of lawyers would be seriously impaired if Rule 1.10 were applied to the government. On balance, therefore, the government is better served in the long run by the protections stated in Rule 1.11.

**Principles of Imputed Disqualification**

[6] The rule of imputed disqualification stated in paragraph (a) gives effect to the principle of loyalty to the client as it applies to lawyers who practice in a law firm. Such situations can be considered from the premise that a firm of lawyers is essentially one lawyer for purposes of the Rules governing loyalty to the client, or from the premise that each lawyer is vicariously bound by the obligation of loyalty owed by each lawyer with whom the lawyer is associated. Paragraph (a) operates only among the lawyers currently associated in a firm. When a lawyer moves from one firm to another, the

situations governed by paragraph (b) or (c).

**Exceptions in the Case of a Prospective New Client**

[7] As indicated by the proviso in paragraph (a) of this Rule, the principle of loyalty diminishes in importance if the sole reason for an individual lawyer's disqualification is the lawyer's initial consultation with a prospective new client with whom no client-lawyer relationship was ever formed, either because the lawyer detected a conflict of interest as a result of an initial consultation, or for some other reason (e.g., the prospective client decided not to retain the firm). As provided by Rule 1.6 (a), and Comment [7] thereunder, the individual lawyer involved in any such initial consultation is required to maintain in strict confidence all information obtained from the prospective client even if a client-lawyer relationship was never formed. That obligation may in turn cause the individual lawyer to be disqualified pursuant to Rule 1.7(b)(4) from representing a current or future client of the firm adverse to the prospective client because that lawyer's inability to use or disclose information obtained from the prospective client may adversely affect that lawyer's professional judgment on behalf of the current or future client of the firm whose interests are adverse to the interests of the prospective client.

[8] The individual lawyer of the firm who obtains information from a prospective client under the circumstances described in the proviso to paragraph (a) of this Rule is permitted by Rule 1.6(a) to disclose that information to other persons in the lawyer's firm only to the minimum extent necessary to enable the firm to determine whether it may ethically accept the proposed representation, and if so, whether it desires to do so. For the reasons stated in paragraph [7], any such dissemination may necessarily cause additional individual lawyers of the firm to be personally disqualified from representing a current or future client of the firm adverse to the potential client. Nevertheless, as provided in Rule 1.10(a), the personal disqualification of individual lawyers is not imputed to the firm as a whole. Accordingly, any other lawyer in the firm who is not personally disqualified vis-à-vis the prospective client may represent a current or future client of the firm adverse to the prospective client.

[9] When a firm relies on the proviso in paragraph (a) to this Rule to avoid imputed disqualification of the firm as a whole, that firm must take affirmative steps—as soon as an actual or potential conflict is suspected—to prevent the personally disqualified lawyers from disseminating any information about the potential client that is protected by Rule 1.6, except as necessary to investigate potential conflicts of interest, to any other person in the firm, including non-lawyer staff. Conversely, the personally disqualified lawyers should not receive any confidences or secrets of the firm's clients in the conflicted matter.

**Lawyers Moving Between Firms**

[10] When lawyers move between firms or when lawyers have been associated in a firm but then end their association, the fiction that the law firm is the same as a single lawyer is no longer wholly realistic. There are several competing considerations. First, the client previously represented must be reasonably assured that the principle of loyalty to the client is not compromised. Second, the rule of disqualification should not be so broadly cast as to preclude other persons from having reasonable choice of legal counsel. Third, the rule of disqualification should not unreasonably hamper lawyers from forming new associations and taking on new clients after having left a previous association. In this connection, it should be recognized that today many lawyers practice in firms, that many to some degree limit their practice to one field or

another, and that many move their association to another several times in their careers. If the concept of imputed disqualification were defined with unqualified rigor, the result would be radical curtailment of the opportunity of lawyers to move from one practice setting to another and of the opportunity of clients to change counsel.

[11] Reconciliation of these competing principles in the past has been attempted under two rubrics. One approach has been to seek *per se* rules of disqualification. For example, it has been held that a partner in a law firm is conclusively presumed to have access to all confidences concerning all clients of the firm. Under this analysis, if a lawyer has been a partner in one law firm and then becomes a partner in another law firm, there is a presumption that all confidences known by a partner in the first firm are known to all partners in the second firm. This presumption might properly be applied in some circumstances, especially where the client has been extensively represented, but may be unrealistic where the client was represented only for limited purposes. Furthermore, such a rigid rule exaggerates the difference between a partner and an associate in modern law firms.

[12] The other rubric formerly used for dealing with vicarious disqualification is the appearance of impropriety proscribed in Canon 9 of the Code of Professional Responsibility. Applying this rubric presents two problems. First, the appearance of impropriety can be taken to include any new client-lawyer relationship that might make a former client feel anxious. If that meaning were adopted, disqualification would become little more than a question of subjective judgment by the former client. Second, since "impropriety" is undefined, the term "appearance of impropriety" is question-begging. It therefore has to be recognized that the problem of imputed disqualification cannot be properly resolved either by simple analogy to a lawyer practicing alone or by the very general concept of appearance of impropriety.

[13] A rule based on a functional analysis is more appropriate for determining the question of vicarious disqualification. Two functions are involved: preserving confidentiality and avoiding positions adverse to a client.

**Confidentiality**

[14] Preserving confidentiality is a question of access to information. Access to information, in turn, is essentially a question of fact in particular circumstances, aided by inferences, deductions, or working presumptions that reasonably may be made about the way in which lawyers work together. A lawyer may have general access to files of all clients of a law firm and may regularly participate in discussions of their affairs; it should be inferred that such a lawyer in fact is privy to all information about all the firm's clients. In contrast, another lawyer may have access to the files of only a limited number of clients and participate in discussion of the affairs of no other clients; in the absence of information to the contrary, it should be inferred that such a lawyer in fact is privy to information about the clients actually served but not those of other clients.

[15] Application of paragraph (b) depends on a situation's particular facts. In any such inquiry, the burden of proof should rest upon the firm whose disqualification is sought.

