John B. Sganga (State Bar No. 116,211)
Frederick S. Berretta (State Bar No. 144,757)
Joshua J. Stowell (State Bar No. 246,916)
KNOBBE, MARTENS, OLSON & BEAR, LLP
550 West C Street
Suite 1200
San Diego, CA 92101
(619) 235-8550
(619) 235-0176 (FAX)

Vicki S. Veenker (State Bar No. 158,669)
Adam P. Noah (State Bar No. 198,669)
SHEARMAN & STERLING LLP
1080 Marsh Road
Menlo Park, CA 94025
(650) 838-3600
(650) 838-3699 (FAX)

Attorneys for Plaintiffs
THE LARYNGEAL MASK COMPANY LTD.
and LMA NORTH AMERICA, INC.

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE SOUTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| THE LARYNGEAL MASK COMPANY LTD. and LMA NORTH AMERICA, INC., <br><br> Plaintiffs, <br><br> v. <br><br> AMBU A/S, AMBU INC., AMBU LTD., and AMBU SDN. BHD., <br><br> Defendants. | Civil Action No. 07 CV 1988 DMS (NLS) <br><br> **SUPPLEMENTAL DECLARATION OF STEPHEN MARZEN (REDACTED VERSION OF *IN CAMERA* SUBMISSION)** <br><br> Date: January 11, 2008 <br> Time: 1:30 pm <br> Courtroom 10, 2nd Floor <br><br> **Hon. Judge Dana M. Sabraw** |
| AMBU, INC., <br><br> Counterclaimant, <br><br> v. <br><br> THE LARYNGEAL MASK COMPANY LTD. and LMA NORTH AMERICA, INC., <br><br> Counter-Defendant | |

I, Stephen Marzen, declare and state as follows:

1. I am a director of LMA International N.V. ("LMA") and a partner in the law firm of Shearman & Sterling LLP ("Shearman"). On December 6, 2007, I submitted a declaration in support of Plaintiffs' Motion to Disqualify Finnegan Henderson Farabow Garrett & Dunner, LLP ("Finnegan") from representing Defendants in this action ("Marzen Decl."). I have since read the Memorandum of Points and Authorities in Opposition to Plaintiffs' Motion ("Opp.") and the December 28, 2006 declarations of Finnegan lawyers J. Michael Jakes ("Jakes Decl.") and John Williamson ("Williamson Decl."). I submit this Supplemental Declaration in support of Plaintiffs' Motion to Disqualify Finnegan from Representing Defendants. The following statements are based on my personal knowledge unless otherwise indicated.

2. The Finnegan lawyers agree that they met with me and Wendy Ackerman the day before Thanksgiving, Wednesday, November 22, 2006. *See* Jakes Decl. ¶ 4; Williamson Decl. ¶ 2. They also agree that we discussed "various district courts, transfer motions, preliminary injunctions, etc." (e-mail message from Jakes to Bryan Diner (Jan. 3, 2007), Exhibit A to Jakes Decl.); "various patent litigation venues," including "differences in caseloads, inclination to award injunctive relief, litigation timelines and likelihood of transfer" (Jakes Decl. ¶ 7; *see* Williamson Decl. ¶ 4); and perhaps "patent claims, prior art, claim construction, and infringement" (Jakes Decl. ¶ 10; Williamson Decl. ¶ 5). The Finnegan lawyers insist, however, that the meeting lasted only "about forty minutes" (Williamson Decl. ¶ 3) or "about an hour" (Jakes Decl. ¶ 4) and that the discussion of the venues, claims, and remedies was "general" (Jakes Decl. ¶ 6; Williamson Decl. ¶ 4), "similar to those [Mr. Jakes has] delivered at public speaking engagements for other lawyers or industry gatherings" (Jakes Decl. ¶ 6).

3. Contrary to the Finnegan lawyers' characterization, our meeting was not a public CLE session, but rather a private consultation between a potential client and outside litigation counsel about a specific planned patent-infringement lawsuit against particular medical devices and defendants. Contemporaneous documents prove that the meeting did not last "forty minutes" or "an hour" but an hour and forty-five minutes. During that extended meeting, I

