John B. Sganga (State Bar No. 116,211)
Frederick S. Berretta (State Bar No. 144,757)
Joshua J. Stowell (State Bar No. 246,916)
KNOBBE, MARTENS, OLSON & BEAR, LLP
550 West C Street
Suite 1200
San Diego, CA 92101
(619) 235-8550
(619) 235-0176 (FAX)

Vicki S. Veenker (State Bar No. 158,669)
Adam P. Noah (State Bar No. 198,669)
SHEARMAN & STERLING LLP
1080 Marsh Road
Menlo Park, CA 94025
(650) 838-3600
(650) 838-3699 (FAX)

Attorneys for Plaintiffs
THE LARYNGEAL MASK COMPANY LTD.
and LMA NORTH AMERICA, INC.

IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| THE LARYNGEAL MASK COMPANY LTD. and LMA NORTH AMERICA, INC., <br><br> Plaintiffs, <br><br> v. <br><br> AMBU A/S, AMBU INC., AMBU LTD., and AMBU SDN. BHD., <br><br> Defendants. | Civil Action No. 07 CV 1988 DMS (NLS) <br><br> **PLAINTIFFS' REPLY TO OBJECTIONS TO THE DECLARATION OF ELLEN PECK IN SUPPORT OF MOTION TO DISQUALIFY FINNEGAN HENDERSON FARABOW GARRETT & DUNNER, LLP** <br><br> Date: January 11, 2008 <br> Time: 1:30 pm <br> Courtroom 10, 2nd Floor <br><br> Honorable Dana M. Sabraw |
| AMBU, INC., <br><br> Counterclaimant, <br><br> v. <br><br> THE LARYNGEAL MASK COMPANY LTD. and LMA NORTH AMERICA, INC., <br><br> Counter-Defendant | |

Plaintiffs The Laryngeal Mask Company, Ltd. and LMA North America, Inc. (collectively "LMA") hereby Reply to the Objections of Defendant Ambu Inc. ("Ambu") to the Declaration of Ellen Peck in Support of Plaintiffs' Motion to Disqualify Finnegan Henderson Farabow Garrett & Dunner, LLP.

## I. INTRODUCTION

Finnegan's objections to the Declaration of Ellen Peck are misplaced. There is no jury on this disqualification motion. The Court will make whatever factual determinations are necessary and decide the motion as a matter of law. Thus, there is no danger of prejudicing the fact-finder or usurping the Court's role as the ultimate arbiter of the law. The Court is free to consider the declaration and give it whatever weight the Court deems appropriate. Consistent with this approach, numerous other courts addressing legal ethics issues have allowed testimony from legal experts.

Most of Finnegan's objections only go to the weight to be accorded the Declaration of Ellen Peck, not its admissibility. Judge Peck considered all the facts available to her, including that LMA had not yet formally retained Finnegan, and presented a thorough and even-handed examination of the leading relevant authorities from the California Supreme and Appellate Courts. Finnegan merely objects because she did not discuss two non-controlling and readily distinguishable cases that do not follow California law.

Finnegan's final objection, that while a Judge of the State Bar Court Judge Peck did not decide any disqualification motions, also misses the point. In that role she did decide numerous cases under Rule 3-310 to determine if an attorney had violated the ethical rules of conduct. Thus, her experience as a Judge of the State Bar Court is directly relevant to this motion, as is the balance of her distinguished professional career providing professional services and teaching within the field of lawyers' professional responsibilities and ethics.

In sum, Judge Peck is eminently qualified to render her opinions on this disqualification motion, and in doing so she carefully and fairly considered the relevant facts and law. The Court in its discretion may consider her opinions if the Court believes they would be helpful, and accord her opinions whatever weight the Court deems appropriate.

-1-

Reply to Objs. to Ellen Peck Decl.
Case No. 07-1988 DMS (NLS)

## II. LEGAL ARGUMENT

**A. Judge Peck's Declaration Is Appropriate For Consideration By The Court, And Not A Usurpation Of Its Role In Controlling These Proceedings**

Under Federal Rule of Evidence 702, expert testimony is admissible if it provides specialized knowledge that will assist the trier of fact to understand the evidence. Fed. R. Evid. Rule 702. LMA respectfully submits that the Declaration of Ellen Peck does provide such specialized knowledge (i.e., California state law regarding the ethical obligations of lawyers) that may be helpful to the Court. Expert testimony is not inadmissible merely because it embraces an ultimate issue to be decided by the trier of fact. Fed. R. Evid. Rule 704(a).

