1  John B. Sganga (State Bar No. 116,211)
   Frederick S. Berretta (State Bar No. 144,757)
2  Joshua J. Stowell (State Bar No. 246,916)
   KNOBBE, MARTENS, OLSON & BEAR, LLP
3  550 West C Street
   Suite 1200
4  San Diego, CA  92101
   (619) 235-8550
5  (619) 235-0176 (FAX)

6  Vicki S. Veenker (State Bar No. 158,669)
   Adam P. Noah (State Bar No. 198,669)
7  SHEARMAN & STERLING LLP
   1080 Marsh Road
8  Menlo Park, CA  94025
   (650) 838-3600
9  (650) 838-3699 (FAX)

10 Attorneys for Plaintiffs
   THE LARYNGEAL MASK COMPANY LTD.
11 and LMA NORTH AMERICA, INC.

### IN THE UNITED STATES DISTRICT COURT

### FOR THE SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| THE LARYNGEAL MASK COMPANY LTD. and LMA NORTH AMERICA, INC.,<br><br>Plaintiffs,<br><br>v.<br><br>AMBU A/S, AMBU INC., AMBU LTD., and AMBU SDN. BHD.,<br><br>Defendants. | Civil Action No. 07 CV 1988 DMS (NLS)<br><br>**PLAINTIFFS' CONSOLIDATED REPLY TO OBJECTIONS TO THE SUPPLEMENTAL DECLARATION OF STEPHEN MARZEN; AND OPPOSITION TO DEFENDANTS'** ***EX PARTE*** **APPLICATION FOR LEAVE TO RESPOND TO PLAINTIFFS' REPLY ON MOTION TO DISQUALIFY FINNEGAN HENDERSON FARABOW GARRETT & DUNNER, LLP** |
| AMBU, INC.,<br><br>Counterclaimant,<br><br>v.<br><br>THE LARYNGEAL MASK COMPANY LTD. and LMA NORTH AMERICA, INC.,<br><br>Counter-Defendant | Date: Taken Under Submission<br>Time: n/a<br>Courtroom 10, 2nd Floor<br><br>Honorable Dana M. Sabraw |

## I. INTRODUCTION

LMA submitted the Supplemental Declaration of Stephen Marzen to establish without question that the Finnegan lawyers received material confidential information from LMA and rendered legal advice to LMA concerning this lawsuit. Finnegan now objects to the very *in camera* submission it invited by denying the truth of what happened at the November 2006 meeting. Finnegan also seeks *ex parte* leave to respond to the Supplemental Declaration. Neither the objections nor the *ex parte* request have merit.

Finnegan mischaracterizes the Supplemental Declaration as containing new and unexpected facts on reply. To the contrary, the Supplemental Declaration, submitted *in camera* because it includes LMA's privileged information, merely expands on the facts generally set forth in Mr. Marzen's original declaration and replies to matters raised by the declarations of Finnegan's lawyers in opposition. Moreover, in its Opposition Brief, Finnegan did not respond or object to LMA's Opening Brief offer and authorities (at 6 & n. 2) to provide such specific information for *in camera* review by the Court.

No due process issues are raised by Finnegan's objections. *In camera* submission has been specifically approved by California and federal courts in these circumstances to permit a court's review of privileged information while protecting the interests of the former client. Furthermore (except for a distinguishable Rhode Island state court decision), none of the cases cited by Finnegan permit the *in camera* submission to be made available to the lawyers sought to be disqualified or their attorneys. Finnegan cites no case controlling here that even suggests such a proposition. Accordingly, whether the Supplemental Declaration was submitted earlier would not have made any difference.

Nor is it necessary for Finnegan to further respond to the Supplemental Declaration or file a sur-reply to LMA's Reply. Finnegan has already staked out its position; that the meeting was merely a short "meet and greet," that it received no confidential information and rendered no legal advice, and that it was surprised to hear back from LMA. Given that the contemporaneous evidence does not support Finnegan's position, and that Finnegan's own declarations reveal further breaches of its ethical obligations (Jakes Decl., Ex. A), it is not surprising that Finnegan
- 1 -
Reply to Objs. to Supp. Marzen Decl. and Opp. to Ex. Parte App.
Case No. 07-1988 DMS (NLS)

seeks another chance to re-tell its story. Nothing the Finnegan lawyers can say, however, will change the facts that Messrs. Jakes and Williamson are disqualified for an egregious conflict of interest, and that they carelessly violated their obligations to LMA before Finnegan's ethical screen was even erected.

