# EXHIBIT A

| | |
|---|---|
| 1 | SEAN M. SeLEGUE (No. 155249) |
|  | Email: sselegue@howardrice.com |
| 2 | ROBERT D. HALLMAN (No. 239949) |
|  | Email: rhallman@howardrice.com |
| 3 | HOWARD RICE NEMEROVSKI CANADY |
|  |      FALK & RABKIN |
| 4 | A Professional Corporation |
|  | Three Embarcadero Center, 7th Floor |
| 5 | San Francisco, California 94111-4024 |
|  | Telephone:   415/434-1600 |
| 6 | Facsimile:   415/217-5910 |
| 7 | Specially appearing as counsel for FINNEGAN |
|  | HENDERSON FARABOW GARRETT & |
| 8 | DUNNER, LLP |
| 9 | GERALD F. IVEY (admitted *pro hac vice*) |
|  | BRYAN C. DINER (admitted *pro hac vice*) |
| 10 | P. ANDREW RILEY (admitted *pro hac vice*) |
|  | FINNEGAN HENDERSON FARABOW |
| 11 |      GARRETT & DUNNER, LLP |
|  | 901 New York Avenue, NW |
| 12 | Washington, D.C. 20001-4413 |
|  | Telephone:   202/408-4000 |
| 13 | Facsimile:   202/408-4400 |
| 14 | ROBERT L. BURNS (admitted *pro hac vice*) |
|  | FINNEGAN HENDERSON FARABOW |
| 15 |      GARRETT & DUNNER, LLP |
|  | 11955 Freedom Drive |
| 16 | Reston, Virginia 20190-5675 |
|  | Telephone:   571/203-2736 |
| 17 | Facsimile:   202/408-4400 |
| 18 | Attorneys for Defendant AMBU INC. |

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| THE LARYNGEAL MASK COMPANY LTD. and LMA NORTH AMERICA, INC., | No. 07 CV 1988 DMS (NLS) |
| Plaintiffs, | SUPPLEMENTAL DECLARATION OF J. MICHAEL JAKES IN OPPOSITION TO PLAINTIFFS' MOTION TO DISQUALIFY FINNEGAN HENDERSON FARABOW GARRETT & DUNNER, LLP |
| v. | |
| AMBU A/S, AMBU INC., AMBU LTD., AND AMBU SDN. BHD., | |
| Defendants. | Judge:      Hon. Dana M. Sabraw |
|  | Date:       N/A |
|  | Time:       N/A |
| AND RELATED CROSS ACTIONS | Courtroom: 10 |

JAKES SUPPL. DECL. IN OPP'N TO MOTION TO DISQUALIFY          07 CV 1988 DMS (NLS)

I, J. Michael Jakes, declare as follows:

1. On December 28, 2007 I submitted a declaration in opposition to Plaintiffs' motion to disqualify Finnegan. I have since reviewed a redacted copy of Stephen Marzen's supplemental declaration, filed on January 4, 2008. The statements made in this declaration are based on my personal knowledge unless otherwise indicated.

2. Mr. Marzen's declaration (the "reply declaration") is incorrect in numerous specific respects, which I address below. But, at the highest level, the reply declaration is incorrect in suggesting that the November 2006 meeting was a "private consultation" to convey advice to LMA. The purpose of the meeting was not to provide advice to LMA but to allow LMA to decide whether to retain Finnegan. No "theory of the case," "litigation objective" or similar topics were discussed, other than the basic fact that LMA wished to bring a patent infringement suit. My earlier declaration did not, as the reply declaration suggests, characterize the meeting as a continuing education session for members of the Bar; rather the substance of the meeting consisted of the same type of generalized information that would be presented by speakers at such a CLE session along with background information about me and my firm.

3. Consistent with the generalized nature of the discussion, Mr. Marzen only showed us one mask, a patent application and a notice of allowance. Mr. Marzen did not show us any of the other materials (i.e., a collection of prior art, a "partial agenda," additional masks and whatnot) that he says *brought* with him. Since we were shown only one mask, there was no comparison of various masks to one another.

