DARRYL M. WOO (CSB NO. 100513)
dwoo@fenwick.com
FENWICK & WEST LLP
555 California Street, 12th Floor
San Francisco, CA 94104
Telephone: (415) 875-2300
Facsimile:  (415) 281-1350

Attorneys for Defendants
AMBU A/S, AMBU INC., AMBU LTD., and
AMBU SDN. BHD.

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| THE LARYNGEAL MASK COMPANY LTD. and LMA NORTH AMERICA, INC.,<br><br>Plaintiffs,<br><br>v.<br><br>AMBU A/S, AMBU INC., AMBU LTD., and AMBU SDN. BHD.,<br><br>Defendants.<br><br>AND RELATED CROSS ACTIONS | Case No. 07-cv-1988-DMS (NLS)<br><br>**AMBU'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR CLARIFICATION OF FEBRUARY 25, 2008 ORDER GRANTING PLAINTIFFS' MOTION TO DISQUALIFY FINNEGAN HENDERSON FARABOW GARRETT & DUNNER, LLP AS DEFENDANTS' COUNSEL**<br><br>Judge:   Hon. Dana M. Sabraw<br>Date:    April 18, 2008<br>Time:    1:30 p.m.<br>Courtroom: 10 |

## INTRODUCTION

Defendants Ambu A/S, Ambu Inc., Ambu Ltd. and Ambu Sdn. Bhd. (collectively, "Ambu") respectfully move the Court for a clarification of its February 25, 2008 Order Granting Plaintiffs' Motion to Disqualify Finnegan Henderson Farabow Garrett & Dunner, LLP As Defendants' Counsel ("Disqualification Order"). Specifically, Ambu requests guidance from the Court on whether Ambu's new counsel, Fenwick & West LLP ("Fenwick"), may obtain from the Finnegan firm copies of all Ambu client documents provided to Finnegan for this case and, given

their inherent public nature, copies of all prior art documents in Finnegan's possession.

Pursuant to the Disqualification Order, Ambu dutifully and promptly sought, and has now retained, new counsel. Pursuant to that order and out of an abundance of caution, new counsel Fenwick, in turn, has refrained from any contact with the Finnegan firm, but has run into logistical difficulties occasioned by the fact that it must re-create the set of documents collected from the clients relevant to the case, and yet without contacting the Finnegan firm, or reviewing any of their document collection or document preservation work product, ensure that there is no gap such that Finnegan might have relevant and discoverable documents that Fenwick somehow does not receive. These logistics are further compounded by the geographic spread of defendants, located in such diverse regions as the U.S., Europe and Asia. Ambu thus first requests an order clarifying whether Fenwick may obtain from the Finnegan firm copies of all client documents provided to prior counsel for this case, so that new counsel can ensure itself that it is complying with its discovery obligations when it is preparing documents for production.

Ambu's second request is for copies of all third party documents in Finnegan's possession relating to prior art. Such material may include copies of patents, of third party product literature, or of scholarly publications, all of which are inherently public in nature, and which would take new counsel considerable effort to find and re-assemble if having to start from scratch. To be clear, Ambu is not at this time asking for prior counsel's analysis of such material, but only the material itself, in part so that it can be reviewed and produced as part of Ambu's discovery obligations.

Ambu has requested a hearing date on this matter, pursuant to Local Rule 7.1.b, to discuss the issues raised herein. Ambu feels it would be beneficial for the parties to appear before the Court so as to avoid any further need for clarification.

///
///
///
///

AMBU'S MPA ISO MOTION FOR
CLARIFICATION OF FEB. 28              2              CASE NO. 07-CV-1988-DMS
DISQUALIFICATION ORDER

# DISCUSSION

## I. AMBU REQUESTS THAT FENWICK BE ALLOWED TO RECEIVE THE CLIENTS' DOCUMENTS CURRENTLY IN THE POSSESSION OF FINNEGAN

In order to comply with its discovery obligations, Ambu requests that the Court allow Fenwick to obtain from Finnegan all of the clients' documents that Finnegan has assembled and collected from the clients, who are located in such geographically diverse regions as the U.S., Europe and Asia. Clarification is sought because the Court's Disqualification Order provides that Finnegan "shall not represent or assist Defendants with this lawsuit," and further that Finnegan "shall not consult or share work product with new counsel." Ambu is concerned that a literal reading of this prohibition would bar Fenwick from obtaining from Finnegan client documents necessary to comply with their discovery obligations, and accordingly requests clarification of the Court's intent with regard to such materials. Thus far, out of an abundance of caution, Fenwick has not contacted the Finnegan firm at all regarding this matter.

