1  John B. Sganga (State Bar No. 116,211)
   Frederick S. Berretta (State Bar No. 144,757)
2  Joshua J. Stowell (State Bar No. 246,916)
   KNOBBE, MARTENS, OLSON & BEAR, LLP
3  550 West C Street
   Suite 1200
4  San Diego, CA  92101
   (619) 235-8550
5  (619) 235-0176 (FAX)

6  Vicki S. Veenker (State Bar No. 158,669)
   Adam P. Noah (State Bar No. 198,669)
7  SHEARMAN & STERLING LLP
   1080 Marsh Road
8  Menlo Park, CA  94025
   (650) 838-3600
9  (650) 838-3699 (FAX)

10 Attorneys for Plaintiffs and Counter-Defendants
   THE LARYNGEAL MASK COMPANY LTD.
11 and LMA NORTH AMERICA, INC.

12

**IN THE UNITED STATES DISTRICT COURT**

13

**FOR THE SOUTHERN DISTRICT OF CALIFORNIA**

14

| | |
|---|---|
| 15  THE LARYNGEAL MASK COMPANY LTD. and LMA NORTH AMERICA, INC., | ) Civil Action No. 07 CV 1988 DMS (NLS) |
| 16                          Plaintiffs, | ) **PLAINTIFFS' OPPOSITION TO AMBU'S** ) **MOTION FOR CLARIFICATION OF** ) **ORDER GRANTING PLAINTIFFS'** |
| 17                    v. | ) **MOTION TO DISQUALIFY FINNEGAN** ) **HENDERSON FARABOW GARRETT &** |
| 18  AMBU A/S, AMBU INC., AMBU LTD., and AMBU SDN. BHD., | ) **DUNNER, LLP AS DEFENDANTS'** ) **COUNSEL** |
| 19                    Defendants. | ) |
| 20 | ) **Date:     April 18, 2008** ) **Time:     1:30 pm** ) **Courtroom 10, 2nd Floor** |
| 21 | ) |
| 22 | ) **Honorable Dana M. Sabraw** |
| 23  AMBU INC., AMBU A/S, AMBU LTD., and AMBU SDN.BHD. | ) |
| 24                    Counterclaimants, | ) |
| 25                    v. | ) |
| 26  THE LARYNGEAL MASK COMPANY LTD. and LMA NORTH AMERICA, INC., | ) |
| 27                    Counter-Defendants. | ) |

28

# TABLE OF CONTENTS

**Page #s**

I.    INTRODUCTION .................................................................................. 1

II.   FACTUAL BACKGROUND ................................................................. 2

III.  ARGUMENT ....................................................................................... 4

    A.   Ambu Waived Any Right To Challenge The Scope Of
The Disqualification Order ............................................................. 4

    B.   Ambu's "Clarification" Request Is In Substance An
Improper Motion For Reconsideration ........................................... 5

        1.   Ambu Fails to Meet the Requirements of Local
Civil Rule 7.1(i) ...................................................................... 6

        2.   Ambu Does Not Provide Any New Facts to
Support its Motion .................................................................. 6

    C.   This Court Properly Barred Ambu's New Counsel From
Using Any Work Product Marshaled By Finnegan For
Use Against LMA ........................................................................ 8

        1.   A Law Firm that Is Disqualified Because It
Received Confidential Information and Rendered
Legal Advice to the Opposing Party in the Same
Case Should Be Barred from Sharing Work
Product with Successor Counsel ............................................ 8

        2.   The Authorities Relied Upon By Ambu Do Not
Support Access to Disqualified Counsel's Work
Product on the Facts of This Case ......................................... 10

    D.   The Materials Sought By Ambu Are Plainly Finnegan's
Work Product ............................................................................. 13

        1.   A Collection of "Prior Art" is Work Product ........................ 13

        2.   A Collection of Client Documents is Also Work
Product .................................................................................. 15

    E.   Ambu Has Failed To Demonstrate Any Compelling
Need For The Requested Work Product ....................................... 17

    F.   Ambu Ignores The Substantial Harms Already Suffered
By LMA As A Result Of Finnegan's Conflict Of Interest ............. 18

IV.   CONCLUSION ................................................................................. 20

## TABLE OF AUTHORITIES

Page #s

*Actel Corp. v QuickLogic Corp.,*
    No. C-94 20050 JW (PVT), 1996 U.S. Dist. LEXIS 11815
    (N.D. Cal. Apr. 23 1996) ................................................................................ 11

*Aerus LLC v. Proteam,*
    No. Civil 05-CV-1065-B(WMC), 2007 WL 2317273
    (S.D. Cal. Aug. 8, 2007) ................................................................................... 6

*In re Allen,*
    106 F.3d 582 (4th Cir. 1996) .......................................................................... 16

*Applied Telematics, Inc. v. Sprint Commc'n Co.,*
    No. Civ. A. 94-4603, 1996 WL 539595 (E.D. Pa. 1996) .............................. 14

*Asset Mktg. Sys. Ins. Serv., LLC, v. McLaughlin,*
    No. 06cv1176 JM(MCc), 2007 WL 3232507
    (S.D. Cal. Nov. 1, 2007) ................................................................................... 6

*Bagley v. TRW Inc.,*
    212 F.R.D. 554 (C.D. Cal. 2003) .............................................................. 14, 16

*Behunin v. Dow Chem. Co.,*
    642 F. Supp. 870 (D. Colo. 1986) .................................................................. 12

*Brooks v. Alameida,*
    No. 04CV2069-H(CAB), 2006 WL 3068855
    (S.D. Cal. Oct. 11, 2006) .................................................................................. 5

*Brown v. Hart, Schaffner & Marx,*
    96 F.R.D. 64 (N.D. Ill. 1982) ........................................................................ 14

*Burroughs Wellcome Co. v. Barr Labs., Inc.,*
    143 F.R.D. 611 (E.D.N.C. 1992) ................................................................... 14

*Carroll v. Nakatini,*
    342 F.3d 934 (9th Cir. 2003) ........................................................................... 5

*Columbia Pictures Indus., Inc. v. Bunnell,*
    No. CV 06-1093 FMC(JCx), 2007 WL 4916964
    (C.D. Cal. May 3, 2007) .................................................................................. 18

*Cord v. Smith,*
    338 F.2d 516 (9th Cir. 1964) ........................................................................... 9

1

2

**TABLE OF AUTHORITIES**
**(Cont'd.)**

Page #s

3

4

*Dixon v. Robinson,*
    Civil No. 07-0553 LAB (CAB), 2007 WL 2700732
    (S.D. Cal. Sept. 12, 2007) ................................................. 6

5

6

*EEOC v. Orson H. Gygi Co.,*
    749 F.2d 620 (10th Cir. 1984) ....................................... 12

7

*EZ Paintr Corp. v. Padco, Inc.,*
    746 F.2d 1459 (Fed. Cir. 1984) ................................. 9, 15

