DARRYL M. WOO (CSB NO. 100513)
CHARLENE M. MORROW (CSB NO. 136411)
RYAN J. MARTON (CSB NO. 223979)
BRYAN A. KOHM (CSB NO. 233276)
DENNIS M. FAIGAL (CSB NO. 252829)
FENWICK & WEST LLP
555 California Street, 12th Floor
San Francisco, CA 94104
Telephone: (415) 875-2300
Facsimile: (415) 281-1350

Attorneys for Defendants
AMBU A/S, AMBU INC. and AMBU LTD.

FENWICK & WEST LLP
ATTORNEYS AT LAW
MOUNTAIN VIEW

## UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| THE LARYNGEAL MASK COMPANY LTD. and LMA NORTH AMERICA, INC., <br><br> Plaintiffs, <br><br> v. <br><br> AMBU A/S, AMBU INC. and AMBU LTD. <br><br> Defendants. | Case No. 3:07-CV-01988 DMS-NLS <br><br> **DEFENDANTS AMBU A/S, AMBU INC. and AMBU LTD. RESPONSIVE CLAIM CONSTRUCTION BRIEF** <br><br> **Judge:** Hon. Dana M. Sabraw <br> **Date:** January 26, 2009 <br> **Time:** 9:00 a.m. <br> **Courtroom:** 10, 2nd Floor |
| AMBU A/S, AMBU INC. and AMBU LTD., <br><br> Counterclaimants, <br><br> v. <br><br> THE LARYNGEAL MASK COMPANY LTD. and LMA NORTH AMERICA, INC., <br><br> Counter-Defendants. | |

**Page(s)**

I.     INTRODUCTION ........................................................................................ 1

II.    APPLICABLE LEGAL STANDARDS ...................................................... 2

       A.    Claim Terms at the Center of Infringement or Invalidity Disputes Must Be
             Construed ......................................................................................... 2

       B.    Claim Terms Cannot Be Broader Than the Invention Described in the
             Specification .................................................................................... 3

       C.    Proper Role of Expert Testimony ...................................................... 5

III.   PROPER CONSTRUCTION OF THE '100 PATENT ............................... 6

       A.    The Court Should Adopt Ambu's Proposed Construction of the Term
             "Backplate" as Used in Claim 1 ...................................................... 6

             1.    LMA's Proposed Construction is Contrary to the Specification ............... 6

             2.    The Prosecution History Does Not Support LMA's Proposed
                   Construction ........................................................................ 10

             3.    LMA's Construction is Inconsistent with the Accepted Meaning of
                   the Term Backplate and Its Own Use of the Term.................................. 11

             4.    Ambu's Construction of "Cuff Being Attached to the Backplate" as
                   Used in Claim 1 Does Not Improperly Import a Method Limitation ....... 13

       B.    The Court Should Adopt Ambu's Construction of the Claim 1's Phrase "At
             Least a Portion of the Posterior Portion of a Wall of the Cuff in the Distal
             Region Being Thicker and Dtiffer than other Portions of the Cuff.".................... 15

             1.    LMA's Proposed Construction for the Claim Phrase Contradicts the
                   Intrinsic Evidence.................................................................. 15

             2.    The Reinforcement of the Cuff's Wall Must be Thicker and Stiffer
                   than Any Other Portion of the Cuff's Wall .............................................. 19

       C.    LMA's Proposed Construction of the Phrase "Distal Rib" from Claim 3
             Both Runs Afoul of the Prior Art and Contradicts the Ordinary Meaning of
             the Term "Rib.".................................................................................... 21

       D.    LMA's Proposed Construction of the Phrase "Longitudinal Distal Rib"
             from Claim 4 Would Make the Term "Longitudinal" Superfluous ..................... 23

       E.    LMA's Proposed Construction of the Phrase "Proximal Portion of the
             Passage" and "Passage Axis" Renders Claim 6 Indefinite ................................. 24

       F.    Ambu's Proposed Construction for the Term "More Compliant than the
             Backplate" in Claim 2 Reinforces its Plain Meaning............................................ 25

       G.    There Are No Disputes Regarding the Remaining Claim Terms ........................ 25

IV.    CONCLUSION.......................................................................................... 25

FENWICK & WEST LLP
ATTORNEYS AT LAW
MOUNTAIN VIEW

DEFENDANTS' RESPONSIVE CLAIM
CONSTRUCTION BRIEF

i

CASE NO. 3:07-CV-01988-DMS-NLS

## CASES

Page(s)

*Anchor Wall Sys., Inc. v. Rockwood Retaining Walls, Inc.*,
340 F.3d 1298 (Fed. Cir. 2003).................................................................. 4, 8

*Atmel Corporation v. Information Storage Devices*,
198 F.3d 1374 (Fed. Cir. 1999).................................................................. 5

*Bandag, Inc. v. Al Boser's Tire Stores, Inc.*,
750 F.2d 903 (Fed. Cir. 1984).................................................................. 14

*B-K Lighting, Inc. v. Vision3 Lighting*,
2008 U.S. Dist. LEXIS 96940 (C.D. Cal. March 13, 2008) ........................ 6

*Burr v. Duryee*,
68 U.S. 531 (1863) ...................................................................................... 25

*C.R. Bard, Inc. v. U.S. Surgical Corp.*,
388 F.3d 858 (Fed. Cir. 2004).................................................................. 7, 9, 10

*Cat Tech LLC v. Tubemaster, Inc.*,
528 F.3d 871 (Fed Cir. 2008).................................................................. 22

*Cf. In re Nuitjen*,
500 F.3d 1346 (Fed. Cir. 2007).................................................................. 25

*Chimie v. PPG Indus., Inc.*,
402 F.3d 1371 (Fed. Cir. 2005).................................................................. 11

*Conoco, Inc. v. Energy & Envt'l, L.C*,
460 F.3d 1349 (Fed. Cir. 2006).................................................................. 23

*Curtiss-Write Flow Control Corp. v. Velan, Inc.*,
438 F.3d 1374 (Fed. Cir. 2006).................................................................. 4

*Decision.com, Inc. v. Federated Dep't Stores, Inc.*,
527 F.3d 1300 (Fed. Cir. 2008).................................................................. 4

*Exxon Res. & Eng'g Co. v. United States*
265 F. 3d 1371 (Fed. Cir. 2001).................................................................. 21, 25

*Honeywell Int'l, Inc. v. ITT Indus., Inc.*,
452 F.3d 1312 (Fed. Cir. 2006).................................................................. 5, 10, 11, 20

*Honeywell, Inc. v. ITC*,
341 F.3d 1332 (Fed. Cir. 2003).................................................................. 22, 25

*Johnson Worldwide Assocs. v. Zebco Corp.*,
175 F.3d 985 (Fed. Cir. 1999).................................................................. 4

*Kumar v. Ovonic Battery Co. Inc.*,
351 F.3d 1364 (Fed. Cir. 2003).................................................................. 12

*Mangosoft, Inc. v. Oracle Corp.*,
525 F.3d 1327 (Fed. Cir. 2008).................................................................. 3, 5

*Markman v. Westview Instruments, Inc.*,
52 F.3d 967 (Fed. Cir. 1995).................................................................. 1, 7

FENWICK & WEST LLP
ATTORNEYS AT LAW
MOUNTAIN VIEW

DEFENDANTS' RESPONSIVE CLAIM
CONSTRUCTION BRIEF

ii

CASE NO. 3:07-CV-01988-DMS-NLS

Page(s)

*Microsoft Corp. v. Mutli-Tech Sys., Inc.,*
357 F.3d 1340 (Fed. Cir. 2004)..................................................... 5, 10

*Miken Composites, L.L.C. v. Wilson Sporting Goods Co.,*
515 F.3d 1331 (Fed. Cir. 2008)..................................................... 14, 23

*Multiform Desiccants v. Medzam, Ltd.,*
1995 U.S. Dist. LEXIS 18548 (W.D.N.Y. Dec. 7, 1995) ................. 15

*N. Am. Container v. Plastipak Packaging, Inc.,*
415 F.3d 1335, 1345 (Fed. Cir. 2005) ........................................... 22

*Nystrom v. Trex Co.,*
424 F.3d 1136, 1145 (Fed. Cir. 2005) ..................................... 6, 9, 10

*O2 Micro Int'l Ltd. v. Beyond Innovation Tech. Co., Ltd.,*
521 F.3d 1351 (Fed. Cir. 2008)............................................ 2, 16, 23

