DARRYL M. WOO (CSB NO. 100513)
CHARLENE M. MORROW (CSB NO. 136411)
RYAN J. MARTON (CSB NO. 223979)
BRYAN KOHM (CSB NO. 233276)
MICHELLE CAI (CSB NO. 238838)
DENNIS FAIGAL (CSB NO. 252829)
FENWICK & WEST LLP
555 California Street
12th Floor
San Francisco, CA 94104
Telephone: (415) 875-2300
Facsimile: (415) 281-1350

Attorneys for Defendants/Counterclaimants
AMBU A/S, AMBU INC., and AMBU LTD.

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| THE LARYNGEAL MASK COMPANY LTD. and LMA NORTH AMERICA, INC., <br><br> Plaintiffs, <br><br> v. <br><br> AMBU A/S, AMBU INC., and AMBU LTD. <br><br> Defendants. | Case No. 3:07-cv-01988 DMS (NLS) <br><br> **AMBU'S OPPOSITION TO MOTION TO STRIKE DR. SAMSUN LAMPOTANG'S DECLARATIONS** <br><br> **Judge: Hon. Dana M. Sabraw** <br> **Date: February 19, 2009** <br> **Time: 9:00 am** <br> **Courtroom: 10, 2nd Floor** |
| AMBU A/S, AMBU INC., and AMBU LTD., <br><br> Counterclaimants, <br><br> v. <br><br> THE LARYNGEAL MASK COMPANY LTD. and LMA NORTH AMERICA, INC., <br><br> Counter-Defendants. | |

AMBU'S OPP'N. TO MOT. TO STRIKE DR. LAMPOTANG'S DECLS.

CASE NO. 3:07-CV-01988 DMS-NLS

**TABLE OF CONTENTS**

**Page(s)**

I. INTRODUCTION ...................................................................................................... 1
II. ARGUMENT .............................................................................................................. 2
    A. LMA's Objections Constitute A Procedurally Improper Motion to Strike............. 2
    B. Dr. Lampotang's Declarations Reflect His Independent Opinions........................ 2
    C. Far from "Conclusory," Dr. Lampotang's Declarations Are Well Supported by Facts and Analysis. ............................................................................................ 6
    D. Dr. Lampotang is Well-Qualified to Opine on the Meaning of the Claim Terms as Ascribed by a Skilled Person in the Art ................................................... 8
III. CONCLUSION ......................................................................................................... 11

i

**CASES** Page(s)

*Butera v. District of Columbia*,
   83 F. Supp. 2d 25 (D.D.C. 1999) ............................................................................................. 6

*Cordis Corp. v. Medtronic AVE, Inc.*,
   511 F.3d 1157 (Fed. Cir. 2008) ............................................................................................ 9, 11

*DataQuill Ltd. v. Handspring, Inc.*,
   No. 01 C 4635, 2003 WL 737785 (N.D. Ill. Feb. 28, 2003) ...................................................... 6

*Insight Tech., Inc. v. Surefire, LLC*,
   Civ. No. 04-cv-74-JD, 2007 U.S. Dist. LEXIS 83632 (D.N.H. Nov. 1, 2007) ........................ 3

*Interconnect Planning Corp. v. Feil*,
   774 F.2d 1132 (Fed. Cir. 1985) ................................................................................................ 9

*Keystone Mfg. Co. v. Jaccard Corp.*,
   394 F. Supp. 2d 543 (W.D.N.Y. 2005) .................................................................................... 3

*Kumar v. Ovonic Battery Co., Inc.*,
   351 F.3d 1364 (Fed. Cir. 2003) ................................................................................................ 8

*Network Commerce Inc. v. Microsoft Corp.*,
   422 F.3d 1353 (Fed. Cir. 2006) ................................................................................................ 7

*Phillips v. AWH Corp.*,
   415 F.3d 1303 (Fed. Cir. 2005) ........................................................................................... 9, 10

*Reliance Ins. Co. v. Keybank U.S.A.*,
   No. 1:01 CV 62, 2006 WL 543129 (N.D. Ohio Mar. 3, 2006) ................................................. 6

*Seitz v. Envirotech Sys. Worldwide Inc.*,
   Civ. No. H-02-4782, 2008 U.S. Dist. LEXIS 17395 (S.D. Tex. Mar. 6, 2008) ....................... 3

