1  DARRYL M. WOO (CSB NO. 100513)
   dwoo@fenwick.com
2  CHARLENE M. MORROW (CSB NO. 136411)
   cmorrow@fenwick.com
3  PATRICK E. PREMO (CSB NO. 184915)
   ppremo@fenwick.com
4  BRYAN A. KOHM (CSB NO. 233276)
   bkohm@fenwick.com
5  FENWICK & WEST LLP
   555 California Street, 12th Floor
6  San Francisco, CA 94104
   Telephone: (415) 875-2300
7  Facsimile:  (415) 281-1350

8  Attorneys for Defendants and Counterclaimants
   AMBU A/S, AMBU INC., AND AMBU LTD.
9

10            UNITED STATES DISTRICT COURT

11           SOUTHERN DISTRICT OF CALIFORNIA

12

13  THE LARYNGEAL MASK COMPANY LTD.        Case No. 3:07-cv-01988 DMS (NLS)
    and LMA NORTH AMERICA, INC.,
14                                          Jury Trial Demanded
                    Plaintiffs,
15                                          **MEMORANDUM OF POINTS AND
         v.                                 AUTHORITIES IN SUPPORT OF
16                                          DEFENDANTS' MOTION TO COMPEL
    AMBU A/S, AMBU INC., and AMBU LTD.,     DISCOVERY AND FOR SANCTIONS**
17
                    Defendants,             **[FILED IN ACCORDANCE WITH COURT
18                                          ORDER ENTERED 07/17/09]**

19                                          Date:       August 24, 2009
                                            Time:       11:00 a.m.
20                                          Courtroom:  F, 1st Floor
                                            Judge:      Honorable Nita L. Stormes
21  ────────────────────────────────

22  AND RELATED COUNTERCLAIMS.

23

24

25            **PORTIONS OF DOCUMENT SUBMITTED UNDER SEAL**

26

27

28

# TABLE OF CONTENTS

Page

I.   INTRODUCTION ................................................................. 1

II.  FACTUAL BACKGROUND ................................................ 2

III. ARGUMENT ..................................................................... 9

     A.   LMA's Response to Requests for Admissions ........................ 9

     B.   Interrogatory Nos. 12 and 13 Relating to Distribution and
          Impact of LMA Brochure ............................................... 15

     C.   LMA Should be Sanctioned for its Conduct ........................... 17

IV.  CONCLUSION ................................................................ 18

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

## CASES

*Asea, Inc. v. Southern Pac. Transp. Co.*,
    669 F.2d 1242 (9th Cir. 1981) ................................................................................ 10

*Cable & Computer Tech., Inc. v. Lockheed Saunders, Inc.*,
    175 F.R.D. 646 (C.D. Cal. 1997) ................................................................................ 9

*DIRECTV, Inc. v. Puccinelli*,
    224 F.R.D. 677 (D. Kan. 2004) ................................................................................ 17

*Holmgren v. State Farm Mut. Auto. Ins. Co.*,
    976 F.2d 573 (9th Cir. 1992) ................................................................................ 10

*Marchand v. Mercy Med. Cir.*,
    22 F.3d 933 (9th Cir. 1994) ................................................................................ 12

*Southland Sod Farms v. Stover Seed Co.*,
    108 F.3d 1134 (9th Cir. 1997) ................................................................ 9, 12, 14

## STATUTES

Cal. Bus. & Prof. Code §§ 17200 ................................................................................ 5

Cal. Bus. & Prof. Code §§ 17500 ................................................................................ 5

Cal. Civil Code § 45 ................................................................................ 5

Fed. R. Civ. P. 36(a)(3) ................................................................................ 10

Fed. R. Civ. P. 36(a)(4) ................................................................................ 10

Fed. R. Civ. P. 37(a)(5) ................................................................................ 18

Fed. R. Civ. P. 33(d) ................................................................ 7, 15, 16

Fed. R. Civ. P. 54(b) ................................................................................ 3

Lanham Act § 43(a) ................................................................................ 5

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

# I. INTRODUCTION

Plaintiffs and Counterdefendants The Laryngeal Mask Company Ltd. and LMA North America, Inc. (collectively "LMA") sued its direct competitor, Ambu A/S and its affiliated companies Ambu Inc. and Ambu Ltd. (collectively "Ambu"), for infringement of U.S. Patent No. 7,156,100 ("'100 patent"). Ambu counterclaimed for non-infringement, invalidity, false advertising and unfair competition. Ambu's false advertising and unfair competition claims are based on LMA's worldwide advertising campaign, which falsely claimed that Ambu's newly released medical devices posed a serious and increased risk of patient injury, and even death.

