John B. Sganga (State Bar No. 116,211)
Frederick S. Berretta (State Bar No. 144,757)
Joshua J. Stowell (State Bar No. 246,916)
KNOBBE, MARTENS, OLSON & BEAR, LLP
550 West C Street
Suite 1200
San Diego, CA  92101
(619) 235-8550
(619) 235-0176 (FAX)

Vicki S. Veenker (State Bar No. 158,669)
Adam P. Noah (State Bar No. 198,669)
SHEARMAN & STERLING LLP
1080 Marsh Road
Menlo Park, CA  94025
(650) 838-3600
(650) 838-3699 (FAX)

Attorneys for Plaintiffs and Counter-Defendants
THE LARYNGEAL MASK COMPANY LTD.
and LMA NORTH AMERICA, INC.

# IN THE UNITED STATES DISTRICT COURT

# FOR THE SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| THE LARYNGEAL MASK COMPANY LTD. and LMA NORTH AMERICA, INC., <br><br> Plaintiffs, <br><br> v. <br><br> AMBU A/S, AMBU INC., and AMBU LTD., <br><br> Defendants. <br><br><br> AMBU A/S, AMBU INC., and AMBU LTD., <br><br> Counterclaimants, <br><br> v. <br><br> THE LARYNGEAL MASK COMPANY LTD. and LMA NORTH AMERICA, INC., <br><br> Counter-Defendants. | Civil Action No. 07 CV 1988 DMS (NLS) <br><br> **PLAINTIFFS' REPLY MEMORANDUM IN SUPPORT OF THEIR MOTION FOR ENTRY OF JUDGMENT ON LMA'S CLAIM UNDER F.R.C.P. 54(b); AND STAY OF AMBU'S FALSE-ADVERTISING COUNTERCLAIM PENDING APPEAL** <br><br> Date:         August 21, 2009 <br> Time:       1:30 p.m. <br> Courtroom 10, 2nd Floor <br><br> **Honorable Dana M. Sabraw** |

Case No. 07cv1988

**TABLE OF CONTENTS**

**Page No.**

I. SUMMARY OF ARGUMENT ........................................................................................1

II. RULE 54(B) CERTIFICATION IS WARRANTED on THESE facts .....................................2

    A.    Ambu Applies the Wrong Standard for Rule 54(b) Certification ............................2

    B.    Rule 41(a)(2) is No Impediment to Rule 54(b) Certification ..................................3

    C.    Rule 54(b) Certification and Immediate Appeal is the Most Efficient Course ...................................................................................................................5

III. AMBU'S DECLARATORY JUDGMENT COUNTERCLAIMS SHOULD BE DISMISSED WITHOUT PREJUDICE ............................................................................6

    A.    A District Court Need Not Adjudicate Claims That Are Academic or Moot .........................................................................................................................6

    B.    Public Policy Has Never Favored Unnecessary Litigation of Merely Academic, Moot or Advisory Issues ........................................................................7

    C.    Ambu's Invalidity Case is Weak and Not Likely to Succeed on Summary Judgment .................................................................................................8

IV. AMBU'S FALSE ADVERTISING COUNTERCLAIMS SHOULD BE STAYED ...............9

    A.    There is No Urgency to Ambu's False Advertising Counterclaims ........................9

    B.    Ambu Has Already Done Its Own Corrective Advertising and Never Sought That Form of Relief In Its Counterclaim ...................................................10

V. CONCLUSION ................................................................................................................10

## I. SUMMARY OF ARGUMENT

Although Ambu concedes that LMA's remaining patent claim on the AuraFlex is insignificant, it insists on going forward with a full trial on infringement, validity, and damages. This would be an enormous waste of judicial and party resources. Under LMA's proposal the patent trial would either prove unnecessary (if the partial summary judgment is affirmed), or need to be repeated (if reversed). Ambu ignores LMA's offer to *drop* its claim on the AuraFlex if the partial summary judgment is affirmed, thus affording Ambu the possibility of complete relief on LMA's patent claim without any trial. Conducting a full patent trial now with numerous fact and expert witnesses from around the world, simply to resolve the remaining AuraFlex claim, would be a useless exercise that dwarfs any concern over the possibility of two appeals.

