John B. Sganga (State Bar No. 116,211)
Frederick S. Berretta (State Bar No. 144,757)
Joshua J. Stowell (State Bar No. 246,916)
KNOBBE, MARTENS, OLSON & BEAR, LLP
550 West C Street
Suite 1200
San Diego, CA 92101
(619) 235-8550
(619) 235-0176 (FAX)

Vicki S. Veenker (State Bar No. 158,669)
Adam P. Noah (State Bar No. 198,669)
SHEARMAN & STERLING LLP
1080 Marsh Road
Menlo Park, CA 94025
(650) 838-3600
(650) 838-3699 (FAX)

Attorneys for Plaintiffs and Counter-Defendants
THE LARYNGEAL MASK COMPANY LTD.
and LMA NORTH AMERICA, INC.

## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| THE LARYNGEAL MASK COMPANY LTD. and LMA NORTH AMERICA, INC., <br><br> Plaintiffs, <br><br> v. <br><br> AMBU A/S, AMBU INC., and AMBU LTD., <br><br> Defendants. <br><br> AMBU A/S, AMBU INC., and AMBU LTD., <br><br> Counterclaimants, <br><br> v. <br><br> THE LARYNGEAL MASK COMPANY LTD. and LMA NORTH AMERICA, INC., <br><br> Counter-Defendants. | Civil Action No. 07 CV 1988 DMS (NLS) <br><br> **PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF THEIR MOTION FOR SUMMARY JUDGMENT ON AMBU'S LANHAM ACT AND RELATED STATE LAW COUNTERCLAIMS FOR FAILURE TO ESTABLISH INJURY AND ENTITLEMENT TO MONETARY AND INJUNCTIVE RELIEF** <br><br> Date: September 25, 2009 <br> Time: 1:30 p.m. <br> Courtroom 10, 2nd Floor <br><br> Honorable Dana M. Sabraw <br><br> CONFIDENTIAL PORTIONS FILED UNDER SEAL |

PLAINTIFFS' MPA ISO THEIR MOTION FOR SUMMARY JUDGMENT
ON AMBU'S LANHAM ACT & RELATED STATE LAW COUNTERCLAIMS FOR FAILURE
TO ESTABLISH INJURY & ENTITLEMENT TO MONETARY AND INJUNCTIVE RELIEF

CASE NO. 07-CV-1988 DMS (NLS)

DCDOCS01/378057.5F

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ............................................................................................................ ii

I.    PRELIMINARY STATEMENT ...................................................................................... 1

II.   FACTUAL BACKGROUND ............................................................................................ 2

      A.   Dr. Ferson Conducts a Study of Laryngeal Masks.................................................. 2

      B.   Ambu Asks LMA To Cease Discussing the Ferson Study and LMA Declines........ 2

      C.   LMA Summarizes Dr. Ferson's Research in a Brochure ......................................... 3

      D.   Ambu Circulates a Counter-Brochure .................................................................... 3

      E.   ████████████ REDACTED ████████████
           ...................................................................................................... 4

      F.   More Than Three Years After LMA Circulates the LMA Brochure,
           Ambu Brings Legal Action Against LMA ............................................................. 7

III.  ARGUMENT ................................................................................................................... 8

      A.   Summary Judgment Standard................................................................................. 8

      B.   LMA Is Entitled to Summary Judgment on Ambu's Lanham Act Claim for
           Monetary Relief Because Ambu Has Failed to Present Sufficient Evidence
           That It Suffered Injury as a Result of the Alleged False Advertising ..................... 9

           a.   Ambu Has Not Identified a Single Sale Lost
                as a Result of the Alleged False Advertising ................................................. 11

           b.   ████████████ REDACTED ████████████
                ............................................................. 14

           c.   LMA's Documents Do Not Establish that Ambu
                Lost Sales as a Result of LMA's Advertising ............................................... 15

           d.   Ambu's Counter-Brochure Negated Any Effect
                of the LMA Brochure .................................................................................... 17

           e.   The Sales Trend Evidence Refutes Ambu's Claims ....................................... 18

      C.   LMA Is Entitled to Summary Judgment on Ambu's Lanham Act Claim for
           Injunctive Relief Because It has Failed To Present Sufficient Evidence that It
           Is Likely to Suffer Future Injury as a Result of the Alleged False Advertising...... 21

      D.   Ambu Has Failed to Proffer a Reasonable Basis for the Calculation
           of Monetary Relief .............................................................................................. 22

      E.   LMA Is Entitled to Summary Judgment on Ambu's State Law Claims ................ 24

IV.   CONCLUSION ............................................................................................................... 26

# TABLE OF AUTHORITIES

## FEDERAL CASES

*ALPO Petfoods, Inc. v. Ralston Purina Co.*, 913 F.2d 958 (D.C. Cir. 1990) ........................ 11, 23

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986) ................................................................ 8

*Astro Music, Inc. v. Eastham*, 564 F.2d 1236 (9th Cir. 1977) ...................................................... 25

*Balance Dynamics Corp. v. Schmitt Indus.,* 204 F.3d 683 (6th Cir. 2000) ............................ 11, 19

*Blanton Enters., Inc. v. Burger King Corp.*, 680 F. Supp. 753 (D.S.C. 1988) ............................. 19

*Blue Dane Simmental Corp. v. Am. Simmental Ass'n*, 178 F.3d 1035 (8th Cir. 1999) ................ 12

*Bracco Diagnostics, Inc. v. Amersham Health, Inc.,*
    No. 03-6025, 2009 WL 1743699 (D.N.J. June 5, 2009) ............................................ *passim*

*Castrol Inc. v. Pennzoil Quaker State Co.*, 169 F. Supp. 2d 332 (D.N.J. 2001) .......................... 11

*Celotex Corp. v. Catrett*, 477 U.S. 317 (1986) ............................................................................ 9

*Contessa Food Prods., Inc. v. Lockpur Fish Processing Co.,* Nos. CV 98-8218, NM
    (SHX), 99-4783 2003 WL 25778704 (C.D. Cal. Jan. 29, 2003) ...................................... 24

*In re Circuit Breaker Litig.*, 860 F. Supp. 1453 (C.D. Cal. 1994),
    *aff'd*, 106 F.3d 894 (9th Cir. 1997) ................................................................................ 22

*City of Vernon v. S. Cal. Edison Co.*, 955 F.2d 1361 (9th Cir. 1992) .......................................... 24

*Go Medical Indus. Pty, Ltd. v. Inmed Corp.*, 300 F. Supp. 2d 1297 (N.D. Ga. 2003) ................ 24

*Golf Co. v. Slazenger*, 384 F. Supp. 2d 735 (D. Del. 2005) ........................................................ 11

*Gucci Am., Inc. v. Daffy's Inc.*, 354 F.3d 228 (3d Cir. 2003) ...................................................... 15

*Harper House, Inc. v. Thomas Nelson, Inc.*, 889 F.2d 197 (9th Cir. 1989) ................................ 10

*Hot Wax, Inc. v. Turtle Wax, Inc.*, 191 F.3d 813 (7th Cir. 1999) ................................................ 10

*IQ Products Co. v. Pennzoil Prods. Co.*, 305 F.3d 368 (5th Cir. 2002) ...................................... 21

*Lindy Pen Co. v. Bic Pen Corp.*, 982 F.2d 1400 (9th Cir. 1993) .................................... 10, 22, 23

*Logan v. Burgers Ozark Country Cured Hams, Inc.*, 263 F.3d 447 (5th Cir. 2001) ........ 11, 21, 22

*Martinez v. Rabbit Tanaka Corp.,* No. 04-61504-CIV,
    2006 WL 5100536 (S.D. Fla. Jan. 6, 2006) .................................................................. 24

*McGlinchy v. Shell Chem. Co.*, 845 F.2d 802 (9th Cir. 1988) .................................................... 24