[16] The provisions of paragraph (b) which refer to possession of protected information operate to disqualify the firm only when the lawyer involved has actual knowledge of information protected by Rule 1.6. Thus, if a lawyer while with one firm acquired no knowledge of information relating to a particular client of the firm, and that lawyer later joined another firm, neither the lawyer individually nor the second firm is disqualified from representing another client in the same

the two clients conflict.

[17] Independent of the question of disqualification of a firm, a lawyer changing professional association has a continuing duty to preserve confidentiality of information about a client formerly represented. See Rule 1.6.

## Adverse Positions

[18] The second aspect of loyalty to a client is the lawyer's obligation to decline subsequent representations involving positions adverse to a former client arising in substantially related matters. This obligation requires abstention from adverse representations by the individual lawyer involved, and may also entail abstention of other lawyers through imputed disqualification. Hence, this aspect of the problem is governed by the principles of Rule 1.9. Thus, under paragraph (b), if a lawyer left one firm for another, the new affiliation would preclude the lawyer's new firm from continuing to represent clients with interests materially adverse to those of the lawyer's former clients in the same or substantially related matters. In this respect paragraph (b) is at odds with—and thus must be understood to reject—the dicta expressed in the "second" hypothetical in the second paragraph of footnote 5 of *Brown v. District of Columbia Board of Zoning Adjustment*, 486 A.2d 37, 42 n.5 (D.C. 1984) (en banc), premised on *LaSalle National Bank v. County of Lake*, 703 F.2d 252, 257-59 (7th Cir. 1983).

[19] The concept of "former client" as used in paragraph (b) extends only to actual representation of the client by the newly affiliated lawyer while that lawyer was employed by the former firm. Thus, not all of the clients of the former firm during the newly affiliated lawyer's practice there are necessarily deemed former clients of the newly affiliated lawyer. Only those clients with whom the newly affiliated lawyer in fact personally had a lawyer-client relationship are former clients within the terms of paragraph (b).

[20] Conversely, when a lawyer terminates an association with a firm, paragraph (c) provides that the old firm may not thereafter represent clients whose interests are materially adverse to those of the formerly associated lawyer's client in respect to a matter that is the same or substantially related to a matter with respect to which the formerly associated lawyer represented the client during the former association. For example, if a lawyer who represented a client in a litigation while with Firm A departs the firm, taking to the lawyer's new firm the litigation, Firm A may not, despite the departure of the lawyer, who takes the matter and the client to the new firm, undertake a representation adverse to the former client in that same litigation. See Rule 1.9 and the Comment thereto for the definition of "substantially related matter."

[21] The last sentence of paragraph (b) limits the imputation rule in certain limited circumstances. Those circumstances involve situations in which any secrets or confidences obtained were received before the lawyer had become a member of the Bar, but during a time when such person was providing assistance to another lawyer. The typical situation is that of the part-time or summer law clerk, or so-called summer associate. Other types of assistance to a lawyer, such as working as a paralegal or legal assistant, could also fall within the scope of this sentence. The limitation on the imputation rule is similar to the provision dealing with judicial law clerks under Rule 1.11 (b). Not applying the imputation rule reflects a policy choice that imputation in such circumstances could unduly impair the mobility of persons employed in such nonlawyer positions once they become members of the Bar. The personal disqualification of the former nonlawyer is not affected, and the lawyer who previously held the nonlegal job may not be involved in any

representation with respect to which he would have been disqualified but for the last sentence of paragraph (b). Rule 1.6 (g) provides that the former nonlawyer is subject to the requirements of Rule 1.6 (regarding protection of client confidences and secrets) just as if the person had been a member of the Bar when employed in the prior position.

**Lawyers Assisting the Office of Corporation Counsel and the District of Columbia Financial Responsibility and Management Assistance Authority**

[22] The Office of Corporation Counsel and the District of Columbia Financial Responsibility and Management Assistance Authority may experience periods of peak need for legal services which cannot be met by normal hiring programs, or may experience problems in dealing with a large backlog of matters requiring legal services. In such circumstances, the public interest is served by permitting private firms to provide the services of lawyers affiliated with such private firms on a temporary basis to assist the Office of Corporation Counsel and the District of Columbia Financial Responsibility and Management Assistance Authority. Such arrangements do not fit within the classical pattern of situations involving the general imputation rule of paragraph (a). Provided that safeguards are in place which preclude the improper disclosure of client confidences or secrets, and the improper use of one client's confidences or secrets on behalf of another client, the public interest benefits of such arrangements justify an exception to the general imputation rule, just as comment [1] excludes from the definition of "firm" lawyers employed by a government agency or other government entity. Lawyers assigned to assist the Office of Corporation Counsel or the District of Columbia Financial Responsibility and Management Assistance Authority pursuant to such temporary programs are, by virtue of paragraph (e), treated as if they were employed as government employees and as if their affiliation with the private firm did not exist during the period of temporary service with the Office of Corporation Counsel or the District of Columbia Financial Responsibility and Management Assistance Authority. See Rule 1.11(h) with respect to the procedures to be followed by lawyers participating in such temporary programs and by the firms with which such lawyers are affiliated after the participating lawyers have ended their participation in such temporary programs.

[23] The term "made available to assist the Office of Corporation Counsel or the District of Columbia Financial Responsibility and Management Assistance Authority in providing legal services" in paragraph (e) contemplates the temporary cessation of practice with the firm during the period legal services are being made available to the Office of Corporation Counsel or the District of Columbia Financial Responsibility and Management Assistance Authority, so that during that period the lawyer's activities which involve the practice of law are devoted fully to assisting the Office of Corporation Counsel or the District of Columbia Financial Responsibility and Management Assistance Authority.