-1-

Supp. S. Marzen Decl.
Case No. 07-1988 DMS (NLS)

disclosed LMA's theory of the case, litigation objective, material facts, and other confidences and secrets and received the Finnegan lawyers' advice (among other advice) that ▮▮▮▮▮ sued Ambu A/S and its subsidiaries ("Ambu") ▮▮▮▮▮ That advice is reflected in my privileged and confidential e-mail message to LMA's Chairman of the Board, Robert Gaines-Cooper, through his assistant, Ms. Gillian Crump, and LMA's Executive Deputy Chairman, John Lim on December 4, 2006, in the paragraph on page 2 under "Finnegan Henderson." A true and correct copy of that message is submitted for review *in camera* as Exhibit I.[1] That advice was part of the basis for my recommendation that LMA retain Finnegan rather than ▮▮▮▮▮ the other firm that Wendy Ackerman and I consulted with regarding the planned lawsuit. *See id.*

    4.    Before describing the specific privileged information disclosed to the Finnegan lawyers and the legal advice that they gave, it is important to correct the impression in Finnegan's opposition memorandum and the declarations of Finnegan's lawyers that the meeting was a brief "meet and greet" session to give fellow members of the bar "a general overview of patent litigation." Jakes Decl. ¶¶ 5, 6.

    5.    *First*, the contemporaneous diaries and expense receipts demonstrate that the meeting lasted an hour and 45 minutes. My taxi receipt shows that Ms. Ackerman and I picked up the taxi from Shearman's offices at 10:20 a.m. (Finnegan's offices are only six city (short) blocks away from Shearman's offices.) True and correct copies of my taxi receipts for the November 22, 2006 meeting are attached as Exhibit J. My diary agrees with Mr. Jakes's diary

---

[1] Since this declaration reveals privileged information, I respectfully request permission to submit the complete unredacted declaration to Chambers for the Court's review *in camera*. The privileged information is marked in brackets and is omitted in the redacted version of this Supplemental Declaration filed on the public docket and served on Finnegan's and Ambu's counsel. In addition, since the privileged information cannot be revealed in Plaintiffs' Reply, I discuss its significance in this declaration.

The last exhibit to used by Plaintiffs was Exhibit H. To avoid duplicate exhibit letters, exhibits to this Supplemental Declaration begin with Exhibit I.

-2-

Supp. S. Marzen Decl.
Case No. 07-1988 DMS (NLS)

(Jakes Decl. ¶ 4) that the meeting was scheduled to start at 10:30 a.m. A true and correct copy of the monthly view of my archived Outlook calendar is attached as Exhibit K. My taxi receipt for the return trip shows that Ms. Ackerman and I left Finnegan's offices at 12:15 p.m. From 10:30 a.m. to 12:15 p.m. is an hour and 45 minutes. That duration is consistent with Ms. Ackerman's declaration and my initial declaration. *See* Declaration of Wendy Ackerman (Dec. 6, 2006) ¶ 6 ("a little under two hours"); Marzen Decl. ¶ 6 ("approximately two hours"). It is also consistent with our respective time diaries, in which Ms. Ackerman billed 2.0 hours and I billed 1.9 hours. *See* the invoice at pages 2 and 4, a true and correct copy of which is submitted for *in camera* review as Exhibit L. A meeting of an hour and 45 minutes is also consistent with Mr. Jakes' time diary, which records "two hours of time on potential client development for LMA," including preparation time for the meeting. Jakes Decl. ¶ 4. These contemporaneous diaries and expense receipts are inconsistent with the recollection of the Finnegan lawyers that "[t]he meeting lasted about forty minutes" (Williamson Decl. ¶ 3); that "[t]he meeting lasted about an hour" (Jakes Decl. ¶ 4); and that "the meeting ended before noon" (*id.*).

6. *Second*, the meeting was conducted in private with only the client representatives and Finnegan lawyers present, and was not simply a meeting among fellow bar members. I informed the Finnegan lawyers at the start of the meeting that I am a director of LMA and that I would recommend either Finnegan or ▅▅▅▅▅▅▅▅▅▅ based on the consultations with each firm. *See* Marzen Decl. ¶ 7. The Finnegan lawyers do not dispute that fact, but neither do they mention it in their declarations.

7. *Third*, Finnegan's opposition memorandum states that Ms. Ackerman and I "brought only a sample product and a copy of the notice of allowance and the allowed patent application" Opp. at 4:9-10. That is incorrect. In addition to the Notice of Allowance attached as Exhibit A to my declaration of December 6, 2006, I also had with me the Examiner's Amendment, a true and correct copy of which is attached as Exhibit M; a collection of prior art, a true and correct copy of which is submitted *in camera* as Exhibit N; the notes that I had earlier prepared for my discussion with my fellow directors at the LMA board meeting on October 31,

-3-

Supp. S. Marzen Decl.
Case No. 07-1988 DMS (NLS)

1    2006, true and correct copies of which are submitted for *in camera* review as Exhibit O , and