Accordingly, other courts have allowed and considered expert testimony on questions of legal ethics. *See, e.g., Beilowitz v. General Motors Corp.*, 226 F. Supp. 2d 565, 569-570 & 569 n.2 (D.N.J. 1998) (expert legal opinion from law professor on sufficiency of consent to eliminate conflict of interest); *Apple Corps Ltd. V. International Collectors Soc'y*, 15 F. Supp. 2d 456, 475 (D.N.J. 1998) (expert legal testimony on rules of professional conduct); *Georgine v. Amchem Products, Inc.*, 157 F.R.D. 246, 297-99 (E.D. Pa. 1994) (expert legal testimony from several law professors on conflicts of interest and other ethics issues in settlement of class-action litigation), *rev'd on other grounds*, 83 F.3d 610 (3rd Cir. 1996), *aff'd sub nom. Amchem Products, Inc. v. Windsor*, 521 U.S. 591 (1997); *In re TCW/Camil Holding L.L.C.*, 330 B.R. 117, 129 (D. Del. 2005) (expert legal testimony on standard of care for malpractice claim); *In re BCI Pancake House, Inc.*, 270 B.R. 15, 25-26 (Bankr. D. Del.2001) (expert legal testimony on professional responsibility).

LMA understands and acknowledges that the Court exercises board discretion on disqualification motions such as this. Judge Peck's expert opinion does not attempt to usurp the Court's discretion but merely seeks to assist in its understanding of California's standards of professional responsibility. Unlike in the case of a jury trial, there is no danger of prejudicing the fact-finder or usurping the Court's role on this motion. Judge Peck's opinions have a good faith basis in the law and facts, and her opinions state what she believes under

-2-

penalty of perjury to be true. There is thus no sound legal basis to strike the Declaration of Ellen Peck on this motion.

**B.     *Judge Peck's Declaration Provides A Thorough And Complete Analysis Of The California Law Governing This Motion To Disqualify***

Judge Peck thoroughly analyzed the leading California cases pertinent to the facts of this case, including *In re Marriage of Zimmerman*, 16 Cal.App.4th 556 (1993), and *Med-Trans Corp., Inc. v. City of California City*, 156 Cal.App.4th 655 (2007), mod. 11/19/2007, two cases ultimately finding that the initial consultation did not go far enough to create an attorney-client relationship on their specific facts. She distinguishes these cases, and determines that, under the leading California Supreme Court decision of *People ex rel. Dept. of Corporations v. SpeeDee Oil Change Systems, Inc.*, 20 Cal.4th 1135, 1146 (1999) ("*SpeeDee Oil*"), a fiduciary attorney-client relationship did arise in this case based on the meeting between LMA and Finnegan, and that Finnegan then breached those fiduciary obligations by switching sides to Ambu. E. Peck Decl., §§ 9, 10.

Based on these determinations, Judge Peck next determined that California law requires that the entire Finnegan firm be vicariously disqualified, again relying upon the leading California authorities on this issue, including *SpeeDee Oil*; *City and County of San Francisco v. Cobra Solutions, Inc.*, 38 Cal.4th 839, 847 (2006) ("*Cobra Solutions*"); *Henriksen Great American Savings & Loan*, 11 Cal.App.4th 109, 114 (1992) ("*Henriksen*"); *Dill v. Superior Court*, 158 Cal.App.3d 301, 304 (1984) ("*Dill*"); *Klein v. Superior Court*, 198 Cal.App.3d 894, 914 (1988) ("*Klein*"); and *Pound v. DeMera DeMera Cameron*, 135 Cal.App.4th 70, 74, 76 (2005) ("*Pound*"). She also cited recent district court cases pertinent to the analysis that correctly follow California law in requiring vicarious disqualification of the entire firm when a conflict of interest requires an attorney's disqualification from a matter, and in not permitting ethical walls or screens in such situations. *Hitachi, Ltd. v. Tatung Co.*, 419 F.Supp.2d 1158, 1161-1165 (N.D.Cal. 2006) and *Lucent Technologies Inc. v. Gateway, Inc.*, 2007 WL 1461406 (S.D. Cal. May 15, 2007). E. Peck Decl., §§ 11, 12.