Accordingly, Finnegan's Objections to the Supplemental Declaration of Stephen Marzen should be overruled, its *Ex Parte* Application for Leave to File a Response to the Supplemental Declaration should be denied, and the entire Finnegan firm should be disqualified as a matter of law.

## II. LEGAL ARGUMENT

### A. LMA's In Camera Submission Of Privileged Information Was Entirely Appropriate And Need Not Be Disclosed To Any Finnegan Lawyers Or Their Attorneys

*In camera* submissions of privileged information enable a court to review such information without violating the very privilege sought to be protected, and are routinely used in connection with disqualification motions. *See, e.g., Faughn v. Perez*, 145 Cal.App. 4th 592, 602 (2006) ("One method of presenting evidence [to support a motion to disqualify] and protecting its confidential nature is to file the documents with the court under seal for in camera review."), citing *Morrison Knudsen Corp. v. Hancock, Rothert & Bunshoft*, 69 Cal.App. 4th 223, 236 (1999).

District courts likewise routinely use *in camera* submissions in connection with disqualification motions:

> The plaintiff should be permitted to present evidence *ex parte in camera* if it seeks to bolster its claim by showing that confidences were in fact conveyed to the former attorney. . . . *Ex parte* consideration of such an affirmative showing is a procedure that flows naturally from the need to avoid making disclosure of confidential information the price of disqualifying a former attorney.

*Decora Inc. v. DW Wallcovering*, 901 F.Supp. 161, 163 (S.D.N.Y. 1995); *United States v. DeCay*, 406 F. Supp. 2d 679, 686 (E.D. La. 2005) (reviewing office files, testimony, and notes *in camera* on disqualification motion). *Decora* was previously cited by LMA in its Reply (at 4) but ignored by Finnegan.

Moreover, courts do not require such *in camera* submissions to be disclosed to the attorneys sought to be disqualified or their counsel. *Rogers v. Pittston Co.*, 800 F.Supp. 350, 355

(W.D.Va. 1992) (permitting *in camera* submission on motion to disqualify and rejecting complaint from attorney to be disqualified that he could not adequately respond – "Pittston is not required to reveal the document so that Johnson may dispute it."), *aff'd*, 996 F.2d 1212 (4th Cir. 1993); *Ultradent Products, Inc. v. Dentsply Int'l., Inc.*, 344 F.Supp.2d 1306, 1309 (D.Utah 2004) (on motion to disqualify the court requested an *in camera* declaration concerning the confidential information disclosed and noted that "Ultradent is not required to reveal the substance of the communications to [the attorney to be disqualified], for this would defeat the purpose of the disqualification.")  Thus, there is no due process concern and no support for the proposition that LMA must reveal its privileged information to any Finnegan lawyers or their attorneys on this motion.

Finnegan quotes a snippet from *Westinghouse Elec. Corp. v. Gulf Oil Corp.*, 588 F.2d 221, 224 n. 3 (7th Cir. 1978), for the proposition that reliance on *in camera* submissions may be "questionable," but this is taken completely out of context. In *Westinghouse* the court was explaining that, in order to establish a "substantial relationship" between two representations for purposes of a motion to disqualify, a court should *avoid* inquiring into the actual confidences disclosed because it forces the former client to disclose privileged information.

> To compel the client to show, in addition to establishing that the subject of the present adverse representation is related to the former, the actual confidential matters previously entrusted to the attorney and their possible value to the present client would tear aside the protective cloak drawn about the lawyer-client relationship. For the Court to probe further and sift the confidences in fact revealed would require the disclosure of the very matters intended to be protected by the rule.

*Id.* (quoting *T. C. Theatre Corp. v. Warner Bros. Pictures, Inc.*, 113 F.Supp. 265, 269 (S.D.N.Y.1953)).

However, as Finnegan notes, under *Med-Trans* a party bringing a disqualification motion in the circumstances of this case is required to show, "directly or by reasonable inference," the confidences in fact revealed to the attorneys sought to be disqualified. *Med-Trans Corp. v. City of California City*, 156 Cal.App. 4th 655, 667 (2007). *Med-Trans* declines to set forth any new procedures for making that showing without waiving the very privilege sought to be protected. Presumably this is because *in camera* submission of the privileged information is already a widely

recognized and legally accepted approach to that dilemma. *See, e.g., Faughn*, 145 Cal.App. 4th at 602; *Decora*, 901 F.Supp. at 163; *Rogers*, 800 F.Supp. at 355; *Ultradent*, 344 F.Supp.2d at 1309.