4. In general, I do not know what comments are alluded to in the blacked-out portions of the reply declaration. Specifically,

- I do not know what discussion Mr. Marzen alludes to in the blacked-out portions of Paragraphs 10-15. There was no discussion of LMA's UK patent attorney, as is asserted in paragraph 13 and elsewhere in the reply declaration.
- There was no discussion about unfair competition claims, as the reply declaration asserts in Paragraph 16. (I note that the reply declaration states that LMA and

Ambu had "exchanged correspondence" on that topic, which indicates that the fact that LMA was apparently entertaining that theory was no secret to Ambu.) I do not know what discussion Mr. Marzen alludes to in the blacked-out portion of Paragraphs 16-17.

- I asked Mr. Marzen and Ms. Ackerman about LMA's corporate structure for conflicts purposes. I did not offer any legal advice based on that information. I do not know what discussion Mr. Marzen alludes to in the redacted portion of Paragraphs 18-20.

- We did not offer any advice concerning LMA's entitlement to damages, and I do not know what discussion Mr. Marzen alludes to in the redacted portion of Paragraph 21.

- I have no specific recollection of discussing Mr. Ivey, another Finnegan attorney, but it is quite possible that his name came up in our discussion of Finnegan's experience and reputation. Mr. Ivey was featured in some of the marketing materials that we provided Mr. Marzen and Ms. Ackerman. Mr. Ivey had no involvement in the meeting with LMA in November 2006, and I have not discussed this matter with him.

5.  Mr. Marzen did not, at any time during the November 2006 meeting, tell us how many other firms LMA was interviewing, but it should be emphasized that there is no dispute that Mr. Marzen stated that Finnegan was being interviewed and it was not the only firm being considered. Mr. Marzen did not tell us that it would take LMA some time to get back to us due to the holidays. My belief that LMA would not hire Finnegan was based on reactions Mr. Marzen had to my presentation during the meeting and, from my perspective, was confirmed as time passed with no word. The reply declaration's transcription of my January 2007 voicemail message to Mr. Marzen does not state my surprise at the news that LMA wanted to retain Finnegan out of politeness and decorum, nothing more. When Mr. Marzen asked if Ambu was our client I said he could infer who Finnegan's client was from the fact that the conflict was not waivable.

JAKES SUPPL. DECL. IN OPP'N TO MOTION TO DISQUALIFY   07 CV 1988 DMS (NLS)
-2-

6. The reply declaration asserts in Paragraph 27 that, during our telephone conversation on January 24, 2007, Mr. Marzen told me that "[he] hoped Finnegan was not working for Ambu," but that I refused to tell him. As Mr. Marzen's own notes confirm (attached as Exhibit Q to his supplemental declaration), I told him that he could infer who Finnegan's new client was.

7. In summary, the meeting John Williamson and I had with Mr. Marzen and Ms. Ackerman was routine; typical of the kind of conversation one has with lawyers for a prospective client who are interviewing firms. We did not establish an attorney-client relationship. This is confirmed in Mr. Marzen's January 30, 2007 letter to me in which he referred to LMA as having been a "prospective client" of Finnegan. (Please see my initial declaration, Exhibit C.)

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

Executed on January 17, 2008 in Washington, D.C.

_____
J. Michael Jakes

W03 011608-169290002/Y04/1474263/vF

JAKES SUPPL. DECL. IN OPP'N TO MOTION TO DISQUALIFY    07 CV 1988 DMS (NLS)
-3-

# EXHIBIT B

| | |
|---|---|
| 1 | SEAN M. SELEGUE (No. 155249) |
| | Email: sselegue@howardrice.com |
| 2 | ROBERT D. HALLMAN (No. 239949) |
| | Email: rhallman@howardrice.com |
| 3 | HOWARD RICE NEMEROVSKI CANADY |
| | FALK & RABKIN |
| 4 | A Professional Corporation |
| | Three Embarcadero Center, 7th Floor |
| 5 | San Francisco, California 94111-4024 |
| | Telephone: 415/434-1600 |
| 6 | Facsimile: 415/217-5910 |