Ambu will soon be called upon to meet its initial Rule 26 obligations, including the provision of a list of individuals likely to have discoverable information in support of Ambu's claims and defenses, a copy or description by category of all documents and things that Ambu may use to support its claims and defenses, a computation of damages and any applicable insurance agreements. FED. R. CIV. P. 26(a)(1)(A)-(D). Moreover, once discovery opens, Ambu will likely be required to respond to interrogatories and produce documents requested by plaintiffs The Laryngeal Mask Company Ltd. and LMA North America, Inc. (collectively "LMA"). While new counsel will of course be requesting documents and other information from Ambu in order to comply with these requirements, there is no way to be certain that all of the material gathered by prior counsel is obtained and reviewed for production, unless Fenwick is permitted to obtain from Finnegan and review copies of all such documents previously provided them. Accordingly, Ambu respectfully requests that the Court clarify and permit new counsel to obtain from prior counsel copies of the clients' documents provided previously to Finnegan.

///

///

## II. AMBU REQUESTS THAT FENWICK BE ALLOWED TO OBTAIN FROM FINNEGAN COPIES OF THIRD PARTY DOCUMENTS RELATING TO PRIOR ART

Ambu also requests that the Court allow Fenwick to obtain from Finnegan copies of any third party documents relating to prior art. As set out above, clarification is sought because the Court's Disqualification Order provides that Finnegan "shall not represent or assist Defendants with this lawsuit," and further that Finnegan "shall not consult or share work product with new counsel." As with the client documents, Ambu is concerned that a literal reading of this prohibition would bar Fenwick from obtaining from Finnegan third party prior art in Finnegan's possession. The prior art documents themselves are not work product since they existed prior to the litigation, and as such, have not been influenced by any confidential information that LMA disclosed to Finnegan in the pre-litigation meeting. Ambu needs that prior art for its defenses in this case, to prepare adequately for the upcoming ENE conference,[1] and to comply with its Local Rule and discovery obligations, which include production of prior art that Ambu intends to rely on in support of its claims and defenses. Absent the relief requested here, new counsel will have to find and re-assemble the prior art from scratch. Already new counsel will need to analyze that prior art documentation, but not having to search for and gather it anew will save considerable expense to Ambu.

### A. Third Party Documents Relating to Prior Art Are Not Work Product

The prior art documents that Fenwick seeks to obtain from Finnegan themselves were prepared far in advance of the litigation by third parties—not in anticipation of litigation—and thereby are not work product. Courts have found that such preexisting documents do not become work product simply by virtue of being reviewed by an attorney. *See Visa U.S.A., Inc. v. First Data Corp.*, Case No. C-02-1786, 2004 U.S. Dist. LEXIS 17117, *27-29 (N.D. Cal. Aug. 23, 2004) (holding that attorney review of documents does not automatically render the documents themselves work product); *see also United States ex rel. Bagley v. TRW, Inc.*, 212 F.R.D. 554, 563 (C.D. Cal. 2003) (noting there was no dispute that the set of preexisting documents

---

[1] Ambu has separately requested a continuance of the April 14, 2008 ENE conference in order to have time to seek the relief requested herein, and otherwise to get up to speed in light of the prohibition against using any Finnegan work product.

AMBU'S MPA ISO MOTION FOR
CLARIFICATION OF FEB. 28                          4                          CASE NO. 07-CV-1988-DMS
DISQUALIFICATION ORDER

1  supporting a disclosure statement prepared by an attorney was not work product); *Brown v. Hart,*
2  *Schaffner, & Marx*, 96 F.R.D. 64, 68 (N.D. Ill. 1982) ("An attorney may not bring a document
3  within the scope of the work product rule simply by reviewing it if it was not originally prepared
4  in anticipation of litigation."). Thus, the third party documents relating to prior art that Fenwick
5  seeks to obtain from Finnegan do not become work product simply by virtue of being in
6  Finnegan's possession, and Fenwick respectfully requests that they be allowed access to them.