8

9

*First Wis. Mortgage Trust v. First Wis. Corp.,*
    584 F.2d 201 (7th Cir. 1978) ......................................... 10

10

11

*Fresenius Med. Care Holding Inc. v. Baxter Int'l, Inc.,*
    224 F.R.D. 644 (N.D. Cal. 2004) .................................. 14

12

*In re George,*
    28 S.W.3d 511 (Tex. 2000) ........................................... 12

13

14

*Golden Trade, S.r.L. v. Jordache,*
    143 F.R.D. 508 (S.D.N.Y. 1992) .................................. 14

15

16

*Hallmark Cards, Inc. v. Hallmark Dodge, Inc.,*
    616 F. Supp. 516 (D. Mo. 1985) ..................................... 9

17

18

*Holmes v. Teer,*
    No. CIV S-04-1308DFLPANP, 2006 WL 1550201
    (E.D. Cal. May 31, 2006) .............................................. 18

19

20

*Intern'l Bus. Mach. Corp. v. Levin,*
    579 F.2d 271 (3d Cir. 1978) .................................... 10, 12

21

*James Julian, Inc. v. Raytheon, Co.,*
    93 F.R.D. 138 (D. Del. 1982) ........................................ 16

22

23

*Khan v. Fasano,*
    194 F. Supp. 2d 1134 (S.D. Cal. 2001) ........................... 5

24

25

*Micron Tech., Inc. v. Tessera, Inc.,*
    No. C06-80093 Misc. JW (HRL), 2006 WL 1646132
    (N.D. Cal. June 14, 2006) .............................................. 18

26

27

*Quark, Inc. v. Power Up Software Corp.,*
    812 F. Supp. 178 (D. Colo. 1992) .............................. 8, 15

28

### TABLE OF AUTHORITIES
(Cont'd.)

Page #s

*Sawgrass Sys. Inc. v. BASF Aktiengesellschaft,*
    1999 WL 358681, 50 U.S.P.Q.2d 1687 (E.D. Mich. 1999) ........................................ 14

*School Dist. No. 1J, Multnomah County, Oregon v. ACandS, Inc.,*
    5 F.3d 1255 (9th Cir. 1993) ........................................................................ 6

*SpeeDee Oil Change Sys., Inc.,*
    20 Cal. 4th 1135, 86 Cal. Rptr. 2d 816 (1999) ............................................... 9

*Sporck v. Peil,*
    759 F.2d 312 (3d Cir. 1985) ........................................................................ 16

*Thomas v. Hickman,*
    No. 1:06-cv-215, 2007 WL 4302974
    (E.D. Cal. Dec. 6, 2007) ............................................................................ 18

*Visa U.S.A., Inc. v. First Data Corp.,*
    No. C-12-1786, 2004 U.S. Dist. LEXIS 17117
    (N.D. Cal. Aug. 23, 2004) ........................................................................... 14

*Yearous v. Pacificare of California,*
    No. 07-CV-0574-H (RBB), 2007 WL 2700672
    (S.D. Cal. Sept. 12, 2007) .......................................................................... 6

### OTHER AUTHORITIES

35 U.S.C. § 102 ............................................................................................ 13, 17

Fed. R. Civ. P. § 59 ......................................................................................... 5

Fed. R. Civ. P. § 60 ......................................................................................... 5

Local Civil Rule 7.1 ................................................................................... 1, 5. 6

*Restatement (Third) of Law Governing Lawyers*
    § 87 ........................................................................................................ 16

Plaintiffs The Laryngeal Mask Company Ltd. and LMA North America, Inc. (collectively, "LMA") respectfully oppose the motion of Defendants Ambu A/S, Ambu Inc., Ambu Ltd., and Ambu Sdn. Bhd. (collectively, "Ambu") to clarify this Court's February 25, 2008 Order disqualifying Finnegan Henderson Farabow Garrett & Dunner, LLP ("Finnegan") as Ambu's counsel (the "Disqualification Order" or "Order").

## I. INTRODUCTION

This Court held that Finnegan obtained LMA's "confidential information concerning the subjects of venue, claim construction in relation to the theory of their case, and settlement," and provided LMA with "strategic legal advice about how to proceed on those topics" – all with respect to the same patent-infringement case in which Finnegan later appeared for LMA's opponent, Ambu. Order at 10. Because "the risk of inadvertent disclosure of confidential information" is "too great" (*id.* at 12), the Court disqualified Finnegan (*id.*) and ordered the firm not to "represent or assist" Ambu "with this lawsuit" or "consult or share work product with new counsel" (*id.* at 13).

Ambu's motion to turn over "prior art" and "client" documents marshaled by Finnegan for use against LMA in this case is procedurally improper and would "risk [the] inadvertent disclosure of confidential information" (Order at 12) to Ambu's successor counsel, Fenwick & West LLP ("Fenwick"). *First,* as a threshold procedural matter, Ambu waived any right to challenge the scope of the Disqualification Order by failing to present the argument during the disqualification proceedings. *Second,* Ambu's motion is in substance an application for reconsideration that identifies no intervening change in facts or law, in plain violation of Local Civil Rule 7.1(i)(1) and Ninth Circuit law. *Third,* and most important substantively, Finnegan's prior art and client documents are as infected with LMA's confidential information as the Finnegan lawyers themselves, since the Finnegan lawyers' selection of prior art and client documents reflects their professional judgment of which documents support Ambu's claim constructions and other defenses in this case. Courts consistently quarantine the work product of law firms disqualified because their attorneys were exposed to the opposing party's confidential information. *See infra* pp. 8-9. Even

1   "Ambu fully understands . . . the Court's obligation to prevent the *risk* of disclosure or use by

2   Ambu's counsel of LMA's confidential information obtained in the pre-litigation meeting."

3   Mem. 7 (emphasis added). Ambu's arguments that prior art is "inherently public" (*id.* at 2)

4   and that client documents were "provided to" Finnegan (*id.*) ignores the role of Finnegan in

5   exercising its professional judgment to identify the prior art against LMA's patent and

6   marshal the client documents in opposition to LMA's claim. As set forth below, the pertinent

7   authorities establish that Finnegan's collection of prior art and database of selected client

8   documents constitute core opinion work product to which Ambu is not entitled.

9   Ambu tries to justify its belated reconsideration request with factually unsupported

10  claims that Ambu is an "innocent" client. Even if true (and it may not be, *see infra* § III.F),

11  that does not diminish or outweigh *LMA's* indisputable innocence in this affair and its rights

12  as a former Finnegan client to absolute protection of its confidential information. Ambu now

13  asks the Court to second-guess its decision and enter a gray area risking all the protections

14  afforded LMA by the Disqualification Order. Ambu asks that LMA be placed at such risk

15  merely to avoid some possible duplication of effort producing documents and searching the

16  prior art. The relatively minor cost savings sought by Ambu does not approach justifying the

17  significant risks LMA would face. ·Ambu's motion should be denied in its entirety.