*On Demand Machine Corp. v. Ingram Industries, Inc.,*
442 F.3d 1331 (Fed. Cir. 2006) ......................................... 3, 5, 7, 21

*Pfund v. United States,*
40 Fed. Cl. 313 (Fed. Cl. 1998) ................................................... 15

*Phillips v. AWH Corp.,*
415 F.3d 1303 (Fed. Cir. 2005)............................................... passim

*Plant Genetic Sys., N.V. v. Dekalb Genetics Corp.,*
315 F.3d 1355 (Fed. Cir. 2003) ................................................... 13

*S.A.R.L. v. T-Mobile USA, Inc.,*
450 F.3d 1350 (Fed. Cir. 2006)..................................................... 3

*Seachange Int'l, Inc. v. C-COR Inc.,*
413 F.3d 1361 (Fed. Cir. 2005)............................................... 2, 16

*Texas.Digital Sys., Inc. v. Telegenix Inc.,*
308 F.3d 1193 (Fed. Cir. 2002)................................................. 4, 8

*Tuna Processors, Inc. v. Haw. Int'l Seafood, Inc.,*
2007 U.S. Dist. LEXIS 77396 (D. Haw. Oct. 17, 2007)................... 15

*V-Formation, Inc. v. Benetton Group Spa,*
401 F.3d 1307 (Fed. Cir. 2005)..................................................... 9

*Vitronics Corp. v. Conceptronic, Inc.,*
90 F.3d 1576 (Fed. Cir. 1996) ..................................................... 7

FENWICK & WEST LLP
ATTORNEYS AT LAW
MOUNTAIN VIEW

# I.   **INTRODUCTION**

LMA's briefing to the Court seems to suggest that the laryngeal mask designs at issue in this lawsuit have been the subject of extensive peer-reviewed publications and their safety well-established. The fact LMA left out of that discussion is that the LMA devices sold to date have never used the invention(s) of the '100 patent. Faigal Decl. ¶ 2, Ex. A (LMA Response to Ambu Interrogatory No. 6) ("LMA has not manufactured or sold any products covered by any claims of the '100 patent"). Accordingly, this patent dispute is about an invention that not even LMA has deployed.

Separate and apart from the question of the value of the patented invention is the question of its scope. LMA has in a number of instances suggested constructions to the Court that, instead of providing meaning to the claim limitations, read them as if they were not in the claims at all. In addition, LMA attempts to confuse the Court with extensive citation to cases applying claim construction rules that were overruled some time ago. LMA also advances misleading legal arguments about not reading in limitations from the specification, and about apparatus vs. method claims, issues that are not in fact problems with the constructions advanced by Ambu.

Simply put, this Court's task is to construe the disputed claim terms based on a close reading of the specification. *Phillips v. AWH Corp.*, 415 F.3d 1303, 1315-17 (Fed. Cir. 2005) (*en banc*) ("The descriptive part of the specification aids in ascertaining the scope and meaning of the claims inasmuch as the words of the claims must be based on the description. The specification is, thus, the primary basis for construing the claims.") (quoting *Standard Oil v. Am. Cyanamid Co.*, 774 F.2d 447, 452 (Fed. Cir.1985)). In fact, the specification acts as a "dictionary, which explains the invention and may define terms used in the claims." *Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 979 (Fed. Cir. 1995).

LMA's attempt to mislead the Court into believing that any reliance on the specification improperly reads limitations into the claims, should be rejected; the modern rule is that the specification is the "single best guide to the meaning of a disputed term" and "[u]sually *it is dispositive.*" *Phillips*, 415 F.3d at 1315 (quoting *Vitronics Corp. v. Conceptronic*, 90 F.3d 1576, 1582 (Fed. Cir. 1996)) (emphasis added). It is not error to follow the Federal Circuit's guidance.

FENWICK & WEST LLP
ATTORNEYS AT LAW
MOUNTAIN VIEW

## II.    APPLICABLE LEGAL STANDARDS

### A.    Claim Terms at the Center of Infringement or Invalidity Disputes Must Be Construed

LMA attempts to lead the Court into error by asking it not to construe certain claim terms despite the fact that it admits they are material to a non-infringement dispute. Where the meaning of the phrase is in dispute and if the question of infringement will turn on the meaning of the phrase, it must be construed by the court. In fact, the Federal Circuit has repeatedly reversed jury verdicts where the district court judge declined to construe a claim term or instructed the jury that only the ordinary meaning of the claim term need apply. *See, e.g., O2 Micro Int'l Ltd. v. Beyond Innovation Tech. Co., Ltd.*, 521 F.3d 1351 (Fed. Cir. 2008); *Seachange Int'l, Inc. v. C-COR Inc.*, 413 F.3d 1361 (Fed. Cir. 2005). In *O2 Micro*, the Federal Circuit held that the district court erred by failing to construe the term "only if." *O2 Micro*, 521 F.3d at 1361-1362. Despite the plaintiff's argument that "only if" is a common term that should not be construed, the court held that the district court erred by not construing the term because the parties disputed its meaning, and that dispute was relevant to whether there was infringement. In other words, it is not enough to say that a claim term has an ordinary meaning, if there is a material dispute over the application of that term. Similarly, in *Seachange*, the Federal Circuit recognized that the defendant was prejudiced by the district court's failure to construe the term "distributed computer system," and as a result reversed the denial of a new trial on infringement. 413 F.3d at 1365.

LMA's contention that only the terms "backplate," "cuff," and "distal rib" must be construed would thus lead the Court into error. Pl.'s Opening Claim Construction Brief at 9. Ambu disagrees with LMA on the construction of the terms "distal region," "the cuff being attached to the backplate," "at least a portion of the posterior portion of a wall of the cuff in the distal region being thicker and stiffer than other portions of the cuff," "more compliant than the backplate," "proximal portion of the passage," and "passage axis," and since the meaning of these terms are at issue in various non-infringement and invalidity arguments, the Court should

FENWICK & WEST LLP
ATTORNEYS AT LAW
MOUNTAIN VIEW

1    construe these terms.[1]

2    **B.    Claim Terms Cannot Be Broader Than the Invention Described in the**
3    **Specification**

4         Because LMA's proposed construction of a number of terms is divorced from the

5    specification and broader than described therein, it must be rejected.  It is well established that

6    claim terms must be construed in light of the specification, as it is the "single best guide to the

7    meaning of a disputed term," and "[u]sually it is dispositive." *Phillips*, 415 F.3d at 1315 quoting

8    *Vitronics Corp. v. Conceptronic*, 90 F.3d 1576, 1582 (Fed. Cir. 1996)).  Although a patent's scope

9    is not necessarily limited to an embodiment discussed in the specification, "neither do the claims

10   enlarge what is patented beyond what the inventor has described as his invention." *Inpro II*

11   *Licensing S.A.R.L. v. T-Mobile USA, Inc.*, 450 F.3d 1350, 1355 (Fed. Cir. 2006) .  This means that

12   "the scope of and outer boundary of claims is set by the patentee's description of his invention."

13   *On Demand Machine Corp. v. Ingram Industries, Inc.*, 442 F.3d 1331, 1338 (Fed. Cir. 2006)

14   (citing *Philips*, 415 F. 3d at 1313-14).  Put another way, "the claims cannot be of broader scope

15   than the invention that is set forth in the specification." *Id*. at 1340.

16        If a claim term is repeatedly and consistently used in the specification to include a certain

17   structure, the claim term must be construed to include the structure even if it is not explicitly

18   recited in the claim language. *See e.g., On Demand Machine Corp.*, 442 F.3d at 1339-40 (Federal

19   Circuit reversed a district court's broad interpretation of the term "customer" as not limited to a

20   *retail* customer, where the specification "repeatedly reinforce[d] its usage of the term 'customer'

21   as the retail customer"); *Mangosoft, Inc. v. Oracle Corp.*, 525 F.3d 1327, 1330 (Fed. Cir. 2008)

22   ("[Plaintiff's] construction would read 'local' to mean something beyond the breadth of anything

23   in the claims or specification . . . .  The problem is that nothing in the intrinsic record describes or

24   supports such an expansive meaning.").

25        The rule that LMA cites on not reading in new claim limitations from the specification is

26   not violated by construing terms already in the claims in light of the specification.  For example,

27   [1]  LMA has not identified any infringement or validity issues for which the remaining claim
     terms "laryngeal inlet," "at least a portion," "posterior," "anterior surface," and "acute," are
28   relevant.  These terms, thus, do not appear to require construction by the Court at this time.