*Stein v. Foamex Int'l, Inc.*,
   No. Civ. A. 00-2356, 2001 WL 936566 (E.D. Pa. Aug. 15 2001) ........................................... 6

*Sundance, Inc. v. Demonte Fabricating Ltd.*,
   2008 U.S. App. LEXIS 26082 (Fed. Cir. Dec. 24, 2008) ......................................................... 9

**RULES**

Fed. R. Civ. P. 26 (a)(2)(A) ............................................................................................................ 3
Fed. R. Civ. P. 26 (a)(2)(B) ............................................................................................................ 3
Advisory Committee Notes to Rule 26 ........................................................................................... 3
Local Rule 7.1(f) ............................................................................................................................. 2

FENWICK & WEST LLP
ATTORNEYS AT LAW
MOUNTAIN VIEW

## I. INTRODUCTION

In its Responsive Claim Construction Brief filed on January 14, 2009, LMA cites extensively from cases in which expert reports or declarations were excluded, and asks the court to similarly disregard the opinions expressed in Dr. Samsun Lampotang's declarations, particularly those concerning the term "backplate." (*See, e.g.,* LMA Resp. Br. 14.) LMA asks the court to give "no weight" to Dr. Lampotang's declarations on the basis that his over three-page analysis in those declarations is "conclusory," or that Dr. Lampotang, who is a tenured professor of anesthesiology at University of Florida and who has over 50 patents and patent applications, over half of which are related to airway devices, is somehow unqualified to testify on what one of ordinary skill in the art of would understand from reading the patent-in-suit.

These objections constitute a procedurally improper motion to strike Dr. Lampotang's declarations. Ambu accordingly submits this memorandum in opposition to that motion, to ask the Court to overrule LMA's objections as either procedurally improper, or not well founded on the merits. This is LMA's second attempt to find a basis for asking the Court to disregard Dr. Lampotang's analysis. The Court denied LMA's motion to strike Ambu's identification of Dr. Lampotang on the Joint Claim Construction Chart. (Docket No. 119.) LMA's second attack on Ambu's attempt to provide the court with expert analysis in this matter should similarly be denied.

First, LMA's objections to Dr. Lampotang's testimony constitute a motion to strike, or other request for ruling by the court. LMA's failure to give proper notice of this motion has violated this Court's Local Rule 7.1 on motion practice.

Second, LMA's motion should be denied on substantive grounds as well. The fact that Dr. Lampotang did not personally type his declarations has no bearing on the merits. The record shows that Dr. Lampotang formulated his opinions on claim construction independently, expressed them to counsel who incorporated them in prior filings with the court, and spent substantial time with counsel reviewing and asking for revisions (frequently during real time involvement in the typing of the drafts) to the drafts of his subsequent declarations. This is simply not a situation like those in the cases that LMA cites, where experts abdicated their

1  responsibilities.

Third, Dr. Lampotang's declarations are not like the opinions the Federal Circuit has critiqued as conclusory; nor is Dr. Lampotang, a tenured professor of University of Florida, unqualified to opine on the understanding of one of ordinary skill in the field in which he is himself an inventor.

Accordingly, Ambu respectfully asks the Court to deny LMA's motion to strike Dr. Lampotang's testimony and to give appropriate weight to Dr. Lampotang's opinions expressed in his declarations.

## II.  ARGUMENT

### A.  LMA's Objections Constitute A Procedurally Improper Motion to Strike.

The Local Rules of this Court provide that: "*Each motion or other request for ruling by the court* shall be accompanied by a separate motion and notice of motion and another separate document captioned 'Memorandum of Points and Authorities in support of [the motion].'" *See* Local Rule 7.1(f) (emphasis added).

In its Responsive Claim Construction Brief, LMA objects to Dr. Lampotang's opinions expressed in his declarations, particularly those concerning the term "backplate," and asks the Court to give "no weight" to those opinions. (LMA Resp. Br. 12, 16-17.)  LMA's objections are tantamount to a motion to strike Dr. Lampotang's opinions, or alternatively, certainly constitute a "request for ruling by the court." *See* Local Rule 7.1(f).  Instead of filing a separate motion and notice of motion and a separate brief as required by Rule 7.1(f), LMA has improperly included its motion to strike in its Responsive Claim Construction Brief.  Accordingly, LMA's motion to strike Dr. Lampotang's declarations should be denied.