On June 30, 2009, the Court entered partial summary judgment, determining that three of the four accused devices do *not* infringe. In light of the nominal damages asserted with regard to the fourth accused device,[1] the focus of this case has now shifted. The key issues to be tried are patent invalidity and LMA's acts of unfair competition.

Rather than meaningfully engage in discovery, LMA has at every opportunity resisted compliance by submitting evasive and non-compliant discovery responses. In light of the Court's July 17, 2009 Order (Dkt 248), Ambu's present motion focuses only on discovery disputes that have arisen within thirty days of the close of discovery. Specifically, Ambu challenges:

- LMA's response to Requests for Admissions Nos. 3-6, 12 and 14 served on June 12, 2009; and

- LMA's supplemental response to Ambu Interrogatories 12 and 13 served on July 10, 2009.

Ambu's written discovery is directly tied to elements of its false advertising and unfair competition counterclaims. The Requests for Admissions seek to confirm that LMA made oral statements that Ambu's laryngeal airway masks can cause patient injury, specifically nerve damage and aspiration (RFA Nos. 4 and 5), that these statements were made to persons who have the power

---

[1] ██████████████████████████████████████

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

to influence the purchasing decision (RFA Nos. 3, 6, and 14), and that LMA performed no clinical studies to confirm statements made about Ambu products (RFA No. 12).

Ambu's interrogatories seek to discover the extent of LMA's distribution of the offending advertising materials (Interrogatory 12) and the identity of all customers that switched from Ambu to LMA over the past five years (Interrogatory 13). This information is also highly relevant to elements of the false advertising claim, including the falsity and materiality of the accused statements, and damages. In light of the importance of this discovery, Ambu respectfully moves the Court for an order compelling Plaintiff and Counterdefendant LMA to provide complete, non-evasive responses and award monetary sanctions for the expense incurred in obtaining compliance with this discovery.[2]

## II.    FACTUAL BACKGROUND

Ambu and LMA are direct competitors in the development, marketing, distribution and sale of laryngeal mask airway devices. Laryngeal masks are airway devices used to provide respiration to patients during surgery. Prior to the expiration of the original patents in 2002, LMA was the sole provider of laryngeal masks. After 2002, numerous companies entered the market. Ambu developed and introduced a competing laryngeal mask product in spring 2004. Premo Decl. at ¶ 31 (Ambu USA Website, Ambu Press Release dated 4/20/05). Ambu has sold four laryngeal masks over the years: Aura40, AuraOnce, AuraStraight and AuraFlex. Id. at ¶ 32 (Ambu website). ▮

▮ Id., Ex. P (D. Evans Dep. Tr. at 71:11 – 72:13).

---

[2]    Ambu has attempted to faithfully comply with the Court's Order issued July 17, 2009 (Dkt 248) and raise only "timely" disputes as the Court has interpreted the prior scheduling orders. As a result, Ambu has not included any of the document request issues raised in its original Motion to Compel filed on July 14, 2009. In addition, Ambu has not included a dispute over a Rule 30(b)(6) deposition because LMA's counsel recently confirmed that they would identify witness(es) for deposition during the first or second week of August. LMA may not exercise a similar restraint. Most, if not all, of the discovery issues raised in LMA's Motion to Compel originally filed on July 13 have been pending for months and were, in fact, resolved through the meet-and-confer process. Ambu asks in the interest of fairness that the "timeliness" of the disputes be interpreted consistently to the issues raised by both parties. If LMA is permitted to raise issues that were the subject of discussions well beyond the 30-day limitation period, Ambu would then ask that it be permitted to raise issues that were also discussed during these same time periods.

LMA is essentially a one-product company. In 2007, its airway products accounted for approximately 97.7% of LMA's total net sales. *Id.*, Ex. Q (LMA 2007 Annual Report at 18).

█████████████████████████████████████████████████████████████
█████████████████████████████████████████████████████████████
█████████████████████████████████████████████████████████████
█████████████████████████████████████████████████████████████ LMA has not

taken the high road in defending its market share. As set forth in Ambu's counterclaims, its success has come as a result of aggressive and unfair competition, which includes the proliferation of meritless IP litigation as well as a false advertising campaign taking direct aim at the reputation and good name of Ambu.

█████████████████████████████████████████████████████████████
█████████████████████████████████████████████████████████████ LMA sued Ambu for patent infringement on October 15, 2007. LMA originally accused Ambu of infringing two patents, but eventually dropped one of the patents in suit. LMA accuses Ambu of infringing the '100 patent, which claims a minor improvement to prevent the tip of the devices from folding over during insertion in a patient.

The case has dramatically changed over the past month. On June 30, 2009, the Court determined that three of the four accused devices do not infringe and entered partial summary judgment in favor of Ambu and against LMA. *See* 06/30/09 Summary Judgment Order (Dkt 224).