Legally, Ambu's Opposition is riddled with errors. Ambu applies the wrong standard for Rule 54(b), which does *not* require a showing of "serious, perhaps irreparable consequences" if certification is not granted. The Court need only determine that "there is no just reason for delay." Also, Rule 41(a)(2) does *not* preclude the dismissal without prejudice of Ambu's declaratory judgment counterclaim because Rule 41(a)(2) does not trump questions going to a court's jurisdiction. Such dismissals are routine after a finding of no infringement because there is no longer a justiciable case or controversy over patent validity, nor is there one here.

In any event, Ambu oversimplifies its invalidity case, which is based predominantly on prior art already before the Patent Office when it granted the '100 patent. Ambu's assumption that it will easily prevail ignores its heavy clear and convincing evidence burden to prove invalidity. Nor are the invalidity issues suited for summary judgment as they involve intensely factual technical issues. The Court has the discretion to dismiss the invalidity counterclaim, and thus avoid expending resources on Ambu's invalidity summary judgment motions.

Accordingly, Ambu's various false advertising and unfair competition counterclaims should be stayed pending the patent appeal. There is no pressing need for a decision on claims Ambu waited over three years to bring. LMA has also offered to cease distribution of the little-used four-year-old brochure. Ambu's argument that it needs an injunction promptly mandating "corrective advertising" is unavailing, as Ambu never pled for such relief, and it already

circulated its own counter-brochure to its potential customers. Further, as set forth in LMA's motions for summary judgment, Ambu cannot make the necessary showings of either falsity or injury required to obtain any remedies on the counterclaims.

Efficiency concerns dictate that, if there is going to be a trial on Ambu's false advertising counterclaims, it should be at the same time all patent issues are tried. The two cases involve numerous common witnesses and background facts. Trying all the claims together – after a definitive claim construction from the Federal Circuit – is the logical and efficient approach to adjudicating the case as a whole.

## II. RULE 54(B) CERTIFICATION IS WARRANTED ON THESE FACTS

### A.  Ambu Applies the Wrong Standard for Rule 54(b) Certification

Rule 54(b) certification requires that the Court "make an express determination that there is no just reason for delay" and then "expressly direct the entry of final judgment on fewer than all the claims." *Nystrom v. TREX Co.,* 339 F.3d 1347, 1351 (Fed. Cir. 2003) (quotations omitted). "Rule 54(b) allows a district court to act as a dispatcher and determine, in the first instance, the appropriate time when each final decision upon one or more but less than all of the claims in a multiple claims action is ready for appeal." *Lava Trading, Inc. v. Sonic Trading Mgmt., LLC*, 445 F.3d 1348, 1350-51 (Fed. Cir. 2006) (quotations omitted). There is no just reason for delay here - LMA will drop its remaining claim on the AuraFlex if the appeal is affirmed. Ambu's Opposition ignores this key aspect of LMA's Motion. A full patent trial is simply not justified as LMA will drop its remaining infringement claim so that a prompt appeal could resolve the entire patent case in Ambu's favor. That is particularly true here since Ambu's financial expert claims that the damages associated with the remaining AuraFlex are only $1,723. Berretta Decl., Ex. 1 at 27-28.

Ambu cites *Sure-Safe Indus. v. C & R Pier Mfg.,* 851 F. Supp. 1469 (S.D. Cal. 1993) (which relied upon *Chaparral Communications, Inc., v. Boman Industries., Inc.,* 798 F.2d 456 (Fed. Cir. 1986)) for the proposition that LMA must show "serious, perhaps irreparable consequence" from the denial of its Rule 54(b) motion. (Opp'n at 4, 7-8.) But a close reading of both cases demonstrates that *Chaparral* actually dealt with appellate jurisdiction under 28 U.S.C.

§ 1292(a)(1). The district court never entered a Rule 54(b) judgment, nor was that decision reviewed on appeal. The Federal Circuit only addressed appellant's unsuccessful argument that jurisdiction existed under § 1292(a)(1) because the underlying summary judgment decision had implicitly denied injunctive relief. The Federal Circuit's reference to a "serious, perhaps irreparable, consequence" standard was only in the context of an appeal under § 1292(a)(1). The proper standard under Rule 54(b) is "no just reason for delay." Fed. R. Civ. P. 54(b); *see also Curtiss-Wright Corp. v. General Elec. Co.,* 446 U.S. 1, 5-12 (1980) (rejecting requirement that "unusual or harsh circumstances" need be shown for granting Rule 54(b) certification, and stating that such decisions are "left to the sound judicial discretion of the district court" and "merit[]substantial deference on review.")