*Monolithic Power Sys., v. O2 Micro Int'l. Ltd.,*
    476 F. Supp. 2d 1143 (N.D. Cal. 2007) ........................................................................ 24

PLAINTIFFS' MPA ISO THEIR MOTION FOR SUMMARY JUDGMENT   ii              CASE NO. 07-CV-1988 DMS (NLS)
ON AMBU'S LANHAM ACT & RELATED STATE LAW COUNTERCLAIMS FOR FAILURE
TO ESTABLISH INJURY & ENTITLEMENT TO MONETARY AND INJUNCTIVE RELIEF        DCDOCS01/378057.5F

*Oyster Software, Inc. v. Forms Processing, Inc.*, No. C-00-0724 JCS,
    2001 WL 1736382 (N.D. Cal. Dec. 6, 2001) .......................................................... 25

*Peerless Heater Co. v. Mestek, Inc.,* No. CIV. A. 98-CV-6532,
    2000 WL 637082 (E.D. Pa. May 11, 2000) ...................................................... 10

*Porous Media Corp. v. Pall Corp.*, 110 F.3d 1329 (8th Cir. 1997) ....................................... 10, 23

*Rhone-Poulenc Rorer Pharm., Inc. v. Marion Merrell Dow, Inc.*,
    93 F.3d 511 (8th Cir. 1996) .......................................................... 10

*Schonfeld v. Hilliard*, 218 F.2d 164 (2d Cir. 2000) ...................................................... 23

*Seven-Up Co. v. Coca-Cola Co.*, 86 F.3d 1379 (5th Cir. 1995)........................................*passim*

*Southland Sod Farms v. Stover Seed Co.*, 108 F.3d 1134 (9th Cir. 1997) ........................ 9, 10, 21

*Tao of Sys. Integration, Inc. v. Analytical Servs. & Materials*,
    330 F. Supp. 2d 668 (E.D. Va. 2004)................................................................*passim*

*U-Haul Int'l, Inc. v. Jartran, Inc.*, 793 F.2d 1034 (9th Cir. 1986)............................... 10

## STATE CASES

*Barnes-Hind, Inc. v. Superior Court*, 181 Cal. App. 3d 377 (1986)........................... 25

*Della Penna v. Toyota Motor Sales, U.S.A., Inc.*, 11 Cal. 4th 376 (1995)................................... 25

*Kids' Universe v. In2Labs*, 95 Cal. App. 4th 870 (2002)........................................ 25

*Nichols v. Great Am. Ins. Cos.*, 169 Cal. App. 3d 766 (1985) ........................................ 25

*Piscitelli v. Friedenberg*, 87 Cal. App. 4th 953 (2001)........................................ 25

*Westside Ctr. Assocs. v. Safeway Stores 23, Inc.*, 42 Cal. App. 4th 507 (1996) ........................ 25

*Youst v. Longo*, 43 Cal. 3d 64 (1987)........................................ 25

## STATUTES

15 U.S.C. § 1117(a)........................................ 9, 10

15 U.S.C. § 1125(a)........................................ 9, 21

Cal. Bus. & Prof. Code § 17200........................................ 7, 25

Cal. Bus. & Prof. Code § 17203........................................ 25

Cal. Bus. & Prof. Code § 17500........................................ 7, 25

Cal. Bus. & Prof. Code § 17535........................................ 25

PLAINTIFFS' MPA ISO THEIR MOTION FOR SUMMARY JUDGMENT    iii
ON AMBU'S LANHAM ACT & RELATED STATE LAW COUNTERCLAIMS FOR FAILURE
TO ESTABLISH INJURY & ENTITLEMENT TO MONETARY AND INJUNCTIVE RELIEF

CASE NO. 07-CV-1988 DMS (NLS)

DCDOCS01/378057.5F

Cal. Civ. Code § 45 .................................................................................. 7, 25

Cal. Civ. Code § 45a .................................................................................. 25

Cal. Civ. Code § 48a(b) ............................................................................. 25

Fed. R. Civ. P. 56(c) .................................................................................... 9

Lanham Act, § 43(a) .............................................................................. *passim*

Plaintiffs/Counter-Defendants The Laryngeal Mask Company Ltd. and LMA North America, Inc. (collectively "LMA") respectfully move for summary judgment on the counterclaims for false advertising under the Lanham Act and related state claims asserted by defendants/counterclaimants Ambu A/S, Ambu Inc., and Ambu Ltd. (collectively "Ambu"). Specifically, LMA moves on the ground that Ambu has neither presented a genuine issue of fact on whether it has suffered or is likely to suffer injury as a result of the alleged false advertising, nor presented a reasonable basis for the calculation of its purported damages.

## I.    PRELIMINARY STATEMENT

To establish a violation of § 43(a) of the Lanham Act, a plaintiff must prove that it has suffered injury as a result of the false advertising as well as establish with reasonable certainty the amount of that injury. Even if Ambu could identify a genuine issue of material fact on whether LMA's advertising was false or misleading (which it has not), LMA is entitled to summary judgment because Ambu has failed to present sufficient evidence of injury and damages. Ambu claims injury from LMA's use of a brochure based on a study by Dr. David Z. Ferson concluding that Ambu laryngeal masks pose a greater risk than LMA masks of nerve damage and gastric insufflation, regurgitation, and aspiration. The sole injury Ambu claims to have suffered consists of sales it purportedly lost (and LMA purportedly gained) as a result of the alleged false advertising. Ambu has not, however, identified a specific sale that it actually lost as a result of the alleged false advertising. Nor has Ambu identified a single Group Purchasing Organization ("GPO") contract lost as a result of LMA's advertising – a particularly telling failure in light of Ambu's acknowledgement that the majority of laryngeal mask sellers' revenues are derived from only a few GPOs.

REDACTED

**REDACTED**

Because Ambu has failed to proffer competent evidence to establish that LMA's advertising caused Ambu to suffer injury, much less the amount of such injury, LMA is entitled to adjudication of Ambu's Lanham Act and state law claims for monetary relief as a matter of law. Ambu's claim for injunctive relief should similarly be denied because Ambu does not and cannot show that it is likely to be injured as a result of the use of the LMA Brochure, much less that it will suffer irreparable harm absent an injunction. If granted, this motion will result in dismissal of all of Ambu's non-patent counterclaims, thereby eliminating a need for a trial of such claims.

## II.  FACTUAL BACKGROUND

The facts regarding the background of this case are set forth in detail in LMA's Memorandum of Law in Support of its Motion for Summary Judgment on Ambu's Counterclaims for Failure to Establish False or Misleading Advertising ("LMA's False or Misleading SJ Memorandum"). The following sets forth the facts relevant to the issues of injury and damages.

### A.  Dr. Ferson Conducts a Study of Laryngeal Masks

**REDACTED**

### B.  Ambu Asks LMA To Cease Discussing the Ferson Study and LMA Declines

1

2

3

REDACTED

4

5

6

7

8

9

10

11 **C.**    **LMA Summarizes Dr. Ferson's Research in a Brochure**

12

13

REDACTED

14

15

16

17

18

19

20 **D.**    **Ambu Circulates a Counter-Brochure**

21

22

23

REDACTED

24

25

26

27

28



REDACTED

Plaintiffs' MPA ISO Their Motion for Summary Judgment    4    Case No. 07-CV-1988 DMS (NLS)
on Ambu's Lanham Act & Related State Law Counterclaims for Failure
to Establish Injury & Entitlement to Monetary and Injunctive Relief    DCDOCS01/378057.5F



REDACTED

PLAINTIFFS' MPA ISO THEIR MOTION FOR SUMMARY JUDGMENT
ON AMBU'S LANHAM ACT & RELATED STATE LAW COUNTERCLAIMS FOR FAILURE
TO ESTABLISH INJURY & ENTITLEMENT TO MONETARY AND INJUNCTIVE RELIEF

CASE NO. 07-CV-1988 DMS (NLS)

DCDOCS01/378057.5F



REDACTED

████████████████████████████████████

██ ███ ██████ ████ ███ ████ ██ ████ ███ █ ██ ███

████████████████████████████████████

██████

**F.    More Than Three Years After LMA Circulates the LMA Brochure, Ambu Brings Legal Action Against LMA**

LMA commenced this patent-infringement action on October 15, 2007 (D.I. 1) and filed an amended complaint on October 17, 2007 (D.I. 4). Ambu answered the complaint and filed two counterclaims alleging invalidity and non-infringement of LMA's patents on December 5, 2007, (D.I. 15) and on January 30, 2008, Ambu submitted an answer to the amended complaint, as well as the same two counterclaims it had previously asserted (D.I. 39).