[24] Rule 1.10(e) prohibits a lawyer who is assisting the Office of Corporation Counsel or the District of Columbia Financial Responsibility and Management Assistance Authority from representing that office in any matter in which the lawyer's firm represents an adversary. Rule 1.10(e) does not, however, by its terms, prohibit lawyers assisting the Office of Corporation Counsel or the District of Columbia Financial Responsibility and Management Assistance Authority from participating in every matter in which the Corporation Counsel or the District of Columbia Financial Responsibility and Management Assistance Authority is taking a position adverse to that of a current client of the firm with which the

participating lawyer was affiliated at the time, or is, the product of assistance to the Office of Corporation Counsel or the District of Columbia Financial Responsibility and Management Assistance Authority. Such an unequivocal prohibition would be overly broad, difficult to administer in practice, and inconsistent with the purposes of Rule 1.10(e).

[25] The absence of such a per se prohibition in Rule 1.10(e) does not diminish the importance of a thoughtful and restrained approach to defining those matters in which it is appropriate for a participating lawyer to be involved. An appearance of impropriety in programs of this kind can undermine the public's acceptance of the program and embarrass the Office of Corporation Counsel or the District of Columbia Financial Responsibility and Management Assistance Authority, the participating lawyer, that lawyer's law firm and clients of that firm. For example, it would not be appropriate for a participant lawyer to engage in a representation adverse to a party who is known to be a major client of the participating lawyer's firm, even though the subject matter of the representation of the Office of Corporation Counsel or the District of Columbia Financial Responsibility and Management Assistance Authority bears no substantial relationship to any representation of that party by the participating lawyer's firm. Similarly, it would be inappropriate for a participating lawyer to be involved in a representation adverse to a party that the participating lawyer has been personally involved in representing while at the firm, even if the client is not a major client of the firm. The appropriate test is that of conservative good judgment; if any reasonable doubts concerning the unrestrained vigor of the participating lawyer's representation on behalf of the Office of Corporation Counsel or the District of Columbia Financial Responsibility and Management Assistance Authority might be created, the lawyer should advise the appropriate officials of the Office of Corporation Counsel or the District of Columbia Financial Responsibility and Management Assistance Authority and decline to participate. Similarly, if participation on behalf of the Office of Corporation Counsel or the District of Columbia Financial Responsibility and Management Assistance Authority might reasonably give rise to a concern on the part of a participating lawyer's firm or a client of the firm that its secrets or confidences (as defined by Rule 1.6) might be compromised, participation should be declined. It is not anticipated that situations suggesting the appropriateness of a refusal to participate will occur so frequently as to significantly impair the usefulness of the program of participation by lawyers from private firms.

[26] The primary responsibility for identifying situations in which representation by the participating lawyer might raise reasonable doubts as to the lawyer's zealous representation on behalf of the Office of Corporation Counsel or the District of Columbia Financial Responsibility and Management Assistance Authority must rest on the participating lawyer, who will generally be privy to nonpublic information bearing on the appropriateness of the lawyer's participation in a matter on behalf of the Office of Corporation Counsel or the District of Columbia Financial Responsibility and Management Assistance Authority. Recognizing that many representations by law firms are nonpublic matters the existence and nature of which may not be disclosed consistent with Rule 1.6, it is not anticipated that law firms from whom participating lawyers have been drawn would be asked to perform formal "conflicts checks" with respect to matters in which participating lawyers may be involved. However, consultations between participating lawyers and their law firms to identify potential areas of concern, provided that such consultations honor the requirements of Rule 1.6, are appropriate to protect the interests of all involved—the Office of Corporation Counsel, the District of

Columbia Bar Manual on Responsibility and Management Assistance Authority, the participating lawyer, that lawyer's law firm and any clients whose interests are potentially implicated.

Rule One Table of Contents

Go to...



The District of Columbia Bar | 1250 H Street NW, sixth floor | Washington DC 20005-5937 | 202-737-4700 | **Directions/Parking**
©**2007** District of Columbia Bar. All rights reserved. **Privacy Policy** | **Disclaimer** | **Author guidelines**

# EXHIBIT B

### Rule 1.18 – Duties to Prospective Client

(a)  A person who discusses with a lawyer the possibility of forming a client-lawyer relationship with respect to a matter is a prospective client.

(b)  Even when no client-lawyer relationship ensues, a lawyer who has had discussions with a prospective client shall not use or reveal information learned in the consultation, except as permitted by Rule 1.6.

(c)  A lawyer subject to paragraph (b) shall not represent a client with interests materially adverse to those of a prospective client in the same or a substantially related matter if the lawyer received a confidence or secret from the prospective client, except as provided in paragraph (d). If a lawyer is disqualified from representation under this paragraph, no lawyer in a firm with which that lawyer is associated may knowingly undertake or continue representation in such a matter, except as provided in paragraph (d).

(d)  When the lawyer has received a confidence or secret from the prospective client, representation is permissible if:

(1)  both the affected client and the prospective client have given informed consent, or

(2)  the disqualified lawyer is timely screened from any participation in the matter.

**COMMENT**

[1]  Prospective clients, like clients, may disclose information to a lawyer, place documents or other property in the lawyer's custody, or rely on the lawyer's advice.  A lawyer's discussions with a prospective client usually are limited in time and depth and leave both the prospective client and the lawyer free (and sometimes required) to proceed no further.  The principle of loyalty diminishes in importance if the sole reason for an individual lawyer's disqualification is the lawyer's initial consultation with a prospective new client with whom no client-lawyer relationship was ever formed, either because the lawyer detected a conflict of interest as a result of an initial consultation, or for some other reason (*e.g.*, the prospective client decided not to retain the firm).  Hence, prospective clients should receive some but not all of the protection afforded clients.

[2]  Not all persons who communicate information to a lawyer are entitled to protection under this rule.  A person who communicates information unilaterally to a lawyer, without any reasonable expectation that the lawyer is willing to discuss the possibility of forming a client-lawyer relationship, is not a "prospective client" within the meaning of paragraph (a).