2    which I brought with me as a partial agenda for our discussion; and three airway devices: (a) a

3    single-use (disposable) LMA Unique; (b) an Ambu AuraOnce single-use device of the kind

4    currently sold by Ambu in the United States; and (c) an Ambu AuraOnce single-use device of

5    the kind announced by Ambu the day it lost a patent-infringement suit by LMA in Germany and

6    launched shortly thereafter. The last device had been modified from its commercial form by

7    ████████████████████████████████████████████████████████████████████████████

8    ████████████████████████████████████████████

9        8.    *Fourth*, Finnegan's opposition memorandum and the declarations of the

10    Finnegan lawyers attach significance to the fact that we met in Washington, D.C. In addition,

11    both Finnegan lawyers emphasize that they practice in Finnegan's Washington, D.C. office. *See*

12    Jakes Decl. ¶ 1; Williamson Decl. ¶ 1. The fact that Ms. Ackerman and I met the Finnegan

13    lawyers in Washington, DC was fortuitous. We met the ████████████████████████████

14    ████████████ and could easily have met Mr. Jakes ████████████████████████████

15    since he is ████████████████████████ and ████████████████████████████████

16    ████████████████████████████████████████████████████████████ as reflected

17    in my privileged and confidential e-mail message to the Chairman and Deputy Chairman on

18    December 4, 2006, submitted for *in camera* review as Exhibit I.[2]

19        9.    Thus, at 10:30 a.m. on Wednesday, November 22, 2006, Ms. Ackerman and I sat

20    down with Mike Jakes, a ████████████████████████████████████████████████

21    ████████████████████████████████████████████████████████████████ and his

22    associate, John Williamson, to discuss a potential lawsuit by █████ LMA subsidiaries under the

23    patent that ultimately issued as United States Patent No. 7,156,100 (the "Brain '100 patent")

24    against the AuraOnce devices and three Ambu entities that the █████ LMA subsidiaries

---

[2] Unlike the District of Columbia, ████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████████

-4-

Supp. S. Marzen Decl.
Case No. 07-1988 DMS (NLS)

1   expected at that time ███████████████████████████████████
2   ██████. The balance of this supplemental declaration describes what I believe was the most
3   important privileged information disclosed to the Finnegan lawyers and the advice that they
4   gave LMA. I have a good recollection of what I told the Finnegan lawyers because I gave a
5   similar presentation to two ███████████ partners the week before, on Friday, November
6   17, 2006, and a less detailed presentation to the LMA directors at the board meeting on October
7   31, 2006, the notes for which I used at the meeting with the Finnegan lawyers.
8          10.    After Ms. Ackerman and I introduced ourselves and I explained my role at LMA
9   and the purpose of our visit, I described to the Finnegan lawyers the product that was the subject
10  of the planned patent-infringement litigation. I explained to the Finnegan lawyers that ███
11  ████████████████████████████████████████████████████████████
12  ████████████████████████████████████████████████████████████
13  ████████████████████████████████████████████████████████████
14  ████████████████████████████████████

15         11.    I told the Finnegan lawyers about Ambu's competing product. In particular, I
16  told them that ████████████████████████████████████████████████
17  ████████████████████████████████████████████████████████████
18  ████████████████████████████████████████████████████████████
19  ████████████████████████████████████████████████████████████
20  ███████████

21         12.    I stated that there was prior litigation history in Europe, in particular that ███
22  ████████████████████████████████████████████████████████████
23  ████████████████████████████████████████████████████████████
24  ████████████████████████████████████████████████████████████
25  ████████████████████████████████████████████████████████████
26  ████████████████████████████████████████████████████████████
27  ████████████████████████████████████████████████████████████
28

-6-

1
2
3
4   13.   By comparing the samples of the LMA Unique and the Ambu AuraOnce, I
5   showed the Finnegan lawyers
6
7
8   In addition, I told the Finnegan lawyers that
9   our UK patent attorney thought that
10
11
12
13   14.   I told the Finnegan lawyers that
14
15
16
17
18
19
20   15.   After showing the Finnegan lawyers
21
22
23
24   . A
25   true and correct copy of the Examiner's Amendment is attached as Exhibit M. I told the
26   Finnegan lawyers that LMA's UK patent attorney believed that
27

1
2
3

4   16.   In addition to the patent-infringement claim against Ambu, I told the Finnegan
5   lawyers that LMA and Ambu had exchanged correspondence about alleged unfair competition
6   about a year before, in November and December of 2005. Based on that correspondence, I
7   suggested to the Finnegan lawyers that our theory of the case might be that
8
9