///

-3-

Finnegan criticizes the Declaration of Ellen Peck for not discussing two district court decisions (one unreported); *Nichols Diagnostics, Inc. v. Scantibodies Clinical Lab, Inc.*, Civ. No. 02cv0046 B (LAB) (S.D. Cal. Mar. 21, 2002) ("*Nichols*"), *writ denied*, 37 Fed. Appx. 510, 2002 WL 1334522 (Fed. Cir. 2002), and *Friskit Inc. v. RealNetworks, Inc.*, No. C03-05085, 2007 WL 1994203 (N.D. Cal. July 5, 2007) ("*Friskit*"). As discussed in Plaintiffs' Reply Brief and further herein below, the district court *Nichols* and *Friskit* decisions are readily distinguishable because in both of those cases the firm sought to be disqualified could not take on the representation of the prospective litigation client without violating its duty of loyalty to the other client. In this case, Finnegan breached its duties of confidentiality and loyalty to LMA by switching sides and taking on Ambu, the undisputed second-comer.

Both *Nichols* and *Friskit* are based on an overbroad reading of *In re County of Los Angeles*, 223 F.3d 990 (9th Cir. 2000).[1] Most courts have read *County of Los Angeles* limited to the case of a former settlement judge entering private practice and inapplicable here *See, e.g., Lucent*, 2007 U.S. Dist. LEXIS at *24; *Hitachi, Ltd. v. Tatung Co.*, 419 F.Supp.2d 1158, 1163-64 (N.D. Cal. 2006); *I-Enterprise Co. LLC v. Draper Fisher Jurveston Mgmt. Co. V, LLC*, 2005 WL 757389, at *7 (N.D. Cal. Apr. 4, 2005); *Concat LP v. Unilever, PLC*, 350 F.Supp.2d 796, 821-22 (N.D. Cal. 2004). Thus, both *Nichols* and *Friskit* have dubious legal foundation and are not reflective of the governing California law on this motion.

Moreover, *Nichols* and *Friskit* are both readily distinguishable from the present case. In *Nichols*, the plaintiff (Nichols) was *already* a client of Brobeck (the firm sought to be disqualified). *Nichols* Slip. Op. at 3. Thus, Brobeck could not have taken on Scantibodies as a client without violating its duty of loyalty to Nichols. In *Friskit*, the Howrey firm promptly

---

[1] Finnegan's syllogism in support of its overbroad reading of *County of Los Angeles* is logically flawed. Opp. Brf. at 17-19. Finnegan first correctly notes that the court analyzed the former settlement judge's personal disqualification under the same rules that govern lawyers in private practice. *Id.*, 223 F.3d at 994 ("it makes sense to use the same standard to determine when a settlement judge will be disqualified in a related case"). Then, without citation, Finnegan leaps to the erroneous conclusion that the Ninth Circuit's limited holding allowing screening when a disqualified settlement judge leaves public service "applies fully to conflicts arising from private practice." Opp. Brf. at 19. There is simply no support in *County of Los Angeles* for such a broad reading of its very limited holding.

-4-

notified Friskit three days after the meeting that it had a conflict because an in-house attorney from RealNetworks (Stewart) was in the process of joining Howrey to work on the lawsuit. *Friskit*, 2007 WL 1994203 at *1. Stewart had apparently worked on the lawsuit "since its inception," and the court noted that Howrey's disqualification would prevent Stewart from continuing to work on the case and prejudice RealNetwork's ability to defend the action. *Id* at *2. Ambu would suffer no such prejudice here because this lawsuit is just beginning. Ambu can easily retain other competent patent counsel to defend this lawsuit without risk that the confidential information LMA shared with Finnegan will be used against it.

In sum, the *Nichols* and *Friskit* decisions are not on point and not controlling on this motion, and so Judge Peck need not have expressly addressed them in her declaration in order for the declaration to be admissible. In any event, to the extent that Finnegan's attack based on those cases has any merit, it simply goes to the weight of Judge Peck's opinions.

### C.   *In Reaching Her Opinions, Judge Peck Fairly Considered All The Available Facts*

Judge Peck also fairly considered all the facts available to her, including that LMA had not yet formally retained Finnegan. A significant portion of her Declaration explains that an attorney-client relationship can form based upon a consultation in which the attorney-client relationship does not go forward. *See* E. Peck Decl., § 9. Thus, the fact that the attorney-client relationship in this case was temporary and no formal retainer agreement was signed is irrelevant. Moreover, contrary to Finnegan's suggestion, Judge Peck's opinions are not improperly based on "hearsay." They are based on the first-hand testimony of two witnesses who were present at the meeting between LMA and Finnegan and supporting documents.