The other cases Finnegan cites also do not support the notion that the attorneys sought to be disqualified or their counsel must be permitted to see and dispute the former client's *in camera* submission. In *SWS Financial Fund A v. Salomon Bros. Inc.*, 790 F.Supp. 1392, 1394 n. 1 (N.D. Ill. 1992), the court noted that the parties stipulated to filing their briefs and affidavits under seal, but is unclear regarding the specific arrangement reached between the parties or if they shared each others' confidential affidavits. Likewise, in *U.S. Football League v. National Football League*, 605 F.Supp. 1448, 1462 (S.D.N.Y. 1985), the parties stipulated to file all submissions under seal but again it is unclear whether they were shared or just viewed by the court *in camera*. Judge Mansfield's concurring opinion in *Gov't of India* is also of no help to Finnegan. He was approving the use of *in camera* submissions in disqualification motions "to safeguard the interests of the former client," and so supports LMA's position. *Gov't of India v. Cook Indus., Inc.*, 569 F.2d 737, 741 (2d Cir. 1978). None of these cases requires or even suggests that a former client required to show that confidential information was in fact revealed to the attorney sought to be disqualified must share that information with anyone but the court.[1]

For the foregoing reasons, the Court's *ex parte in camera* consideration of the Supplemental Declaration of Stephen Marzen would be entirely proper on LMA's motion to disqualify, and there is no authority permitting or requiring it to be shared with any Finnegan lawyers or their attorneys.

---

[1] Finnegan can only cite an obscure Rhode Island state court decision suggesting this notion, *Fregeau v. Deo*, 2005 WL 1837011, at *4-5 (R.I. Super. Ct., Aug. 2, 2005), but in that case the court found "no evidence [] of a substantial relationship between the subject matter of" the attorneys prior and present representations and "no evidence" that the attorney had access to privileged information from the former representation relevant to the present case. *Id.* at *4. Thus, the disqualification motion there did appear tactically motivated. *Id.* *Fregeau* was also decided under a liberal Rhode Island ethical rule that permits a lawyer to reveal client confidences without the client's consent in order "to respond to allegations in any proceeding concerning the lawyer's representation of the client." *Id.* (*citing* R.I. Sup. Ct. Rules of Prof. Conduct, Art. V, Rule 1.6(b)(2)). California has no such parallel ethical rule (Cal. R. Prof. Conduct 3-100 only permits such disclosure if an attorney believes it is necessary to prevent a criminal act that is likely to result in death or substantial bodily harm). In sum, *Fregeau* has no relevance to the present case and carries absolutely no authoritative weight with this Court.

B.  **LMA's In Camera Submission Was Proper On Reply And Does Not Entitle Finnegan To Further Response Or A Sur-Reply On This Motion**

1.  *The Supplemental Declaration Was Entirely Proper On Reply*

LMA's *in camera* submission of the Supplemental Declaration of Stephen Marzen should have come as no surprise to Finnegan. LMA was compelled to respond with the Supplemental Declaration in view of Finnegan's almost wholesale denial of what transpired at the meeting, and its fatuous attempt to paint the entire private meeting as the equivalent of a public seminar on patent litigation. Jakes Decl., ¶ 6. Finnegan's declarations in this regard did come as a great surprise to LMA, and so the Supplemental Declaration was appropriate. *See Litton Industries, Inc. v. Lehman Bros. Kuhn Loeb Inc.*, 767 F. Supp. 1220, 1235 (S.D.N.Y. 1991) (reply properly responds to previously unforeseen issues or matters first raised on opposition), *rev'd on other grounds*, 967 F.2d 742 (2nd Cir. 1992). Mr. Marzen's original declaration offered to provide privileged information to the Court *in camera* and LMA's opening memorandum provided authority for that procedure. Marzen Decl. ¶ 10; Opening Brief at 6 n. 2. Finnegan neither responded nor objected to that procedure in its opposition papers.