Specially appearing as counsel for FINNEGAN HENDERSON FARABOW GARRETT & DUNNER, LLP

GERALD F. IVEY (admitted *pro hac vice*)
BRYAN C. DINER (admitted *pro hac vice*)
P. ANDREW RILEY (admitted *pro hac vice*)
FINNEGAN HENDERSON FARABOW
  GARRETT & DUNNER, LLP
901 New York Avenue, NW
Washington, D.C. 20001-4413
Telephone: 202/408-4000
Facsimile: 202/408-4400

ROBERT L. BURNS (admitted *pro hac vice*)
FINNEGAN HENDERSON FARABOW
  GARRETT & DUNNER, LLP
11955 Freedom Drive
Reston, Virginia 20190-5675
Telephone: 571/203-2736
Facsimile: 202/408-4400

Attorneys for Defendant AMBU INC.

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| THE LARYNGEAL MASK COMPANY LTD. and LMA NORTH AMERICA, INC., <br><br>Plaintiffs, <br><br>v. <br><br>AMBU A/S, AMBU INC., AMBU LTD., AND AMBU SDN. BHD., <br><br>Defendants. | No. 07 CV 1988 DMS (NLS) <br><br>SUPPLEMENTAL DECLARATION OF JOHN M. WILLIAMSON IN OPPOSITION TO PLAINTIFFS' MOTION TO DISQUALIFY FINNEGAN HENDERSON FARABOW GARRETT & DUNNER, LLP <br><br>Judge: Hon. Dana M. Sabraw <br>Date: N/A <br>Time: N/A <br>Courtroom: 10 |
| AND RELATED CROSS ACTIONS | |

WILLIAMSON SUPPL. DECL. IN OPP'N TO MOT. TO DISQUALIFY   07 CV 1988 DMS (NLS)

I, John M. Williamson, declare as follows:

1. On December 28, 2007 I submitted a declaration in opposition to Plaintiffs' motion to disqualify Finnegan. I have since reviewed a redacted copy of Stephen Marzen's supplemental declaration, filed on January 4, 2008. The statements made in this declaration are based on my personal knowledge unless otherwise indicated.

2. Mr. Marzen's declaration (the "reply declaration") mischaracterizes the nature and contents of the November 22, 2006 meeting. The meeting was an opportunity for Mr. Marzen and Ms. Ackerman to decide if they wanted to recommend Finnegan to represent LMA, and the meeting proceeded accordingly. Specifically:

- Mr. Marzen and Ms. Ackerman informed us of LMA's intention to bring a patent infringement action, and they showed us the patent application, a notice of allowance and one of the laryngeal masks. There was no comparison of masks and no review of prior art.
- There was no discussion of opinions of LMA's UK patent attorney, no discussion of unfair competition claims, and no discussion of LMA's claims or Ambu's defenses in any detail.
- The limited discussion of LMA's corporate structure arose from Mr. Jakes' observation that he needed more information for a second conflict check. That discussion did not amount to or lead to legal advice.
- There was a general discussion of various patent venues—the duration of a suit, procedural sequencing, inclination to transfer an action, etc.—but this was general information about typical practices in those venues; we did not purport to provide any legal advice and had no knowledge of the pertinent facts on which to base any legal advice.
- There was a general discussion of the typical cost of litigating a patent suit.

3. I am sure that LMA did not communicate to us anything beyond a basic intention to bring a patent infringement action. There were no secrets revealed or any information of strategic value shared and, as I have previously said, Mr. Marzen and Ms. Ackerman left me

WILLIAMSON SUPPL. DECL. IN OPP'N TO MOT. TO DISQUALIFY   07 CV 1988 DMS (NLS)

-1-

1 | with the impression that LMA was not likely to retain Finnegan.
2 |     I declare under penalty of perjury under the laws of the United States that the foregoing
3 | is true and correct.
4 |     Executed on January 17, 2008 in Washington, D.C.

_____
John M. Williamson

W03 011608-169290002/Y04/1474239/vF



WILLIAMSON SUPPL. DECL. IN OPP'N TO MOT. TO DISQUALIFY   07 CV 1988 DMS (NLS)
-2-