### B.   Third Party Documents Relating to Prior Art Cannot Have Benefited From LMA's Prior Disclosure of Confidential Information to Finnegan

9  It also would be a hardship on Ambu to pay the cost of having its new counsel search
10 again for third party documents relating to prior art because they cannot have been improperly
11 influenced by any previously disclosed LMA confidential information by virtue of the documents
12 being *prior* art. Thus, allowing Fenwick to obtain such third party prior art from Finnegan would
13 not contradict the nature of the Court's Disqualification Order.
14 As the Court stated, the disqualification was a "prophylactic" measure to prevent the "risk
15 of inadvertent disclosure" of the confidential information that LMA disclosed to Finnegan in their
16 pre-litigation meeting. Disqualification Order at 11, 12. However, Ambu respectfully submits
17 that a blanket prohibition preventing Fenwick from obtaining the third party documents in
18 Finnegan's possession relating to prior art, even if it were work product, reaches beyond
19 prophylactic measures, and financially burdens Ambu when it is not at fault for Finnegan's
20 conduct. For instance, in another case where disqualification of counsel was not meant to impugn
21 the client, the Seventh Circuit court found that a client should not be penalized by denying its new
22 counsel access to documents from disqualified counsel, including work product. *See*, *e.g.*, *First*
23 *Wisconsin Mortgage Trust v. First Wisconsin Corp.*, 584 F.2d 201, 205, 207 (7th Cir. 1978) (*en*
24 *banc*) (reversing district court's denial of motion for authorization to access disqualified counsel's
25 work product because "[t]he penalty from not having the work product made available to
26 substitute counsel is against the client. The rule as here laid down by the district court would
27 destroy the work done by disqualified counsel irrespective of any fault on the part of the party
28 litigant."). *First Wisconsin Mortgage* has been found instructive by another district court in

AMBU'S MPA ISO MOTION FOR
CLARIFICATION OF FEB. 28                    5                    CASE NO. 07-CV-1988-DMS
DISQUALIFICATION ORDER

1  California which found no applicable Ninth Circuit case for guidance. *Actel Corp. v. QuickLogic Corp.*, Case No. C-94 20050 JW (PVT), 1996 U.S. Dist. LEXIS 11815, *29 (N.D. Cal. Apr. 23, 1996), *adopted*, 1996 U.S. Dist. LEXIS 11816 (N.D. Cal. May 29, 1996) (finding no "case in the Ninth Circuit" that could give "guidance as to the standards for consideration of remedies ancillary to a motion for disqualification").

Courts in many jurisdictions recognize that disqualification of counsel itself is a hardship on the client, usually through no fault of the client, and thus have found to be unwarranted the additional burden of requiring the client to pay for substitute counsel to redo all of the work of disqualified counsel from scratch. *See*, *e.g.*, *Actel*, 1996 U.S. Dist. LEXIS 11816 at *3 (adopting special master's recommendation to disqualify counsel, but allowing the transfer of files from disqualified counsel to successor counsel, stating "[t]he Court regrets that this Order adversely affects Actel, which is wholly without fault"); *EEOC v. Orson H. Gygi Co.*, 749 F.2d 620, 622 (10th Cir. 1984) (admitting that "[u]ndoubtedly, the disqualification order works a hardship on Gygi" and mitigating that hardship "by allowing Mr. Barker to provide Gygi's substitute counsel with all work product relevant to Gygi's defense"); *IBM Corp. v. Levin*, 579 F.2d 271, 283 (3d Cir. 1978) (recognizing "that the plaintiffs will be injured by the disqualification of CBM," and "permitting the turnover to substitute counsel for the plaintiffs within sixty days of the past work product of CBM on the case"); *Behunin v. Dow Chem. Co.*, 642 F. Supp. 870, 874 (D. Colo. 1986) ("On balance, though there is an outside possibility that Dow's confidences and secrets have been incorporated into ACL's work product . . . the potential harm denying work product to be passed on is much greater."). Where disqualification is justified "primarily . . . as a vindication of the integrity of the bar," it is appropriate for the Court to allow disqualified counsel to turn over documents to new counsel, including work product. *Levin*, 579 F.2d at 283. There are many reasons for this:

> It would destroy the work done by disqualified counsel, irrespective of any fault on the part of the party for whom the work was done;
>
> It would do this regardless of whether the work destroyed involved the use of any confidential information obtained from the complaining party;
>
> It would foreclose trial courts from any exercise of discretion in determining what