18  ## II. FACTUAL BACKGROUND

19  LMA commenced this patent-infringement action on October 15, 2007. Dkt. #1. On

20  Friday, October 26, 2007, Finnegan first called to announce that it would represent Ambu and

21  would like an extension of time to answer or otherwise respond to the complaint. Because

22  LMA had previously provided confidential information to Finnegan and obtained legal advice

23  from Finnegan in this same case, LMA's counsel objected to Finnegan's representation the

24  next business day, on Monday, October 29, 2007, and requested that Finnegan withdraw as

25  Ambu's counsel. Ambu and Finnegan rejected LMA's request, however, and on November

26  29 and December 3, 2007, Finnegan formally appeared in this lawsuit for Ambu. Dkt. ##11-

27  14. On December 6, 2007, LMA moved to disqualify Finnegan. Dkt. #17. Defying LMA's

28  requests that Finnegan not work on the case pending the Court's resolution of the

1  disqualification motion, and ignoring LMA's agreement to extensions and offers of additional

2  extensions, Ambu answered the complaint and filed invalidity and non-infringement

3  counterclaims on December 5, 2007 and January 30, 2008. Dkt. ##15, 39.

4       On February 25, 2008, this Court disqualified Finnegan. Dkt. #41. The Court found

5  that in a preliminary consultation, LMA "disclosed actual confidential information" to two

6  Finnegan attorneys about this very patent litigation and received legal advice in return. Order

7  at 10. Those circumstances "created an implied or temporary attorney-client relationship that

8  is sufficient to treat [LMA] as former clients of the Finnegan law firm." *Id.* As a result, the

9  two Finnegan attorneys were "automatically disqualified from representing [Ambu] in the

10 same litigation." *Id.* The Court rejected Ambu's attempt to avoid disqualification of other

11 Finnegan lawyers by erection of an ethical screen, holding that California does not permit

12 such screens in side-switching cases and noting that in any event, the screen in this instance

13 was deficient. *Id.* at 11-12 & n.8. As relief, the Court instructed Ambu to "promptly secure

14 new counsel" and ordered that Finnegan "shall not represent or assist [Ambu] with this

15 lawsuit" and "shall not consult or share work product with new counsel." *Id.* at 12-13.

16      The Disqualification Order requested "the Magistrate Judge to schedule [the Early

17 Neutral Evaluation Conference ("ENE")] on this matter in approximately 30 days." Order at

18 13. The Magistrate Judge scheduled the ENE for April 14, 2008, approximately 50 days after

19 the Disqualification Order. Dkt. #42. On March 17, 2008, Ambu filed papers substituting

20 Fenwick & West LLP ("Fenwick") as its new counsel in this case. On March 19, 2008, Ambu

21 filed a motion to continue the ENE for an additional 90 days, to June 16, 2008, to give

22 Fenwick "adequate time to analyze the patents-in-suit and to investigate Ambu's claims and

23 defenses." Dkt. #44, at 2-3. On March 25, 2008, the Magistrate Judge granted Ambu's

24 request for a continuance and rescheduled the ENE Conference to June 10, 2008 – almost the

25 full 90 days of requested preparation time. Dkt. #47.

26      On March 19, 2008, the same day that it asked to continue the ENE, Ambu filed this

27 motion to "clarify" the Disqualification Order, requesting the Court to allow Fenwick to

28 obtain from Finnegan "copies of all prior art documents in Finnegan's possession" and

1   "copies of all client documents provided to Finnegan for this case." Mem. 8. Ambu defines

2   "prior art documents" as "all third party documents in Finnegan's possession relating to prior

3   art" and asserts that "[s]uch material *may* include" (but is apparently not limited to) "copies

4   of patents, of third party product literature, or of scholarly publications." *Id.* at 2 (emphasis

5   added). Ambu broadly defines client documents as "all Ambu client documents provided to

6   Finnegan for this case." *Id.* at 1.

7   ## III.  ARGUMENT

8   **A.**     **Ambu Waived Any Right To Challenge The Scope Of The Disqualification**

9          **Order**

10         Early in the disqualification proceedings, LMA recognized that disqualifying

11  Finnegan would accomplish little towards protecting its confidential information if Finnegan

12  were not also barred from sharing that information, either directly or in the form of tainted

13  work-product, with Ambu's new counsel. Accordingly, LMA submitted a proposed order to

14  this Court prohibiting Finnegan not only from representing Ambu in this action, but also

15  from:

16         directly or *indirectly assisting Ambu* in connection with this lawsuit or any of
           the issues raised in this lawsuit; *consulting with any Ambu counsel* regarding
17         this lawsuit or any of the issues raised in this lawsuit; or *sharing any of its
           work product with any Ambu counsel* in this lawsuit.

18

19  LMA Proposed Order at 1 (emphasis added).

20         LMA reiterated its request for an order "forbidding Finnegan from consulting with

21  Ambu's new counsel or sharing any of its work product with Ambu's new counsel" in both

22  its opening (Dkt. #17, at 19) and reply briefs (Dkt. #28, at 10). Despite LMA's repeated and

23  explicit requests that Finnegan not be permitted to assist new counsel as Ambu now proposes,

24  Ambu never once challenged the scope of the proposed disqualification order, or raised

25  concerns about the clarity of its terms.

26         The Disqualification Order entered by the court closely tracks LMA's proposed order:

27  "Finnegan Henderson Farabow Garrett & Dunner, LLP shall not represent or assist

28  Defendants with this lawsuit and *shall not consult or share work product with new counsel.*"

1  Order at 13 (emphasis added). Ambu had every opportunity to challenge the scope of LMA's

2  proposed order in its opposition papers, but did not. It is too late to do so now. A motion for

3  reconsideration "may not be used to raise arguments or present evidence for the first time

4  when they could reasonably have been raised earlier in the litigation." *Carroll v. Nakatini*,

5  342 F.3d 934, 945 (9th Cir. 2003). Ambu filed multiple sets of court papers, including an

6  Opposition to LMA's Motion to Disqualify (Dkt. #23) and an *Ex Parte* Application for Leave

7  to Respond to Matters Raised for the First Time in Reply (Dkt. #32), in which it failed to

8  raise its arguments regarding the scope of the proposed disqualification order.

9          In the present motion, Ambu provides no justification for failing to raise its objections

10  to the proposed order in a timely fashion. Thus, Ambu has waived its right to challenge the

11  scope of the Disqualification Order.