FENWICK & WEST LLP
ATTORNEYS AT LAW
MOUNTAIN VIEW

1  in *Curtiss-Write Flow Control Corp. v. Velan, Inc.*, 438 F.3d 1374, 1378-80 (Fed. Cir. 2006), the

2  Federal Circuit found "commendable" the district court's reluctance to narrow the claims to the

3  preferred embodiment. *Id.* at 1379. However, it overruled a generic construction of the term

4  "adjustable" as found in a dictionary and explained that "this *case does not evince a situation*

5  *where a party is attempting to import a limitation from the specification into the claims.* Claim

6  14 already contains the 'adjustable' limitation. … In light of the specification the term

7  'adjustable' means that the dynamic, live loaded seat can be adjusted while the de-heading system

8  of claim 14 is in use.") *Id.* at 1379-80 (emphasis added).

9     The *Phillips en banc* decision of the Federal Circuit overruled a line of prior cases from

10  the Federal Circuit that applied the broadest possible plain English meaning of claim terms to

11  them unless there was a "clear disavowal" of that meaning in the specification, and instead placed

12  ultimate emphasis on the meaning of the specification. *Phillips* stated that the discredited

13  approach had resulted in "unduly expansive" claim constructions. *Phillips*, 415 F.3d at 1321. In

14  an apparent attempt to lead the Court into error, LMA cites extensively from cases applying this

15  outdated rule. Specifically, LMA cites *Anchor Wall Sys., Inc. v. Rockwood Retaining Walls, Inc.*,

16  340 F.3d 1298 (Fed. Cir. 2003),[2] and *Johnson Worldwide Assocs. v. Zebco Corp.*, 175 F.3d 985

17  (Fed. Cir. 1999), to support its overbroad constructions. LMA's attempt to lure the Court into

18  adopting unduly broad claim constructions by virtue of reliance on outdated authority should be

19  rejected.[3]

20     Cases applying the *Phillips* analysis are plentiful at this point, and show that the Court is

21  in fact to construe the claim terms to give them the meanings found in the patent specification.

22  *E.g., Decision.com, Inc. v. Federated Dep't Stores, Inc.*, 527 F.3d 1300, 1307-1308 (Fed. Cir.

23  2008) (construing the term "remote interface" as excluding consumer-owned personal computers,

[2]  *Anchor Wall Sys.* relies on *Texas.Digital Sys., Inc. v. Telegenix Inc.*, 308 F.3d 1193, 1202 (Fed. Cir. 2002). However, in *Phillips*, the Federal Circuit disapproved of the *Texas Digital* line of cases and the clear disavowal rule as one that "improperly restricts the role of the specification in claim construction." *Phillips*, 415 F.3d 1303, 1320. *Johnson* applied this same discredited rule.

[3]  LMA also cites a case, *American Academy of Science Tech. Center*, 367 F.3d 1359, 1369 (Fed. Cir. 2004), that itself recognizes it is applying a different rule for claim construction than that to be applied by district court judges.

FENWICK & WEST LLP
ATTORNEYS AT LAW
MOUNTAIN VIEW

1   because features important for achieving the invention's stated purpose would not be associated

2   with such computers); *Honeywell Int'l, Inc. v. ITT Indus., Inc.*, 452 F.3d 1312, 1317-19 (Fed. Cir.

3   2006) (limiting the term "fuel injection system component" to "fuel filter," where a fuel filter was

4   the only component disclosed in the written description and was described as the "present

5   invention"); *Microsoft Corp. v. Mutli-Tech Sys., Inc.*, 357 F.3d 1340 (Fed. Cir. 2004) (limiting

6   claims to communication over a telephone network because no mention of digital networks was

7   made); *On Demand* , 442 F.3d at 1339-1340 (limiting the term "customer" to mean a retail

8   customer where the specification repeatedly reinforced such meaning); *Mangosoft*, 525 F.3d at

9   1330 (limiting the term "local" to the network described in the intrinsic record).

10      LMA also erroneously attempts to give the '100 patent additional claim scope by referring

11  to the oft used language in a patent that purports to disclaim that the patent is restricted to the

12  disclosed embodiments. Pl.'s Opening Claim Construction Brief at 16 n.7. However, such

13  language does not broaden the scope of the claims beyond what is actually taught in the

14  specification. *See Atmel Corporation v. Information Storage Devices*, 198 F.3d 1374, 1382 (Fed.

15  Cir. 1999) (during claim construction, the knowledge of one of the ordinary skill in the art cannon

16  substitute for, but "may only be employed in relation to structure that is disclosed in the

17  specification.").

18      ## C.   Proper Role of Expert Testimony

19      In addition to the intrinsic evidence, courts have discretion to refer to extrinsic evidence to

20  guide and instruct when construing patent claim terms. *See Phillips*, 415 F.3d at 1318-19

21  ("[E]xtrinsic evidence in the form of expert testimony can be useful to a court for a variety of

22  purposes . . . ."). It is appropriate for the trial court to refer to expert testimony "to provide

23  background on the technology at issue, to explain how an invention works, to ensure that the

24  court's understanding of the technical aspects of the patent is consistent with that of a person of

25  skill in the art, or to establish that a particular term in the patent or the prior art has a particular

26  meaning in the pertinent field." *Id.* at 1318. Accordingly, it is appropriate for the Court to refer

27  to the declarations of Dr. Samsun Lampotang when construing the disputed claim terms. *B-K*

28  *Lighting, Inc. v. Vision3 Lighting*, 2008 U.S. Dist. LEXIS 96940 at **24-25 (C.D. Cal. March 13,

FENWICK & WEST LLP
ATTORNEYS AT LAW
MOUNTAIN VIEW

2008).

III.   **PROPER CONSTRUCTION OF THE '100 PATENT**

  A.   **The Court Should Adopt Ambu's Proposed Construction of the Term "Backplate" as Used in Claim 1**

The Court should construe the term "backplate" to mean "[t]he relatively rigid mask structure of a laryngeal mask airway device, separate from the airway tube to which it is attached at a tube joint and on which a separate inflatable cuff is made fast, as by gluing or welding together the two separate items." Defendants' Opening Claim Construction Brief at 12.   This construction properly comports with the specification, which consistently describes the backplate as including a tube joint and describes it as being separate from, but attached to, the cuff.   Dr. Lampotang Opening Decl. ¶ 35, Ex. C ('100 patent, col. 1, lns. 56-58; col. 7, lns. 58-61); *see also* Declaration of Dr. Samsun Lampotang in Support of Defendants' Responsive Claim Construction Brief ("Dr. Lampotang Resp. Decl."), ¶¶ 24, 27.

  1.   **LMA's Proposed Construction is Contrary to the Specification**

LMA's proposed construction "backplate," on the other hand, is contrary to the specification.   LMA's proposed construction of 'backplate" would result in claim 1 covering a broader invention than that described in the specification, and thus must be rejected.   LMA itself recognizes this problem and attempts to explain it away by asserting that those detailed discussions of the "backplate" in the specification should just be disregarded.   LMA, however, "is not entitled to a claim construction divorced from the context of the written description and prosecution history." *Nystrom v. Trex Co.*, 424 F.3d 1136, 1144-1145 (Fed. Cir. 2005).

The specification does not describe a backplate generically as anything of any shape surrounded by a cuff, but rather very specifically describes it by its parts and function.   Its parts include a "bowl and a tube-joint."   Dr. Lampotang Opening Decl., ¶ 35, Ex. C ('100 patent, col. 6, lns. 3-5).   Indeed, every single figure in the '100 patent shows a backplate (numeral 52 or 52a) with a tube joint (numeral 92 or 92a), further evidencing that a tube joint is an integral structural component of the backplate. *Id.* ('100 patent, Figs. 1-11).

The specification also describes the functional benefits of this backplate design.   One

FENWICK & WEST LLP
ATTORNEYS AT LAW
MOUNTAIN VIEW

1   purpose of the backplate is to make the device more rigid for easy insertion. *Id.* at ¶ 37, Ex. C

2   ('100 patent, col. 7, lns. 47-50). Another purpose is to provide a means of connecting the airway

3   tube to the opening of the mask. Dr. Lampotang Resp. Decl., ¶ 24. This is done via the tube-joint

4   portion of the backplate. *Id.* Further, the backplate is used to ensure proper placement in the

5   throat when the device is fully inserted, which as taught by the specification, is achieved by

6   aligning the passage of the tube-joint portion of the backplate at an acute angle in relation to the

7   bowl plane. *See* Dr. Lampotang Opening. Decl., ¶ 24.