### B.  Dr. Lampotang's Declarations Reflect His Independent Opinions.

LMA argues that Dr. Lampotang's declarations do not reflect his independent opinions because he did not personally type up the declarations.  The record shows that, while counsel drafted a summary of his previously expressed opinions, Dr. Lampotang reviewed and requested edits to the draft opinions, and that his declarations accurately reflect his opinions as expressed to counsel during numerous telephonic working sessions and an in-person meeting.  LMA's

2

contention has no merit.

LMA cites from caselaw applying Rule 26(a)(2)(B). (LMA Resp. Br. 14.) First, Rule 26(a)(2)(B) does not apply to this situation, as Dr. Lampotang's declarations are obviously not Rule 26 expert disclosures. *See* Fed. R. Civ. P. 26 (a)(2)(A) (". . . a party must disclose . . . the identity of any witness it may use *at trial*. . . .") (emphasis added).

Second, even if applied, there has been no violation of the standards of Rule 26. The drafters of the Rule envisioned that experts may need assistance in complying with the requirement of a written report, stating that Rule 26 (a)(2)(B) "does not preclude counsel from providing assistance to experts in preparing the reports . . . . Nevertheless, the report, … should be written in a manner that reflects the testimony to be given by the witness and it must be signed by the witness." Advisory Committee Notes to Rule 26.

Other district courts reviewing objections similar to LMA's have concluded that where an expert substantially participated in the preparation of his reports, the fact that counsel assisted the expert in reducing his opinions to writing is not objectionable. *See, e.g., Keystone Mfg. Co. v. Jaccard Corp.*, 394 F. Supp. 2d 543, 568 (W.D.N.Y. 2005) (denying motion to disqualify expert where the expert wrote his report with the assistance of counsel but was actively and substantively involved in the preparation, read the report thoroughly before signing it, and confirmed that opinions in the report were his own); *Insight Tech., Inc. v. Surefire, LLC*, Civ. No. 04-cv-74-JD, 2007 U.S. Dist. LEXIS 83632, *24 (D.N.H. Nov. 1, 2007) (finding that counsel was not the source of an expert's opinions where, in a "collaborative process," the expert discussed his opinion with counsel, and counsel recorded the opinion, sometimes rephrasing in patent language); *Seitz v. Envirotech Sys. Worldwide Inc.*, Civ. No. H-02-4782, 2008 U.S. Dist. LEXIS 17395, *3-8 (S.D. Tex. Mar. 6, 2008) (denying motion to strike an expert's testimony where the expert reviewed the relevant materials, had numerous discussions with counsel, communicated his opinion to counsel before drafts were prepared in counsel's office based on the communications, and the expert revised the draft).

Here, Dr. Lampotang had formulated and expressed his opinions on claim construction well before the preparation of his declarations started. Dr. Lampotang had reviewed the patent-

in-suit, the file history, as well as relevant prior art references. (Declaration of Bryan Kohm ("Kohm Decl."), Ex. B (Lampotang Dep. 14:18-24, Jan. 6, 2009.)) Before and during the drafting process, he had extensive discussions with Ambu's attorneys, including an initial face-to-face meeting as well as several telephonic or telephone/Web meetings, where he discussed his analysis and opinions. In the Web meetings he was able to review written materials about the case and observe and provide corrections as the results of his additional analysis were reduced to writing. (Kohm Decl., Ex. B (Lampotang Dep. 148:14-149:13, 151:8-152:6), Kohm Decl. ¶ 5, 7.)

In September, 2008, over two months prior to the preparation of his first declaration, Dr. Lampotang had a face-to-face meeting with Ambu's attorney, Charlene Morrow, where Dr. Lampotang, who had previously reviewed the '100 patent,[1] discussed his understanding of the '100 patent. (Kohm Decl., Ex. B (Lampotang Dep. 82:25-83:6; 74:11-14; 84:24-85:3; 87:3-9).) During the meeting, Dr. Lampotang gave Ms. Morrow his working opinions about the meaning of the claims. (*Id*. at 95:1-3.)