█████████████████████████████████████████████████████████████
█████████████████████████████████████████████████████████████
█████████████████████████████████████████████████████████████ Recognizing that its patent case is essentially over, LMA has recently moved the Court to enter judgment and stay all Ambu counterclaims in order to try its luck on appeal before the Federal Circuit. *See* LMA's Rule 54(b) Motion to Enter Judgment (Dkt 251). LMA's latest tactic ignores the fact that Ambu has valid counterclaims pending, including claims that may invalidate the '100 patent and claims for damages and injunctive relief directed at LMA's false advertising campaign.

Ambu's unfair competition counterclaims are based on the coordinated efforts of LMA's U.S. and European entities to block companies, like Ambu, from entering the market after the LMA patents expired in 2002. Ambu has an impeccable reputation in the medical community

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

(the "bags" used to ventilate patients during emergencies were pioneered by Ambu, a company whose history dates to the 1930s). However, in or about June 2005, LMA launched an advertising campaign claiming that the curved design of Ambu's new laryngeal masks carried with it an inherent risk of causing (a) nerve damage affecting speech and the ability to swallow, as well as (b) gastric insufflation, regurgitation, or aspiration. This latter risk is where a patient chokes on the contents of his or her own stomach due to an improper seal by the airway device over the esophageal sphincter, allowing stomach contents to enter the lungs.



FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

LMA now claims in litigation that the LMA Brochure "has not been in widespread use for years" (*see* Motion to Enter Judgment at 10:12 (Dkt 251).

████████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████████

LMA has resisted answering interrogatories that would confirm the scope and impact of use of the Brochure.

Ambu has filed the following counterclaims based on LMA's creation, use, and distribution of the LMA Brochure, which was based on Dr. Ferson's cadaver study: (1) false advertising in violation of § 43(a) of the Lanham Act and Cal. Bus. & Prof. Code §§ 17500, *et seq.*; (2) trade libel in violation of Cal. Civil Code § 45; (3) intentional interference with prospective economic relations; and (4) unfair competition pursuant to Cal. Bus. & Prof. Code §§ 17200, *et. seq.* LMA's statements in the advertising are false because Dr. Ferson's single cadaver example was inconclusive, riddled with deficiencies questioning its scientific integrity, and the original cadaver case report does not in fact conclude that there is an increased risk of patient harm using the Ambu device. Ambu further claims, as an independent basis for liability, that LMA misrepresented and concealed Dr. Ferson's original work when it created and distributed its edited summary of the Ferson work.

On May 13, 2009, Ambu served its first set of Requests for Admissions in an effort to narrow the issues for trial. Premo Decl., Ex. A (Ambu RFAs). LMA responded but refused to either admit or deny RFA Nos. 3-6, 12 and 14. *Id.*, Ex. B (LMA's RFA Responses served 06/12/09). Instead, it attempted to avoid the requests by either claiming it lacked knowledge to answer the requests or by essentially rewriting the original requests, then either admitting or denying the re-written request. *Id.*

/ / /

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

For example, RFA No. 14 asks LMA to admit that "oral statements that Ambu's laryngeal masks increase the risk of gastric insufflation, regurgitation, or aspiration were made for the purpose of influencing the purchasing decision of recipients." *Id.*, Ex. A (Ambu RFAs). LMA claims "it lacks knowledge or information" regarding whether it made the oral statements. *Id.*, Ex. B at 8 (LMA Response to RFA No. 14). Clearly, LMA has the ability to investigate and confirm what members of its own sales organization said to customers and prospective customers. LMA is uniquely qualified to answer this straight-forward request.

RFA No. 4 asks LMA to admit that it "made oral statements to medical doctors in the United States, to the effect that Ambu Masks can cause hypoglossal nerve damage." LMA would only admit that it distributed the LMA Brochure and that it made oral statements "consistent" with certain unidentified statements in the Brochure. *Id.*, Ex. B at 3 (LMA Response to RFA No. 4). LMA does not affirmatively deny any portion of the request and more importantly does not respond to the specific request as drafted.

By way of a further example, Ambu's RFA No. 12 seeks an admission that LMA "did not conduct any clinical studies to confirm Dr. Ferson's conclusions." *Id.*, Ex. A. LMA responds with a denial, but to an entirely different request stating:

> LMA denies that certain of Dr. Ferson's conclusions reported in the abstract dated October 25, 2004 titled "Comparative Anatomical Study of Supraglottic Airways" are susceptible to confirmation by clinical studies and observes that other conclusions are supported by previously published clinical papers and subsequently conducted investigations, including Dr. Ferson's subsequent studies verifying the results of the abstract.