Further, the district court cases cited by Ambu are distinguishable on their facts. In *Sure-Safe* the plaintiff lost its patent case on summary judgment but still had trademark infringement and false marking claims pending, and did not dismiss or make those claims contingent on the appeal. The defendant had counterclaims for antitrust, patent unenforceability, invalidity, unfair competition, and cancellation of plaintiff's trademark. *Sure-Safe,* 851 F. Supp. at 1475. In contrast, here LMA's sole and entire claim against Ambu will be riding on the appeal. In *PolyVision Corp. v. Smart Techs., Inc..,* 2007 U.S. Dist. LEXIS 66492 (W.D. Mich. Sept. 7, 2007), both plaintiff and defendant were asserting separate patents against each other, and the court's decision to deny Rule 54(b) certification turned largely on its assessment that the defendant's inequitable conduct counterclaim remained a "significant issue" concerning plaintiff's patent. *Id.* at *13-14. Importantly, the *PolyVision* court noted that it had discretion to dismiss the invalidity counterclaims as moot (citing *Phonometrics, Inc. v. Northern Telecom Inc.,* 133 F.3d 1459, 1468 (Fed. Cir. 1998)), but wanted to provide guidance on "the larger question" of whether the patent was enforceable. *Id.* at *15 n. 2. In this case, Ambu's invalidity counterclaim is moot, it raises no patent enforceability issues, and thus there are no "larger questions" about enforceability needing guidance at the enormous expense of a full patent trial.

**B.     Rule 41(a)(2) is No Impediment to Rule 54(b) Certification**

Ambu's argument that Rule 41(a)(2) somehow precludes Rule 54(b) certification is

wrong because Rule 54(b) certification does not require that any pending counterclaims be dismissed. Although courts routinely dismiss without prejudice invalidity counterclaims after summary judgment of no infringement, *see Nystrom*, 339 F.3d at 1351, it is not a prerequisite for Rule 54(b) certification that any counterclaims be dismissed. *Curtiss-Wright,* 446 U.S. at 8 ("The mere presence of such claims, however, does not render a Rule 54(b) certification inappropriate. If it did, Rule 54(b) would lose much of its utility."); *Nystrom*, 339 F.3d at 1350-51 (listing dismissal of the invalidity counterclaim and Rule 54(b) as two separate avenues of appeal); *Lava Trading,* 445 F.3d at 1350-51 (noting proper appellate jurisdiction after Rule 54(b) certification despite still pending patent invalidity counterclaims).

Further, Rule 41(a)(2) allows a court to dismiss an action at the plaintiff's request by court order, "on terms that the court considers proper." Fed. R. Civ. P. 41(a)(2). The prohibition against dismissing a counterclaim found in Rule 41(a)(2) does not apply to Ambu's *declaratory judgment* counterclaim of invalidity because that counterclaim raises a fundamental jurisdictional issue. *McGraw-Edison Co. v. Preformed Line Products Co.,* 362 F.2d 339, 342 (9th Cir. 1966) (dismissal of declaratory judgment counterclaim "does not depend upon Rule 41(a)(2), but rather upon a construction of the Federal Declaratory Judgment Act."). As discussed below, the Court can and should dismiss without prejudice Ambu's declaratory judgment counterclaim. The partial summary judgment and LMA's willingness to drop the AuraFlex claim after an unsuccessful appeal means that Ambu will have no liability for infringement. Thus the invalidity counterclaim no longer presents an issue of sufficient "immediacy and reality" to satisfy the "case or controversy" standard for declaratory judgment jurisdiction. *CAT Tech LLC v. Tubemaster, Inc.,* 528 F.3d 871, 879 (Fed. Cir. 2008). Even if there were a viable validity dispute, the court has discretion not to exercise jurisdiction under the Declaratory Judgment Act. *Phonometrics.,* 133 F.3d at 1468. Exercising that discretion is appropriate since there is no reason to litigate validity here when Ambu has already avoided patent infringement.[1]

---

[1] The lack of a justiciable controversy is particularly evident here, where: 1) Ambu discontinued shipments of the design accused of infringement in 2008, (Mot. at 6); and 2) Ambu presents no evidence that it has immediate plans to introduce a new and different design which may infringe, and which may rekindle a true validity dispute.