More than five months later, on July 11, 2008, Ambu filed a motion to amend its pleadings and add five new counterclaims, namely, (1) false advertising in violation of 43(a) of the Lanham Act; (2) false advertising in violation of Cal. Bus. & Prof. Code § 17500, *et seq.* (3) trade libel in violation of Cal. Civ. Code § 45; (4) international interference with prospective economic relations; and (5) unfair competition pursuant to Cal. Bus. & Prof. Code § 17200 *et. seq.* (D.I. 63.) Ambu's counterclaims allege that LMA falsely advertised, based on the Ferson Study, that Ambu products pose a greater risk than LMA products of nerve damage. *See id.* ¶ 15. In addition, the counterclaims allege that LMA "made false and misleading statements that several customers have switched from purchasing LMA's laryngeal masks to Ambu's laryngeal masks only to switch back to using LMA's products" as a result of "clinical and/or safety reasons." (D.I. 72 at ¶ 18.) Ambu seeks injunctive relief, as well as lost profits, unjust enrichment measured by LMA's profits, and the cost of corrective advertising. *See id.* ¶¶ 25-26, 30-32, 37-38, 45, 47, 52-53.

In support of its motion to add the counterclaims, Ambu claimed that it did not file sooner because "Ambu was under the impression" that LMA had ceased the above marketing and sales tactics, and that Ambu "only recently learned, on or about July 1, 2008, that LMA has resumed the conduct described above." Order Granting Defendants' Motion for Leave to Amend (D.I. 71) (quoting Declaration of Henrik Wendler, Ambu A/S EVP for R&D, Process Development,

| | |
|---|---|
| 1 | Production and Logistics, dated July 11, 2008). Although this Court allowed Ambu to add the |
| 2 | counterclaims, it found as a fact that Ambu had engaged in "undue delay" in asserting them. *Id.* |

### III.  ARGUMENT

Even if Ambu has presented a genuine factual issue regarding whether LMA's advertising is false or misleading (which it has not), LMA is entitled to summary judgment on Ambu's Lanham Act and state law claims because Ambu has failed to produce competent summary judgment evidence that it suffered injury as a result of the advertising (as required for monetary relief) or is likely to suffer future injury (as required for injunctive relief). What is more, Ambu has provided no reasonable basis for the calculation of the amount of damages. Accordingly, LMA is entitled to adjudication of Ambu's Lanham Act and related state law claims based on LMA's alleged false advertising as a matter of law.[3]

### A.  Summary Judgment Standard

A motion for summary judgment shall be granted if the court determines "that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). A dispute about a material fact is genuine if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A party seeking summary judgment bears the initial burden of establishing the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323. The moving party can satisfy this burden in two ways: (1) by presenting evidence to negate an essential element of the nonmoving party's case; or (2) by demonstrating that the nonmoving party failed to make a showing sufficient to establish an element essential to that party's case on which that party will bear the burden of proof at trial. *Id.* at 322-23.

---

[3] In its counterclaims, Ambu also asserted that LMA has "made false and misleading statements that several customers have switched from purchasing LMA's laryngeal masks to Ambu's laryngeal masks only to switch back to using LMA's products" as a result of "clinical and/or safety reasons." (D.I. 72 at ¶ 18.) Even if Ambu has shown that LMA made false or misleading statements in this regard and that such statements were material (which Ambu has not), Ambu's claim fails for the same reasons as its claim based on the LMA Brochure: a failure to establish any injury resulting from LMA's statements or proffer a reasonable calculation of the amount of such injury. Thus, Ambu cannot defeat summary judgment on the basis of this claim.

**B.** **LMA Is Entitled to Summary Judgment on Ambu's Lanham Act Claim for Monetary Relief Because Ambu Has Failed to Present Sufficient Evidence that It Suffered Injury as a Result of the Alleged False Advertising**

The elements of a false advertising claim under § 43(a) of the Lanham Act, *see* 15 U.S.C. § 1125(a), are: (1) a false statement of fact by the defendant in a commercial advertisement about its own or another's product; (2) the statement actually deceived or has the tendency to deceive a substantial segment of its audience; (3) the deception is material, in that it is likely to influence the purchasing decision; (4) the defendant caused its false statement to enter interstate commerce; and (5) the plaintiff has been or is likely to be injured as a result of the false statement, either by direct diversion of sales from itself to defendant or by a lessening of the goodwill associated with its products. *Southland Sod Farms v. Stover Seed Co.*, 108 F.3d 1134, 1139 (9th Cir. 1997). For proven violations, the Lanham Act provides that "the plaintiff shall be entitled . . . subject to the principles of equity to recover (1) defendant's profits, (2) any damages sustained by the plaintiff, and (3) the costs of the action . . . ." 15 U.S.C. § 1117(a). The Lanham Act gives courts the "power to grant injunctions, according to the principles of equity and upon such terms as the court may deem reasonable, to prevent the violation" of a registrant's rights. 15 U.S.C. § 1116(a).

The standard for proving the fifth element, *i.e.*, injury, is higher for an award of damages than for injunctive relief. "Thus, a plaintiff seeking monetary rather than injunctive relief must show 'actual damages rather than a mere tendency to be damaged.'" *Bracco Diagnostics, Inc. v. Amersham Health, Inc.*, No. 03-6025, 2009 WL 1743699, at *68 (D.N.J. June 5, 2009) (citations omitted). To obtain monetary relief, "[t]he plaintiff must link the deception with actual harm to its business." *Id.* at *68 (citations omitted). "[P]laintiff may not recover if he fails to prove that the defendant's actions caused the claimed harm." *Harper House, Inc. v. Thomas Nelson, Inc.*, 889 F.2d 197, 209 (9th Cir. 1989); *see also Lindy Pen Co. v. Bic Pen Corp.*, 982 F.2d 1400, 1407 (9th Cir. 1993) ("Damages are typically measured by any direct injury which a plaintiff can prove, as well as any lost profits which the plaintiff would have earned *but for* the [violation].") (emphasis added); *Hot Wax, Inc. v. Turtle Wax, Inc.*, 191 F.3d 813, 819-20 (7th Cir. 1999) ("to recover money damages under the Act, a plaintiff must prove both actual damages and a causal link between defendant's violation and those damages"); *Rhone-Poulenc Rorer Pharm., Inc. v. Marion*

PLAINTIFFS' MPA ISO THEIR MOTION FOR SUMMARY JUDGMENT    9      CASE NO. 07-CV-1988 DMS (NLS)
ON AMBU'S LANHAM ACT & RELATED STATE LAW COUNTERCLAIMS FOR FAILURE
TO ESTABLISH INJURY & ENTITLEMENT TO MONETARY AND INJUNCTIVE RELIEF      DCDOCS01/378057.5F