[3]  It is often necessary for a prospective client to reveal information to the lawyer during an initial consultation prior to the decision about formation of a client-lawyer relationship.  The client may disclose such information as part of the process of determining

87

whether the client wishes to form a client-lawyer relationship. The lawyer often must learn such information to determine whether there is a conflict of interest with an existing client and whether the matter is one that the lawyer is willing to undertake. Such information is generally protected by Rule 1.6, even if the client or lawyer decides not to proceed with the representation. *See* Rule 1.6, Comment [9]. Paragraph (b) of Rule 1.18 prohibits the lawyer from using or revealing that information, except as permitted by Rule 1.6. The duty to protect confidences and secrets exists regardless of how brief the initial conference may be. The prohibition against use or disclosure of information received from the prospective client may in turn cause the individual lawyer to be disqualified pursuant to Rule 1.7(b)(4) from representing a current or future client of the firm adverse to the prospective client because that lawyer's inability to use or disclose information from the prospective client may adversely affect that lawyer's professional judgment on behalf of the current or future client of the firm whose interests are adverse to the interests of the prospective client.

[4] In order to avoid acquiring confidences and secrets from a prospective client, a lawyer considering whether or not to undertake a new matter may limit the initial interview only to information that does not constitute a confidence or secret, if the lawyer can do so and still determine whether a conflict of interest or other reason for non-representation exists. An individual lawyer of the firm who obtains information from a prospective client is permitted by Rule 1.6(a) to disclose that information to other persons in the lawyer's firm, but any such dissemination may cause additional individual lawyers of the firm to be personally disqualified. If a firm wishes to keep open the screening option under paragraph (d)(2) which permits lawyers who are not personally disqualified to represent clients in the same or substantially related matters, the firm must limit and control dissemination of information obtained from the prospective client. Where the information from the prospective client indicates that any reason for non-representation exists, the lawyer should so inform the prospective client or decline the representation. If the prospective client wishes to retain the lawyer, and if consent is possible under Rule 1.7, then informed consent from all affected present or former clients must be obtained before accepting the representation.

[5] A lawyer may condition conversations with a prospective client on the person's informed consent that no information disclosed during the consultation will prohibit the lawyer from representing a different client in the matter. For the definition of "informed consent," *see* Rule 1.0(e). If the agreement expressly so provides, the prospective client may also consent to the lawyer's subsequent use of information received from the prospective client.

[6] Even in the absence of an agreement, under paragraph (c), the lawyer is not prohibited from representing a client with interests adverse to those of the prospective client in the same or a substantially related matter unless the lawyer has received confidences and secrets from the prospective client. ABA Model Rule 1.18 provides for personal disqualification only if the information received by the lawyer could be significantly harmful if used in the matter, but the trigger in D.C. Rule 1.18 is receipt of any confidence or secret because of the interest in more broadly protecting the prospective client and the difficulty of determining whether use of the information would be significantly harmful to the prospective client.

[7] Under paragraph (c), the prohibition in this rule is imputed to other lawyers as

88

provided in Rule 1.10, but, under paragraph (d)(1), imputation may be avoided if the lawyer obtains the informed consent of both the prospective and affected clients. In the alternative, imputation may be avoided under paragraph (d)(2) if all disqualified lawyers are timely screened. *See* Rule 1.0(l) (requirements for screening procedures). When a firm may wish to rely on paragraph (d)(2) to avoid imputed disqualification of the firm as a whole, it should take affirmative steps – as soon as an actual or potential conflict is suspected – to prevent a personally disqualified lawyer from disseminating any information about the potential client that is protected by Rule 1.6, except as necessary to investigate potential conflicts of interest, to any other person in the firm, including non-lawyer staff. Any lawyer in the firm who actually receives, directly or indirectly, protected information provided by a prospective client is disqualified. Unlike ABA Model Rule 1.18, this rule does not condition use of screening on the taking of reasonable measures by the personally disqualified lawyer to avoid exposure to more disqualifying information than was reasonably necessary to determine whether to represent the prospective client; that is because the screen protects the prospective client regardless of the amount of information received by the personally disqualified lawyer, and this standard may be difficult to apply in practice. This rule does not prohibit the screened lawyer from receiving any part of the fee, in contrast to ABA Model Rule 1.18, because the substantial administrative burden of complying with such a prohibition exceeds any marginal benefit.

[8] This rule, unlike ABA Model Rule 1.18, does not require notice to the prospective client that lawyers in the firm who are not personally disqualified are representing a client adverse to the prospective client in the same or substantially related matters subject to the screening requirement, because the lack of such a notice requirement under the prior D.C. Rule concerning prospective clients (Rule 1.10(a)) did not prove problematic and it is not clear that the notice requirement materially advances any significant interest of the prospective client.

[9] For the duty of competence of a lawyer who gives assistance on the merits of a matter to a prospective client, *see* Rule 1.1. For a lawyer's duties when a prospective client entrusts valuables or papers to the lawyer's care, *see* Rule 1.15.

# EXHIBIT C

*District of Columbia*
*Court of Appeals*

No. M-223-05

BEFORE: Washington, Chief Judge; and Farrell, Ruiz, Reid, Glickman, Kramer, and Fisher,
　　　　　Associate Judges.

**O R D E R**
**(FILED - August 1, 2006)**

　　　　On consideration of the proposed amendments to the District of Columbia Rules of
Professional Conduct submitted by the Board of Governors of the District of Columbia Bar on
June 23, 2005, and the comments thereto, it is

　　　　ORDERED that the rules are amended in accordance with the version transmitted by the
District of Columbia Court of Appeals to the District of Columbia Bar electronically and by
written copy on August 1, 2006.  It is

　　　　FURTHER ORDERED that the effective date of the Rules as amended is February 1,
2007.

　　　　　　　　　　　　ENTERED BY DIRECTION OF THE COURT:


　　　　　　　　　　　　GARLAND PINKSTON, JR.
　　　　　　　　　　　　Clerk of the Court

# EXHIBIT D

**Editor's Note:**

State Bar Ethics Opinions cite the applicable California Rules of Professional Conduct in effect at the time of the writing of the opinion. Please refer to the California Rules of Professional Conduct Cross Reference Chart for a table indicating the corresponding current operative rule. There, you can also link to the text of the current rule.