10   17.   After explaining to the Finnegan lawyers LMA's claims, Ambu's defenses, and
11   the possible unfair-competition claim
12
13
14
15
16
17
18
19
20

21   18.   Mr. Jakes asked us about LMA's corporation structure. Either Ms. Ackerman or I
22   described the
23
24
25   Based on those facts, Mr. Jakes advised us that
26   That advice is reflected in my privileged and
27   confidential e-mail message to LMA's Chairman and Executive Deputy Chairman on December
28

1  4, 2006, in the paragraph on page 2 under "Finnegan Henderson," a true and correct copy of
2  which is submitted for review *in camera* as Exhibit I. █████████████████████████████
3  █████████████████████████████████████████████████████████████████████████████████
4  █████████████████████████████████████████████████████████████████████████████████
5  █████████████████████████████████████████████████████████████████████████████████
6  █████████████████████████████████

7       19.    Given Finnegan's advice that ████████████████████████████████████████
8  we discussed the ██████ other venues listed in the notes submitted for *in camera* review as
9  Exhibit O – namely, ███████████████████████████████████████████████████████████████
10 ██████████████████ Mr. Jakes ████████████████████████████████████████████████████
11 █████████████████████████████████████████. He seemed comfortable with either
12 █████████████████████████████████████████████████████████ I remember in particular
13 Mr. Jakes describing his experience in the ██████████████████████████.

14       20.    In addition to discussing the ██████ of the █████████ judicial districts, we also
15 discussed with the Finnegan lawyers ████████████████████████████████████████████████
16 █████████████████████████████████████████████████████████████████████████████████
17 █████████████████████████████████████████████ Based on notes that I had
18 with me from the LMA board meeting, a true and correct copy of which are submitted for *in*
19 *camera* review as Exhibit O, I ████████████████████████████████████████████████████
20 ████████████████████████████████████████ The Finnegan lawyers confirmed ██████
21 █████████████████████████████████████████████████████████████████████████████████
22 █████████████████████████████████████████████████████████████████████████████████
23 ████████████████████████████████████████.

24       21.    In connection with potential damages, the subject of ████████ arose. I told the
25 Finnegan lawyers that I doubted that █████████████████████████████████████████████
26 █████████████████████████████████████████████████████████████████████████████████
27 █████████████████████████ Given that ████████████████████████ we discussed
28

1   ██████████████████████████████████████████████████████████████ Mr. Jakes
2   described his experience. He added that if ██████████████████████████████
3   ██████████████████████████████████. Mr. Ivey has appeared *pro hac vice* as lead trial
4   counsel for Ambu.

5       22.    Considering LMA's concern about ████████████ Mr. Jakes advised that LMA
6   consider ████████████████████████████████████████████████████████████████
7   ████████████████████████████████████████████████████████████████████████
8   ████████████████████████████████████████████████████████████████████████
9   ████████████████████████████████████████████████████████████████████████
10  ████████████ Based on this advice, we considered the possibility of ████████
11  ████████████████████████████████████ and we looked into the matter further. *See*
12  Exhibit L (submitted *in camera*), at 2, 4.

13      23.    I could provide additional details about privileged information disclosed by LMA
14  and legal advice provided by the Finnegan lawyers. For example, I remember discussing the
15  Ambu entities that would likely be defendants ██████████████████████████████
16  ████████████████████████████████████████████████████████████████████████
17  ████████████████████████████████████████████████████████████████████████
18  ████████████ But the strategically most important privileged information and legal advice
19  is described in the preceding paragraphs.

20      24.    Before Ms. Ackerman and I left Finnegan's offices, I told the Finnegan lawyers
21  that it might take some time before I could get back to them because of the upcoming holidays.
22  *See* Marzen Decl. ¶ 12. Furthermore, the Finnegan lawyers knew that LMA had only a Notice of
23  Allowance and not a patent. As a result, Finnegan could not have filed a patent-infringement
24  complaint even if LMA had retained Finnegan at the end of the meeting. The Brain '100 patent
25  did not issue until January 2, 2007.

26      25.    When I called to retain Mr. Jakes and Finnegan in January 2007, Mr. Jakes did
27  not tell me that I had taken too long to get back to him, or that, as he now states in his

-9-

Supp. S. Marzen Decl.
Case No. 07-1988 DMS (NLS)

1  declaration, he had assumed right after our meeting that LMA would not move forward with
2  Finnegan as its litigation counsel. Instead, his voice-mail message states in full as follows:

> Hi Steve. This is Mike Jakes at Finnegan Henderson. Sorry it's taken a little bit to get back to you. Unfortunately, since I talked to you back in November, we've had something come up and, it's one of those things with a large firm, we've got a conflict that's gonna keep us from doing any work for LMA. I'm sorry about that. I've been checking on that and there's, that's just currently the situation. But anyway I'd like a chance to talk to you about it. My number is 202-408-4045.