Even if considered "hearsay," this is the type of evidence "reasonably relied upon by experts" in Judge Peck's field, and thus properly may form the basis of her opinion under Rule 703, Fed. R. Evid. A legal ethics expert cannot be expected to accompany clients to their conferences with counsel, and thus by definition must rely upon after-the-fact accounts of the attorney-client communications. These after-the-fact accounts are particularly reliable here since there is no dispute about the occurrence of the key events on which Judge Peck

-5-

formed her opinions. LMA and Finnegan agree that a meeting took place in which LMA's planned lawsuit against Ambu regarding a patent application that was expected to mature shortly into a patent. Marzen Decl., ¶¶ 3-7; Jakes Decl., ¶¶ 4-5. Finnegan's own internal e-mails confirm that numerous litigation strategy issues, including venue choices and potential motion practice, were addressed at the meeting, consistent with the recollection of the LMA representatives. Jakes Decl., Ex A; Marzen Decl., ¶¶ 7-10.

In sum, this objection to the Declaration of Ellen Peck also has no merit, and in any event also goes to the weight of her opinions.

### D. *Judge Peck's Broad Experience In The Field Of California Ethical Rules And Related Judicial Decisions Is Directly Relevant To This Motion*

Finnegan also objects that Judge Peck did not decide any disqualification motions during her six years as a Judge of the State Bar Court. This objection is irrelevant, because while in that role she did decide over 1,200 cases, numerous of which would have been decided under Rule 3-310 of the California Rules of Professional Conduct in order to determine if an attorney had violated his or her ethical obligations under the rule. The fact that disqualification motions involve certain policies that are prophylactic in nature and not necessarily implicated in attorney disciplinary proceedings does not mean that Rule 3-310 is irrelevant to attorney disciplinary proceedings. *See* R. Hallman Decl., Ex. D (State Bar Formal Opinion No. 1998-152). Indeed, the basis of her opinion that Finnegan should be disqualified is that Finnegan attorneys Mike Jakes and John Williamson have a conflict of interest under Rule 3-310(E) of the California Rules of Professional Conduct. E. Peck Decl., §§ 9.14. Thus, her six years of experience as a Judge of the State Bar Court is directly relevant to this motion.

Finnegan also ignores the remaining 22 years of Judge Peck's distinguished professional career providing professional services and teaching within the field of lawyers' professional responsibilities and ethics, including her service on ethics committees of the State Bar of California and the American Bar Association, her service on the State Bar's Commission on Revision of the Rules of Professional Conduct, and her co-authorship of The

-6-

Rutter Group's *California Practice Guide to Professional Responsibility* (along with Paul Vapnek, Mark Tuft, and Justice Howard B. Weiner (Ret.) of the California Court of Appeal). E. Peck Decl., § 5.

In sum, this objection is meritless as Judge Peck is eminently qualified to render her opinions on this motion.

### *III. CONCLUSION*

For the foregoing reasons, the Court is respectfully requested to overrule the objections of Finnegan and, in its discretion, consider the Declaration of Ellen Peck in ruling on this disqualification motion.

Respectfully submitted,

KNOBBE, MARTENS, OLSON & BEAR, LLP

Dated: January 4, 2008

By: s/Frederick S. Berretta
John B. Sganga
Frederick S. Berretta

Attorneys for Plaintiffs
THE LARYNGEAL MASK COMPANY LTD.
and LMA NORTH AMERICA, INC.

-7-

Reply to Objs. to Ellen Peck Decl.
Case No. 07-1988 DMS (NLS)

# CERTIFICATE OF SERVICE

I hereby certify that on January 4, 2008, I caused the foregoing **PLAINTIFFS' REPLY TO OBJECTIONS TO THE DECLARATION OF ELLEN PECK IN SUPPORT OF MOTION TO DISQUALIFY FINNEGAN HENDERSON FARABOW GARRETT & DUNNER, LLP** to be electronically filed with the Clerk of the Court using the CM/ECF system which will send electronic notification of such filing to the applicable registered filing users.

John L'Estrange, Jr.
j.lestrange@wllawsd.com
WRIGHT & L'ESTRANGE

Bryan C. Diner
bryan.diner@finnegan.com
FINNEGAN, HENDERSON, FARABOW,
GARRETT & DUNNER LLP

Sean M. SeLegue
sselegue@howardrice.com
Robert D. Hallman
rhallman@howardrice.com
HOWARD, RICE, NEOROVSKI,
CANADY, FALK & RABIN

I declare that I am employed in the office of a member of the bar of this Court at whose direction the service was made.

Dated: January 4, 2008

Megan Ptacin

4703265

-8-

Reply to Objs. to Ellen Peck Decl.
Case No. 07-1988 DMS (NLS)