Moreover, the Supplemental Declaration did not deprive Finnegan of an opportunity to respond. The opening and closing portions of the Supplemental Declaration concern pure rebuttal material and are appropriately presented for the first time in reply. For example, the Finnegan attorneys made representations regarding the length and nature of the meeting and the materials that LMA brought to the meeting. The Finnegan representations are contradicted by contemporaneous documentary evidence. Marzen Supp. Decl. ¶¶ 2-7.[2] Additionally, the claim that Mr. Jakes was surprised to hear back from LMA and assumed right after the meeting that he

---

[2] Despite all the evidence to the contrary, Finnegan still tries to insinuate that the meeting did not last about two hours, and its attempt to raise some impropriety regarding Mr. Marzen's taxi receipts falls flat. The receipts were indeed prepared by him and bear his initials "sjm," which is not unusual because busy taxi drivers seldom take the time to fill out receipts. Moreover, Mr. Marzen consistently wrote down the departure time in each case; 10:20 a.m. leaving his office and 12:15 p.m. leaving Finnegan's office. Marzen Supp. Decl., Ex. J. In any event, Mr. Jakes has already admitted logging two hours for the meeting including some preparation time. Jakes Decl., ¶ 4. Accordingly, the contemporaneous evidence fully supports LMA's version of the facts.

would not hear back first arose in Finnegan's opposing declarations. Jakes Decl., ¶¶ 9, 15. This representation is not supported by Mr. Jakes's contemporaneous voicemail message of January 2007 that fails to mention anything about being surprised to hear back from LMA. When Mr. Marzen did get back to Mr. Jakes as promised, the responding voicemail message from Mr. Jakes expresses not surprise, but regret over the sudden conflict ("its one of those things with a large firm . . . I'm sorry about that."). Marzen Supp. Decl. ¶¶ 24-25. Likewise, the disclosure of LMA's privileged information to the Finnegan Ambu team before the ethical screen was erected was revealed for the first time in the e-mail messages attached to the Finnegan attorneys' declarations. Jakes Decl., Ex. A. Those breaches could not have been brought to the Court's attention before LMA's reply. Marzen Supp. Decl. ¶¶ 28-29. Because this evidence rebuts the representations made by the Finnegan attorneys in their opposition papers, it is appropriately submitted in reply.

The body of the Supplemental Declaration concerns the privileged information that LMA provided to the Finnegan attorneys at the meeting and the legal advice that the Finnegan attorneys provided to LMA. This is not wholly new factual material. It merely specifies the privileged information that was more generally described in Mr. Marzen's opening declaration. Marzen Decl. ¶¶ 8-9; Marzen Supp. Decl. ¶¶ 9-23. Finnegan's outside counsel and Finnegan would never receive that privileged information, whether LMA provided it in an opening declaration or a supplemental declaration. *Rogers*, 800 F.Supp. at 355 (no disclosure of privileged information to attorney to be disqualified); *Ultradent*, 344 F.Supp.2d at 1309 (same). Thus, they would not have had the opportunity to respond regardless of when it was filed. The privileged material was offered in LMA's opening memorandum and provided in a supplemental declaration only because the Finnegan attorneys challenged the opening declarations.

The cases relied upon by Finnegan for the proposition that it should be permitted to file a further response or sur-reply are not on point. None of them involve an attorney disqualification motion or the *in camera* submission of privileged information that would never have been privy to the opposing side. *Provenz v. Miller*, 102 F.3d 1478, 1483 (9th Cir. 1996) (motion for summary judgment); *Beaird v. Seagate Tech., Inc.*, 145 F.3d 1159, 1164 (10th Cir. 1998) (same); *Vargas v.*

*Gromko*, 977 F.Supp. 996, 1003 n.10 (N.D. Cal. 1997) (same); *In re Pacific Gas & Elec. Co.*, 2002 WL 32071634, at *4 (N.D. Cal. Nov. 14, 2002) (motion to stay); *Daghlian v. DeVry Univ., Inc.*, 461 F.Supp. 2d 1121, 1144 n. 37 (C.D. Cal. 2006) (Rule 12(b)(6) motion to dismiss). The cases cited by LMA directly on point in this context make clear that the former client seeking disqualification need not expose its privileged information to anyone but the court. *Rogers*, 800 F.Supp. at 355; *Ultradent*, 344 F.Supp.2d at 1309.