AMBU'S MPA ISO MOTION FOR
CLARIFICATION OF FEB. 28                6                    CASE NO. 07-CV-1988-DMS
DISQUALIFICATION ORDER

>effect an order of disqualification should have upon the parties to litigation, . . . regardless of the circumstances giving rise to the disqualification and regardless of the extent to which the complaining party may have caused the work in question to be done; . . .
>
>It would do a major injustice to the clients of disqualified counsel, causing them to pay a second time for the same work; . . .
>
>It would provide no benefit to the complaining party other than the satisfaction of imposing an unnecessary financial burden on its opponent;
>
>It would in no way discipline disqualified counsel whose actions have been the cause of the disqualification order.

*First Wisconsin Mortgage*, 584 F.2d at 208-09.

The instant case is analogous to *Actel* in that "the disqualification here is primarily a sanction against [disqualified counsel] and vindication of the integrity of the bar and the judicial process." 1996 U.S. Dist. LEXIS 11815, at *32. Just as in *Actel*, the complaining party, LMA, has not shown any specific damage yet caused by Finnegan's representation of Ambu after a separate set of attorneys at Finnegan had a single, preliminary meeting with LMA. *Id.* ("QuickLogic has made no showing of special damage as a result of use of any confidential information"). Also as in *Actel*, the client "was not at fault in any way and destruction of work product would be a major injustice and financial burden to that company." *Id.* Thus, Ambu should likewise not suffer from a blanket prohibition against Fenwick's obtaining documents from Finnegan, especially third party documents relating to prior art and not relating to any of LMA's confidential information. *Id.* (denying QuickLogic's request "for destruction of work product and prohibition of communication with successor counsel and Actel attorneys").

Ambu fully understands, and does not seek to undermine, the Court's obligation to prevent the risk of disclosure or use by Ambu's counsel of LMA's confidential information obtained in the pre-litigation meeting. However, the disqualification of Finnegan in no way implicates that Ambu is at fault, *see* Disqualification Order at 1, and these third party prior art documents cannot have benefited from any such LMA confidential information. Therefore, Ambu respectfully submits that it would be consistent with the spirit of the Court's Disqualification Order to allow Fenwick to obtain from Finnegan the third party documents relating to prior art that are in Finnegan's possession.

## **CONCLUSION**

For the foregoing reasons, Ambu respectfully requests the Court clarify its February 25, 2008 Disqualification Order to allow Fenwick obtain from Finnegan (1) copies of all client documents provided to Finnegan for this case; (2) copies of all prior art documents in Finnegan's possession; and (3) such other relief as the Court deems just and proper.

Dated: March 19, 2008

Respectfully submitted,

FENWICK & WEST LLP

By: s/Darryl M. Woo
    Darryl M. Woo
    E-mail: dwoo@fenwick.com

Attorneys for Defendants
AMBU A/S, AMBU INC., AMBU LTD., and AMBU SDN. BHD.

# CERTIFICATE OF SERVICE

I hereby certify that on March 19, 2008, I caused the foregoing **AMBU'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR CLARIFICATION OF FEBRUARY 25, 2008, ORDER GRANTING PLAINTIFFS' MOTION TO DISQUALIFY FINNEGAN HENDERSON FARABOW GARRETT & DUNNER, LLP AS DEFENDANTS' COUNSEL** to be filed with the Clerk of the Court using the CM/ECF system which will send electronic notification of such filing to the applicable registered filing users.

VIA ECF:

| | |
|---|---|
| Federick S. Berretta, Esq.<br>Knobbe Martens Olson & Bear<br>550 West C. Street, Suite 1200<br>San Diego, CA 92101<br>(619) 235-8550<br>(619) 235-0176 (fax)<br>fberretta@kmob.com | Vicki S. Veenker, Esq.<br>Shearman & Sterling LLP<br>1080 Marsh Road<br>Menlo Park, CA 94025<br>(650) 838-3600<br>(650) 838-3699 (fax)<br>vveenker@shearman.com |

I declare that I am employed in the office of a member of the bar of this Court at whose direction the service was made.

Dated:  March 19, 2008

Aurelia Nolen

LIT/1282105

AMBU'S MPA ISO MOTION FOR
CLARIFICATION OF FEB. 28
DISQUALIFICATION ORDER

CASE NO. 07-CV-1988-DMS