12  **B.    Ambu's "Clarification" Request Is In Substance An Improper Motion For**

13  **Reconsideration**

14          Although styled as a motion for "clarification," Ambu admits that the Court's Order is

15  unambiguous. *See* Mem. 3, 4 ("literal reading" of Order bars turnover). Ambu does not think

16  that the Court's Order is unclear; it thinks that it is wrong. In particular, Ambu requests

17  reconsideration of the work-product quarantine requested by LMA in its opening

18  memorandum (Dkt. #17, at 19), repeated by LMA in its reply (Dkt. #28, at 10), and ordered

19  by the Court on February 25 (Order at 13). Ambu's motion is, in substance, an application for

20  reconsideration. As such, it is governed by Local Civil Rule 7.1(i)(1) and relevant Ninth

21  Circuit law. *See Brooks v. Alameida,* No. 04CV2069-H(CAB), 2006 WL 3068855, at *1

22  (S.D. Cal. Oct. 11, 2006) ("Motions for reconsideration are governed by Fed. R. Civ. P. 60(b)

23  and in this District, by Civil Local Rule 7.1(i)(1)-(2)."); *Khan v. Fasano,* 194 F. Supp. 2d

24  1134, 1135-36 (S.D. Cal. 2001) ("Under Federal Rule of Civil Procedure 59(e), 60(b) and

25  Local Rule 7.1(i)(1), the Court may reconsider and relieve a party from a final order.").

26  / / /

27  / / /

28  / / /

**1.    Ambu Fails to Meet the Requirements of Local Civil Rule 7.1(i)**

Local Civil Rule 7.1(i)(1) requires applications for reconsideration to state by affidavit "what new or different facts and circumstances are claimed to exist which did not exist, or were not shown, upon such prior application." CivLR 7.1(i)(1); *see also Dixon v. Robinson,* Civil No. 07-0553 LAB (CAB), 2007 WL 2700732, at *1, n. 1 (S.D. Cal. Sept. 12, 2007) (discussing Local Civil Rule 7.1(i)); *Aerus LLC v. Proteam, Inc.,* Civil No. 05-CV-1065-B(WMC), 2007 WL 2317273, at *1-2 (S.D. Cal. Aug. 8, 2007) (same).

Ambu does not include any affidavit (or declaration) in support of its motion. Ambu provides no affidavit on the volume of prior art or client documents it provided to Finnegan or when it provided them. Ambu provides no affidavit attesting to intervening changes in facts or law – because there are none. Application of Local Civil Rule 7.1(i)(1) is especially appropriate here, because not only does Ambu improperly request reconsideration without intervening change of fact or law, but it hints that it will do so again in the future. *See* Mem. 2 ("Ambu is not *at this time* asking for prior counsel's analysis . . . .") (emphasis added).

**2.    Ambu Does Not Provide Any New Facts to Support its Motion**

Ninth Circuit law firmly establishes that reconsideration is only appropriate "if the district court (1) is presented with newly discovered evidence, (2) committed clear error or the initial decision was manifestly unjust, or (3) if there is an intervening change in controlling law." *School Dist. No. 1J, Multnomah County, Oregon v. ACandS, Inc.,* 5 F.3d 1255, 1263 (9th Cir. 1993), *quoted in Asset Mktg. Sys. Ins. Serv., LLC, v. McLaughlin,* No. 06cv1176 JM(MCc), 2007 WL 3232507, at *1, n.1 (S.D. Cal. Nov. 1, 2007).

Ambu does not allege the Court's Disqualification Order is manifestly unjust, or that there has been an intervening change in controlling law. Thus, to meet the reconsideration standard, Ambu must present new evidence. However, a "motion for reconsideration cannot be based on evidence that could reasonably have been discovered prior to the court's ruling on the original motion." *Yearous v. Pacificare of California,* No. 07-CV-0574-H (RBB), 2007 WL 2700672, at *1 (S.D. Cal. Sept. 12, 2007). Here, Ambu not only fails to identify any new evidence discovered since the Disqualification Order, but instead relies on facts that

1    Ambu admits were known both to it and to Finnegan while the motion to disqualify was

2    pending. *See* Mem. 1 (Ambu seeks "firm copies of all Ambu documents *provided to*

3    *Finnegan* for this case") (emphasis added).

4        Ambu premises its requested relief on vague allegations that "Finnegan *might* have

5    relevant and discoverable documents" (Mem. 2) necessary for Ambu's new counsel to

6    prepare for the ENE Conference and comply with its discovery obligations (*id.* at 4). Yet,

7    Ambu ignores that Finnegan acquired these documents *before* the Court issued the

8    Disqualification Order – otherwise Ambu would have violated the Court's Order. Thus, the

9    fact that Finnegan possessed these purported "relevant and discoverable documents" was

10   well-known to both Ambu (who gathered and sent the documents) and to Finnegan (who

11   received them and presumably requested them). At the time LMA filed its motion to

12   disqualify, Finnegan had represented Ambu in this matter for nearly a year. Order at 4. Ambu

13   was well aware that Finnegan possessed documents which reflected its work-product. LMA

14   surmised as much and expressly sought an order barring Finnegan from sharing its work

15   product with new counsel. Subsequently, Ambu has no new facts on which to challenge those

16   provisions of the Disqualification Order.[1]

17       Nor should Ambu be permitted to address the scope of the Disqualification Order for

18   the first time in its reply brief, as it is Ambu's burden as the movant to initially meet the

19   reconsideration standard. Moreover, LMA should not be forced to speculate as to how Ambu

20   might argue to meet the reconsideration standard, particularly since Ambu likely made the

21   ///

22   ///

23

24       [1] Nor can Ambu claim that Finnegan did not fully represent Ambu's interests during
     the original briefing, and thus Ambu was unfairly prejudiced because this issue was somehow
25   overlooked. Ambu was represented in the disqualification motion not only by Finnegan, but
     also by local San Diego counsel (who was not the subject of the disqualification motion).
26   Finnegan itself was represented by its own ethics counsel. In light of how heavily lawyered
     the disqualification issue became, Ambu cannot credibly suggest that it could not foresee that
27   Finnegan might be disqualified. It chose only to challenge the proposed disqualification in its
     entirety, and has no new facts justifying its choice to wait until now to address the specific
28   terms of the Order.

1    strategic decision during the disqualification proceedings to omit disclosure of Finnegan's
2    substantial activities in preparing the case for almost a year. Such a disclosure would have
3    supported LMA's contention that Finnegan's work product was likely tainted with
4    confidential information supplied by LMA.

5          Ultimately, the Court's Order strikes the appropriate balance. If Finnegan generated
6    considerable amounts of work product, then Ambu's new counsel is appropriately barred
7    from accessing that work product because it is tainted by the confidential information
8    provided to Finnegan by LMA. Conversely, if Finnegan generated very little work product,
9    then Ambu's new counsel should have no problems replicating the work with little cost to
10   Ambu. Accordingly, Ambu's motion should be denied.