8         Relying on the first two paragraphs of the "Summary of the Invention," which do not use

9   the term "tube joint" verbatim, LMA argues that the term "backplate" does not require a tube

10   joint because the tube joint is "irrelevant to the claimed invention." Plaintiffs' Opening Brief at

11   11. However, LMA's argument is based on the false premises that the first two paragraphs of the

12   "Summary" somehow constitute the entire description of the claimed invention, and that the rest

13   of the specification is superfluous during claim construction. LMA cites no case holding that, and

14   in fact, that is not the rule. In fact, the Court should review the entire patent specification, of

15   which the claims are a part. *E.g., Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1582 (Fed.

16   Cir. 1996); *Markman*, 52 F.3d at 979.

17         Moreoever, contrary to LMA's assertion, the first two paragraphs do in fact emphasize

18   that a tube joint is part of the invention. Those paragraphs state that the invention comprises "a

19   flexible airway tube and a mask *attached to one end of the airway tube*." The specification does

20   not teach any manner to connect the airway tube and mask except by use of a tube joint. *See* Col.

21   7, lns. 53-61. Thus, a tube joint is a necessary part of the invention described in those first two

22   paragraphs. *See On Demand Machine Corp.*, 442 F.3d at 1339-40 (holding that the term

23   "customer" should have been construed to mean *retail* customer, where the specification

24   "repeatedly reinforce[d]" this meaning); *C.R. Bard, Inc. v. U.S. Surgical Corp.*, 388 F.3d 858,

25   864-66 (Fed. Cir. 2004) (affirming the district court's decision to construe the term "plug," in a

26   patented device to treat hernias, to be pleated in shape because the specification consistently

27   described a "plug" as pleated despite one seemingly broader statement in one paragraph of the

28   specification that omits this description of the shape).

FENWICK & WEST LLP
ATTORNEYS AT LAW
MOUNTAIN VIEW

1

2

3 ██████████ The '100 patent's specification makes clear that an airway tube is not part of the

4 backplate. Dr. Lampotang Opening Decl. ¶ 36, Ex. C ('100 patent, col. 1, lns. 56-58; col. 7 lns.

5 58-61); *see also* Dr. Lampotang Resp. Decl. ¶ 24. ██████████

6

7

8

9

10

11 Seeking to avoid this fact, LMA attempts to broaden the scope of the meaning of

12 "backplate" to include embodiments that are constructed as a "unitary piece" with the cuff, and

13 have no tube joint at all. There are several problems with LMA's approach. First, LMA cites

14 *Anchor Wall Systems, Inc. v. Rockwood Retaining Walls, Inc.*, 340 F.3d 1298 (Fed. Cir. 2003), as

15 support for its approach. However, *Anchor Wall* relies on the rejected *Texas Digital* line of cases,

16 and thus the approach it illustrates is contrary to *Phillips*. *See supra* at Sec. II.B. ██████████

17

18

19 ██████████ Moreover, in the *Anchor Wall* specification, it

20 expressly said that the protrusions at issue "may take any number of shapes," with examples of

21 kidney shapes, dogbone shapes, etc. Here, there is no such further teaching of alternative

22 constructions.

23 Second, LMA incorrectly argues that a patent incorporated by reference into specification,

24 U.S. Patent No. 5,355,879, shows that a tube-joint is not a necessary part of the backplate. *See*

25 Plaintiffs' Opening Brief at 11, fn. 4. Contrary to LMA's assertion, however, the '879 patent

26 repeatedly mentions a tube-joint, albeit by a different name.

27 The section of the '879 patent that LMA cites in fact describes a laryngeal mask (Figure 3,

28 as depicted below) that explicitly includes both a backplate and a tube joint:



FIG.3

First, it describes the "backplate "or "body" 13 of the mask, and then it describes "socket 30 of body 12, for assembly to the airway tube 11." Declaration of Jushua Stowell in Support of Plaintiffs' Opening Claim Construction Brief ¶5, Ex. D ('879 patent, col. 2, lns. 53-58; col. 3, lns. 22-24; Fig. 3.). This is the same as a tube joint. Moreover, this feature is claimed in independent claims 7 and 13 of the '879 as "an airway tube connecting formation." Accordingly, the '879 patent specification emphasizes that the tube joint and its airway connection are in fact a distinct feature of the invention. *See V-Formation, Inc. v. Benetton Group Spa*, 401 F.3d 1307, 1311 (Fed. Cir. 2005) ("This court has established that prior art cited in a patent or cited in the prosecution history of the patent constitutes intrinsic evidence … when prior art that sheds light on the meaning of a term is cited by the patentee, it can have particular value as a guide to the proper construction of the term, because it may indicate not only the meaning of the term to persons skilled in the art, but also that the patentee intended to adopt that meaning.") (citations omitted).

LMA next asserts that Ambu's construction improperly imports limitations from the specification. With this request, LMA is asking this Court to do exactly what the Federal Circuit rejected in *Nystrom* and *C.R. Bard* – that is, adopt a broad construction despite a narrower useage of the term in the specification. LMA's attempt to construe "backplate" to mean any generic more rigid "body" is similar to the patentee's attempt in *Nystrom* to construe claimed "board" for use in flooring surfaces to mean "an item made of a rigid material," but not necessarily wood cut from a log. 424 F.3d at 1142. In support of its position, the patentee relied on the fact that the claim language did not expressly recite wood. *Id*. The defendant, on the other hand, argued that the specification consistently described a "board" as wood cut from a log and thus it was proper to construe "board" as "wood cut from a log." *Id*. Because the specification consistently

FENWICK & WEST LLP
ATTORNEYS AT LAW
MOUNTAIN VIEW

described a "board" as wood cut from a log, the Federal Circuit rejected the patentee's generic construction and construed "board" more narrowly to mean "wood cut from a log." *Id.* at 1145.

Similarly, in *C.R. Bard*, the Federal Circuit affirmed the construction of the term "plug," from a device used to treat hernias that was narrower than the claim language implied. 388 F.3d. 858 The definition of the plug in the specification controlled over the ordinary dictionary or customary meaning of plug. *Id.* at 863. The specification twice, in the Summary of Invention and in the Abstract, described "the invention" as having a pleated plug. *Id.* at 864.

Here, the '100 patent consistently describes the backplate as including a tube joint. Dr. Lampotang Opening Decl., ¶35, Ex. C ('100 patent, col. 1, lns. 56-58; col. 7, lns. 58-61). Therefore, LMA's attempt at a broader construction should be rejected because the Court should "take the patentee at its word and . . . not construe the scope of the . . . patent's claims more broadly than the patentee itself clearly envisioned," as described in the patent's written description. *Microsoft Corp. v. Multi-Tech Sys., Inc.*, 357 F.3d 1340, 1350 (Fed. Cir. 2004).

### 2. The Prosecution History Does Not Support LMA's Proposed Construction

LMA argues that because a tube-joint was expressly recited in some of the original claims but not recited in that form in these issued claims, the Court should disregard the description of backplate in the specification and construe it to not require a critical part, a tube-joint. However, regardless of any intent expressed by a patentee to broaden the scope of a claim during prosecution, the claim may be construed no broader than what is taught by the patent. *See Honeywell Int'l.* 452 F.3d at 1319 (Fed. Cir. 2006) ("Where, as here, the written description clearly identifies what his invention is, an expression by the patentee during prosecution that he intends his claims to cover more than what his specification discloses is entitled to little weight."). In *Honeywell*, the claim term at issue was "fuel injection system component." The patent holder argued that it had been broadened during prosecution by changing the term "fuel filter" to the broader term "fuel injection system component." *Id.* The Federal Circuit rejected that argument, because the patent clearly taught that a fuel filter was the invention and did not disclose any novel components other than a fuel filter. *Id.*

FENWICK & WEST LLP
ATTORNEYS AT LAW
MOUNTAIN VIEW

1    Here, throughout the specification, the "tube-joint" is described as an integral part of the

2    backplate.  Dr. Lampotang Opening Decl., ¶35, Ex. C ('100 patent, col. 1, lns. 56-58; col. 7, lns.

3    58-61).  As noted above, even the two paragraphs of the "Summary of the Invention" heavily

4    relied upon by LMA indicate that "the invention" includes a tube-joint.