After the face-to-face meeting, Ambu's attorneys prepared a draft claim chart. Dr. Lampotang reviewed the draft (*Id*. at 85:4-7), and Ambu's attorneys then consulted with him about revisions to the claim chart (*Id*. at 81:23-82:6). The final version of the claim chart was disclosed in the Joint Claim Construction Chart. (Docket No. 89.)

Thereafter, Dr. Lampotang began to work on his declarations. While Dr. Lampotang did not personally type the declarations, the declarations reflected the opinions that Dr. Lampotang had previously expressed during his meetings with Ambu's attorneys, which were captured in the claim chart. (Kohm Decl., Ex. B (Lampotang Dep. 57:6-58:6, 186:18-24).) The declarations also resulted from Dr. Lampotang's further analysis following review of additional materials such as the file history of the '100 patent, and prior art references cited in the file history. (*Id.* at 14:25-17:4, 77:25-78:9, 148:8-13.)

Dr. Lampotang had several working sessions with Ambu's attorney, Bryan Kohm, over

---

[1] Dr. Lampotang's billing invoice for the period from August to November 2008 indicates that he had reviewed the '100 patent before meeting with Ms. Morrow on September 4, 2008. (Kohm Decl., Ex. C (Lampotang Dep. Exhibit 17 at LAMP01762).)

4

the telephone and assisted by Web software, so that Dr. Lampotang could review the drafts and request real-time edits to the summary of his opinions. (*Id.* at 151:15-152:17.) Before his first meeting with Dr. Lampotang on November 22, 2008, Mr. Kohm had been informed of prior discussions between Dr. Lampotang and other Ambu attorneys, had a copy of the claim chart that set forth positions into which Dr. Lampotang had had input, and had copies of the patents and cited prior art. (Kohm Decl. ¶ 3.) Before the meeting, Mr. Kohm prepared only the background section of the declaration, which conveyed information drawn from Dr. Lampotang's curriculum vitae and a short summary of the basic features of three prior art devices. (Kohm Decl. ¶ 5.) Dr. Lampotang testified that he then had a "very good working session" with Mr. Kohm on November 22, 2008, where they "spent a lot of time" discussing his Opening Declaration. (Kohm Decl., Ex. B (Lampotang Dep. 151:1-152:6; 154:14-15).) Mr. Kohm typed in materials during that discussion, and then showed them to Dr. Lampotang during subsequent sessions. During the meetings, Dr. Lampotang could view both the draft and other material online. (*Id.* at 151:15-21.)

Dr. Lampotang had another lengthy working session with Mr. Kohm on November 24, 2008 to review and discuss the write up that Mr. Kohm had prepared of their last session. (Kohm Decl. ¶ 7, Ex. B (Lampotang Dep. 154:12-14).) During that session, Dr. Lampotang reviewed the entire draft over the Internet and was able to make revisions personally in real time. (Kohm Decl. ¶ 7.)

Thereafter, before the Opening Declaration was filed on November 25, 2008, Dr. Lampotang sent further edits in a "markup" copy to Mr. Kohm, and asked Mr. Kohm to call him to discuss. (*Id.* at 160:23-161:2.) After further discussions with Dr. Lampotang, Mr. Kohm incorporated the edits Dr. Lampotang suggested. (*Id.* at 160:23-161:7.) Dr. Lampotang then reviewed the final draft again before signing it. (*Id.* at 161:8-11.)

This is clearly not a situation where an expert compromised his independent judgment during the drafting process. In fact, Dr. Lampotang was clear that Ambu's lawyers made changes to the draft claim construction prepared after the initial meeting with him based on his input (*Id.* at 55:7-10, 57:20-58:6, 86:24-87:9, 94:23-95:3), and that when he asked for other changes to be made, the attorneys always complied with his requests (*Id.* at 214:21-215:3).