*Id.*, Ex. B at 7 (LMA Response to RFA No. 12). Ambu did not ask if Dr. Ferson's conclusions were "susceptible" to confirmation, but rather asked if LMA had actually performed any such studies to confirm the conclusions. LMA has not performed such studies (*see Id.*, Ex. P (D. Evans Dep. Tr. 225:25 – 227:8)), and its efforts to evade the request are in bad faith.

LMA's responses to interrogatories were equally evasive. Ambu has been struggling to determine the extent of LMA's distribution of the LMA Brochure. This is relevant in evaluating the harm in the market and corroborating LMA's damages analysis. Ambu first served Interrogatory 12 on February 23, 2009. It simply asked LMA to identify the persons to which it

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

provided a copy of the LMA Brochure or made oral statements about the Ferson study. *Id.*, Ex. D (Ambu Interrogatory 12 at 7).

In response to Ambu's objections, LMA agreed to amend its response and did, in fact, amend its response twice first on May 6, 2009 and finally on July 10, 2009.

LMA's final July 10 response served nearly a month after the close of discovery repeats LMA's burden objections and claims the discovery of the identity of recipients of the false advertising is somehow not relevant to the lawsuit.

Only LMA has the ability to provide a complete and comprehensive list of distribution. Ambu can use this information to match against its known lost sales accounts. Evidence of broad distribution and lost sales clearly damages LMA's case, but the existence of "bad" or "harmful" evidence is not a basis to avoid discovery.

LMA attempts to avoid another damages-related interrogatory (No. 13), which asks LMA to identify all LMA customers that switched from Ambu laryngeal mask to LMA's devices from January 1, 2004 to present.

[REDACTED]

Competitive sales information such as this is routinely collected by sales departments

[REDACTED]

After receiving Ambu's objections, LMA agreed to supplement on May 6, 2009 and again on July 10, 2009.

[REDACTED]

Ambu made repeated efforts to resolve these discovery disputes. The interrogatory responses were the subject of four letters and an e-mail. Premo Decl. at ¶¶ 4, 10-11, 21-23, Exs. C, H, I, L. LMA's improper objections and evasive responses to Requests for Admissions were also the subject of a detailed letter exchanged on June 26, 2009. *Id.* at ¶ 4. Lead counsel for the parties had in-person discussions on July 8, 2009 regarding, among other issues, LMA's deficient RFA and interrogatory responses. *Id.* at ¶ 5. LMA has engaged in a pattern of misconduct in discovery, initially withholding information, offering to supplement adding further delay, but ultimately providing no meaningful supplementation. *See* Premo Decl. ¶¶ 8-9 & Exs. F-G (highlighting the additional information provided in LMA's supplemental responses). In light of LMA's refusal to

voluntarily provide full, complete and compliant responses, Ambu respectfully seeks the Court's intervention and assistance.

### III.    ARGUMENT

Discovery is designed to remove surprise from trial preparation so the parties can obtain evidence necessary to evaluate and resolve their dispute. *Cable & Computer Tech., Inc. v. Lockheed Saunders, Inc.*, 175 F.R.D. 646, 650 (C.D. Cal. 1997). The party resisting discovery has the burden to show discovery should not be allowed, and has the burden of explaining and supporting its objections. *Id.*

Ambu has brought counterclaims for false advertising and unfair competition claims under federal and state law. To recover on its false advertising claims, Ambu must show that: (1) LMA made a false or misleading statement of fact about its or Ambu's products; (2) the statement actually deceived or has the tendency to deceive a substantial segment of its audience; (3) the deception is material, in that it is likely to influence the purchasing decision; (4) LMA caused its false statement to enter interstate commerce; and (5) Ambu has been or is likely to be injured as a result of the false statement, either by diversion of sales from itself to LMA or by a lessening of the goodwill associated with Ambu's products. *Southland Sod Farms v. Stover Seed Co.*, 108 F.3d 1134, 1139 (9th Cir. 1997).

The Requests for Admissions and Interrogatories at issue are highly relevant to the first element regarding the falsity of the disputed advertising, third element on the materiality of the disputed statements, and the last element regarding how Ambu has been or is likely injured. This same discovery is relevant to Ambu's libel and unfair competition counterclaims, which also analyzes the falsity of the statements at issue and harm caused by them. Ambu's Motion is timely because LMA has only recently served its RFA responses and supplemental interrogatory responses on June 12, and July 10, 2009, respectively.