The only case cited by Ambu in support of its Rule 41 argument does not involve Rule 54(b) or patent law, and thus is not on point. In *Wentworth v. Hedson,* 248 F.R.D. 121 (E.D.N.Y. 2008), the plaintiff brought suit based on federal question jurisdiction and the court denied its Rule 41(a)(2) motion to dismiss because the dismissal would have divested the court of subject matter jurisdiction over defendant's state law counterclaims. *Id*. at 122. In this case, Ambu's federal law invalidity counterclaim is now moot, regardless of a Rule 41 dismissal.[2]

### C. Rule 54(b) Certification and Immediate Appeal is the Most Efficient Course

Ambu contends that the Court should hold an immediate and costly patent trial on what it characterizes as an insignificant claim, merely to avoid the possibility of two appeals. Yet Ambu ignores that the expense of an immediate patent trial dwarfs the financial stakes. In fact, Ambu argued in seeking *ex parte* relief that the remaining claim did not even warrant a few additional depositions. *See* Ambu's *Ex Parte* Motion [Doc. 269 at 2].

Nonetheless, the specter of two trials is far worse than that of two appeals, which may happen anyway if a trial is held now and the Court's claim construction is ultimately overturned. Ambu argues that if "LMA's appeal is successful and a trial in this Court is reinstated, the parties are likely to incur significant expenses in their efforts to re-familiarize experts and attorneys with the case." (Opp'n at 17.) However, Ambu fails to acknowledge the avoidance of a first costly and possibly unnecessary patent trial in that scenario. Moreover, if the appeal is affirmed the costly patent trial will be avoided altogether. Accordingly, many litigants in this situation stipulate to a Rule 54(b) final judgment and voluntarily dismiss their counterclaims in order to obtain fast and efficient appellate review of a controlling legal issue. *See, e.g., Brookhill-Wilk 1, LLC v. Intuitive Surgical, Inc.*, 334 F.3d 1294, 1297 n. 1 (Fed. Cir. 2003).

Ambu's argument that the Federal Circuit will not address every disputed claim construction issue overlooks the significance of the "backplate" claim construction to the issues that remain to be tried absent a Rule 54(b) judgment. (Opp'n at 8.) Despite the summary

---

[2] The Rule 41(a)(2) prohibition against dismissal of a counterclaim only applies in this case to Ambu's false advertising counterclaims. But LMA is not seeking dismissal of those counterclaims on this motion, rather it only seeks to stay the counterclaims pending appeal. As discussed above, the pendency of those counterclaims does not preclude Rule 54(b) certification. *Curtiss-Wright,* 446 U.S. at 8.

judgment of no infringement based on the Court's construction of "backplate," Ambu continues to seek to modify that claim construction to include additional features like a "bowl" which it contends is missing in the remaining AuraFlex product.  Berretta Decl., Ex. 2 at 190-193 (Lampotang Dep.).  Ambu thus cannot, and does not, dispute the benefit of the Federal Circuit first providing guidance on this pivotal claim term, before any trial.

### III. AMBU'S DECLARATORY JUDGMENT COUNTERCLAIMS SHOULD BE DISMISSED WITHOUT PREJUDICE

#### A. A District Court Need Not Adjudicate Claims That Are Academic or Moot

Declaratory judgment jurisdiction arises only when a dispute is "definite and concrete," and not "hypothetical." *MedImmune, Inc. v. Genentech, Inc.,* 549 U.S. 118, 127; 127 S. Ct. 764, 771 (2007).  Ambu oversimplifies by summarily concluding that *MedImmune* "held that declaratory judgment is proper even when the declaratory judgment plaintiff has yet to engage in allegedly infringing activity." (Opp'n at 13.)  Ambu neglects to point out that in *MedImmune*, the allegedly infringing product already existed, was the subject of a patent license agreement, and amounted to 80% of the plaintiff's sales.  The issue was whether a declaratory judgment action could be filed before the licensee/plaintiff discontinued paying royalties, and thus commenced the "allegedly infringing activity." *MedImmune,* 549 U.S. at 120-21.  Here there is no license to be breached, and the alleged infringement has already been resolved by summary judgment.  Thus, invalidity is merely "academic or moot" and does not satisfy the "case or controversy" requirement of Article III. *CAT Tech,* 528 F.3d at 879.