*Merrell Dow, Inc.*, 93 F.3d 511, 515 (8th Cir. 1996) ("Plaintiff must prove both actual damages and a causal link between defendant's violation and those damages."); *Seven-Up Co. v. Coca-Cola Co.*, 86 F.3d 1379, 1387 n.12 (5th Cir. 1995) ("it is [ ] necessary that plaintiff demonstrate that defendant's illegal conduct was a substantial cause of injury to plaintiff's business") (citation omitted); *Peerless Heater Co. v. Mestek, Inc.*, No. CIV. A. 98-CV-6532, 2000 WL 637082, at *4 (E.D. Pa. May 11, 2000) ("To satisfy this causation requirement, the plaintiff must prove that the defendants' activities were a material cause of the injury."). Proof of actual damages is compelled by the Lanham Act itself, which provides that a monetary award "shall constitute *compensation and not a penalty.*" 15 U.S.C. § 1117(a) (emphasis added).[4]

In addition to profits lost by the plaintiff, the Lanham Act permits under certain equitable circumstances recovery of profits obtained by the defendant as a result of the false advertising. To recover such profits, the plaintiff must establish (among other things) that "the defendant has benefited from his false advertisements." *Tao of Sys. Integration, Inc. v. Analytical Servs. & Materials, Inc.*, 330 F. Supp. 2d 668, 672 (E.D. Va. 2004); *see also Logan*, 263 F.3d at 465

---

[4] A number of cases have suggested that where the defendant deliberately deceived the public, plaintiff can rely on a presumption that the defendant's statements caused injury to the plaintiff. *See, e.g., Harper House*, 889 F.2d at 209 (approving the use of the presumption of deception once plaintiff establishes that defendant acted with intent to deceive); *Porous Media Corp. v. Pall Corp.*, 110 F.3d 1329, 1336 (8th Cir. 1997) ("in comparative advertising cases where money damages are sought and where there exists proof of willful deception," the plaintiff is entitled to a rebuttable presumption of causation and harm); *U-Haul Int'l, Inc. v. Jartran, Inc.*, 793 F.2d 1034, 1040 (9th Cir. 1986) (approving a presumption of actual deception and reliance for deliberately false comparative claims); *Southland Sod*, 108 F.3d at 1146 (stating that "[p]ublication of deliberately false comparative claims gives rise to a presumption of actual deception and reliance"); *Bracco*, 2009 WL 1743699, at *70 (plaintiff "must first establish willfulness before entitlement to a presumption of causation and harm"). That presumption does not apply here because there is no evidence that LMA acted willfully, *i.e.*, with the actual intent to deceive customers. LMA's advertising was based on a study that was performed by a leading expert and published in a highly respected journal. Ambu offers no studies to refute the Ferson Study and its own clinical evidence in fact supports it. Accordingly, there is no evidence that LMA acted in bad faith or with the intent to deceive. *See Bracco*, 2009 WL 1743699, at *70-72 (defendant's false advertising in connection with its claims of product superiority was not willful, where studies and knowledgeable and credible experts supported challenged claims and there were no studies that adequately and reliably demonstrated the converse of the claims); *ALPO Petfoods, Inc. v. Ralston Purina Co.*, 913 F.2d 958, 968 (D.C. Cir. 1990) ("Ralston's decision to run CHD-related advertising that lacked solid empirical support does not, without more, reflect willfulness or bad faith."); *cf. Golf Co. v. Slazenger*, 384 F. Supp. 2d 735 742 (D. Del. 2005) (finding willful conduct when the defendant continued to disseminate ads with claims of superiority of its golf ball over all other competitor golf ball product lines on tour, when its own tests showed that a competitor's golf ball product line on tour was superior). Even if such a presumption were appropriate here (and it is not), the evidence set forth *infra*, pp. 12-18, shows that Ambu did not lose sales as a result of the alleged false advertising, rebutting any presumption of causation and injury in this case. *See Balance Dynamics Corp. v. Schmitt Indus., Inc.*, 204 F.3d 683, 694-95 (6th Cir. 2000) (presumption of causation and injury was rebutted by evidence demonstrating that the plaintiff''s "business was not harmed" as a result of the allegedly false representations, specifically, evidence that plaintiff'' sales increased after the period in which the false representations were disseminated, that there was no decrease in the price of its product, and that no customers had ever informed it that it was losing a sale due to the defendant's communications).

PLAINTIFFS' MPA ISO THEIR MOTION FOR SUMMARY JUDGMENT   10
ON AMBU'S LANHAM ACT & RELATED STATE LAW COUNTERCLAIMS FOR FAILURE
TO ESTABLISH INJURY & ENTITLEMENT TO MONETARY AND INJUNCTIVE RELIEF

CASE NO. 07-CV-1988 DMS (NLS)

DCDOCS01/378057.5F

("[W]here a plaintiff who has brought a Lanham Act claim for false advertising has failed to present evidence that the defendant benefited from the alleged false advertising, the plaintiff will not be permitted to recover any of the defendant's profits."); *Balance Dynamics Corp. v. Schmitt Indus., Inc.*, 204 F.3d 683, 695 (6th Cir. 2000) ("[U]nless there is some proof that plaintiff lost sales or profits, or that defendant gained them, the principles of equity do not warrant an award of defendant's profits."). Thus, both "[t]he plaintiff's injury or the defendant's gain must be "a result of [the defendant's] misrepresentation." *Tao*, 330 F. Supp. 2d at 672 (citation omitted). If the plaintiff is unable to establish this "causal link" to the defendant's actions, "the plaintiff has no sustainable claim under the Lanham Act, and the defendant must be granted summary judgment." *Id.* at 672; *see also Logan*, 263 F.3d at 465 (affirming judgment as a matter of law for the defendant because the plaintiff had failed to present evidence that the defendant's profits were attributable to the false advertising); *Castrol Inc. v. Pennzoil Quaker State Co.*, 169 F. Supp. 2d 332, 343 (D.N.J. 2001) ("Surely, Castrol must demonstrate with reasonable certainty the portion of Pennzoil's profits attributable to the willful and intentional false advertising before the Court can order disgorgement.").

As explained below, Ambu has not proffered sufficient evidence to support the claim that LMA's alleged false advertising caused it to suffer injury. The sole injury alleged by Ambu consists of sales allegedly lost as a result of the false advertising. Because Ambu fails to present sufficient evidence that LMA statements regarding the Ferson Study caused Ambu to lose (or LMA to gain) sales, LMA is entitled to summary judgment on Ambu's claims for monetary relief as a matter of law.

      a.    **Ambu Has Not Identified a Single Sale Lost as a Result of the Alleged False Advertising**

Ambu has not provided evidence of a single sale it lost (or LMA gained) as a result of the LMA Brochure or LMA's other statements regarding the Ferson Study. Indeed, Ambu has failed to so do despite the fact that LMA specifically asked for such information. ████████

████████████████████████████████████████████

████████████████████████████████████████████

PLAINTIFFS' MPA ISO THEIR MOTION FOR SUMMARY JUDGMENT  11        CASE NO. 07-CV-1988 DMS (NLS)
ON AMBU'S LANHAM ACT & RELATED STATE LAW COUNTERCLAIMS FOR FAILURE
TO ESTABLISH INJURY & ENTITLEMENT TO MONETARY AND INJUNCTIVE RELIEF      DCDOCS01/378057.5F

REDACTED

Such conclusory allegations of lost sales are insufficient to withstand summary judgment. *See Tao*, 330 F. Supp. 2d at 673 (granting summary judgment to defendant on plaintiff's claim for defendant's profits in false advertising case where plaintiff failed to proffer sufficient evidence that defendant obtained contracts as a result of the false advertising in question; listing of contracts by plaintiff in an interrogatory with conclusory allegations of causality was insufficient to defeat summary judgment); *Blue Dane Simmental Corp. v. Am. Simmental Ass'n*, 178 F.3d 1035, 1043 (8th Cir. 1999) (upholding judgment for defendant where plaintiffs' evidence established only "that they believed that their sales had dropped because of the introduction of [defendant's product]").