---

### THE STATE BAR OF CALIFORNIA
### STANDING COMMITTEE ON
### PROFESSIONAL RESPONSIBILITY AND CONDUCT

#### FORMAL OPINION NO. 1998-152

---

## ISSUE:

When a member of the California State Bar undertakes representation of a new client in a matter which is adverse to a former client of the member's law firm, must the member obtain the former client's informed written consent before accepting the new representation?

## DIGEST:

Under the facts presented a member of the California State Bar is not subject to discipline under rule 3-310(E) of the California Rules of Professional Conduct if the member accepts the representation without obtaining the former client's informed written consent. Nevertheless, the Committee believes that based on a California State Bar member's broader professional responsibility to a client, the member should not accept a representation adverse to a former client without first obtaining that former client's consent when the member knows or reasonably should know that another lawyer in the member's law firm obtained material confidential information during the representation of that former client.

## AUTHORITIES
## INTERPRETED:

Rules 1-100, 3-310, and 3-500 of the California Rules of Professional Conduct.

Business and Professions Code sections 6068 (e) and 6068 (m).

## STATEMENT OF FACTS

Lawyer A in Law Firm is consulted by Client over a period of several weeks about the merits of a lawsuit Client intends to bring against certain parties. Lawyer A and Client discuss in detail many of the weaknesses in the case and Client's anticipated strategies in the case. After the consultation, Client ends the lawyer-client relationship with Lawyer A and Law Firm and retains another firm to prosecute the lawsuit. One of the defendants in the lawsuit now seeks to retain Lawyer B in Law Firm to defend it in the case. Throughout the following discussion, "Client" refers to the former client of Lawyer A and Law Firm as described in these facts.

## DISCUSSION

The proposed representation in this inquiry is a classic case of "side-switching" in which a lawyer or a law firm which has consulted with one side about a case goes on to represent the opposing party in the same case. California courts repeatedly have disqualified lawyers in civil cases from representing a new client against the opposing party formerly represented by the Lawyers in the same case when the opposing party actually communicated confidential information about the case in the prior consultation. (*Grove v. Grove Valve & Regulator Co.*(1963) 213 Cal.App.2d 646 [28 Cal.Rptr. 150]; *Henriksen v. Great American Savings & Loan* (1992) 11 Cal.App.4th 109 [14 Cal.Rptr.2d 184]; *Truck Insurance Exchange v. Fireman's Fund* (1992) 6 Cal.App.4th 1050 [8 Cal.Rptr.2d 228]; *Dill v. Superior Court* (1984) 158 Cal.App.3d 301 [205 Cal.Rptr.671]; *Big Bear Mun. Water Dist. v. Superior Court* (1969) 269 Cal.App.2d 919, 925-929 [75 Cal.Rptr. 580]; see also *In re Complex Asbestos Litigation* (1991) 232 Cal.App.3d 572 [283 Cal.Rptr. 732]; but see *In re Marriage of Zimmerman* (1993) 16 Cal.App.4th 556 [20 Cal.Rptr. 132].)

This opinion addresses an issue which the courts have considered in deciding side-switching cases, but which is not embodied in the California Rules of Professional Conduct. Rule 3-310(E) of the California Rules of Professional Conduct (hereinafter "rule(s)"), prohibits a "member" of the California State Bar from accepting representation adverse to a former client where, by virtue of representing the former client, the "member" has obtained material confidential information. Rule 3-310(E) states:

A **member shall not**, without the informed written consent of the client or former client, **accept employment** adverse to the client or former client, **where**, by reason of the representation of the client or former client, **the member has obtained confidential information** material to the employment. (Emphasis added.)

As written, rule 3-310(E) refers to a "member" and not to the member's law firm. Rule 1-100(B)(2) defines the term "member" as "a member of the State Bar of California."

Under rule 3-310(E), Lawyer A may be subject to discipline for representing defendants in Client's lawsuit because Lawyer A represented Client and obtained confidential information about the merits of Client's lawsuit which Lawyer A would have a duty to use or disclose against Client's interests in the lawsuit. However, under the rule, neither Lawyer B nor any other lawyer in Law Firm would be subject to discipline for representing any of the defendants since Lawyer B and the other lawyers in Law Firm are not the "member" who represented Client in the previous engagement and obtained the material confidential information.

As a result, rule 3-310(E) does not require the client's informed written consent under the facts presented. This opinion addresses whether Lawyer B is nevertheless precluded from accepting the representation in question without the former client's consent based on principles adopted in court decisions.

## I. The Imputed Knowledge Rule in Disqualification Cases

In the non-disciplinary context of lawyer disqualification, California courts have addressed this problem by adopting an imputed knowledge rule. The imputed knowledge rule provides that client confidential information obtained by one lawyer in a law firm is deemed to be possessed by all other lawyers in the firm. (See, e.g., *Rosenfeld Construction Co. v. Superior Court* (1991) 235 Cal.App.3d 566, 573 [286 Cal.Rptr. 609]; *Chadwick v. Superior Court* (1980) 106 Cal.App.3d 108, 116 [164 Cal.Rptr. 864]; *Chambers v. Superior Court* (1981) 121 Cal.App.3d 893, 897-898 [175 Cal.Rptr. 575].)[1] The presumption that client information has been shared among lawyers in a law firm "is based on the common-sense notion that people who work in close quarters talk with each other, and sometimes about their work." (*Elan Transdermal v. Cygnus Therapeutic Systems, supra*, 809 F.Supp. at p. 1390.)