26.   I called Mr. Jakes and sent two e-mail messages to him in order to talk to him. A true and correct copy of the e-mail thread is attached as Exhibit P.

27.   Mr. Jakes and I ultimately spoke on January 24, 2007. Mr. Jakes repeated that Finnegan had been retained in the interim and had a conflict. I offered to investigate the possibility of obtaining waivers, but Mr. Jakes said that he was told the conflict was not waivable. I said that I hoped Finnegan was not working for Ambu, but Mr. Jakes refused to tell me. He then suggested another lawyer. A true and correct copy of my notes of that telephone conversation are attached as Exhibit Q.

28.   With respect to Finnegan's ethical screen, the e-mail messages attached to Mr. Jakes' declaration reveal that confidential and strategically important information was transferred to Finnegan's Ambu team before the ethical screen was erected. On January 3, 2007, the day after the Brain '100 patent issued, Bryan Diner sent out an email for an "Urgent Conflict Check" regarding representing Ambu in "a potential litigation" involving the the Brain '100 patent. Exhibit A to Jakes Decl. Later that same day, Mr. Jakes wrote to Bryan Diner and disclosed that he and Mr. Williamson met with us "about representing LMA in litigation against Ambu," and further disclosed that he discussed "transfer motions" and "preliminary injunctions" with LMA. Exhibit A to Jakes Decl. Bryan Diner is the Finnegan partner identified as "representing Ambu A/S" in Finnegan's ethical-wall memorandum. Exhibit B to Jakes Decl. At the time we met the Finnegan lawyers, through the time that we attempted to retain Finnegan in early January 2007, LMA had not communicated to Ambu that a lawsuit was being planned on a patent that had yet to issue. Thus, the specifics communicated from Mr. Jakes to Mr. Diner

-10-

Supp. S. Marzen Decl.
Case No. 07-1988 DMS (NLS)

1  revealed not only the confidential information that a lawsuit was being planned by LMA, but
2  further revealed strategy that LMA was considering to employ in that suit. Thus, Ambu obtained
3  a benefit not only in terms of its team of Finnegan lawyers having additional time to prepare its
4  defense of this case, but also because its team was aware of the level of detail at which LMA
5  was preparing for the case itself. [redacted]

15      29.    The fact that Mr. Jakes had other conversations with Finnegan lawyers (*see* Jakes
16  Decl., ¶ 11) gives me no confidence that Finnegan's ethical wall will protect LMA from further
17  prejudice. Among other things, the fact that [redacted]
20  [redacted] My concern is reinforced by the
21  fact that Ambu's lead trial lawyer recently contacted Mr. Williamson about joining the Ambu
22  litigation team, and only "remember[ed]" that Mr. Williamson is on the LMA side of the ethical
23  wall after Mr. Williamson reminded him of that fact. Exhibit A to Williamson Decl.

-11-

Supp. S. Marzen Decl.
Case No. 07-1988 DMS (NLS)

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on January 4, 2008 in Washington, D.C.

*/s/ Stephen Marzen*
Stephen Marzen

-12-

Supp. S. Marzen Decl.
Case No. 07-1988 DMS (NLS)

**CERTIFICATE OF SERVICE**

I hereby certify that on January 4, 2008, I caused the foregoing **SUPPLEMENTAL DECLARATION OF STEPHEN MARZEN (REDACTED VERSION OF *IN CAMERA* SUBMISSION)** to be electronically filed with the Clerk of the Court using the CM/ECF system which will send electronic notification of such filing to the applicable registered filing users.

| | |
|---|---|
| John L'Estrange, Jr.<br>j.lestrange@wllawsd.com<br>WRIGHT & L'ESTRANGE | Sean M. SeLegue<br>sselegue@howardrice.com<br>Robert D. Hallman<br>rhallman@howardrice.com<br>HOWARD, RICE, NEOROVSKI,<br>CANADY, FALK & RABIN |
| Bryan C. Diner<br>bryan.diner@finnegan.com<br>FINNEGAN, HENDERSON, FARABOW,<br>GARRETT & DUNNER LLP | |

I declare that I am employed in the office of a member of the bar of this Court at whose direction the service was made.

Dated: January 4, 2008

_____
Megan Pacin

4706857
010308

-13-