### 2. *Any Further Response From Finnegan Is Unnecessary*

Nor is it necessary for Finnegan to further respond to the Supplemental Declaration or file a sur-reply to LMA's Reply. Finnegan has already staked out its position; that the meeting was merely a short "meet and greet," and that it received no confidential information and rendered no legal advice at the meeting (despite the facts that Mr. Jakes logged two hours for the meeting, that afterwards Finnegan did consider it necessary to at least attempt to erect an ethical screen, and that Mr. Jakes never questioned or contested Mr. Marzen's letter request to protect all of LMA's confidences and secrets after the meeting. Marzen Decl., Ex. D). Finnegan also took the position that it was certain right after the meeting that LMA would not select it for the lawsuit (Jakes Decl., ¶ 9), but this position is also dubious in view of Mr. Jakes's voicemail message to Mr. Marzen discussed above. Marzen Supp. Decl. ¶ 25. Finnegan merely wants another shot at the facts because its current position simply doesn't ring true.[3]

Undoubtedly Finnegan also wants a chance to explain its admitted breach of its ethical obligations to LMA when Mr. Jakes revealed both the fact, and key content, of the meeting to Ambu attorney Bryan Diner in response to his conflict check. Jakes Decl., Ex. A. The facts, however, are now clear and nothing the Finnegan lawyers might say can change them. Messrs.

---

[3] Finnegan also tries to raise an issue with respect to Mr. Marzen's conversation with Mr. Jakes when the former asked the later to identify the specific source of the conflict and Mr. Jakes refused to tell. Marzen Supp. Decl., Ex. Q. Contrary to Finnegan's argument, Mr. Marzen's notes don't say (and Mr. Jakes did not say) that Mr. Marzen could infer the identity of Finnegan's new client (Ambu), let alone that Finnegan was representing Ambu against LMA. Mr. Jakes said that Mr. Marzen would have to infer the source of the conflict himself, without giving him any information on which to base that inference. That is the "whole story." Finnegan chose to keep the true nature of its conflict a secret from LMA, and now has only itself to blame for its predicament.

Jakes and Williamson are disqualified for a conflict of interest, and they carelessly violated their obligations to LMA before the ethical screen was even erected, greatly benefitting Ambu and its team of other Finnegan lawyers at the expense of LMA. The personal disqualification of Messrs. Jakes and Williamson must therefore be imputed to the entire Finnegan firm. California does not permit ethical screens in this situation and would not recognize Finnegan's ethical screen in any event because LMA's privileged information was disclosed to Finnegan's Ambu team before it was erected. Accordingly, no further response from Finnegan is necessary to decide the pending motion to disqualify, particularly because Finnegan has, in effect, already presented a sur-reply in the form of its objections to the Supplemental Declaration and in its *ex parte* application.

### III. CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that Finnegan's Objections to the Supplemental Declaration of Stephen Marzen be overruled and that its *Ex Parte* Application for Leave to File a Response be denied.

Respectfully submitted,

KNOBBE, MARTENS, OLSON & BEAR, LLP

Dated: January 10, 2008

By: s/Frederick S. Berretta
    John B. Sganga
    Frederick S. Berretta

Attorneys for Plaintiffs
THE LARYNGEAL MASK COMPANY LTD.
and LMA NORTH AMERICA, INC.

## CERTIFICATE OF SERVICE

I hereby certify that on January 10, 2008, I caused the foregoing **PLAINTIFFS' CONSOLIDATED REPLY TO OBJECTIONS TO THE SUPPLEMENTAL DECLARATION OF STEPHEN MARZEN; AND OPPOSITION TO DEFENDANT'S *EX PARTE* APPLICATION FOR LEAVE TO RESPOND TO PLAINTIFFS' REPLY ON MOTION TO DISQUALIFY FINNEGAN HENDERSON FARABOW GARRETT & DUNNER, LLP** to be electronically filed with the Clerk of the Court using the CM/ECF system which will send electronic notification of such filing to the applicable registered filing users.

| | |
|---|---|
| John L'Estrange, Jr.<br>j.lestrange@wllawsd.com<br>WRIGHT & L'ESTRANGE | Sean M. SeLegue<br>sselegue@howardrice.com<br>Robert D. Hallman<br>rhallman@howardrice.com<br>HOWARD, RICE, NEOROVSKI,<br>CANADY, FALK & RABIN |
| Bryan C. Diner<br>bryan.diner@finnegan.com<br>FINNEGAN, HENDERSON, FARABOW,<br>GARRETT & DUNNER LLP | |

I declare that I am employed in the office of a member of the bar of this Court at whose direction the service was made.

Dated: January 10, 2008

Megan Ptacin

4727774
010808

- 9 -