11   C.    **This Court Properly Barred Ambu's New Counsel From Using Any Work**
12         **Product Marshaled By Finnegan For Use Against LMA**

13         Even if Ambu's request to "clarify" the Court's Order prohibiting access to
14   Finnegan's work product should be considered on the merits, that request should be denied.
15   *First*, where, as here, a law firm is disqualified because it received confidential information
16   and gave legal advice to the opposing party in the very same case, the disqualified law firm
17   should be prevented from sharing work product that could reflect that confidential
18   information. *Second*, the prior art and client documents that Ambu wants Finnegan to provide
19   to Fenwick are clearly work product that could reflect LMA's confidential information.
20   *Third*, Ambu has failed to show any special circumstances necessitating access to Finnegan's
21   work product. Ambu's turnover request should be rejected as a matter of law.

22   1.    **A Law Firm that Is Disqualified Because It Received Confidential**
23         **Information and Rendered Legal Advice to the Opposing Party in the**
24         **Same Case Should Be Barred from Sharing Work Product with Successor**
25         **Counsel**

26         Courts repeatedly hold that disqualified firms whose attorneys were exposed to the
27   opposing party's confidential information may not turn over work product to successor
28   counsel. In *Quark, Inc. v. Power Up Software Corp.*, 812 F. Supp. 178, 180 (D. Colo. 1992),

the court held that "no work-product may be turned over to successor counsel" where the Wilson, Sonsini law firm was disqualified because one of its attorneys had previously been at a firm that represented the plaintiff on related matters. The court stressed that "[m]erely disqualifying the individual Wilson, Sonsini attorneys would not prevent any confidential information that found its way into their work-product from being used against plaintiff by successor counsel." *Id.* Although the court "recognize[d] that this ruling will work a financial hardship on defendants and deprive them of their longstanding counsel, there is no other way to ensure that information revealed to Durant in the [related] litigation will not be used against plaintiff here." *Id; see EZ Paintr Corp. v. Padco, Inc.*, 746 F.2d 1459, 1460-64 (Fed. Cir. 1984) (affirming an order forbidding disqualified counsel from giving successor counsel any work product where law firm was disqualified "because two newly-joined members of that firm had immediately prior to that joinder been partners in a law firm representing appellee EZ Paintr Corporation in this very litigation"); *Hallmark Cards, Inc. v. Hallmark Dodge, Inc.*, 616 F. Supp. 516, 521-22 (D. Mo. 1985) (disqualifying a side-switching lawyer's firm, prohibiting the transfer of all work product, and withdrawing all motions filed by the disqualified firm after the date the side-switching lawyer appeared on the pleadings).[2]

A prohibition against the use of a disqualified firm's work product is particularly warranted where, as here, disqualification is not based on a technical violation or a mere presumption that a law firm received relevant confidential information based on the movement of lawyers between firms, but on the fact that the law firm *actually received confidential information* and rendered legal advice to the opposing party *in the very same case. Cf. People ex rel. v. SpeeDee Oil Change Sys., Inc.*, 20 Cal. 4th 1135, 1147, 86 Cal. Rptr. 2d 816, 824 (1999) ("[t]he most egregious conflict of interest is representation of clients

---

[2] The cases in text are consistent with the typical practice of California courts to issue broad orders precluding disqualified counsel from assisting new counsel in any way. *See Cord v. Smith*, 338 F.2d 516, 526 (9th Cir. 1964) (directing that attorney who was disqualified on ground that he had represented defendant in matters relating to same transactions "shall not at any time, *directly or indirectly*, and whether as attorney of record or not, represent, counsel or advise plaintiff Calvin J. Smith in connection with said action") (emphasis added).

1    whose interests are directly adverse in the same litigation"). Ambu argues that "[w]here

2    disqualification is justified 'primarily . . . as a vindication of the integrity of the bar,' it is

3    appropriate for the Court to allow disqualified counsel to turn over documents to new

4    counsel, including work product." Mem. 6 (citing *Intern'l Bus. Mach. Corp. v. Levin*, 579

5    F.2d 271, 283 (3d Cir. 1978)). But in *Levin*, the law firm was disqualified because it

6    concurrently represented both parties on *unrelated* matters and there was no evidence that any

7    confidences relating to the lawsuit had been disclosed. *Id.* at 283. By contrast, in this case,

8    Finnegan received actual confidences relating to the issues, claims, and defenses in this

9    lawsuit. Where a law firm obtained actual confidences in the same case, a strict rule against

10   the sharing of work product is necessary to ensure protection of the client's confidences.

11           This conclusion is supported by the Court's rejection of an ethical screen in this case.

12   Just as a prohibition against ethical screens is necessary to ensure protection of a former

13   client's confidences where a law firm switched sides in the same case (*see* Order at 12), so

14   too is a prohibition against the use of that firm's work product. "The risk of inadvertent

15   disclosure of confidential information" is simply "too great and the appearance of divided

16   loyalty is too strong" to allow access to work product in such a case. Order at 12.  Such a

17   clear-cut rule not only protects the client's confidences, but saves the client and the judicial

18   system the additional time and expense of satellite litigation over new counsel's entitlement

19   to particular pieces of work product. As is the case with the rule against ethical screens, "a

20   prophylactic rule is the most effective measure to preserve the integrity of the judicial

21   system." Order at 11.

22           **2.    The Authorities Relied Upon By Ambu Do Not Support Access to**

23           **Disqualified Counsel's Work Product on the Facts of This Case**

24           The decisions on which Ambu relies do not concern tainted work product and thus

25   provide no authority for turning over the prior art and client documents marshaled by

26   Finnegan for use against LMA in this case. Ambu's leading case, *First Wis. Mortgage Trust*

27   *v. First Wis. Corp.*, 584 F.2d 201 (7th Cir. 1978) (en banc), was not a case where a law firm

28   switched sides in the same case. Instead, it involved a law firm that had originally (and

properly) represented a trust and its related entities. *Id*. at 202. When it became evident that conflicting positions were developing between the trust and its related entities, the law firm recommended that the trust retain separate counsel, but it continued to represent the related entities. *Id*. Unlike LMA, the former client in *First Wisconsin* conceded that the work product at issue was not influenced by any of its confidences. Thus, the majority explained that it had "no particular quarrel with the test proposed by the dissent," namely, "whether there exists a reasonable possibility of confidential information being used in the formation of, or being passed to substitute counsel through, the work product in question." *Id*. at 209. Instead, the majority held that the former client failed to meet that test because it effectively conceded "that the preparation of the loan file summaries [which was the work product at issue] was not aided by any confidential information acquired by the Foley lawyers through their prior relationship with Trust." *Id*. at 204, 209-10.