5    Furthermore, the Federal Circuit has warned against allowing the back and forth with the

6    PTO trump the specification, except, of course, as to disclaimers.  *See Phillips*, 415 F.3d at 1317

7    (noting that "because the prosecution history represents an ongoing negotiation between the PTO

8    and the applicant, rather than the final product of that negotiation, it often lacks the clarity of the

9    specification and thus is less useful for claim construction purposes").  "The purpose of

10   consulting the prosecution history in construing a claim is to exclude any interpretation that was

11   *disclaimed* during prosecution," not to broaden terms beyond their consistent usage in the

12   specification.  *See id.* (quoting *Chimie v. PPG Indus., Inc.*, 402 F.3d 1371, 1384 (Fed. Cir. 2005))

13   (emphasis added).  Although it is well settled that a narrowing amendment has preclusive effect

14   on claim construction, LMA fails to cite even a single case supporting its proposition that an

15   amendment that removes clarifying language somehow supports a claim interpretation not

16   otherwise supported by the specification.

### 3.    LMA's Construction is Inconsistent with the Accepted Meaning of the Term Backplate and Its Own Use of the Term.

19   LMA's proposed construction also runs afoul of the customary use of the "backplate" in

20   the industry at the time patent was filed, and still today.  As set forth in Dr. Lampotang's

21   declarations, at the time the application leading to the '100 patent was filed, a person of ordinary

22   skill in the art understood a backplate to be separate from an airway tube and to include a tube

23   joint.  Moreover, that meaning has not changed, and persons of ordinary skill in the art still

24   understand the term "backplate" in the same way.

25   The cited prior art of the '100 patent confirms that a backplate is separate from an airway

26   tube and includes a tube joint.  *See Kumar v. Ovonic Battery Co. Inc.*, 351 F.3d 1364 (Fed. Cir.

27   2003) (The prosecution history discussed a prior art patent that defined "amorphous" in the field

28   of metallurgy as meaning "lacking a crystalline structure."  The court applied this definition,

1  rather than a broader definition proposed by the plaintiff from the dictionary, because it evidenced

2  how one of ordinary skill in the art would -- and would not -- define the term at the time).

3       Figure 2 from the '116 Application, depicted below, teaches a laryngeal mask comprising

4  a "backing member" 34 (i.e. backplate) that extends from sealing member 22 (i.e. cuff) to the

5  airway tube 1.  Dr. Lampotang Opening Decl. ¶ 22, Ex. F.  The backplate, in turn, comprises a

6  tube joint, referred to as a "mount member" 30, including a tubular extension 32, that is used to

7  connect the backplate to the airway tube 1.  Dr. Lampotang Resp. Decl. at ¶ 24.

8  Fig.2.



12  This confirms the usage in the relevant field at the time of the invention.

13       LMA has lodged, as physical evidence, samples of LMA's and Ambu's laryngeal masks.

14  Those masks, as described in LMA's own promotional materials, further demonstrate that a

15  person of ordinary skill in the art, and even LMA itself, understands "backplate" to have a much

16  narrower construction than that now proposed by LMA.  Indeed, as shown below, LMA has

17  stressed the importance of distinguishing between masks constructed of a backplate and an airway

18  tube, on the one hand, and those consisting only of a larger airway tube (without a backplate), on

19  the other hand.  In an LMA-prepared summary of a study led by Dr. David Ferson, which LMA

20  continues to distribute to current and prospective customers, LMA describes the design of two

21  competing laryngeal masks, including Ambu's, noting that both lack a backplate.  *See* Faigal

22  Decl. ¶ 8, Ex. G ("A Comparative Anatomical Study of Laryngeal Masks.")

FENWICK & WEST LLP
ATTORNEYS AT LAW
MOUNTAIN VIEW



Importantly, the use of the term "backplate" in these materials is consistent with the description of "backplate" in the specification of the '100 patent, as well as Ambu's proposed construction. Specifically, an airway tube that is extended to the opening of the mask, rather than one that is attached to a tube joint, is not considered to be a "backplate." The extrinsic evidence is consistent with the intrinsic evidence, both of which show that LMA's construction is incorrect, and thus Ambu's construction should be adopted. *Plant Genetic Sys., N.V. v. Dekalb Genetics*

1  *Corp.*, 315 F.3d 1355, 1346 (Fed. Cir. 2003) (holding that "it is entirely appropriate, perhaps even

2  preferable, for a court to consult trustworthy extrinsic evidence to ensure that the claim

3  construction ... is not inconsistent with clearly expressed, plainly apposite and widely held

4  understandings in the pertinent technical field") ("quoting Pittney Bowes, Inc. v. Hewlett-Packard

5  Co., 182 F.3d 1298, 1308 (Fed. Cir. 1999)).

**4.  Ambu's Construction of "Cuff Being Attached to the Backplate" as Used in Claim 1 Does Not Improperly Import a Method Limitation**

8  The cuff and backplate must be separate structures given the ordinary meaning of the term

9  "attached." The claims and the written description of the '100 patent consistently use the term

10  "attached" in a sense of its ordinary meaning, *i.e.*, "made fast (as by tying or gluing)." *See*

11  Ambu's Opening Claim Construction Brief at 18-19; Dr. Lampotang Opening Decl. Ex. K

12  (dictionary definition of "attached"); Dr. Lampotang Resp. Decl. ¶ 27. LMA's construction of

13  the phrase "cuff being attached to the backplate" to encompass an integral structure that includes

14  a cuff and a backplate formed together in one structure would read out entirely the "attached"

15  limitation and thereby impermissibly broaden the scope of the claims.

16  First, LMA improperly contends that it would be error to define the term "attached" to

17  refer to two elements having been affixed to each other, because that would improperly add a

18  "process" limitation into method claims. LMA's contention does not stand up to scrutiny; it

19  leaves out the basic principal that structural elements in an apparatus claim can be expressed in

20  functional terms. *See Miken Composites, L.L.C. v. Wilson Sporting Goods Co.*, 515 F.3d 1331,

21  1337-38 (Fed. Cir. 2008). In *Miken*, the patentee argued that the district court improperly

22  imported a process limitation into a product claim when the court construed the noun form of the

23  claim term "insert" to mean "something inserted or intended for insertion," based on its ordinary

24  meaning. *Id.* at 1337. The Federal Circuit expressly rejected the patentee's argument and

25  reasoned that "that this ordinary meaning has functional attributes does not change the fact that

26  the claim recites a structural component." *Id.* at 1337-38.[4]

[4]  Moreover, in *Microprocessor Enhancement Corp. v. Texas Instruments*, a case cited by LMA (Pl.'s Opening Claim Construction Brief at 14 n.6), the Federal Circuit held that apparatus claims

FENWICK & WEST LLP
ATTORNEYS AT LAW
MOUNTAIN VIEW

1  Similarly, here, the functional attributes of the term "attached" do not turn the phrase

2  "cuff attached to the backplate" into a process limitation. Consequently, LMA's reliance on

3  *Bandag, Inc. v. Al Boser's Tire Stores, Inc.*, 750 F.2d 903 (Fed. Cir. 1984), to differentiate a

4  method claim from an apparatus claim is misplaced. Moreover, in *Bandag*, the court did not

5  distinguish between apparatus and method claims to construe any claim terms, and thus provides

6  no guidance in this regard.

7  Second, LMA's contention based on a distinction between the verb and adjective forms of

8  the term "attached" is equally unavailing. Courts have routinely used the definition of a verb to

9  interpret a claim term using the adjectival form of the verb. *See, e.g., Tuna Processors, Inc. v.*

10  *Haw. Int'l Seafood, Inc.*, 2007 U.S. Dist. LEXIS 77396, at *20 (D. Haw. Oct. 17, 2007) (holding

11  that the word "cooled" as in claim term "cooled smoke" is a participial adjective "formed from

12  the past participle" of the verb "cool"); *Pfund v. United States*, 40 Fed. Cl. 313, 324 (Fed. Cl.

13  1998) (using definition of the verb "space" to construe its adjective form "spaced" in claim term

14  "spaced station"); *Multiform Desiccants v. Medzam, Ltd.*, 1995 U.S. Dist. LEXIS 18548, at *15-

15  16 (W.D.N.Y. Dec. 7, 1995) ("A commodious definition of the verb 'degrade' alludes to the

16  patentee's intended meaning of the adjective 'degradable' as used in Claims 1 & 6."). The word

17  "attached" is a participial adjective derived from the past participle of the verb "attach."