5

None of the cases LMA cite stand for the proposition, as LMA suggests, that an expert must "actually put[] pen to paper or (fingers to keyboard)" in order to express his opinions. (*See* LMA Resp. Br. 14.) Indeed, LMA's citations to cases in which expert reports were excluded are readily distinguishable from the facts of this case. In these cases, the court did not exclude an expert report solely because the report was prepared with the help of counsel; rather, there were substantial additional indications that report did not reflect the independent opinions of the expert. In *Butera v. District of Columbia*, the D.C. Circuit upheld a decision to exclude testimony of defendant's expert where the trial court found that the expert gave false deposition testimony, and that it was uncontested that the defense counsel wrote the expert report. *See* 83 F. Supp. 2d 25, 34 (D.D.C. 1999). In *Stein v. Foamex Int'l, Inc.*, the court excluded an expert's affidavit, where the expert had "never played any substantial role in its preparation, other than signing it." *See* No. Civ. A. 00-2356, 2001 WL 936566, *5 (E.D. Pa. Aug. 15 2001). Similarly, in *DataQuill Ltd. v. Handspring, Inc.*, the court found DataQuill's expert report unreliable, because not only was the expert report drafted by DataQuill, but in deposition the expert "could not explain the definition of claims terms…, could not explain why features satisfied particular claim limitations," etc. *See* No. 01 C 4635, 2003 WL 737785, *4 (N.D. Ill. Feb. 28, 2003).[2] Accordingly, there is simply no basis in law for exclusion of Dr. Lampotang's declarations for the mere fact that he does not have, or use, university resources[3] or his own fingers to type them.

**C.    Far from "Conclusory," Dr. Lampotang's Declarations Are Well Supported by Facts and Analysis.**

LMA also asserts that Dr. Lampotang's opinions concerning the claim term "backplate" are "wholly conclusory" and thus should be given "no weight." (LMA Resp. Br. 12.) However, Dr. Lampotang's discussion of the term "backplate" in his opening declaration spans three full

---

[2] The *Reliance Ins. Co. v. Keybank U.S.A.* case that LMA cites is also inapposite. *See* No. 1:01 CV 62, 2006 WL 543129, *2-3 (N.D. Ohio Mar. 3, 2006). In that case, the court did not even reach the issue of whether an expert report should be given any weight. *See id.*

[3] Dr. Lampotang testified that he did not have an administrative assistant at his work place, University of Florida, to help him with secretarial work, such as typing a manuscript. (Kohm Decl., Ex. B (Lampotang Dep. 19:24-20:2).)

6

pages, and contains over a dozen cites to either the patent or other intrinsic or extrinsic materials supporting his analysis (Docket No. 114.19, Lampotang Open. Decl., ¶¶ 34-41; Docket No. 136.2.) In his opening declaration, Dr. Lampotang stated that, in forming his opinion on the term "backplate," he had reviewed several sources, including the '100 patent, its prosecution history, various patent documents including prior art patents, and a memorandum produced by LMA. (Lampotang Open. Decl., ¶ 34.) He then analyzed the specification and pointed to specific language to explain why the disclosure supported Ambu's proposed construction, *e.g.*, why the tube joint is part of the backplate . (*Id.* ¶¶ 35-37.) In addition, he analyzed LMA's proposed construction of the term "backplate" and explained how LMA's proposed construction would be inconsistent with the specific descriptions in the specification, a prior art patent issued to the same inventor, and LMA's own internal document. (*Id.* ¶¶ 38-41.) Dr. Lampotang's responsive declaration includes further discussion supported by additional citations. (Lampotang Resp. Decl., ¶¶ 23-25, Appendix A.) In his responsive declaration, Dr. Lampotang further analyzed a prior art patent cited during prosecution and explained what a skilled person would understand the meaning of the term "backplate" in light of the disclosure of that prior art and the prosecution history. (Lampotang Resp. Decl. ¶¶ 23-25, Appendix A.)

This is not the type of conclusory analysis criticized by the Federal Circuit in the cases cited by LMA. For example, in *Network Commerce Inc. v. Microsoft Corp.*, 422 F.3d 1353, 1361 (Fed. Cir. 2006), the Federal Circuit rejected an expert opinion that stated that there could be other "possible embodiments" of the invention beyond that taught in the specification, but did not explain what they were or provide reference to any examples from industry publications or other sources. Here, in contrast, Dr. Lampotang's declarations are well supported by not just review of the patent, but also the prosecution history, prior art considered by the Patent Office, and citation to other industry patents and marketing materials for LMA products.[4]

In support of its objection, LMA gives as an example of an opinion in paragraph 40 of Dr. Lampotang's Opening Declaration, which states that LMA's proposed construction of the term

---

[4] LMA's additional contention, that Dr. Lampotang should have done additional searching of prior art prior to opining, finds no support in the *Network Commerce* decision or otherwise.