### A.    LMA's Response to Requests for Admissions

LMA failed to properly respond to Ambu's Requests for Admissions ("RFA") Nos. 3-6, 12, and 14. Premo Decl., Ex B (LMA's RFA Responses). It is well established that in responding to requests for admissions, the answer must consists of one of the following: (1) an

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

admission; (2) a denial; or (3) a statement detailing why the answering party is unable to admit or deny. Fed. R. Civ. P. 36(a)(3); *Asea, Inc. v. Southern Pac. Transp. Co.*, 669 F.2d 1242, 1245-46 (9th Cir. 1981). If any portion of the request for admission is true, the answering party must admit that portion. Fed. R. Civ. P. 36(a)(4). Rule 36 makes clear that: "A denial must fairly respond to the substance of the matter…" Fed. R. Civ. P. 36(a)(4). "[W]hen good faith requires that a party qualify an answer or deny only a part of a matter, the answer must specify the part admitted and qualify or deny the rest." *Holmgren v. State Farm Mut. Auto. Ins. Co.*, 976 F.2d 573, 579-580 (9th Cir. 1992).

LMA's responses violate Rule 36 because they either refuse to answer, feigning ignorance of information clearly within its control or rewrite the original requests to avoid the consequence of admitting or denying the request as originally drafted. Beginning with RFA Nos. 3 and 6, the full text of the requests and responses are listed below. RFA No. 3 clearly asks LMA to admit that recipients of the LMA Brochure had the power to make or influence the purchasing decision. RFA Nos. 6 and 14 seek a similar admission with respect to anyone that heard LMA's sales pitch claiming Ambu devices cause nerve damage, gastric insufflation, regurgitation or aspiration.

**REQUEST FOR ADMISSION NO. 3: (Served on 05/13/09)**

**Admit that recipients of the brochure "A Comparative Anatomical Study of Laryngeal Masks" had the power to make, or to influence, a decision to purchase an Ambu or LMA Laryngeal Mask.**

**RESPONSE TO REQUEST FOR ADMISSION NO. 3: (Served 06/12/09)**

LMA objects to this Request as vague and ambiguous with respect to the term "influence"; compound; overbroad in that "recipients" is not limited to any identified recipients and potentially and implicitly includes all recipients of the brochure; incapable of being admitted or denied, because the recipients of the brochure are not a homogenous group with respect to their power (if any) to purchase or cause to be purchased a particular brand of laryngeal mask; and unduly burdensome in that (among other things) it seeks information not known or readily available to LMA regarding the authority of third-party recipients of the brochure to purchase or cause to be purchased a particular brand of laryngeal mask.

Subject to the foregoing, and after reasonable inquiry, LMA responds that it lacks knowledge or information regarding the "power" that recipients of the brochure "A Comparative Anatomical Study of Laryngeal Masks" had to make or influence a decision

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

to purchase an Ambu or LMA Laryngeal Mask and therefore cannot admit or deny this Request.

**REQUEST FOR ADMISSION NO. 6:** (Served 05/13/09)

**Admit that LMA communicated to persons who had the power to make or to influence a decision to purchase an Ambu or LMA Laryngeal Mask, statements to the effect that Ambu Laryngeal Masks can cause hypoglossal nerve damage.**

**RESPONSE TO REQUEST FOR ADMISSION NO. 6:** (Served 06/12/09)

LMA objects to this Request as vague and ambiguous with respect to the term "influence" and phrase "to the effect that"; compound; overbroad in that "persons" is not limited to any identified persons and potentially and implicitly includes all persons who received the brochure or heard oral statements about the brochure; incapable of being admitted or denied, because the recipients of the brochure are not a homogenous group with respect to their power (if any) to purchase or cause to be purchased a particular brand of laryngeal mask; and unduly burdensome in that (among other things) it seeks information not known or readily available to LMA regarding the authority of unidentified third parties to purchase or cause to be purchased a particular brand of laryngeal mask and presupposes a survey of all current and former LMA sales representatives about their communications years ago.

Subject to the foregoing, and after reasonable inquiry, LMA responds that it lacks knowledge or information regarding the "power" that the unidentified persons had to make or influence a decision to purchase an Ambu or LMA Laryngeal Mask and therefore cannot admit or deny this Request. Subject to the foregoing, and based on information known or readily available to LMA, LMA admits that it distributed the "A Comparative Anatomical Study of Laryngeal Masks" brochure and that it communicated statements consistent with certain statements in that brochure regarding hypoglossal nerve injury.

**REQUEST FOR ADMISSION NO. 14:** (Served 05/13/09)

**Admit that LMA's oral statements that Ambu's laryngeal masks increase the risk of gastric insufflation, regurgitation, or aspiration were made for the purpose of influencing the purchasing decision of recipients.**

**RESPONSE TO REQUEST FOR ADMISSION NO. 14:** (Served 06/12/09)

LMA objects to this Request as compound, vague and ambiguous with the failure to identify to whom, when, and where any oral statements were made and with respect to the term "influence," overbroad, and unduly burdensome.