Regardless of the Article III standard, Ambu does not dispute that the court has discretion whether to exercise jurisdiction under the Declaratory Judgment Act.  (Mot. at 4-5.) District Courts routinely exercise that discretion to dismiss without prejudice an invalidity counterclaim after finding no infringement, because the defense effectively is moot. *Liquid Dynamics,* 355 F.3d at 1371; *Phonometrics,* 133 F.3d at 1468; *Nystrom*, 339 F.3d at 1351.  The remaining insignificant AuraFlex claim does not change that result, because LMA proposes to treat it as subject to the same ruling of no infringement, and drop it if the appeal is affirmed. *See Doe v. United States,* 513 F.3d 1348, 1354 (Fed. Cir. 2008) (because plaintiffs intended to drop their remaining claim upon affirmance, "treating the trial court's judgment as an appealable final

judgment would not be inconsistent with the federal policy against piecemeal litigation."). [3] LMA, like the plaintiffs in *Doe*, seeks to simplify the litigation in the interest of efficiency.

The cases relied upon by Ambu are again not on point. In *Elecs. for Imaging, Inc. v. Coyle,* 394 F.3d 1341, 1346-47 (Fed. Cir. 2005), and *Capo, Inc. v. Dioptics Med. Prods.,* 387 F.3d 1352, 1354-56 (Fed. Cir. 2004), the court simply reversed dismissals of the accused infringers' declaratory judgment lawsuits. Neither case involved a dismissal of an invalidity counterclaim after a finding of no infringement. *Id.* Nor did *Teva Pharm. USA, Inc. v. Novartis Pharm. Corp.,* 482 F.3d 1330 (Fed. Cir. 2007), which involved a patent dispute over generic drugs under the unique provisions of the Hatch-Waxman Act, 35 U.S.C. § 271(e)(2)(A).

In sum, the Court can and should dismiss Ambu's declaratory judgment counterclaim because it is now mooted by the partial summary judgment and LMA's offer to tie its remaining AuraFlex claim to the results of the appeal. "[A]n actual controversy must be extant at all stages of review, not merely at the time the [counterclaim] is filed." *Grain Processing Corp. v. American Maize-Products Co.*, 840 F.2d 902, 905-906 (Fed. Cir. 1988) (citations omitted).

**B.    Public Policy Has Never Favored Unnecessary Litigation of Merely Academic, Moot or Advisory Issues**

Ambu argues that public policy favors this Court retaining its invalidity counterclaim, but public policy has never favored wasting precious judicial resources on litigation that is merely academic or moot. *Aetna Life*, 300 U.S. at 240; *CAT Tech,* 528 F.3d at 879. Ambu cites *Cardinal Chemical Co. v. Morton Int'l, Inc.,* 508 U.S. 83, 100 (1993) to support its public policy arguments, but ignores the holding of the case which only pertained to the Federal Circuit's past practice of vacating prior judgments of invalidity after affirming non-infringement. Ambu fails to respond to the Federal Circuit's later decision in *Phonometrics,* 133 F.3d at 1468, distinguishing *Cardinal Chemical* in cases like the present one, in which an invalidity judgment has yet to be rendered. (*See* Mot. at 6 n. 4.)

---

[3] Ambu argues that *Doe v. United States,* 513 F.3d 1348 (Fed. Cir. 2008) and *James v. Price Stern Sloan,* 283 F.3d 1064 (9th Cir. 2002) are distinguishable because neither case involved counterclaims and so did not run afoul of Rule 41(a)(2). (Opp'n at 6.) However, as discussed above, the pendency of counterclaims is irrelevant to Rule 54(b) certification, and Rule 41 is not applicable to declaratory judgment counterclaims.

Additionally, Ambu expresses unsupported and vague concerns over possible "future products," (Opp'n at 13) and its ability to "expand its product lines" (Opp'n at 14) at some unspecified time in the future, but presents no facts that any of those events are imminent. This scenario presents precisely the type of advisory opinion as to uncertain future activity that is precluded under the Declaratory Judgment Act. *See, e.g.*, *Benitec Austl., Ltd. v. Nucleonics, Inc.*, 495 F.3d 1340, 1346-50 (Fed. Cir. 2007) (no declaratory judgment jurisdiction where possibly infringing activity may not commence for several years). Ambu would obtain the same assurance against possible future patent infringement directly from the Federal Circuit if the appeal is affirmed without the need for a costly trial on invalidity. In sum, the governing law already reflects public policy and mandates that precious judicial resources not be expended on mooted and merely advisory legal issues.