What is more, although Ambu claims that it lost group purchasing organization ("GPO") contracts as a result of LMA's alleged false advertising, it has proffered no evidence supporting that claim.

REDACTED

PLAINTIFFS' MPA ISO THEIR MOTION FOR SUMMARY JUDGMENT 12
ON AMBU'S LANHAM ACT & RELATED STATE LAW COUNTERCLAIMS FOR FAILURE
TO ESTABLISH INJURY & ENTITLEMENT TO MONETARY AND INJUNCTIVE RELIEF

CASE NO. 07-CV-1988 DMS (NLS)

DCDOCS01/378057.5F

1    alleged false advertising is particularly telling in light of Ambu's recognition that "laryngeal mask
2    suppliers rely on a few GPOs for the majority of their revenues." *See* Berretta Decl., Ex. 20 ¶ 42;
3    *see also* Berretta Decl., Ex. 27 at 26:15-27:5 (naming Novation, Premier, Broadline, HealthTrust,
4    MedAssets, and Amerinet as the primary national GPOs).

5         Nor can Ambu establish that it lost sales as a result of the LMA Brochure by relying on the
6    *post-hoc*, self-serving testimony of its executives. █████████████████████████
7    ████████████████████████████████████████████
8    █████████████████ REDACTED █████████████████
9    ████████████████████████████████████████████
10   ████████████████████████████████████████████

11   This speculation does not and cannot be allowed to serve as "proof" that Ambu lost sales as a
12   result of the LMA Brochure, particularly when Ambu's own contemporaneous surveys reveal the
13   absence of any causal link. ██████████████████████████████████
14   ████████████████████████████████████████████
15   █████████████████ REDACTED █████████████████
16   ████████████████████████████████████████████
17   ████████████████████████████████████████████
18   ████████████████████████████████████████████
19   ████████████████████████████

20       Finally, Ambu cannot establish injury by use of the survey described in ██████████
21   ████████████████████████████████████████████
22   ████████████████████████████████████████████
23   █████████████████ REDACTED █████████████████
24   ████████████████████████████████████████████
25   ████████████████████████████████████████████
26   ████████████████████████████████████████████
27   ████████████████████████████████████████████
28   ████████████████████████████████████████████

█████████████████████████████████████████████

Failure to show sales lost as a result of customers' reliance on the alleged false advertising defeats Ambu's damages claims as a matter of law. *See Seven-Up*, 86 F.3d at 1388-89 (jury could not make a reasonable inference that a presentation containing false advertising was a substantial cause of plaintiff's loss of a contract to competitor where there was no evidence as to which specific false slides were shown to the company's board or to show that the board actually relied on the information contained in the presentation, much less anything false or misleading therein).

**b.** ████████████████████████████████

REDACTED

Where a plaintiff cannot show that it lost sales as a result of the alleged false advertising as opposed to other factors, it cannot establish causation and damages under the Lanham Act as a matter of law. *See Bracco*, 2009 WL 1743699, at *72 ("the totality of evidence tends to show that the GPO contracts were not awarded as a result of false advertising, but for other reasons, including, but not limited to, client satisfaction with GEH's products, longstanding business relationships with GEH, dissatisfaction with certain of Bracco's productline (ProHance), Bracco's pricing and approach to the bid process, and Visipaque's distinction as an innovative product."); *Tao,* 330 F. Supp. 2d at 675 (plaintiff failed to create a triable issue of fact on whether defendant benefited from false advertising where evidence showed that sales were based on customers'

evaluation of defendant as having superior product rather than the alleged false advertising); *see also Gucci Am., Inc. v. Daffy's Inc.*, 354 F.3d 228, 243 (3d Cir. 2003) (plaintiff not entitled to defendant's profits in trademark infringement case where it was completely speculative whether purchasers bought defendant's handbags "because of the Gucci mark as opposed to quality, price, and appearance").[5]

### c. LMA's Documents Do Not Establish that Ambu Lost Sales as a Result of LMA's Advertising

Unable to show that it lost any sales as a result of the alleged false advertising, Ambu relies on a

REDACTED

Like Ambu's documents, however, these documents do not identify any specific sales actually lost as a result of the LMA Brochure. Such evidence is therefore simply "too attenuated and speculative to support a finding of causation." *Tao*, 330 F. Supp. 2d at 675.

What is more, Ambu selectively quotes from LMA's documents, ignoring the parts that attribute LMA's success to factors other than the LMA Brochure.

REDACTED

---

[5] In addition, Ambu does not and cannot establish the amount of sales, if any, that were lost as a result of the particular alleged false or misleading statements in the LMA Brochure as opposed to the true statements in that Brochure or the Ferson Study ▮▮▮▮▮. *See Bracco*, 2009 WL 1743699, at *74 (finding that plaintiff did not show "that it was [the defendant's] false advertising and not the GPOs' independent evaluation of the various scientific studies which caused the loss of the contracts"); *id*. at *75 ("Bracco leaves the Court conjecturing the extent of the sales trend reflecting GEH's false advertising as opposed to the publication of NEHPRIC in the widely respected NEJM, as well as GEH's true messages taken from NEPHRIC and other articles. Without such showing, Bracco is not entitled to lost profits.").

PLAINTIFFS' MPA ISO THEIR MOTION FOR SUMMARY JUDGMENT 15
ON AMBU'S LANHAM ACT & RELATED STATE LAW COUNTERCLAIMS FOR FAILURE
TO ESTABLISH INJURY & ENTITLEMENT TO MONETARY AND INJUNCTIVE RELIEF

CASE NO. 07-CV-1988 DMS (NLS)

DCDOCS01/378057.5F

REDACTED

Significantly, numerous LMA documents discussing the reasons for LMA's overall success do not so much as mention any competitive advantage accrued by LMA by virtue of Dr. Ferson's study or focus their strategy on the use of the LMA Brochure;

REDACTED

REDACTED

ON AMBU'S LANHAM ACT & RELATED STATE LAW COUNTERCLAIMS FOR FAILURE
TO ESTABLISH INJURY & ENTITLEMENT TO MONETARY AND INJUNCTIVE RELIEF

REDACTED

Thus, like Ambu's documents, LMA's documents provide no evidence for Ambu's claim that it lost (and LMA gained) sales as a result of the alleged false advertising. Instead, the documents support the opposite conclusion.

### d. Ambu's Counter-Brochure Negated Any Effect of the LMA Brochure

That Ambu did not lose any sales as a result of the LMA Brochure is further supported by Ambu's own testimony REDACTED

PLAINTIFFS' MPA ISO THEIR MOTION FOR SUMMARY JUDGMENT   17
ON AMBU'S LANHAM ACT & RELATED STATE LAW COUNTERCLAIMS FOR FAILURE
TO ESTABLISH INJURY & ENTITLEMENT TO MONETARY AND INJUNCTIVE RELIEF

CASE NO. 07-CV-1988 DMS (NLS)

DCDOCS01/378057.5F

**REDACTED**

### e. The Sales Trend Evidence Refutes Ambu's Claims

Not only does Ambu fail to present evidence of any lost sale as a result of the alleged false advertising, it does not offer any sales trend evidence to support its claim of lost sales. In fact, the sales trend evidence supports the conclusion that the LMA Brochure did *not* cause Ambu to lose sales.

**REDACTED**

Accordingly, the sales trend evidence refutes Ambu's claim of harm in this case. *See Balance Dynamics Corp.,* 204 F.3d at 694-95 (evidence demonstrated that the plaintiff's business was not harmed as a result of the allegedly false representations where the plaintiff's sales increased after the period in which the false representations were disseminated and there was no decrease in the price of its product).