While not included in the California Rules of Professional Conduct[2], the imputed knowledge rule is derived from a model ethical rule outside of California which California courts have recognized and applied in the context of lawyer disqualification. The California cases which were among the first to apply the rule relied in part on DR 5-105(D) of the ABA Model Code of Professional Responsibility. (*Chadwick v. Superior Court, supra*, 106 Cal.App.3d at 116; *Chambers v. Superior Court, supra*, 121 Cal.App.3d at 898.) DR 5-105(D) stated that "[i]f a lawyer is required to decline employment or to withdraw from employment under a Disciplinary Rule, no partner, or associate, or any other lawyer affiliated with him or his firm, may accept or continue such employment."[3]

Nevertheless, the ABA rules do not establish disciplinary standards in California. The ABA Model Code of Professional Responsibility and the ABA Model Rules of Professional Conduct, which superseded the Model Code, have not been adopted in California and have no legal force of their own. (*General Dynamics Corp. v. Superior Court* (1994) 7 Cal.4th 1164, 1190, fn. 6 [32 Cal.Rptr.2d 1]; *Cho v. Superior Court* (1995) 39 Cal.App.4th 113, 121, fn. 2 [45 Cal.Rptr.2d 863]; see also *People v. Ballard* (1980) 104 Cal.App.3d 757, 761 [164 Cal.Rptr. 81]; Cal. State Bar Formal Opn. No. 1983-71.)[4]

## II. Distinguishing Disciplinary Rules and Civil Standards

Does the imputed knowledge rule adopted by the courts constitute a disciplinary standard? On the one hand, rule 1-100(A) states that the prohibitions of certain conduct contained in the California Rules of Professional Conduct are not exclusive and that California State Bar members are also bound by applicable law including opinions of California courts. On the other hand, not every civil standard stated in the case law subjects a lawyer to discipline.

This dichotomy is present in the civil standards relating to lawyer disqualification involving rule 3-310(E). The fact that a standard exists in the context of lawyer disqualification does not automatically subject the lawyer to State Bar prosecution. Motions to disqualify counsel include civil standards which are unique to disqualification proceedings.

The difference between legal principles which exist for determining disqualification and rules by which lawyers are bound under rule 1-100(A) stems from the difference between the specific nature of a disqualification motion and the broader interests the California Rules of Professional Conduct exist to serve. The California Rules of Professional Conduct are intended to regulate professional conduct of lawyers through discipline. They are designed to protect the public and promote respect and confidence in the legal profession. (Rule 1-100(A).) A lawyer has a duty to refrain from wilfully breaching those rules. (Rule 1-100(A).)[5]

By contrast, a court's power to order disqualification is derived from the power inherent in every court to control the administration of proceedings before it. (Code Civ. Proc., § 128 (a)(5); *Metro-Goldwyn-Mayer, Inc. v. Tracinda Corp.* (1995) 36 Cal.App.4th 1832, 1839 [43 Cal.Rptr.2d 327].) Disciplinary rules are but one of the factors on which courts decide whether disqualification is necessary to preserve the integrity of the judicial process. (*In re Complex Asbestos Litigation, supra*, 232 Cal.App.3d at p. 586.)

Lawyer disqualification is prophylactic in nature. Lawyer disqualification decisions under rule 3-310(E) do not turn on whether the lawyer in question wilfully breached the rule, but on the merits of the former client's interest in preserving the confidentiality of the information imparted to the lawyer. (See, e.g., *In re Complex Asbestos Litigation, supra*, 232 Cal.App.3d at p. 586; *River West, Inc. v. Nickel* (1987) 188 Cal.App.3d

evidence in applying rule 3-310(E). A disqualification motion made under rule 3-310(E) involves a current client who was not a party to the prior lawyer-client relationship or to the confidential communication in question.[6]

Disqualification does not require the moving party to disclose the nature or content of the confidential information or prove that any confidential information was disclosed or utilized by any lawyer in the representation of a subsequent client. (*In re Complex Asbestos Litigation*, supra, 232 Cal.App.3d at p. 586.) By contrast, in a civil or disciplinary proceeding involving a charge by the client that the lawyer has breached his or her duty, there is no privilege, and a lawyer may reveal such information when relevant to refute the former client's claims against the lawyer. (See Evid. Code, § 958; *Brockway v. State Bar* (1991) 53 Cal.3d 51, 63 [278 Cal.Rptr. 836]; L.A. Cty. Bar Formal Opn. No. 396 (1982).)[7]

In short, motions to disqualify under rule 3-310(E) involve policies and concerns which are specific to disqualification proceedings.[8] While disqualification motions also involve principles which are consistent with the overall purposes of the California Rules of Professional Conduct stated in rule 1-100(A), disqualification cases also involve policies that are prophylactic in nature and applicable generally only to disqualification motions and other proceedings arising out of them.[9] These principles do not necessarily establish civil standards of care and are not disciplinary rules. A member who violates these principles may be subject to civil penalties such as disqualification or damages; however, absent a violation of the California Rules of Professional Conduct, the State Bar Act or the rules in disciplinary cases interpreting those provisions, the member is not subject to discipline.

Thus, under the facts presented, Lawyer B is not subject to discipline under rule 3-310(E) if Lawyer B accepts the proposed representation. Nevertheless, Lawyer B and Law Firm may be subject to disqualification or other civil penalties such as damages. The remaining question is what Lawyer B should do as part of Lawyer B's broader professional responsibility.

### III. Determining a Lawyer's Professional Responsibility

While the California Rules of Professional Conduct set relatively narrow standards for purposes of lawyer discipline, they are not the limit of a lawyer's professional responsibility to a client. Rule 1-100(A) recognizes that the rules are not exclusive and that lawyers have broader professional responsibilities to a client, which while not subjecting a lawyer to discipline, nevertheless advance the objectives and principles which underlie the rules.[10]

While the imputed knowledge rule does not constitute a basis for discipline under rule 3-310(E), the Committee nevertheless believes that Lawyer B should not accept the representation in question without obtaining Client's informed written consent. Obtaining such consent may not be required pursuant to a disciplinary rule but is consistent with a lawyer's broader professional responsibility.