The facts of *Actel Corp. v QuickLogic Corp.*, No. C-94 20050 JW (PVT), 1996 U.S. Dist. LEXIS 11815 (N.D. Cal. Apr. 23, 1996), are also distinguishable. The law firm in that case was not disqualified because it switched sides at the outset of a lawsuit, but because mid-way through the suit, it mistakenly hired an attorney who had previously worked for opposing counsel's firm. *Id*. at *2-3. In allowing the successor firm to obtain the disqualified firm's files, the court appeared influenced by the fact that the disqualified law firm was longstanding counsel that had legitimately represented its client for more than two years, all before the conflict arose. *Id*. at *9. Because the conflict itself and the resulting disqualification in *Actel* occurred well into the case, the inability of successor counsel to obtain the disqualified firm's work product would have prejudiced the truly innocent client. *Id*. at *32. But here, the conflict arose at the very outset, as soon as Finnegan switched sides and chose to represent Ambu. Unlike in *Actel*, here Finnegan generated all its work product *after* obtaining LMA's confidential information. There was no lengthy pre-conflict period in which untainted work product was created, as in *Actel*. Thus, that case does not support allowing access to Finnegan's work product that from day one was tainted by Finnegan's knowledge of LMA's confidential information.

1  The three other cases cited by Ambu to support a turnover order are all inapposite,

2  because in none was it found that the disqualified lawyers had received confidences that

3  related to the current representation. *See EEOC v. Orson H. Gygi Co.*, 749 F.2d 620, 622

4  (10th Cir. 1984); *Levin*, 579 F.2d at 283; *Behunin v. Dow Chem. Co.*, 642 F. Supp. 870, 873-

5  74 (D. Colo. 1986). In fact, in both *Levin* and *Orson H. Gygi*, the courts found that the former

6  representations resulting in the lawyer's disqualification were *entirely unrelated* to their

7  previous representations. *See* 579 F.2d at 283; 749 F. Supp. at 622. Thus, in all three of the

8  cases there was absolutely no relevance to the information acquired by the disqualified

9  lawyers in the previous representation that was potentially harmful to the wronged client in

10  the subsequent representation. By contrast, here Finnegan received confidences from LMA

11  relating to this very litigation – including information relating to the issues, claims, and

12  defenses in the lawsuit and LMA's litigation and settlement strategies.    In these

13  circumstances, the Court properly barred Finnegan from turning over any and all work

14  product to its successor firm.[3]

15  / / /

16  / / /

17  / / /

18  / / /

19

20  [3]  Even if this Court did not adopt a rule prohibiting the turnover of any and all work product where the disqualified firm received confidential information from the opposing
21  party in the same case, at a minimum, the moving party should bear the burden of demonstrating that the requested work product does not contain or reflect any confidential
22  information. As the Texas Supreme Court explained in a case where attorneys were disqualified because they represented the client in a substantially related case, the trial court
23  should not "turn[] over any item of work product unless the current client proves that there is not a substantial likelihood that an item of work product contains or reflects confidential
24  information" *In re George*, 28 S.W.3d 511, 518 (Tex. 2000). The Texas court further held that "[t]his is a high burden, as it should be to faithfully preserve the former client's
25  confidences" and that to the extent the trial court is "unsure," the material should not be turned over to successor counsel. *Id.* at 518-19. Ambu has completely failed to show a
26  substantial likelihood that the requested work product does not contain or reveal confidential information obtained from LMA. To the contrary, as explained in the next section, the work
27  product could very well have been influenced by LMA's confidences. Accordingly, even under the *In re George* standard, Fenwick would not be allowed to obtain Finnegan's work
28  product.

**D.     The Materials Sought By Ambu Are Plainly Finnegan's Work Product**

Ambu argues that the prior art and client documents it seeks are not work product subject to the Disqualification Order because they are pre-existing documents and thus "cannot have been improperly influenced by any previously disclosed LMA confidential information" Mem. 3-5. That argument is specious for a number of reasons.

**1.     A Collection of "Prior Art" is Work Product**

To begin with, Finnegan's collection of "prior art" documents – which represent the fruits of Finnegan's research – are plainly work product that Fenwick should not see. Ambu seeks "all third party documents in Finnegan's possession relating to prior art," which it asserts "may include copies of patents, of third party product literature, or of scholarly publications, all of which are inherently public in nature" Mem. 2. According to Ambu, because all of the documents it seeks are "*prior* art" prepared by third parties (emphasis Ambu's), the documents "cannot have been influenced" by any of LMA's confidential information and thus do not constitute work product within the meaning of the Court's Order. Mem. 4-5.

Ambu's argument misses the point. It is not the prior art documents themselves that constitute work product and are likely to have been influenced by LMA's confidential information, but Finnegan's selection of them. Prior art searches conducted in anticipation of litigation unquestionably reflect the legal theories and conclusions of counsel. Conducting effective prior art searches necessarily requires strategic input from the counsel conducting the search. In any given field, the prior art can encompass numerous documents and things, including commercial products, issued patents, and published literature such as journal articles. *See* 35 U.S.C. § 102. Prior art searching is primarily conducted by reviewing documents on-line, and by sifting through hard copies of patents and publications in libraries. Efficiently culling this wide universe of documents down to the most relevant few requires the searcher to identify the most important issues in the litigation and target the search based on those issues. Thus, prior art searching is analogous to legal research, which also requires targeted searches based on the attorney's legal analysis of the facts and issues in the case.

1    Many cases may be reviewed, but the handful of publicly available authorities which the

2    attorney chooses to photocopy or reference in a legal research memorandum unquestionably

3    comprise the attorney's work product based on her legal theory and analysis of the case.

4    Because prior art searches are necessarily based on and reflect an attorney's mental

5    impressions and legal theories, courts have consistently held that the results of prior art

6    searches conducted in anticipation of litigation qualify as opinion work product. *See*

7    *Fresenius Med. Care Holding Inc. v. Baxter Int'l, Inc.*, 224 F.R.D. 644, 655 (N.D. Cal. 2004)

8    (finding "prior art that it has collected since the start of this litigation" is protected by work

9    product immunity); *Sawgrass Sys. Inc. v. BASF Aktiengesellschaft*, 1999 WL 358681, 50

10   U.S.P.Q.2d 1687, 1689-91 (E.D. Mich. 1999) (rejecting plaintiff's argument that "the

11   information concerning prior art is, by its very nature, publicly available, and thus not subject

12   to the work product doctrine"); *Applied Telematics, Inc. v. Sprint Commc'n Co., L.P.*, Civ. A.

13   No. 94-4603, 1996 WL 539595, at *8 (E.D. Pa. 1996) (compilation of "several prior art

14   patents" were entitled to protection of the work product doctrine); *Burroughs Wellcome Co.*

15   *v. Barr Labs., Inc.*, 143 F.R.D. 611, 624 (E.D.N.C. 1992) (the "printed results of database

16   searches" were protected by the attorney work product privilege); *Golden Trade, S.r.L. v.*

17   *Jordache*, 143 F.R.D. 508, 511-12 (S.D.N.Y. 1992) ("identification of items embodied in the

18   prior-art search" constituted protected work product).[4]

19   Accordingly, despite their "public" nature, the fruits of Finnegan's prior art searches

20   are clearly work product to which Ambu's successor firm should not be entitled. Those

21

22   _____

23   [4] None of the three cases cited by Ambu support a contrary conclusion. *See* Mem. 4-5
     (citing *Visa U.S.A., Inc. v. First Data Corp.*, Case No. C-12-1786, 2004 U.S. Dist. LEXIS

24   17117, *27-29 (N.D. Cal. Aug. 23, 2004), *U.S. ex rel. Bagley v. TRW, Inc.*, 212 F.R.D. 554,
     563-64 (C.D. Cal. 2003), and *Brown v. Hart, Schaffner & Marx*, 96 F.R.D. 64, 68 (N.D. Ill.