18  Therefore, although Claim 1 is an apparatus claim, it is appropriate to construe "attached" as the

19  result of a process.

20  Third, the definitions of "attached" in LMA's cited dictionary (The Random House

21  College Dictionary) do not support LMA's construction that "the cuff being attached to the

22  backplate" encompasses a structure where the cuff and backplate form a unitary structure. The

23  dictionary cited by LMA defines "attached" as follows: "attached, adj. 1. joined, connected,

24  bound. 2. *Zool.* Permanently fixed to the substratum; sessile." *See* Plaintiff's Opening Brief at

25  13; Faigal Decl. ¶ 6, Ex. E (Joint Claim Construction Chart). None of these definitions suggest a

26  unitary structure.

27

28  are not *per se* indefinite for using functional or method language. 520 F.3d 1367, 1374-75 (Fed.
Cir. 2008).

FENWICK & WEST LLP
ATTORNEYS AT LAW
MOUNTAIN VIEW

Finally, the '100 patent specification makes clear that a laryngeal mask "extruded as a single, unitary piece" is merely an "alternative," and therefore different from, one that is constructed by attaching the backplate to the main-cuff. Faigal Decl. ¶ 6, Ex. 5 ('100 patent, col. 6, ll. 11-25). Indeed, LMA has admitted in its own documents that laryngeal masks having a unitary formation, such as Ambu's products, "do not have a backplate." Faigal Decl. ¶ 5, Ex. D.

**B.    The Court Should Adopt Ambu's Construction of the Claim 1's Phrase "At Least a Portion of the Posterior Portion of a Wall of the Cuff in the Distal Region Being Thicker and Dtiffer than other Portions of the Cuff."**

      **1.    LMA's Proposed Construction for the Claim Phrase Contradicts the Intrinsic Evidence.**

Although the phrase "at least a portion of the posterior portion of a wall of the cuff in the distal region being thicker and stiffer than other portions of the cuff" consists of words with ordinary meanings, LMA is wrong to suggest that the phrase does not require construction. The parties dispute the meaning of the phrase, and since their dispute is material to the infringement analysis in this case, it should be construed. *See O2 Micro,* 521 F.3d 1351; *Seachange,* 413 F.3d 1361.

Claim 1 of the '100 patent recites "at least a portion of the posterior portion of a wall of the cuff in the distal region being thicker and stiffer than other portions of the cuff." Dependent claim 3 recites "A device according to claim 1, the portion of the posterior portion of the wall forming a distal rib." The task for the Court, therefore, is to define the portion of the cuff wall that is thicker and stiffer from claim 1, without limiting it to the rib of claim 3, but yet without broadening it impermissibly beyond what the applicant described as invention. The only way in which to construe claim 1, then, is to hold that the phrase means "A portion of the posterior wall of the cuff where it attaches to the distal end of the backplate is thickened and stiffened by a reinforcement extending from the distal end of the backplate." Ambu's Opening Brief at 19-20.

*Phillips* counsels that review of the specification is "usually dispositive" of the claim construction. *Phillips,* 415 F.3d at 1315. Review of the specification here shows that the only embodiment taught of the "thicker and stiffer" portion of the posterior portion of the cuff wall in the distal area of the cuff is a reinforcing rib. There can be no dispute that in each instance

FENWICK & WEST LLP
ATTORNEYS AT LAW
MOUNTAIN VIEW

1 taught, this reinforcing rib is an extension of the backplate. There is simply no disclosure

2 anywhere in the '100 patent of a means to reinforce the cuff wall other than by an extension of the

3 backplate. Moreover, the specification specifically clarifies that when the "reinforcing rib" is

4 achieved by thickening the cuff, "the thickening of the posterior wall . . . *forms a distal extension*

5 *of the bowl of the backplate*." Dr. Lampotang Opening Decl. Ex. C ('100 patent col. 8, lns. 9-12)

6 (emphasis added). Tellingly, LMA cites the first half of this sentence to support its proposed

7 construction, but tries to disregard the fact that the rest of the sentence unequivocally describes

8 the reinforcement as "a distal extension of the bowl 90a of the backplate 52a." *See* Plaintiff's

9 Construction Brief at 4.

10 In addition, the thicker and stiffer reinforcement of the cuff wall necessarily must extend

11 from the backplate to the cuff in order for the invention to achieve its purported goal. As the

12 opening sentence in the "Summary of the Invention" states, "[t]he present invention seeks to

13 eliminate the disadvantages associated with such undesirable insertion by minimizing the risk of

14 the deflated cuff formation becoming folding over on itself during the insertion procedure." Dr.

15 Lampotang Resp. Decl. ¶ 9; '100 patent at col. 1, lns. 48-51 Dr. Lampotang Opening Decl., Ex C

16 ['100 patent at col. 1, lns. 48-51.] As the next sentence unequivocally states, the '100 patent

17 solves this problem "by incorporating into the cuff at its distal end a reinforcing rib which serves

18 to stiffen the leading end of the LMA-device during the course of the procedure for its insertion."

19 *See* Dr. Lampotang Resp. Decl. ¶ 9; '100 patent col.1, lns. 51055, Dr. Lampotang Opening Decl.,

20 Ex. C. The folding over of the cuff occurs when the leading (distal) tip of the cuff gets caught on

21 some obstruction (for example, tissue in the throat) during insertion of the device. *See* Dr.

22 Lampotang Resp. Decl. ¶ 10. When the cuff folds back, the crease of the fold occurs at the tip of

23 backplate, as the backplate is sufficiently stiff not to fold back, thus causing the cuff to fold over

24 the tip of the backplate. *See id.* As such, the '100 patent aims to prevent such fold over by

25 reinforcing the portion of the cuff that folds over the backplate – that is, the region of the cuff

26 between the tip of the backplate and the tip of the cuff. *See id.* The '100 patent teaches solving

27 the problem through an extension of the backplate, as that approach helps to ensure that the cuff

28 cannot fold over the backplate. *See id.* The image below demonstrates that the folding over of

FENWICK & WEST LLP
ATTORNEYS AT LAW
MOUNTAIN VIEW

the cuff occurs at the tip of the backplate:



Cuff folds over at the tip of the more rigid distal end of mask/backplate

Faigal Decl. ¶ 8, Ex. G. The '100 patent notes that a problem with prior art laryngeal masks, and a problem that it purports to solve, is that the "more distal end of the mask to catch the inside throat and subject the patient to undesirable forces." Dr. Lampotang Opening Decl. Ex. C ('100 patent col. 1, lns. 30-35). The image below shows how the tip of the backplate of the mask would become exposed and could catch the throat during insertion.



The end of the backplate becomes exposed when cuff folds over

Faigal Decl. ¶ 8, Ex. G. LMA contends that the reinforcement of the cuff need not be an extension of the backplate, and indeed asserts that there could be an unreinforced gap between the backplate and the reinforcement of the cuff. ████████████████████████████

████████████████████████████████████████████

FENWICK & WEST LLP
ATTORNEYS AT LAW
MOUNTAIN VIEW

1　▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

2　▮▮▮▮▮ Therefore, LMA's proposed construction cannot stand because it would result in

3　embodiments that fail to achieve the patent's stated goal. *Phillips*, 415 F.3d at 1323.

4　　　The use of the term "wall" in the claim language further confirms that the reinforcement

5　of the cuff must be an extension of the backplate. *See* Dr. Lampotang Resp. Decl. ¶ 18. A wall is

6　generally a structure that stands vertical to a set plane. *Id.* This understanding is supported by the

7　claim language and specification, as the patentee did not refer to the reinforcement of merely the

8　surface of the cuff, which would extend circumferentially around the cuff, but rather to the wall.

9　*Id.* In this case, the wall of the cuff is that portion that stands vertical to the plane of the

10　bowl/cuff. *Id.* As such, the reinforcement of the cuff, which is located in the posterior part of the

11　cuff, must be located at one of the parts of the cuff identified below: *Id.*



18　　　Given the problem that the invention seeks to solve, folding over of the cuff, the wall

19　referred to in claim 1 must be that identified as "wall 1" above, for if "wall 2" were the reinforced

20　wall, such a design would not prevent the cuff from folding over itself, as the reinforced part of

21　the cuff would fold over the unreinforced portion. *Id.* The wall of the cuff identified above as

22　"wall 1" is the wall that makes contact with the backplate, thus further demonstrating that the

23　reinforcement of the cuff must be an extension of the backplate. *Id.*

24　　　Notably, the phrase provides that "at least a portion of the posterior portion of a *wall of*

25　*the cuff* in the distal region being thicker and stiffer than other portions of the *cuff*." It does not

26　say that the portion of the cuff wall is thicker and stiffer than other portions of the cuff *wall*.