7

"backplate" is so broad that it would read on devices clearly lacking a backplate. (Lampotang Responsive Decl. ¶ 40.) Contrary to LMA's assertion, Dr. Lampotang's opinion is not conclusory. He supported that opinion by a concrete example as well as his reasoned analysis. (*See id.*) Dr. Lampotang used U.S. Patent No. 4,509,514 ("the '514 patent") – a patent issued to the named inventor of the '100 patent – as an example to illustrate how LMA's proposed construction of the term "backplate" can read on something which lacks a backplate.[5] (*See id.*) He provided a solid factual basis for his opinion, explaining what components the device in the '514 patent is comprised of, why none of the components in that device is a "backplate" as the term is used in the '100 patent, and why LMA's proposed construction of the term "backplate" nevertheless would read on such a device. (*See id.*) As such, Dr. Lampotang's opinion expressed in paragraph 40 is well supported by facts and analysis, and is far from "conclusory." Furthermore, even if the opinions in paragraph 40 were deemed "conclusory," which Ambu disagrees, there is no reason why the court should ignore the rest of Dr. Lampotang's analysis concerning the term "backplate."

### D. Dr. Lampotang is Well-Qualified to Opine on the Meaning of the Claim Terms as Ascribed by a Skilled Person in the Art.

LMA also objects to Dr. Lampotang's qualifications to opine on the understanding of one or ordinary skill in the art. (LMA Resp. Br. 3, n.2, 14.) First, LMA urges the court to give no weight to Dr. Lampotang's testimony concerning the disputed terms unless there is an ambiguity in the meaning of that term. (LMA Resp. Br. 12.) LMA's argument is based on the false premises that the court may not properly consider expert testimony for claim construction *unless* there is ambiguity in the meaning of a term that cannot be resolved by intrinsic evidence alone. That is not the law.

During claim construction, the court is not "barred from considering any particular sources [of evidence] . . . as long as those sources are not used to contradict claim meaning that is

---

[5] The '514 patent is one of the references cited in the '100 patent and therefore constitutes part of the intrinsic record of the '100 patent. *See Kumar v. Ovonic Battery Co., Inc.*, 351 F.3d 1364, 1368 (Fed. Cir. 2003) ("prior art cited in a patent or cited in the prosecution history of the patent constitutes intrinsic evidence").

unambiguous in light of the intrinsic evidence." *Phillips v. AWH Corp.*, 415 F.3d 1303, 1324 (Fed. Cir. 2005) (*en banc*). In *Phillips*, the Federal Circuit held that "extrinsic evidence in the form of expert testimony can be useful to a court for a variety of purposes, such as to provide background on the technology at issue, to explain how an invention works, to ensure that the court's understanding of the technical aspects of the patent is consistent with that of a person of skill in the art, or to establish that a particular term in the patent or the prior art has a particular meaning in the pertinent field." *Id.* at 1318. What is disapproved of is merely "unsupported assertions by experts" or expert testimony that is "clearly at odds with . . . the written record of the patent." *Id.*

Second, LMA seems to contend that unless one has designed laryngeal mask airway devices (LMA-devices), one cannot opine on the meaning of an LMA-device patent. However, if what LMA is attempting to do is measure the level of ordinary skill in the art by reference to the inventor, who had prior LMA-device patents, that is improper. *See Interconnect Planning Corp. v. Feil*, 774 F.2d 1132, 1138 (Fed. Cir. 1985) ("The invention must be evaluated not through the eyes of the inventor, who may have been of exceptional skill, but as by one of 'ordinary skill.'"). Moreover, a person who does design work on medical devices does not have to have designed the exact same type of device as the patent to understand what one of ordinary skill in the art would understand from the patent publication. An analogous objection was lodged in *Cordis Corp. v. Medtronic AVE, Inc.*, 511 F.3d 1157, 1169-70 (Fed. Cir. 2008), and there the Federal Circuit concluded that a person with a doctoral degree in mechanical engineering who had extensive experience in a computer simulation technique but had never designed a stent was nevertheless qualified to give expert testimony regarding an analysis he performed on the accused coronary stents in a patent case. *See also Sundance, Inc. v. Demonte Fabricating Ltd.*, 2008 U.S. App. LEXIS 26082, *18, n.5 (Fed. Cir. Dec. 24, 2008) ("a chemist not skilled in the particular art at issue might nevertheless appropriately testify as an expert as to the consequences of reacting two chemicals in a particular environment"). Mechanical engineers often perform design work in the medical device fields, and Dr. Lampotang, with his years of teaching and research in the area of airway management, including device design, is well-equipped to testify to what a person of

ordinary skill in the art would understand from the patent specification and related materials.