Subject to the foregoing, and after reasonable inquiry, LMA responds that it lacks knowledge or information regarding whether LMA made oral statements that Ambu's laryngeal masks "increase the risk of gastric insufflation, regurgitation, or aspiration," and therefore cannot admit or deny this Request.

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1    RFA Nos. 3, 6 and 14 are aimed at the third element of the false advertising claim, which

2    is that the false statement was material in that it is likely to influence the purchasing decision. *See*

3    *Southland Sod Farms*, 108 F.3d at 1139. LMA's vagueness objection is not well taken.

4    Ambiguity is not a valid grounds for objecting unless so ambiguous that the responding party

5    cannot in good faith frame an intelligent response. Instead, answering parties should admit to the

6    fullest extent possible and explain in detail why other portions cannot be admitted. *See*

7    *Marchand v. Mercy Med. Cir.*, 22 F.3d 933, 938 (9th Cir. 1994).

8    LMA's answers to RFA Nos. 3, 6 and 14 are entirely non-responsive. LMA claims it lacks

9    knowledge or information to answer the requests. LMA is a sophisticated company with offices

10   worldwide. It along with its predecessor companies have been making, distributing and selling

11   their laryngeal masks to clinicians for more than twenty years. It has a clear understanding as to

12   the identity of its target audience and their ability to influence the purchasing decision.



21                                                                                          LMA's efforts to side-step

22   this admission is only to avoid establishing a material undisputed fact. It should be compelled to

23   properly respond to the request.

24   Requests for Admissions 4 and 5 seek admissions about *oral* statements by LMA

25   employees to medical doctors and nurse anesthetists claiming that the Ambu device could cause

26   nerve damage. The answers are relevant to the first element of the false advertising claim to

27   conclusively establish that the statement was made orally (as well as in writing) and to establish to

28   whom it was communicated. The full text of the requests and responses is provided below:

**REQUEST FOR ADMISSION NO. 4**: (Served 05/13/09)

**Admit that LMA made oral statements to medical doctors in the United States, to the effect that Ambu Laryngeal Masks can cause hypoglossal nerve damage.**

**RESPONSE TO REQUEST FOR ADMISSION NO. 4**: (Served 06/12/09)

LMA objects to this Request as vague and ambiguous with respect to the phrase "to the effect that"; overbroad in that "medical doctors" is not limited to any identified recipients and potentially includes all such recipients of the brochure; and unduly burdensome in that (among other things) the request presupposes a survey of all current and former LMA sales representatives about their oral statements to medical doctors years ago.

Subject to the foregoing, and based on information known or readily available to LMA, LMA admits that it distributed the "A Comparative Anatomical Study of Laryngeal Masks" brochure and that it made oral statements to medical doctors in the United States consistent with certain statements in that brochure regarding hypoglossal nerve injury.

**REQUEST FOR ADMISSION NO. 5**: (Served 05/13/09)

**Admit that LMA made oral statements to certified registered nurse anesthetists in the United States, to the effect that Ambu Laryngeal Masks can cause hypoglossal nerve damage.**

**RESPONSE TO REQUEST FOR ADMISSION NO. 5**: (Served 06/12/09)

LMA objects to this Request as vague and ambiguous with respect to the phrase "to the effect that"; overbroad in that "certified registered nurse anesthetists" is not limited to any identified recipients and potentially includes all such recipients of the brochure; and unduly burdensome in that (among other things) the request presupposes a survey of all current and former LMA sales representatives about their oral statements to certified registered nurse anesthetists years ago.

Subject to the foregoing, and based on information known or readily available to LMA admits that it distributed the "A Comparative Anatomical Study of Laryngeal Masks" brochure and that it made oral statements to certified registered nurse anesthetists in the United States consistent with certain statements in that brochure regarding hypoglossal nerve injury.

LMA's responses fail to admit *or* deny these requests as originally drafted. Instead, LMA essentially rewrites the request and merely admits that it made oral statements *consistent with* the Ferson Brochure that it distributed. This is not responsive as it fails to admit or deny whether LMA made the specific oral statement at issue, *i.e.*, that Ambu's laryngeal masks can cause hypoglossal nerve damage. While there is no question that LMA made these statements, LMA witnesses have resisted admitting this in deposition. Premo Decl., Ex. P (D. Evans Dep. Tr.

231:18-232:7). This is why it is necessary to conclusively establish the fact through the requests for admissions.

Finally, Ambu's RFA No. 12 asks LMA to admit it did not perform any clinical studies to confirm Dr. Ferson's conclusions that are at the center of the false advertising case. The response is relevant to the first element of the Lanham Act claim whether LMA made a false or misleading statement of fact about Ambu's products. *Southland Sod Farms*, 108 F.3d at 1139. It is also relevant to establish an absence of any good faith basis by LMA for making its comparative safety claims, which is relevant to Ambu's other unfair competition claims. As shown below, LMA once again avoids the discovery requests and provides a self-serving response, which was never requested.