**C.    Ambu's Invalidity Case is Weak and Not Likely to Succeed on Summary Judgment**

Ambu boldly suggests that the Court should retain its invalidity counterclaim because summary judgment motions of invalidity are "usually granted on facts like those in this case." (Opp'n at 6.) The reality is those motions are not "usually granted" because of the daunting requirements that there be no disputed material factual issues when viewed in a light most favorable to the non-movant, here LMA, and that the movant carry its heavy clear and convincing evidentiary burden. *Rockwell Int'l Corp. v. United States*, 147 F.3d 1358, 1362 (Fed. Cir. 1998). This is not likely on the present facts. For example, for its invalidity case based upon prior art, Ambu features three alleged prior art patents in its Opposition. (Opp'n at 10, Kohm Decl., Exs. B-D.) However, all three of these patents (and many others) were already before the Patent Office when it granted the '100 patent. *See* Berretta Decl., Ex. 3 at 1-2 ('100 patent); *Metabolite Labs., Inc. v. Lab. Corp. of Am. Holdings*, 370 F.3d 1354, 1368 (Fed. Cir. 2004) ("Where, as here, the PTO previously considered the prior art reference, [the defendant] bears an even heavier burden to prove invalidity."). Ambu also cites to the LMA Classic laryngeal airway mask, but this also was already known to the Patent Office from all the prior art patents and articles of Dr. Brain cited during prosecution of the '100 patent. *Id*. Ambu argues that the glue which joins the cuff to the backplate invalidates the '100 patent, but that glue does not constitute a "portion of a

wall of the cuff" that is "thicker and stiffer than other portions of the cuff," as required by the claims. *Id.* at col. 10, ll. 24-26. The pitched factual debate as to obviousness, with competing expert testimony, will preclude any grant of summary judgment.[4]

Ambu's invalidity case based on § 112 is even more feeble. Dr. Brain clearly disclosed in the '100 patent employing a thicker and stiffer portion of the cuff wall as a solution to cuff foldover. *Id.* at col. 8, ll. 9-11. From this disclosure those of skill in the art would appreciate the claimed invention and how to make it, and LMA has submitted reports from two experts who have both opined to that effect. In any event, questions of § 112 description and enablement, like obviousness, are based on underlying factual findings and likewise are not often amenable to summary judgment. *See, e.g., AK Steel Corp. v. Sollac*, 344 F.3d 1234, 1245 (Fed. Cir. 2003).

In sum, Ambu will be unlikely to carry its heavy burden on invalidity and so the Court should not expend its resources on Ambu's planned summary judgment motions of invalidity when the issue is effectively mooted by the no infringement ruling.

### IV. AMBU'S FALSE ADVERTISING COUNTERCLAIMS SHOULD BE STAYED
#### A. There is No Urgency to Ambu's False Advertising Counterclaims

Ambu waited over three years to bring its false advertising case, choosing to do so as counterclaims in LMA's patent suit rather than file its own lawsuit. Such behavior does not evince a pressing need on Ambu's part for resolution of these counterclaims. In fact, this Court has already found that Ambu engaged in "undue delay in asserting the proposed counterclaims." [Doc. 71 at 3]. Having delayed bringing the claims in the first place, then making the strategic decision to consolidate its false advertising case with LMA's patent case, Ambu should not now expect a speedy trial on its false advertising case alone. Moreover, LMA has also offered to stop what little remaining use there may be of the Ferson brochure. Nor has Ambu explained how the jury would be able to account for the fact that its alleged lost sales might turn out to be partially barred if Ambu's products ultimately are found to infringe after an appeal, or how the Court

---

[4] Ambu's Opposition mischaracterizes the testimony of Dr. Rosenblatt when it states "Both parties agree … that the glue applied to the cuff in the LMA Classic could make the cuff thicker and stiffer," generally citing to Kohm Decl., Ex. E (Rosenblatt Dep.). However, Dr. Rosenblatt did not agree with this statement. *See id*. at 36 and 96.

could later modify the jury's verdict in that event. Additionally, for the reasons set forth in LMA's concurrently filed motions for summary judgment, Ambu's false advertising claim is weak and presents no triable issues of fact.