The sole "sales trend" on which Ambu relies is its claim that Ambu's rate of market share growth declined in the years following dissemination of the LMA Brochure. But as explained in LMA's Memorandum of Law in Support of Their Motion to Exclude the Testimony of Ryan

PLAINTIFFS' MPA ISO THEIR MOTION FOR SUMMARY JUDGMENT 18
ON AMBU'S LANHAM ACT & RELATED STATE LAW COUNTERCLAIMS FOR FAILURE
TO ESTABLISH INJURY & ENTITLEMENT TO MONETARY AND INJUNCTIVE RELIEF

CASE NO. 07-CV-1988 DMS (NLS)

DCDOCS01/378057.5F

1  Sullivan P.h.D. (at 10-11), Ambu's calculation of its growth rate was arbitrary, statistically flawed,

2  and wholly speculative. █████████████████████████████████████

3  ██████████████████ REDACTED ██████████████████

4  █████████████████████████████████████████████████

5  █████████████████████████████████████████ *Blanton*

6  *Enters., Inc. v. Burger King Corp.*, 680 F. Supp. 753, 776 (D.S.C. 1988) (unsuccessful franchise

7  applicant had no damages recoverable on promissory estoppel theory and thus summary judgment

8  was proper where applicant's "own projections" indicated it would make more profit operating

9  competing franchise which it opened at proposed site).

10        Even if Ambu could show some adverse sales trend (which it cannot), a sales trend

11  approach would be improper here. "Although circumstantial evidence illustrating sales trends may

12  suffice in some cases, where 'many potential intervening factors can affect the plaintiff's sales,

13  and the presence of such factors bears on the sufficiency of the plaintiff's proof,' a sales trend

14  approach will be insufficient to demonstrate causation." *Bracco*, 2009 WL 1743699, at *73 (citing

15  Restatement (Third) of Unfair Competition § 36 comments h and i); *see also Seven-Up*, 86 F.3d at

16  1388-89 ("inferences of causation based solely on the chronology of events, where the record

17  contains undisputed testimony to the contrary or other equally credible theories of causation," are

18  not reasonable inferences). In this case, even if Ambu did experience a decline in its growth rate

19  after dissemination of the LMA Brochure (and there is no reliable evidence that it did), there are

20  simply too many other equally credible theories as to why purchasers bought from LMA rather

21  than Ambu to attribute any such decline to the LMA Brochure as opposed to other factors.

22        This conclusion is illustrated by the recent case of *Bracco, supra*. In that case, even though

23  the plaintiff had experienced a decline in sales of its medical product after the publication of the

24  false advertising, the court held that the plaintiff could not establish a causal link between its lost

25  sales and the false advertising where it was unable to identify a single specific customer that had

26  purchased from the defendant instead of the plaintiff as a result of the advertising and numerous

27  other factors could have accounted for the decline in sales. 2009 WL 1743699, at 74-75. The court

28  explained that the plaintiff "presented evidence, at best, showing certain false information was

PLAINTIFFS' MPA ISO THEIR MOTION FOR SUMMARY JUDGMENT   19
ON AMBU'S LANHAM ACT & RELATED STATE LAW COUNTERCLAIMS FOR FAILURE
TO ESTABLISH INJURY & ENTITLEMENT TO MONETARY AND INJUNCTIVE RELIEF

CASE NO. 07-CV-1988 DMS (NLS)

DCDOCS01/378057.5F

presented to GPO members, but it fail[ed] to demonstrate the impact of that information on the members, let alone that it was the substantial reason the contracts were awarded to [the defendant]." *Id.* at 74. The court noted that it was likely that the bids and awards of contracts were based on personal experience, feedback from physician colleagues, clinical information, and existing strong positive relationship companies had with competitor. *Id.* at 74-75. Thus, the plaintiff "failed to establish the threshold causation needed for an award of damages as there are other factors present which account for Bracco's lost profits and overshadow [the plaintiff's] actual false advertising." *Id.*; *see also id.* at 75 n.263 (lost profits award not proper where plaintiff "has not proffered sufficient evidence linking its sales decline to [the plaintiff's] false advertising").

Similarly, here, the evidence is not sufficient to support Ambu's claim for damages where it has failed to identify any specific lost sales or link any purported decline in market growth to the alleged false advertising. Accordingly, LMA is entitled to summary judgment on its claim for lost profits, unjust enrichment, and corrective advertising as a matter of law. *See IQ Products Co. v. Pennzoil Prods. Co.*, 305 F.3d 368, 376 (5th Cir. 2002) (defendant was entitled to summary judgment because plaintiff failed to "present[] . . . competent summary judgment evidence that indicates that consumers would have bought IQ's tire inflator products instead of Fix-A-Flat in the absence of the defendants' allegedly false and misleading statements"); *Seven-Up*, 86 F.3d at 1388-89 (evidence was not sufficient to support lost profits award where there was no direct evidence that defendant's false representations were a substantial factor in the decision for bottlers to switch brands); *Tao*, 330 F. Supp. 2d at 674, 676 (summary judgment warranted where plaintiff did not meet "its burden of producing evidence sufficient to establish a 'causal link' between [the defendant's false advertising] and any alleged harm to [the plaintiff], or benefit to [the defendant]"; "[a]lthough plaintiff presents some evidence in support of its claim that [the defendant] benefited from the alleged false advertising, that evidence is too speculative and attenuated to create a triable issue of fact").

PLAINTIFFS' MPA ISO THEIR MOTION FOR SUMMARY JUDGMENT    20
ON AMBU'S LANHAM ACT & RELATED STATE LAW COUNTERCLAIMS FOR FAILURE
TO ESTABLISH INJURY & ENTITLEMENT TO MONETARY AND INJUNCTIVE RELIEF

CASE NO. 07-CV-1988 DMS (NLS)

DCDOCS01/378057.5F

**C. LMA Is Entitled to Summary Judgment on Ambu's Lanham Act Claim for Injunctive Relief Because It has Failed To Present Sufficient Evidence that It Is Likely to Suffer Future Injury as a Result of the Alleged False Advertising**

As explained earlier, to establish a violation of § 43(a) of the Lanham Act, a plaintiff must prove that it "has been or is likely to be injured as a result of the false statement." *Southland Sod Farms*, 108 F.3d at 1139. Although the standard for proving injury is higher when a plaintiff seeks to obtain monetary relief, a plaintiff must still prove a likelihood of injury to obtain injunctive relief. Additionally, "[i]n order to obtain permanent injunctive relief against future violations of 15 U.S.C. § 1125(a), a plaintiff must 'demonstrate that a commercial advertisement or promotion is either literally false or that the advertisement is likely to mislead and confuse consumers' and 'that it will suffer irreparable harm if the injunction is not granted.'" *Logan*, 263 F.3d at 465 (emphasis in original) (citing *Seven-Up*, 86 F.3d at 1390).

Here, even if the LMA Brochure is false or misleading, injunctive relief is not warranted because Ambu has failed to proffer sufficient evidence of likely injury. Given Ambu's failure to show that it has suffered any actual injury as a result of the LMA Brochure despite years of the Brochure's use (to the contrary, Ambu's overall sales have kept *growing* despite such use), Ambu does not and cannot prove that it is likely to suffer injury from any continued use of the Brochure. Indeed, any conclusion that Ambu is likely to suffer future injury from the Brochure is belied by its failure to seek an injunction against the use of the Brochure for more than three years after it became aware of its use. Although the LMA Brochure is still available for distribution, it was printed in only one print run in 2005, it has not been reprinted since that time, only a small inventory still exists, and it has been used infrequently in the past few years. What is more, LMA is prepared to cease distribution of the few remaining copies of the LMA Brochure.