Under rule 3-310(E), a representation is adverse to a former client when the former client's confidential information could be used against the former client's interests during the lawyer's representation of the new client. (*Woods v. Superior Court*, supra, 149 Cal.App.3d at p. 934; *Yorn v. Superior Court* (1979) 90 Cal.App.3d 669, 675 [153 Cal.Rptr. 295]; *Galbraith v. State Bar* (1933) 218 Cal. 329, 332-333 [23 P.2d 291]; see also San Diego Cty. Bar Assn. Formal Opn. No. 1987-1.) The rule helps resolve the conflict between a lawyer's duty to inform the new client of significant developments related to the lawyer's representation of the new client under rule 3-500[11] and Business and Professions Code section 6068 (m)[12] and the lawyer's duty to preserve the former client's confidential information under Business and Professions Code section 6068 (e).[13] (L.A. Cty. Bar Assn. Formal Opn. No. 463.) The rule also addresses the conflict between a lawyer's duty to use the former client's confidential information in order to represent the new client competently and the lawyer's continuing duty of loyalty to the former client with respect to that information.[14]

Beyond the basic mechanics of the conflict of interest the rule is intended to address, there is also a broader policy consideration. The California Rules of Professional Conduct exist "to protect the public and to promote respect and confidence in the legal profession."

The imputed knowledge rule is consistent with this broader purpose. The imputed knowledge rule exists because it is difficult for a former client to know whether confidential information is being shared inside the law firm. The former client does not have the means to oversee the daily activities of lawyers in the firm in order to confirm that the former client's confidential information is not available to the lawyers who are now prosecuting a matter against the former client in which the confidential information is pertinent. While the Committee is not suggesting that lawyers would not seek to protect the former client's confidences in such situations, the absence of an effective means of oversight combined with the law firm's interest as an advocate for the current client in the adverse representation are factors that tend to undermine a former client's trust, and in turn the public's trust, in a legal system that would permit such a situation to exist without the former client's consent.

It is these very concerns which have lead California courts to apply the imputed knowledge rule. Indeed, recent decisions have reiterated the role of the imputed knowledge rule in maintaining client confidential information in order to ensure public trust in the judicial system. (*Rosenfeld Construction Co. v. Superior Court*, supra, 235 Cal.App.3d at p. 578; see also *Cho v. Superior Court*, supra, 39 Cal.App.4th at p. 125, "[n]o amount of assurances or screening procedures, no 'cone of silence' could ever convince the opposing party that the confidences would not be used to its disadvantage . . . . No one could have confidence in the integrity of a legal process in which this is permitted to occur without the parties' consent.")[15]

At the same time, the Committee recognizes that the imputed knowledge rule as it exists in the case law may result in disqualification even if the

member does not know through the exercise of reasonable diligence could ascertain that another lawyer in the member's law firm possess material confidential information.[16] However, when a member knows or reasonably should know that another lawyer in the member's law firm acquired such information, the member should obtain the former client's informed written consent to the member's current representation.

# CONCLUSION

In reference to the facts presented, the Committee concludes that Lawyer B should not accept the representation of the defendants in Client's lawsuit without Client's informed written consent to the member's current representation,[17] if Lawyer B knows or through the exercise of reasonable diligence could learn about Lawyer A's prior representation of Client in connection with the lawsuit .[18]

This opinion is issued by the Standing Committee on Professional Responsibility and Conduct of the State Bar of California. It is advisory only. It is not binding upon the courts, the State Bar of California, its Board of Governors, any persons or tribunals charged with regulatory responsibilities, or any member of the State Bar.

---

[1] The rule has gone by various names in the case law. Some cases refer to it as the "imputed knowledge theory." (*Chadwick v. Superior Court, supra,* 106 Cal.App.3d at p. 116.) Other courts refer to it as the "vicarious disqualification rule." (*Henriksen v. Great American Savings & Loan* (1992) 11 Cal.App.4th 109, 114 [14 Cal.Rptr.2d 184]; *Chambers v. Superior Court, supra,* 121 Cal.App.3d at p. 898.) Still another Court has referred to it as the "presumption of shared knowledge." (*Elan Transdermal v. Cygnus Therapeutic Systems* (N.D. Cal. 1992) 809 F.Supp. 1383, 1392.) While courts have used different names, the import of the rule in these cases is the same - knowledge obtained by one lawyer is imputed to all the other attorneys in that lawyer's law firm.

[2] The "vicarious disqualification" or "imputed knowledge" rule put forth by the American Bar Association (hereinafter "ABA") has not been adopted as a **disciplinary** rule in this state. In 1975, in adopting the first complete redraft of the rules since 1927, which were in part modeled upon the ABA Model Code of Professional Responsibility, DR 5-105(D) was not included within the California rules. In 1989, in adopting the second complete redraft of the rules, rule 1.10(a) of the ABA Model Rules of Professional Conduct was not adopted as a disciplinary rule. In 1992, in revising the conflict of interest rules, when there was a third opportunity to adopt an imputed knowledge rule as a disciplinary rule, no such rule was adopted.

Therefore, while the courts have incorporated the imputed knowledge or vicarious disqualification rule for determining whether a law firm, law corporation, or government law office should be disqualified under common law, it is not a rule which can subject a lawyer to discipline.

[3] The ABA Model Code of Professional Responsibility has been superseded by the ABA Model Rules of Professional Conduct. Former ABA DR 5-105(D) is now embodied in Model Rule 1.10(a) which states that "[w]hile lawyers are associated in a firm, none of them shall knowingly represent a client when any one of them practicing alone would be prohibited from doing so" by certain rules including Model Rule 1.7 which states the conflicts of interest general rule in the Model Rules.

[4] The ABA Model Code of Professional Responsibility and ABA Model Rules of Professional Conduct may be considered as a collateral source, particularly in areas where there is no direct authority in California and there is no conflict with the public policy of California. (Cal. State Bar Formal Opn. No. 1983-71; see rule 1-100(A).)

[5] A wilful breach of the California Rules of Professional Conduct involves "a general willingness to commit the act or permit the omission." (*Edwards v. State Bar* (1990) 52 Cal.3d 28, 37 [276 Cal.Rptr. 153]; *Durbin v. State Bar* (1979) 23 Cal.3d 461, 467 [152 Cal.Rptr. 749].) It does not require any intent to violate the rule, injure the client or obtain any advantage. (*Durbin v. State Bar, supra,* 23 Cal.3d at p. 467.) The misconduct need not be taken in bad faith. (*McKnight v. State Bar* (1991) 53 Cal.3d 1025, 1034 [281 Cal.Rptr. 766].) However, for the reasons stated later in this opinion, in the context of rule 3-310(E), the Committee believes that a wilful violation requires, at a minimum, a member's knowledge or reasonable ability to discover the other facts necessary to give rise to a breach of the rule.