25   1982)). *Visa* and *Brown* stand only for the proposition that mere review by an attorney does
     not turn a business document into work product. And *Bagley* in fact supports LMA's position,

26   as the court specifically recognized that "the selection of documents does convey information
     about an attorney's mental impressions or strategy pertaining to a case, and therefore

27   constitutes opinion work product." *See* 212 F.R.D. at 563-64. Although the *Bagley* court
     allowed defendants to obtain certain pre-existing documents, it did so because the documents

28   were not at issue, since plaintiffs had already disclosed those documents to the defendants.
     *See id.* at 563.

1  searches specifically related to and were prepared in anticipation of this specific litigation,
2  and thus could have been influenced by the confidential information Finnegan received from
3  LMA regarding the issues, claims, and defenses in this case. *See* Order at 10 (LMA "revealed
4  confidential information concerning the subjects of . . . claim construction in relation to the
5  theory of their case . . . and . . . the Finnegan lawyers provided strategic legal advice on how
6  to proceed on those topics."). Because the results of Finnegan's prior art searches were based
7  on Finnegan's mental impressions and legal theories of this case, which in turn could have
8  been influenced by the confidential information it obtained from LMA, Ambu's successor
9  counsel should not be entitled to those searches. *See, e.g., EZ Paintr. Corp, 746 F.2d at 1463*
10 (noting the "significant danger that work product prepared after [the disqualified attorneys'
11 appearance] contains confidences"); *Quark,* 812 F. Supp. at 180 (confidential information
12 "necessarily seeps into the work-product" of an attorney).

13          **2.    A Collection of Client Documents is Also Work Product**

14          Like prior art searches, the selection and compilation of client documents by Finnegan
15 in preparation for this litigation constitute work product of the Finnegan firm. Ambu broadly
16 defines "client documents" as "all Ambu client documents provided to Finnegan for this
17 case." Mem. 1; *see also* Mem. 3 (requesting that the Court allow Fenwick "to obtain from
18 Finnegan all of the clients' documents that Finnegan has assembled and collected from the
19 clients"). Given the breadth and vagueness of Ambu's definition of "client" documents, it is
20 impossible to determine the extent to which they would reveal confidential information to
21 Fenwick. For example, it is not clear whether the documents all pre-date Finnegan's
22 involvement in this case or whether they include documents between Finnegan and Ambu
23 that specifically relate to this case. Even if the documents all pre-dated Finnegan's
24 involvement in this case, however, their selection and compilation by Finnegan constitute
25 work product to which Fenwick should not be entitled.

26          Courts have consistently recognized that counsel's selection and compilation of a
27 client's documents can reveal his or her mental impressions and legal theories regarding the
28 anticipated litigation and therefore constitute protected work product. *See In re Allen,* 106

-15-                                                    Case No. 07cv1988

1   F.3d 582, 608 (4th Cir. 1996) ("[attorney's] selection and compilation of these particular

2   documents reveals her thought processes and theories regarding this litigation"); *Sporck v.*

3   *Peil*, 759 F.2d 312, 316 (3d Cir. 1985) ("We believe that the selection and compilation of

4   documents by counsel in this case in preparation for pretrial discovery falls within the highly-

5   protected category of opinion work product."); *United States ex rel. Bagley v. TRW Inc.*, 212

6   F.R.D. 554, 564 (C.D. Cal. 2003) ("the selection of documents does convey information

7   about an attorney's mental impressions or strategy pertaining to a case, and therefore

8   constitutes opinion work product"); *James Julian, Inc. v. Raytheon, Co.*, 93 F.R.D. 138, 144

9   (D. Del. 1982) (binder of documents selected by counsel was protected from disclosure

10  because "the process of selection and distillation is often more critical than pure legal

11  research"); *see also* RESTATEMENT (THIRD) OF LAW GOVERNING LAWYERS § 87 cmt. f (2000)

12  ("[t]he selection or arrangement of documents that are not themselves protected" can "reflect

13  mental impressions and legal opinions inherent in making a selection or arrangement"). Thus,

14  "a lawyer's index of a client's preexisting and discoverable business files will itself be work

15  product if prepared in anticipation of litigation." RESTATEMENT at § 87 cmt. f.

16       In this case, Finnegan's requests for documents from Ambu, as well as its compilation

17  of certain documents in groups, could very well have been influenced by LMA's confidential

18  information. In requesting specific documents, Finnegan necessarily exercised judgment

19  based on its theories and strategies regarding the case. There is a substantial risk that the

20  strategies and theories relied upon by Finnegan in requesting the documents were influenced

21  by the confidential information provided by LMA. Permitting Ambu's new counsel to obtain

22  the documents selected and compiled by Finnegan thus risks communicating LMA's

23  confidential information to Ambu's new counsel. Accordingly, Finnegan's selection and

24  compilation of client documents constitute work product to which Ambu's successor counsel

25  should not be entitled.

26  / / /

27  / / /

28  / / /

**E.    Ambu Has Failed To Demonstrate Any Compelling Need For The Requested Work Product**

As demonstrated above, where, as here, a law firm is disqualified because it received confidential information from the opposing party in the very same case, a quarantine of potentially infected work product is necessary to protect the former client's confidences. Even if the disqualified law firm's later client could show special circumstances to obtain quarantined work product, Ambu has failed to make any showing that justifies access to Finnegan's work product here.

To begin with, Ambu has failed to demonstrate any need to obtain the prior art searches conducted by Finnegan. By its very definition, prior art is publicly available material that can be located through traditional search methods. *See* 35 U.S.C. §102. Ambu itself characterizes the prior art it seeks as "inherently public in nature." Mem. 2. As a result, Fenwick "should have no problem obtaining the information through its own prior art search." *Sawgrass,* 50 U.S.P.Q.2d at 1690. Indeed, LMA has recently decided to drop one of the two original patents-in-suit from the litigation, substantially simplifying the matter for Ambu. While Ambu claims that "not having to search for [the prior art] and gather it anew will save considerable expense," it fails to provide any evidentiary support for that assertion such as a client declaration establishing the volume of prior art Finnegan compiled and how much it cost to develop. Mem. 4.