27　Therefore, the cuff wall must be differentiated from the cuff. However, LMA's proposed

28　construction tries to ignore this distinction and claim, instead, that the wall of the cuff is the same

FENWICK & WEST LLP
ATTORNEYS AT LAW
MOUNTAIN VIEW

as the cuff. The reinforcement must be at the junction of the backplate and the cuff because it is the only portion of the cuff that is the cuff wall and is part of the posterior portion of the cuff wall in the distal region.

Additionally, the prosecution history does not support LMA's proposed construction. Again relying on a wholly unsupported proposition, LMA argues that, because a backplate extension was expressly recited in an earlier proposed claim but not in an issued claim, the backplate extension cannot be required by the issued claim. As discussed above, LMA's argument cannot stand because a patentee's unilateral removal of clarifying language in claims does not indicate the PTO's understanding of the invention that it allowed. *See Honeywell*, 452 F.3d at 1319 ("Where, as here, the written description clearly identifies what his invention is, an expression by the patentee during prosecution that he intends his claims to cover more than what his specification discloses is entitled to little weight.").

### 2. The Reinforcement of the Cuff's Wall Must be Thicker and Stiffer than Any Other Portion of the Cuff's Wall.

In Plaintiffs' Opening Brief, LMA asserts that the claim language, stating that "at least a portion of the posterior portion of a wall of the cuff in the distal region being thicker and stiffer than other potions for the cuff," does not require the "thicker and stiffer" portion to be thicker and stiffer than all other portions of the cuff. LMA's construction is inconsistent with the invention taught by the '100 patent and with how a person of ordinary skill in the art would understand that language. Dr. Lampotang Resp. Decl. ¶ 19.

Based on the claim language, alone, a person of ordinary skill in the art would understand that the reinforcement of the cuff is thicker and stiffer than all other portions of the cuff. The language states that the reinforced portion of the cuff is "thicker and stiffer than other portions of the cuff" without limitation. It does not state that the reinforcement is thicker and stiffer than some other portions or substantially all other portions of the cuff. As such, a person of ordinary skill in the art would understand "other portions of the cuff" to mean those portions of the cuff except for the reinforced portion referred to in the claim language. *Id.* at ¶ 20.

LMA's proposed construction is also contrary to the well-established purpose of a cuff.

FENWICK & WEST LLP
ATTORNEYS AT LAW
MOUNTAIN VIEW

1    The cuff is the part of the laryngeal mask that forms the seal over the laryngeal inlet. *Id*. at ¶ 21.

2    Given the variable surface of the tissue in that area, cuffs are designed to be uniformly thin, as

3    taught by the '100 patent, so as to make them as pliable as possible, thus enabling them to mold to

4    the shape of the patient's throat and enabling a tighter seal over the laryngeal inlet. *Id*. Indeed, a

5    significant goal of the '100 patent's reinforcement of the cuff is to assure that the cuff does not

6    become folded back, "thereby obstructing the creation of the seal around the patient's laryngeal

7    inlet and hence obstructing formation of a full enclosed airway to the patient's lungs." *Id*. At Ex.

8    C, ('100 patent, col. 1, lns. 36-40). Under LMA's construction, however, portions of the anterior

9    side of the cuff could be thicker and stiffer than the reinforced part of the cuff. *Id*. Such a

10   construction would run contrary to the purpose of a cuff and even the stated purpose of the

11   invention, as a significant purpose of preventing cuff fold over is to ensure that cuff achieves a

12   complete seal when the device is inserted. *Id*. Moreover, there is simply no teaching in the

13   specification that such an alternative is to be considered a part of the invention. None of the

14   embodiments in the specification provide an example of such construction. On *Demand Machine*

15   *Corp*. 442 F. 3d at 338 ("the scope and outer boundary of the claims is set by the patentee's

16   description of the invention").

17        LMA feigns ignorance on this point, but Ambu's contention has been that if LMA's

18   construction is adopted, the claim will be indefinite as there will be no way of determining

19   whether there has been infringement. LMA itself has cited a number of cases that explain why it

20   is important for the claim construction to provide meaningful reference points. For example,

21   LMA cited *Exxon Res. & Eng'g Co. v. United States* 265 F. 3d 1371 (Fed. Cir. 2001) (LMA

22   Opening Brief at 14, note 6). In that case, one of the claim construction disputes was over what it

23   meant to "substantially increase" catalyst activity. The Federal Circuit reviewed the specification

24   and found that in the specification, two figures reflected using a subtraction method of

25   calculation, added that into the claim construction and reversed the finding of indefiniteness.

26   Accordingly, what this case really stands for is the importance of defining terms in the context of

27   the specification. Where no such reference point can be found, then the claim term is indefinite.

28   Similarly, LMA quoted from *Honeywell, Inc. v. ITC*, 341 F.3d 1332 (Fed. Cir. 2003). There, a

CONFIDENTIAL

claim was held to be indefinite because no reference point was provided for determining whether the specified "melting point elevation" had been reached.

### C. LMA's Proposed Construction of the Phrase "Distal Rib" from Claim 3 Both Runs Afoul of the Prior Art and Contradicts the Ordinary Meaning of the Term "Rib."

LMA argues that the "distal rib" as found in claim 3 of the '100 patent does not need to be rib-shaped. Instead, LMA argues that a "rib" can adopt any shape so long as it is smaller than the portion of the cuff it stiffens or reinforces. There are several problems with LMA's argument.

First, LMA's argument provides no meaning to the term "rib." Instead, LMA argues that "rib" is anything that stiffens or reinforces. Pl.'s Opening Claim Construction Brief at 19. But such a broad construction renders the use of the word "rib" superfluous. The dictionary definitions relied on by LMA do not support LMA's broad construction. LMA's cited dictionary definition establishes that a rib is not just smaller than the object which it reinforces, as LMA concedes, but has an elongated shape: "a framing timber in a house," "the frame of a ship," and "a stiff strip (as of metal) supporting the fabric in an umbrella." *See* Plaintiff's Opening Claim Construction Brief at 19-20. Such extrinsic evidence is consistent with Ambu's proposed construction of "an extension of the backplate that is rib-shaped, narrower than the diameter of the tube adapted to fit the tube joint, and more rigid than the cuff, but less rigid than the backplate, that reinforces and stiffens the region of the cuff extending from the bowl of the backplate in a downturned orientation." Faigal Decl. ¶ 6, Ex. E (Joint Claim Construction Chart).

Second, LMA's construction would make the claim read on prior art cited during prosecution, and over which LMA obtained its patent. *See Cat Tech LLC v. Tubemaster, Inc.*, 528 F.3d 871, 886 (Fed Cir. 2008) (affirming the narrow construction of the term "a spacing" where a broader length of the spacing would read on the prior art that the patentee distinguished the patent from during prosecution); *N. Am. Container v. Plastipak Packaging, Inc.*, 415 F.3d 1335, 1345 (Fed. Cir. 2005) (to overcome an obviousness rejection, applicant distinguished his invention based on prior art disclosing "slightly concave" inner walls; the "inescapable consequence of such an argument is that the scope of applicant's claims cannot cover inner walls that are 'slightly concave'"). One of the prior art references cited during prosecution, European

FENWICK & WEST LLP
ATTORNEYS AT LAW
MOUNTAIN VIEW

DEFENDANTS' RESPONSIVE CLAIM
CONSTRUCTION BRIEF

22

CASE NO. 3:07-CV-01988-DMS-NLS

1  patent application, EP0732116A2 ("Pagan '116") discloses a laryngeal mask device with a

2  reinforcing backplate 34 located on the anterior wall of the cuff and extending to the distal region

3  of the cuff.  See Dr. Lampotang Opening Decl., Ex. I, Office Action, 10/19/2005, at 3; Ex. F

4  (Pagan '116, col. 3, lns. 4-6, Figs. 2-3).  Notably, the backplate in Pagan '116 is smaller than the

5  portion of the cuff which it reinforces and would fit squarely within the definition of "distal rib"

6  now urged by LMA.  Given that the Examiner stated that "the distal rib [in Pagan '116] is not

7  clearly defined," he must have understood "distal rib" to mean something not disclosed in Pagan.