Dr. Lampotang's declarations may be used to fulfill precisely the function of expert testimony embraced by the Federal Circuit – *i.e.*, to help the court understand the technology and the meaning of the terms as ascribed by a person of ordinary skill in the art. *See Phillips*, 415 F.3d at 1318. The invention of the patent-in-suit, U.S. Patent No. 7,156,100 ("the '100 patent"), "relates to laryngeal mask airway devices (LMA-devices) which are artificial airway devices permitting spontaneous ventilation of the lungs of a patient." (Kohm Decl. Ex. D ('100 patent, col. 1:5-8).) Dr. Lampotang's expertise is in anesthesia equipment which includes airway devices such as the laryngeal mask airway device claimed in the patent-in-suit. (Kohm Decl., Ex. B (Lampotang Dep. 42:3-13; 43:10-13).) As such, Dr. Lampotang's expertise is closely related to the technology at issue, and he is himself a skilled person in the art.

Moreover, Dr. Lampotang is highly qualified in the relevant technology field. With a doctoral degree in mechanical engineering, Dr. Lampotang has been working in the field of anesthesia equipment for over 25 years. (*Id.* at 43:25-44:6; Lampotang Open. Decl. Exhibit A at 1.) Dr. Lampotang is currently a tenured professor of anesthesiology at University of Florida, where he teaches courses on anesthesia equipment to medical residents. (Kohm Decl., Ex. B (Lampotang Dep. 44:7-17).) Since the early 1990s, he has been a faculty member in the Department of Anesthesiology and Department of Mechanical Engineering at University of Florida. (Lampotang Open. Decl. Exhibit A at 2.) Dr. Lampotang is a named inventor on 31 issued US patents and over 20 pending patent applications, the majority of which relate to airway devices and airway management. (*Id.* ¶ 8; Lampotang Open. Decl. Exhibit A.) In addition, Dr. Lampotang has authored over 100 publications, presented over 90 lectures, and taught numerous courses on the subjects of anesthesia delivery systems, airway intubation and management, as well as other areas related to the technology at issue. (Lampotang Open. Decl. ¶ 9.) Furthermore, Dr. Lampotang is a reviewer or a member of the editorial board of several publications, including *Anesthesiology*, *Anesthesia and Analgesia*, and *the Journal of Clinical Anesthesia*. (*Id.* ¶ 10.)

Before being engaged by Ambu, Dr. Lampotang was already familiar with laryngeal mask airway devices such as those manufactured by LMA. (Kohm Decl., Ex. B (Lampotang Dep. at

45:14-19; 72:16-73:2).) Indeed, he had used such devices on one of his patented inventions – a human patient simulator, which essentially replicates the function of the lungs and is able to deliver gases to the lungs. (*Id.* at 39:16-22, 41:3-7.)

With years of teaching and research experience in the relevant technology field, Dr. Lampotang is more than qualified to provide expert opinions that can assist the court during claim construction. The fact that he has not used an LMA device on a human, or that he has not personally designed an LMA device, has no bearing on the competence or reliability of his opinions. *See Cordis*, 511 F.3d at 1169-70.

## III. CONCLUSION

For the foregoing reasons, the LMA's motion to strike Dr. Lampotang's declarations should be denied.

Dated: February 5, 2009          FENWICK & WEST LLP

By:                        
    Darryl M. Woo

Attorneys for Defendant

26616/00401/DOCS/2025140.4

11

| | |
|---|---|
| 1 | **CERTIFICATE OF SERVICE** |
| 2 | The undersigned hereby certifies that all counsel of record who are deemed to have |
| 3 | consented to electronic service are being served with a copy of this document via the Court's |
| 4 | CM/ECF system per Local Rule 5.2 on January 5, 2009. |

By: _____*/s/Darryl M. Woo*_____
Darryl M. Woo
E-mail: dwoo@fenwick.com