**REQUEST FOR ADMISSION NO. 12:** (Served 05/13/09)

**Admit that LMA did not conduct any clinical studies to confirm Dr. Ferson's conclusions reported in the abstract dated October 25, 2004 titled "Comparative Anatomical Study of Supraglottic Airways."**

**RESPONSE TO REQUEST FOR ADMISSION NO. 12:** (Served 06/12/09)

LMA objects to this Request as vague and ambiguous because it does not identify the "conclusions" for which confirmation is sought, whether those conclusions are susceptible of confirmation by clinical studies, and whether previous papers and subsequent investigation constitute the "conduct" of clinical studies.

Subject to the foregoing, LMA denies that certain of Dr. Ferson's conclusions reported in the abstract dated October 25, 2004 titled "Comparative Anatomical Study of Supraglottic Airways" are susceptible to confirmation by clinical studies and observes that other conclusions are supported by previously published clinical papers and subsequently conducted investigations, including Dr. Ferson's subsequent studies verifying the results of the abstract.

RFA No. 12 asks LMA to admit that it did not conduct clinical studies to confirm Dr. Ferson's conclusions reported in the LMA Brochure. Again, LMA's response fails to admit or deny the request. Instead, LMA responded to a separate issue of *whether* Dr. Ferson's findings were confirmable.

LMA is attempting to block Ambu's efforts to conclusively establish for trial this material fact by

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

avoiding the original request. Since the substance of the request is abundantly clear to LMA, it should be compelled to answer the discovery as originally drafted and intended.

**B.  Interrogatory Nos. 12 and 13 Relating to Distribution and Impact of LMA Brochure**

LMA's responses to Ambu's Interrogatory Nos. 12 and 13 are evasive and incomplete. They further demonstrate LMA's resistance to discovery relating to liability and damages on the unfair competition-side of the case. A full text of the original interrogatories along with LMA's original responses and two supplemental responses are set forth in the attached Appendix A. Ambu's Motion is timely because LMA did not serve its promised supplemental response until July 10, 2009.

Interrogatory No. 12 asks LMA to identify all recipients of LMA marketing materials that reference Dr. Ferson's study. In its initial response, LMA referred to documents and attempted to rely on Fed. R. Civ. P. 33(d). LMA supplemented its response for the first time on May 6, 2009 and a final time on July 10, 2009. However, the supplemental responses add very little information. ████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████ LMA should be compelled to identify these recipients including contacting the third parties that apparently sent the LMA Brochures at LMA's request.

LMA's supplemental responses are also incomplete in that they neglected to address the distribution of the LMA Brochure as part of the bid process for GPO agreements. GPO organizations purchase directly from medical supply manufacturers and sell products to their member hospitals. As of 2005, GPOs accounted for 75% to 85% of medical supply company revenue. Premo Decl. at ¶ 46 ("Group Purchasing Organizations Wield Enormous Bargaining Power in the U.S. Medical Devices Market," Business Wire, June 6, 2005, found at http://findarticles.com/p/articles/mi_m0EIN/is_/ai_n13797758). ██████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO



LMA's clear failure to identify the full breadth of its distribution of the LMA Brochure is inexcusable. This information is highly relevant to assist in establishing damages for Ambu's false advertising and unfair competition counterclaims.

Interrogatory No. 13 asks LMA to identify all customers that switched from purchasing Ambu's laryngeal masks to purchasing LMA's laryngeal masks since January 1, 2004. This information is also relevant to Ambu's damages analysis. By identifying a specific list of customers by name that switched from Ambu to LMA, Ambu would be permitted to investigate whether these customers were exposed to the LMA Brochure or sales tactics at issue.

LMA supplemented its response on July 10, but provided *no additional information*. LMA's other objection is equally spurious. A party is not permitted to respond to an interrogatory by simply stating that the information sought is more readily available to the requesting party. *See DIRECTV, Inc. v. Puccinelli*, 224 F.R.D. 677, 689 (D. Kan. 2004) (granting defendants' motion to compel supplemental interrogatory response

1   where plaintiff's objection that the information sought is more readily available to defendants was

2   deemed improper).

3           LMA could easily provide additional information. ████████████████████

4   ████████████████████████████████████████████████████████

5   ██████████████████████████████████ LMA could cross-reference this list to

6   determine if any of Ambu's lost accounts are LMA customers. Ambu does not have access to

7   LMA's sales and financial records and databases. Therefore, it cannot ascertain the information on

8   its own. Because LMA uniquely holds this information and has improperly refused to answer the

9   interrogatory, LMA should be compelled to supplement its response to identify all customers it can

10  ascertain that have switched from Ambu to LMA.