Ambu itself argued that it would be most efficient to try its false advertising case and LMA's patent case together because "the relevant evidence will overlap with what is relevant on the patent claims." [Doc. 66 at 4]. Moreover, the two cases would involve numerous common witnesses who would need to travel from many different locations in the U.S. and abroad. Efficiency and judicial economy therefore dictate that the false advertising counterclaims be stayed pending appeal in the event that a patent trial is necessary.[5]

## B. Ambu Has Already Done Its Own Corrective Advertising and Never Sought That Form of Relief In Its Counterclaim

Ambu requests for the first time "an injunction ordering the issuance of corrective advertising" (Opp'n at 19-20), but Ambu never listed such advertising in the detailed recitations of its sought-after injunctive relief in its pleadings. [Doc. 72 at 13-14]. Ambu long ago circulated its own counter-brochure to its potential customers. Berretta Decl., Ex. 4 (Ambu Counter-brochure). Further, Ambu's damages expert testified that Ambu would do its own corrective advertising and so only seeks monetary compensation, not injunctive relief. Berretta Decl., Ex. 6 at 208-09 (Sullivan Dep.). Nor does Ambu cite any legal support for such an injunction.[6]

## V. CONCLUSION

For the foregoing reasons, LMA respectfully requests that the Court grant its Motion, direct entry of final judgment on LMA's patent claim under Rule 54(b), dismiss Ambu's invalidity counterclaim and stay all other proceedings pending appeal.

---

[5] Ambu fails to cite any cases where a court addressed the appropriateness of a stay pending the appeal of a final judgment in the case at issue. In *Landis, Dependable Highway Express, Asustek Computer, Yong,* and *Micron,* the court determined a stay was inappropriate pending the outcome of a separate case. In *Robinson*, the court determined a stay was inappropriate pending the outcome of a prematurely filed appeal of a non-final judgment.

[6] Contrary to Ambu's representations, *Big O Tire Dealers* and *Simon Property Group* did not involve "an injunction from the Court ordering the issuance of corrective advertising." (Opp'n at 19-20.) In both cases, the courts determined the plaintiff was entitled only to monetary damages consisting of "a reasonable amount equivalent to that of a concurrent corrective advertising campaign." *Big O Tire Dealers*, 561 F.2d at 1375. Ambu cites no authority supporting its new claim for an injunction requiring LMA to issue corrective advertising.

|     |                          |                                                       |
| --- | ------------------------ | ----------------------------------------------------- |
| 1   |                          | Respectfully submitted,                               |
| 2   |                          | KNOBBE, MARTENS, OLSON & BEAR, LLP                    |
| 3   | Dated   August 14, 2009  | By   /s/Frederick S. Berretta                         |
| 4   |                          | John B. Sganga<br>jsganga@kmob.com                    |
| 5   |                          | Frederick S. Berretta<br>fred.berretta@kmob.com       |
| 6   |                          | Joshua J. Stowell<br>joshua.stowell@kmob.com          |
| 7   |                          | Attorneys for Plaintiffs                              |
| 8   |                          | THE LARYNGEAL MASK COMPANY LTD.<br>and LMA NORTH AMERICA, INC. |


**CERTIFICATE OF SERVICE**

I hereby certify that on August 14, 2009, I caused the foregoing **PLAINTIFFS' REPLY MEMORANDUM IN SUPPORT OF THEIR MOTION FOR ENTRY OF JUDGMENT ON LMA'S CLAIM UNDER F.R.C.P. 54(b); AND STAY OF AMBU'S FALSE-ADVERTISING COUNTERCLAIM PENDING APPEAL** to be electronically filed with the Clerk of the Court using the CM/ECF system which will send electronic notification of such filing to the applicable registered filing users.

Darryl M. Woo, Esq.
dwoo@fenwick.com
Patrick E. Premo, Esq.
ppremo@fenwick.com
Bryan Kohm, Esq.
bkohm@fenwick.com
FENWICK & WEST LLP
555 California Street, 12th Floor
San Francisco CA  94104
T: 415-875-2300
F: 415-281-1350

I declare that I am employed in the office of a member of the bar of this Court at whose direction the service was made.

Dated: August 14, 2009

Claire A. Stoneman

7629141