For all of these reasons, Ambu does not and cannot establish that the use of the LMA Brochure is likely to cause it injury, much less that it will suffer irreparable harm if an injunction is not granted. Accordingly, LMA is entitled to summary judgment on Ambu's claim for injunctive relief. *See In re Circuit Breaker Litig.*, 860 F. Supp. 1453, 1456 (C.D. Cal. 1994) ("[I]f "the defendant has infringed innocently, ceased before judgment and assured the court that it has no intention of infringing in the future, the public needs no protection. In these circumstances,

PLAINTIFFS' MPA ISO THEIR MOTION FOR SUMMARY JUDGMENT   21
ON AMBU'S LANHAM ACT & RELATED STATE LAW COUNTERCLAIMS FOR FAILURE
TO ESTABLISH INJURY & ENTITLEMENT TO MONETARY AND INJUNCTIVE RELIEF

CASE NO. 07-CV-1988 DMS (NLS)

DCDOCS01/378057.5F

courts usually deny requests for permanent injunctions."), *aff'd*, 106 F.3d 894 (9th Cir. 1997); *Logan*, 263 F.3d at 465 ("In this case, Logan has failed to establish that it will suffer irreparable harm absent injunctive relief. It points to no evidence that HoneyBaked continues to make references to spiral sliced meat products in its advertising or that it will in the future. Accordingly, we find that the district court did not err in denying injunctive relief."); *Seven-Up*, 86 F.3d at 1389-90 (even though defendant's advertising was false and misleading, court denied injunctive relief where there was no evidence indicating that the plaintiff would suffer irreparable harm if an injunction was not granted because the defendant had ceased the advertising in question).

### D.   Ambu Has Failed to Proffer a Reasonable Basis for the Calculation of Monetary Relief

"A plaintiff must prove both the fact and the amount of damage." *See Lindy Pen*, 982 F.2d at 1407 (citing J. Thomas McCarthy, Trademarks and Unfair Competition § 30:27 (2d ed. 1984)). Although damages in Lanham Act cases need not be calculated with "absolute exactness," there must be a reasonable basis for their calculation. *Lindy Pen*, 982 F.2d at 1407 (quoting *Eastman Kodak*, 273 U.S. at 379). Specifically, the "court must ensure that the record adequately supports all items of damages claimed and establishes a causal link between the damages and the defendant's conduct, lest the award become speculative or violate [Lanham Act] section 35(a)'s prohibition against punishment." *ALPO Petfoods, Inc. v. Ralston Purina Co.*, 913 F.2d 958, 969 (D.C. Cir. 1990) (citations and footnote omitted). Thus, the amount of actual damages "awarded must have support in the record." *Id.*; *see also Porous Media Corp. v. Pall Corp.*, 110 F.3d 1329, 1336 (8th Cir. 1997) (even where there is "[a] predicate finding of intentional deception" and plaintiff is therefore entitled to "a rebuttable presumption of causation and injury in fact," the plaintiffs "still b[ears] *the burden of proving an evidentiary basis to justify any monetary recovery*") (emphasis added); *Schonfeld v. Hilliard*, 218 F.2d 164, 172 (2d Cir. 2000) (although lost profits need not be proven with "mathematical precision," they must be "capable of measurement based upon known reliable factors without undue speculation" and projections of future profits based upon "a multitude of assumptions" that require "speculation and conjecture" and few known factors do not provide the requisite certainty) (citations omitted). Applying these

PLAINTIFFS' MPA ISO THEIR MOTION FOR SUMMARY JUDGMENT   22
ON AMBU'S LANHAM ACT & RELATED STATE LAW COUNTERCLAIMS FOR FAILURE
TO ESTABLISH INJURY & ENTITLEMENT TO MONETARY AND INJUNCTIVE RELIEF

CASE NO. 07-CV-1988 DMS (NLS)

DCDOCS01/378057.5F

1    principles,"[m]any courts have denied a monetary award in [Lanham Act] cases when damages are

2    remote and speculative." *Lindy Pen*, 982 F.2d at 1408 (citing cases).

3            In this case, Ambu seeks lost profit, unjust enrichment, and corrective advertising costs.

4    Ambu relies entirely on the testimony of                      REDACTED

5                                                                As explained in LMA's Memorandum of

6    Law in Support of the Motion to Exclude the Testimony of Ryan Sullivan, Ph.D. (at 5-6), Dr.

7    Sullivan's testimony as to the amount of lost profits, unjust enrichment, and corrective advertising

8    is wholly speculative and unreliable and therefore should be precluded under the principles of

9    *Daubert* and Federal Rule of Evidence 702.[7]

10           Exclusion of Dr. Sullivan's testimony leaves Ambu without any proof of the amount of

11   damages. Accordingly, even if Ambu has presented a triable issue of fact on whether it has

12   suffered injury as a result of the alleged false advertising (which it has not), LMA is entitled to

13   summary judgment on Ambu's claims for monetary relief. *City of Vernon v. S. Cal. Edison Co.*,

14   955 F.2d 1361, 1373 (9th Cir. 1992) ("[W]e agree with the district court that the serious flaws in

15   the only damage study which could be proffered to the jury placed Vernon in the position of

16   having no proper proof of damages at all. Thus, the district court did not err when it awarded

17   summary judgment based upon this lack of evidence."); *McGlinchy v. Shell Co.*, 845 F.2d 802,

18   808 (9th Cir. 1988) (after excluding expert damages studies as unreliable, court held that summary

19   judgment was proper because there was no "competent evidence from which a jury could fairly

20   estimate damages"); *Monolithic Power Sys. v. 02 Micro Int'l. Ltd.*, 476 F. Supp. 2d 1143, 1154-56

21   (N.D. Cal. 2007) ("Because O2 Micro's damages case is based entirely upon Mr. Bratic's report,

22   Defendants argue that they are entitled to summary adjudication that O2 Micro has no evidence of

23   damages . . . Defendants have not offered evidence from an economist or other expert, but they do

24   point to flaws in Mr. Bratic's report that, when combined, are serious enough to render it

25   unreliable and inadmissible. As a result, O2 Micro has not met its burden of proving damages. The

26   Court grants summary judgment in favor of Defendants that O2 Micro has presented no evidence

---

27   [7] With respect to Ambu's claim for corrective advertising costs, it bears emphasis that Ambu did in fact engage in
     corrective advertising (*i.e.*, the Counter-Brochure) and that advertising was in fact successful. Ambu does not seek
28   damages, however, based on the costs of that advertising.

of damages."); *Go Medical Indus. Pty, Ltd. v. Inmed Corp.*, 300 F. Supp. 2d 1297, 1317-18 (N.D. Ga. 2003) ("The only proof as to the amount of lost profits … comes from the expert testimony of David A. Kennedy. This Court has already concluded that Kennedy's report is unreliable, and under *Daubert* cannot serve as evidence of the amount of lost profits. Without the Kennedy opinion, Plaintiffs present no evidence sufficient to create a jury issue on lost profits."); *Martinez v. Rabbit Tanaka Corp. Ltd.*, No. 04-61504-CIV, 2006 WL 5100536 *15 (S.D. Fla. Jan. 6, 2006) ("The exclusion of [the expert's] testimony, the only evidence offered to quantify the damages alleged, . . . necessitates the grant of summary judgment.").[8]

**E.      LMA Is Entitled to Summary Judgment on Ambu's State Law Claims**

Ambu's failure to establish injury and damages resulting from the alleged false advertising also compels summary judgment on Ambu's four state law claims. First, Ambu cannot show that LMA's advertising caused Ambu to suffer injury, as required to establish the common law tort of intentional interference with prospective economic relations and Trade Libel, Cal. Civ. Code § 45. *See Della Penna v. Toyota Motor Sales, U.S.A., Inc.*, 11 Cal. 4th 376, 385, 389 (1995) (interference with economic relations requires "interference resulting in injury" in the form of "damages to the plaintiff proximately caused by the acts of the defendant"); *Barnes-Hind, Inc. v. Superior Court*, 181 Cal. App. 3d 377, 381 (1986) (trade libel "connote[s] 'an intentional disparagement of the quality of property, which results in pecuniary damage to plaintiff'") (citation omitted). Likewise, Ambu cannot show that LMA's advertising disrupted a likely expectant interest of Ambu, as required to establish intentional interference with economic relations. *See Westside Ctr. Assocs. v. Safeway Stores 23, Inc.*, 42 Cal. App. 4th 507, 527 (1996); *Youst v. Longo*, 43 Cal. 3d 64, 71 (1987) . Similarly, Ambu fails to establish the element of special

---

[8] Even if Ambu has proffered sufficient evidence to establish the amount of profits that LMA gained as a result of the alleged false advertising (which it has not), summary judgment would be warranted on its unjust enrichment claim because, as explained *supra*, pp. 10-11 n.4, it has failed to create a triable issue of fact on willfulness. *See Contessa Food Prods., Inc. v. Lockpur Fish Processing Co.*, Nos. CV 98-8218 NM (SHx), 99-4783 NM (SHx), 2003 WL 25778704, at *7 n.9 (C.D. Cal. Jan. 29, 2003) (willfulness is required to obtain a defendant's profits). An award would similarly be precluded by other equitable factors, including Ambu's delay of more than three years in asserting its claims and its unclean hands in making false claims in its Counter-Brochure (*see* LMA False or Misleading SJ Memo. at 14-15). *See Oyster Software, Inc. v. Forms Processing, Inc.*, No. C-00-0724 JCS, 2001 WL 1736382, at *7 (N.D. Cal. Dec. 6, 2001) (listing "plaintiff's laches" and "plaintiff's unclean hands" as equitable factors weighing against an award of the defendant's profits).

PLAINTIFFS' MPA ISO THEIR MOTION FOR SUMMARY JUDGMENT     24
ON AMBU'S LANHAM ACT & RELATED STATE LAW COUNTERCLAIMS FOR FAILURE
TO ESTABLISH INJURY & ENTITLEMENT TO MONETARY AND INJUNCTIVE RELIEF

CASE NO. 07-CV-1988 DMS (NLS)

DCDOCS01/378057.5F

damages required to support its trade libel claim under Cal. Civ. Code §§ 45, 45a, 48a(b). *See Nichols v. Great Am. Ins. Cos.,* 169 Cal. App. 3d 766, 773 (1985) (trade libel requires that "the publication has played a material and substantial part inducing others not to deal" resulting in "special damages" such as "loss of prospective contracts"') (quoting *Erlich*, 224 Cal. App. 2d at 73); *see also Astro Music, Inc. v. Eastham*, 564 F.2d 1236, 1238-39 (9th Cir. 1977) (special damages not proven where claimant points only to a business decline but does not produce evidence that the alleged libel and decline were "causally connected"). Because Ambu has not shown the amount of profits, if any, LMA gained as a result of the alleged false advertising, Ambu cannot recover under for false advertising in violation of Cal. Bus. & Prof. Code § 17500, et seq. and unfair competition in violation of Cal. Bus. & Prof. Code § 17200 et. seq., which permit restitution, rather than damages. *See* Cal. Bus. & Prof. Code §§ 17203, 17535.

Ambu's failure to present sufficient evidence of future injury similarly warrants summary judgment on its state law claims for injunctive relief. *See Colgan v. Leatherman Tool Group, Inc.*, 135 Cal. App. 4th 663, 702 (2006) ("[I]n order to grant injunctive relief under section 17204 [unfair competition] or section 17535 [false advertising], there must be a threat that the wrongful conduct will continue. 'Injunctive relief will be denied if, at the time of the order of judgment, there is no reasonable probability that the past acts complained of will recur, *i.e.*, where the defendant voluntarily discontinues the wrongful conduct.'") (citations omitted); *Paradise Hills Assocs. v. Procel*, 235 Cal. App. 3d 1528, 1546 (1991) (reversing preliminary injunction for interference with prospective economic advantage based on rule that "[a]n injunction may issue 'against past acts only if there is evidence that they will probably recur").

Finally, LMA is also entitled to summary judgment on Ambu's state law claims for monetary relief because Ambu has failed to proffer a reasonably certain calculation of the amount of its damages. *See Kids' Universe v. In2Labs*, 95 Cal. App. 4th 870, 883 (2002) ("'damages for the loss of prospective profits are recoverable where the evidence makes reasonably certain their occurrence and extent'") (citation omitted); *Piscitelli v. Friedenberg*, 87 Cal. App. 4th 953, 989 (2001) ("it is fundamental that 'damages which are speculative, remote, imaginary, contingent, or merely possible cannot serve as a legal basis for recovery'") (citations omitted).

PLAINTIFFS' MPA ISO THEIR MOTION FOR SUMMARY JUDGMENT   25
ON AMBU'S LANHAM ACT & RELATED STATE LAW COUNTERCLAIMS FOR FAILURE
TO ESTABLISH INJURY & ENTITLEMENT TO MONETARY AND INJUNCTIVE RELIEF

CASE NO. 07-CV-1988 DMS (NLS)

DCDOCS01/378057.5F

# IV. CONCLUSION

For the reasons set forth above, LMA respectfully requests that this Court grant summary judgment in favor of LMA for failure to establish injury and entitlement to monetary and injunctive relief in connection with its counterclaims for false advertising under the Lanham Act and related state law counterclaims.

Respectfully submitted,

KNOBBE, MARTENS, OLSON & BEAR, LLP

Dated: August 14, 2009

By: /s/ Frederick S. Berretta
John B. Sganga
jsganga@kmob.com
Frederick S. Berretta
fred.berretta@kmob.com
Joshua J. Stowell
joshua.stowell@kmob.com

Attorneys for Plaintiffs and Counter-Defendants
THE LARYNGEAL MASK COMPANY LTD.
and LMA NORTH AMERICA, INC.

PLAINTIFFS' MPA ISO THEIR MOTION FOR SUMMARY JUDGMENT   26
ON AMBU'S LANHAM ACT & RELATED STATE LAW COUNTERCLAIMS FOR FAILURE
TO ESTABLISH INJURY & ENTITLEMENT TO MONETARY AND INJUNCTIVE RELIEF

CASE NO. 07-CV-1988 DMS (NLS)

DCDOCS01/378057.5F

## CERTIFICATE OF SERVICE

I hereby certify that on August 14, 2009, I caused the foregoing **PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT ON AMBU'S LANHAM ACT AND RELATED STATE LAW CLAIMS FOR FAILURE TO ESTABLISH INJURY AND ENTITLEMENT TO MONETARY AND INJUNCTIVE RELIEF** to be electronically filed with the Clerk of the Court using the CM/ECF system which will send electronic notification of such filing to the applicable registered filings users, including the counsel identified below:

Darryl M. Woo
dwoo@fenwick.com
Patrick E. Premo
ppremo@fenwick.com
Bryan Kohm
bkohm@fenwick.com
FENWICK & WEST LLP
555 California Street, 12th Floor
San Francisco CA 94104
T: 415-875-2300
F: 415-281-1350

I declare that I am employed in the office of a member of the bar of this Court at whose direction the service was made.

Dated: August 14, 2009

Megan Placin

PLAINTIFFS' MPA ISO THEIR MOTION FOR SUMMARY JUDGMENT
ON AMBU'S LANHAM ACT & RELATED STATE LAW COUNTERCLAIMS FOR FAILURE
TO ESTABLISH INJURY & ENTITLEMENT TO MONETARY AND INJUNCTIVE RELIEF

CASE NO. 07-CV-1988 DMS (NLS)