[6] In disqualification cases which do not include side-switching, courts apply the substantial relationship test which looks at the relationship between the prior representation of the former client and the subsequent representation adverse to that former client. Under the substantial relationship test, a trial court will presume that a lawyer has obtained confidential information material to the adverse engagement if the circumstances of the prior representation indicate that such information would have been imparted. (*H.F. Ahmanson & Co. v. Salomon Brothers, Inc.* (1991) 229 Cal.App.3d 1445, 1454 [280 Cal.Rptr. 614].) The substantial relationship test, which courts apply in disqualification motions under rule 3-310(E), exists, at least in part, to protect the former client by avoiding an inquiry into the substance of the very information which a former client is entitled to keep from being imparted to the lawyer's current client. (See *In re Complex Asbestos Litigation, supra,* 232 Cal.App.3d at p. 592; *Woods v. Superior Court* (1983) 149 Cal.App.3d 931, 934 [197 Cal.Rptr. 185].)

[7] In *In the Matter of Lane* (Review Dept. 1994) 2 Cal. State Bar Ct. Rptr. 735, 747, the State Bar Court Review Department suggested that the substantial relationship test was applicable under former 4-101, which was superseded by rule 3-310(E). The former rule required a former client's informed written consent when the new adverse employment was "relating to a matter in reference to which" the member obtained confidential information. The foregoing language was deleted from 3-310(E) to clarify that actual possession of material confidential information was required.

[8] As a result, the fact that a court orders the disqualification of a law firm does not in itself mean that the lawyers involved in the events giving rise to the disqualification are subject to discipline. First, the disqualification may be based on the application of a civil standard, such as the substantial relationship test, which is not a duty which would subject a member to discipline. Second, the finding of a trial court is not sufficient to establish a disciplinary offense. There must be clear and convincing evidence of a violation in a disciplinary proceeding. (Rule 213, Rules Proc. of State Bar.) However, a trial court does not require clear and convincing evidence to order disqualification. (*Higdon v. Superior Court* (1991) 227 Cal.App.3d 1667, 1671 [278 Cal.Rptr. 588].)

[9] Disqualification may lead to a defense to payment of legal fees in a subsequent fee arbitration or fee action (*Goldstein v. Lees* (1975) 46 Cal.App.3d 614 [120 Cal.Rptr. 253]), or constitute grounds for disgorgement of previously paid fees (*In re Fountain* (1972) 74 Cal.App.3d 715, 719 [141 Cal.Rptr. 654, 656-657]).

[10] Thus, while pursuant to rule 1-100(A) a lawyer may be "bound by" applicable law including opinions of California courts, failure to adhere to such opinions does not in itself subject a lawyer to discipline, except when those cases arise out of disciplinary proceedings.

[11] Rule 3-500 states that "[a] member shall keep a client reasonably informed about significant developments relating to the employment or representation, including promptly complying with reasonable requests for information and copies of significant documents when necessary to keep the client so informed."

[12] Business and Professions Code section 6068 (m) states that it is a lawyer's duty to "respond promptly to reasonable status inquiries of clients and to keep clients reasonably informed of significant developments in matters with regard to which the attorney has agreed to provide legal services."

[13] Business and Professions Code section 6068 (e) states that it is a lawyer's duty to "maintain inviolate the confidence, and at every peril to himself or herself to preserve the secrets, of his or her client."

[14] *Galbraith v. State Bar, supra,* 218 Cal. at p. 333; *Wutchumna Water Co. v. Bailey* (1932) 216 Cal. 564, 573-574; see also *David Welch Co. v. Erskine & Tully* (1988) 203 Cal.App.3d 884, 894 [250 Cal.Rptr. 339].

[15] This opinion assumes there has been no screening of Lawyer A. Therefore, the Committee does not address whether and in what circumstances a screening procedure may be implemented in lieu of obtaining a client's informed written consent. Screening, "cones of silence," and ethical walls are all terms which denote procedures that seek to distance a lawyer possessing a former client's material confidential information from other lawyers in the firm involved in the representation adverse to the former client. The Committee observes that California courts have declined to allow a private law firm to use screening to rebut the presumption created by the imputed knowledge rule when a lawyer in the firm was previously involved in the same or substantially related matter. (*Henriksen v. Superior Court* (1992) 11 Cal.App. 4th 109 [14 Cal.Rptr.2d 184]; *Rosenfeld Construction Co. v. Superior Court, supra,* 235 Cal.App.3d at p. 577; *Dill v. Superior Court* (1984) 158 Cal.App.3d 301 [205 Cal.Rptr. 671]; see also *Cho v Superior Court, supra,* 39 Cal.App.4th at pp. 125-126, but see Cal. State Bar Formal Opn. No. 1993-128 (referring to the use of screening of a former government lawyer in a private law firm).)

[16] What constitutes an exercise of reasonable diligence depends on the circumstances. At a minimum, there should be a reasonable system to identify whether an opposing party is a present or former client and the member's use of that system to ascertain whether another lawyer in the member's law firm acquired material confidential information related to the representation of the present or former client.

[17] This opinion addresses the situation in which a member who has not personally obtained a former client's material confidential information is currently employed in a law firm in which other lawyers have acquired such information. In this opinion the Committee does not decide whether the same conclusion applies when the lawyers possessing the former client's material confidential information are no longer employed in the law firm at the time the member accepts the adverse representation. The Committee also does not decide whether the same rule or a different result obtains if, at the time the member accepts the adverse representation, the member is no longer employed in the law Firm.

[18] This opinion does not address Lawyer B's duties in the event Lawyer A's prior representation of Client and receipt of material confidential information is discovered after Lawyer B accepts the representation of the defendants in Client's lawsuit.

ETHICS OPINIONS