Nor has Ambu shown that it has any need for Finnegan to provide Fenwick with the client documents that Finnegan marshaled for use against LMA. Ambu merely asserts in conclusory fashion that it "needs" the documents "in order to comply with its discovery obligations." Mem. 3. But Ambu never explains why its successor counsel cannot do its own document search and obtain any documents it needs directly from Ambu. Ambu does not represent that it gave Finnegan originals of any of the documents it now seeks. And Ambu provides no client declaration quantifying the burden of recopying the documents. Thus,

///

///

1    Ambu has failed to demonstrate that it would suffer any substantial hardship from denying

2    Fenwick access to the documents.[5]

3    Accordingly, even if need could justify turnover of a tainted firm's work product,

4    Ambu has failed to show any compelling need to obtain Finnegan's work product. Indeed,

5    any burden on Ambu is likely to be minimal, given that this litigation is at its beginning

6    stages, discovery has not even begun, and the Magistrate Judge gave successor counsel

7    almost the entire 90-day extension that Ambu requested as additional time to prepare for the

8    case. The extension provides Ambu's new counsel more than enough time to gather client

9    documents, conduct a thorough prior art search and prepare its defenses. Indeed, the time

10   granted by the extension, combined with the additional time Ambu's new counsel has already

11   received as a result of the Disqualification Order, *exceeds the time a defendant normally has*

12   *to answer a complaint and prepare for an ENE Conference*. What is more, there is no need or

13   reason for Fenwick to have all its prior art searches or its client's document production

14   completed by the time of the ENE Conference.

15   **F.    Ambu Ignores The Substantial Harms Already Suffered By LMA As A Result Of**

16   **Finnegan's Conflict Of Interest**

17   While Ambu claims that it is unfair to "burden[] [it] when it is not at fault for

18   Finnegan's conduct" (Mem. 5), that plea is wholly unsupported and ignores the undisputed

19   _____

20   [5]  Notably, the federal courts routinely refuse to allow parties to rely on conclusory
     assertions to support claims of discovery burden, but instead require detailed evidentiary
21   proof. *See, e.g., Thomas v. Hickman*, No. 1:06-cv-215, 2007 WL 4302974, at *6 (E.D. Cal.
     Dec. 6, 2007) ("The objecting entity must state specifically how, despite the broad and liberal
22   construction of federal discovery rules, each question is overly broad, unduly burdensome, or
     oppressive by submitting affidavits or offering evidence revealing the nature of the burden");
23   *Columbia Pictures Indus., Inc. v. Bunnell*, No. CV 06-1093 FMC(JCx), 2007 WL 4916964, at
     *5 (C.D. Cal. May 3, 2007) ("general or boilerplate objections such as 'overly burdensome
24   and harassing' are improper-especially when a party fails to submit any evidentiary
     declarations supporting such objections"); *Micron Tech., Inc. v. Tessera, Inc.*, No. C06-80093
25   Misc. JW (HRL), 2006 WL 1646132, at *2 (N.D. Cal. June 14, 2006) ("Bald statements of
     counsel that a subpoena is unduly burdensome, unsupported by affidavits or evidence, are
26   unhelpful."); *Holmes v. Teer*, No. CIV S-04-1308DFLPANP, 2006 WL 1550201, at *2 (E.D.
     Cal. May 31, 2006) ("Federal courts reject claims of burdensomeness which are not
27   supported by a specific, detailed showing, usually by affidavit, of why weighing the need for
     discovery against the burden it will impose permits the conclusion that court should not allow
28   it.").

prejudice to LMA. To begin with, it is not so clear how "innocent" Ambu actually is. This is not a case of a new attorney joining Finnegan and tainting the whole firm unbeknownst to the hapless client. Finnegan switched sides, and it is very possible that Ambu was informed of Finnegan's consultation with LMA – and thus knew of the possible disqualification risks – from the very beginning. Ambu provided no declaration on this point. Additionally, to the extent that Finnegan engaged in substantial work prior to the filing of the complaint, that work likely benefited not only from LMA's confidences but from Finnegan's knowledge that LMA was planning to sue imminently. Thus, the Disqualification Order merely prevents the unfair advantage and unjust enrichment Ambu obtained as a result of Finnegan's consultation with LMA. To the extent that Ambu is forced to incur additional expenses in re-doing Finnegan's work, it can take up that matter with Finnegan.

By contrast, LMA is a completely innocent party and has suffered substantial prejudice as a result of Finnegan's representation of Ambu. In addition to the risk that its confidential information has been used against it, LMA has been forced to expend considerable attorneys' fees (for which it has not been reimbursed) as a result of the disqualification litigation. LMA has also suffered a substantial delay in its case. LMA filed this lawsuit on October 15, 2007. Almost six months later, the parties have yet to establish even a discovery schedule. Instead, LMA has had to engage in a lengthy process to disqualify Ambu's conflicted counsel during which time Ambu has continued to harm LMA in the marketplace by infringing LMA's patent. LMA should not be forced to expend any more time or expense litigating the disqualification issues, including the satellite work product issues. Indeed, Ambu's memorandum suggests that this may not be its last word on the subject. *See* Mem. 2 (asserting that "Ambu is not *at this time* asking for prior counsel's analysis of such material") (emphasis added).

In sum, any inconvenience or expense that Ambu might incur by having to redo its conflicted counsel's work product is outweighed by the need to protect LMA's confidences and ensure that Ambu does not obtain an unjust advantage from the use of such confidences.

/ / /

## IV. <u>CONCLUSION</u>

Based on the foregoing, Ambu's motion for "clarification" of the Disqualification Order to allow Finnegan to share its work product with Fenwick should be denied in its entirety.

Respectfully submitted,

KNOBBE, MARTENS, OLSON & BEAR, LLP


Dated: April 4, 2008

By: s/Frederick S. Berretta
John B. Sganga
jsganga@kmob.com
Frederick S. Berretta
fred.berretta@kmob.com
Joshua J. Stowell
joshua.stowell@kmob.com

Attorneys for Plaintiffs
THE LARYNGEAL MASK COMPANY LTD.
and LMA NORTH AMERICA, INC.

**CERTIFICATE OF SERVICE**

I hereby certify that on April 4, 2008, I caused the foregoing **PLAINTIFFS' OPPOSITION TO AMBU'S MOTION FOR CLARIFICATION OF ORDER GRANTING PLAINTIFFS' MOTION TO DISQUALIFY FINNEGAN HENDERSON FARABOW GARRETT & DUNNER, LLP AS DEFENDANTS' COUNSEL** to be electronically filed with the Clerk of the Court using the CM/ECF system which will send electronic notification of such filing to the applicable registered filing users.

Darryl M. Woo
FENWICK & WEST LLP
555 California Street, 12th Floor
San Francisco CA 94104
dwoo@fenwick.com
T: 415-875-2300
F: 415-281-1350

I declare that I am employed in the office of a member of the bar of this Court at whose direction the service was made.

Dated: April 4, 2008

Megan Ptacin

5041085:///df1
040308

-21-                                            Case No. 07cv1988