8  *See* Dr. Lampotang Opening Decl., Ex. I, Office Action, 10/19/2005, at 3.

9      LMA criticized Ambu for using the term "rib-shaped" to construe the phrase distal rib.

10  However, this was only made necessary by LMA's insistence during the meet and confer on

11  claim construction that a "rib" can have any shape.  Given that Ambu does not agree with that

12  construction, and that this issue is key to core issues in the case, it should be resolved at this

13  juncture in the form of a claim construction that clearly rejects LMA's construction and makes

14  clear that a rib must be "rib shaped."  *See O2 Micro*, 521 F.3d at 1361-1362 (the district court's

15  failure to construe the term "only if" was error because the parties disputed the term's meaning,

16  and the term's construction was critical issue to determining the patent's scope).  In addition,

17  when there is a dispute like this, there is nothing improper about using a common term "rib-

18  shaped" to construe the phrase "distal rib" even though that common term is part of the phrase to

19  be construed.  *See Miken Composite*, 515 F.3d at 1337 (defining claim term "insert" in the sense

20  of its ordinary meaning as "something inserted or intended for insertion").

21      Next, nothing in Ambu's construction requires that a "rib" be curved.  As LMA's own

22  dictionary definition suggests, it may also be substantially straight, such as "a framing timber in a

23  house."  Pl.'s Opening Claim Construction Brief at 20.

24      Finally, LMA cited *Conoco, Inc. v. Energy & Envt'l, L.C*, 460 F.3d 1349 (Fed. Cir. 2006)

25  for the proposition that limitations about the rib should not be read in from the specification.  The

26  claim language at issue there was "a water-alcohol mixture," and the question raised was how

27  much alcohol had to be in the mixture.  The district court properly refused to limit the amount of

28  alcohol to less than 60%.  The specification said that the amount of alcohol "employed in the

1   suspending material *may vary widely* but it *usually* forms between about 0 and 70 weight percent

2   of the suspending material." The facts are thus distinctly different than those here, where no such

3   wide range of embodiments is taught.

### D.  LMA's Proposed Construction of the Phrase "Longitudinal Distal Rib" from Claim 4 Would Make the Term "Longitudinal" Superfluous.

The parties agree that the phrase "longitudinal distal rib" describes a distal rib running lengthwise. The term "longitudinal" distinguishes a distal rib that runs in another direction, for example, widthwise. Ambu's use of the phrase "in the direction of the proximal end of the mask" simply clarifies that the rib's orientation runs from the distal end to the proximal end. Contrary to LMA's assertion, this is not redundant with "lengthwise" because length versus width are relative terms, where a body's width is generally shorter than the body's length. The laryngeal mask assembly could be shorter in the distal to proximal than in its cross section. Ambu's construction accounts for this by ensuring that the rib runs in the distal to proximal direction.

Further, a rib that runs longitudinally is only meaningful if the shape of the distal rib is elongated. For example, if the distal rib is round or square-shaped, as permitted under LMA's construction, the modifier "longitudinal" would be superfluous because it would not run in any direction. Therefore, Ambu's construction does not import limitations from the specification or limit the term to a preferred embodiment. Again, LMA mischaracterizes Ambu's proper use of the patent specification as a guide to understanding the meaning of the claims. Pl.'s Opening Claim Construction Brief at 22.

### E.  LMA's Proposed Construction of the Phrase "Proximal Portion of the Passage" and "Passage Axis" Renders Claim 6 Indefinite.

For written support of the term "passage axis," LMA points to the central axis 132 of the backplate passage 110 described in the specification, but then argues that the term "passage axis" has nothing to do with a tube-joint element at the proximal end of the backplate. LMA's argument misses the mark. LMA ignores the written disclosure that "the inclination of the tube-joint 92 may be defined by a tube-joint axis 136 . . .which *coincides* with the central axis 132 at its intersection with the cross-section of the *proximal end* 130." ('100 patent, col. 7, lns. 13-17) In fact, the "central axis 132" cited by LMA and the "tube-joint axis 136" cited by Ambu from

FENWICK & WEST LLP
ATTORNEYS AT LAW
MOUNTAIN VIEW

1   the specification mean the same thing at the proximal end of the backplate passage.

2      Moreover, LMA's attempt to construe the "passage axis" as "an imaginary straight line"

3   does not make sense.  Pl.'s Opening Claim Construction Brief at 23.  LMA has claimed an

4   "apparatus," which in order to be patentable has to be a "useful...machine."  35 U.S.C. Section

5   101.  The Supreme Court has defined a "machine" as "a concrete thing, consisting of parts, or of

6   certain devices and combination of devices."  *Burr v. Duryee*, 68 U.S. 531, 570 (1863).  An

7   imaginary line is not "made of 'parts' or 'devices' in any mechanical sense," and so adopting

8   LMA's claim construction would result in making claim 6 invalid for the absence of patentable

9   subject matter.  *Cf. In re Nuitjen*, 500 F.3d 1346, 1355 (Fed. Cir. 2007) (transitory signals not

10  patentable).

11     The real dispute lies with whether there should be a defined structural boundary (*i.e.*, a

12  tube-joint) at the proximal end of the backplate.  LMA incorrectly argues that no such boundary is

13  necessary.  However, the term "proximal portion of the passage" only makes sense if the

14  backplate has a defined boundary at its proximal end.  In all of the embodiments and all of the

15  discussion in the specification, that boundary is the tube-joint.  The tube joint is thus a necessary

16  referent so that the scope of the claim may be understood.  *See Exxon Res. & Eng'g Co*, 265 F. 3d

17  at 1377 (in reversing a finding of indefiniteness, the court construed the term "to increase

18  substantially," referring to catalyst activity, by adding a subtraction method of calculation found

19  in two figures in the specification); *Honeywell*, 341 F.3d at 1339-40 (holding that claim was

20  indefinite because no reference point was provided for determining whether the specified

21  "melting point elevation" had been reached).  Moreoever, the specification indicates that the

22  backplate passage may be curved.  Without a reference point, it is yet more difficult to place the

23  recited straight line.

24     Accordingly, Ambu's construction of this term as "the tube joint axis" should be adopted.

25  Ambu's Opening Brief at 28.

26  ///

27  ///

28  ///

FENWICK & WEST LLP
ATTORNEYS AT LAW
MOUNTAIN VIEW

### F.  Ambu's Proposed Construction for the Term "More Compliant than the Backplate" in Claim 2 Reinforces its Plain Meaning.

Ambu's proposed construction for the term "more compliant than the backplate" provides that the reinforcement in the posterior portion of the cuff's wall, referred to in Claim 1, is less stiff and rigid than the backplate. LMA argues that this construction is incorrect because it does not take into account the reinforcement's elasticity. Pl.'s Opening Brief at 18. However, elasticity is irrelevant. Nothing in the specification identifies that the reinforcement should have any elastic properties. In fact, the purpose of the reinforcement is to stiffen the distal tip of the cuff. *See* discussion *supra* Sec. II.C.1. Ambu's proposed construction merely clarifies that the reinforcement is not as stiff or rigid as the backplate. This construction also allows for the reinforcement to be more stiff and rigid than the rest of the cuff's wall.

### G.  There Are No Disputes Regarding the Remaining Claim Terms

It appears that the parties do not dispute the meanings of the remaining claim terms. As such, Ambu respectfully requests that the Court defer construing the remaining claim terms until trial commences in case any disputes arise between now and when the Court gives the jury charge.

## IV.  CONCLUSION

Ambu respectfully requests that the Court enter an order adopting its proposed constructions.

Dated: January 14, 2009

FENWICK & WEST LLP

By:  /s/ Dennis Faigal
Dennis M. Faigal

Attorneys for Defendants
AMBU A/S, AMBU INC. and AMBU LTD.

FENWICK & WEST LLP
ATTORNEYS AT LAW
MOUNTAIN VIEW

# CERTIFICATE OF SERVICE

The undersigned hereby certifies that all counsel of record who are deemed to have consented to electronic service are being served with a copy of this document via the Court's CM/ECF system per Local Rule 5.2 on January 14, 2009

By:    /s/  Dennis Faigal
                Dennis M. Faigal
                E-mail: dfaigal@fenwick.com

1294885

FENWICK & WEST LLP
ATTORNEYS AT LAW
MOUNTAIN VIEW