11          **C.      LMA Should be Sanctioned for its Conduct.**

12          Under Fed. R. Civ. P. 37(a)(5), Ambu is entitled to receive expenses and attorneys' fees for

13  the filing of this motion to compel. The only exceptions to awarding these sanctions are if the

14  movant failed to obtain the requested discovery in good faith without court intervention, the

15  opposing party's response, nondisclosure, or objection was justified, or the award of sanctions

16  would be unjust under the circumstances. *Id*. These exceptions are not met here because Ambu

17  has diligently and repeatedly requested that LMA produce the requested discovery, LMA's failure

18  to comply is not justified given their relevance as described above. LMA will be unable to describe

19  any circumstances why an award of sanctions would be unjust given the unreasonableness of their

20  document production deficiencies. Accordingly, Ambu respectfully requests that it be awarded the

21  expenses and fees associated with filing this motion. To date, these expenses are in excess of

22  $15,000. Premo Decl. ¶¶ 50-56.

23  / / /

24  / / /

25  / / /

26  / / /

27  / / /

28  / / /

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

# IV.    CONCLUSION

For the foregoing reasons, Ambu respectfully requests that the Court grant Ambu's motion and issue an order compelling LMA to produce supplemental responses to Ambu Requests for Admissions Nos. 3-6, 12, and 14 and Interrogatories 12 and 13. Ambu also respectfully requests that LMA be sanctioned in the amount of Ambu's reasonable expenses and attorneys' fees associated with filing this motion to compel.

Dated: July 24, 2009

FENWICK & WEST LLP

By: _____/s/ Patrick E. Premo_____
Patrick E. Premo

Attorneys for Defendants and Counterclaimants,
AMBU A/S, AMBU INC., AND AMBU LTD.

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

# CERTIFICATE OF SERVICE

The undersigned hereby certifies that all counsel of record who are deemed to have consented to electronic service are being served with a copy of this document via the Court's CM/ECF system per Local Rule 5.2 on July 24, 2009.

By: _____*/s/ Patrick E. Premo*_____

Patrick E. Premo
E-mail: ppremo@fenwick.com

# APPENDIX A

This appendix sets forth Ambu's specific requests for interrogatories, LMA's original answer and two supplemental responses at issue in Ambu's motion to compel and LMA's responses thereto.

**INTERROGATORY NO. 12:** (Served 02/23/09)

**Identify all persons to which Plaintiffs, or any person acting on Plaintiffs' behalf or at their direction, provided a copy of the LMA marketing materials referencing the Ferson Study or other otherwise stated, in written or oral form, that any Ambu Laryngeal Mask caused or was at risk for causing any form of nerve damage.**

**RESPONSE TO INTERROGATORY NO. 12:** (Served 03/30/09)



**SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 12:** (Served 05/06/09)

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO



**SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 12: (Served 07/10/09)**

**INTERROGATORY NO. 13:**(Served 02/23/09)

    **Identify all customers that switched from Ambu Laryngeal Masks to LMA Laryngeal Masks from January I, 2004 to present.**

**RESPONSE TO INTERROGATORY NO. 13:** (Served 03/30/09)

    LMA objects to this interrogatory as overly broad and unduly burdensome in that it is not limited to customers in the United States. Subject to its general and specific objections, and to LMA's designation of this information as "Highly Confidential – Attorneys Eyes Only" under the Protective Order entered in this matter, LMA responds as follows based on its investigation to date:

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*
**INFORMATION BELOW IS DESIGNATED**
**HIGHLY CONFIDENTIAL – ATTORNEYS EYES ONLY**
\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

Fenwick & West LLP
Attorneys At Law
San Francisco

## **SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 13:** Served 05/06/09

LMA objects to this interrogatory as overly broad and unduly burdensome in that it is not limited to customers in the United States, and because the information requested may be just as or more easily obtained by AMBU. Subject to its general and specific objections, and to LMA's designation of this information as "Highly Confidential - Attorneys Eyes Only" under the Protective Order entered in this matter, LMA responds as follows based on its investigation to date:

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

The foregoing list comprises the extent of LMA's knowledge to date, but is not meant to constitute an exhaustive list of all of LMA's customers that switched from Ambu Laryngeal Masks to LMA Laryngeal Masks from January 1, 2004 to present. LMA believes that there may be other such customers of which LMA is not presently aware.

LMA's investigation in this action is ongoing and LMA reserves the right to supplement or otherwise amend its response to this interrogatory based on the discovery of additional information or further analysis, including expert analysis.

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

## SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 13: (Served 07/10/09)



1303308

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO