John B. Sganga (State Bar No. 116,211)
Frederick S. Berretta (State Bar No. 144,757)
Joshua J. Stowell (State Bar No. 246,916)
KNOBBE, MARTENS, OLSON & BEAR, LLP
550 West C Street
Suite 1200
San Diego, CA 92101
(619) 235-8550
(619) 235-0176 (FAX)

Vicki S. Veenker (State Bar No. 158,669)
Adam P. Noah (State Bar No. 198,669)
SHEARMAN & STERLING LLP
1080 Marsh Road
Menlo Park, CA 94025
(650) 838-3600
(650) 838-3699 (FAX)

Attorneys for Plaintiffs and Counter-Defendants
THE LARYNGEAL MASK COMPANY LTD.
and LMA NORTH AMERICA, INC.

## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| THE LARYNGEAL MASK COMPANY LTD. and LMA NORTH AMERICA, INC., <br><br> Plaintiffs, <br><br> v. <br><br> AMBU A/S, AMBU INC., and AMBU LTD., <br><br> Defendants. | Civil Action No. 07 CV 1988 DMS (NLS) <br><br> **PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF THEIR DAUBERT MOTION TO EXCLUDE THE EXPERT TESTIMONY OF RYAN SULLIVAN, Ph.D.** <br><br> **Date: September 25, 2009** <br> **Time: 1:30 p.m.** <br> **Courtroom 10, 2nd Floor** |
| AMBU A/S, AMBU INC., and AMBU LTD., <br><br> Counterclaimants, <br><br> v. <br><br> THE LARYNGEAL MASK COMPANY LTD. and LMA NORTH AMERICA, INC., <br><br> Counter-Defendants. | **Honorable Dana M. Sabraw** <br><br><br> **CONFIDENTIAL PORTIONS FILED UNDER SEAL** |

# TABLE OF CONTENTS

I.  PRELIMINARY STATEMENT ........................................................................... 1

II.  FACTUAL BACKGROUND ............................................................................... 2

III.  THE PROFFERED TESTIMONY OF DR. SULLIVAN ................................... 3

IV.  ARGUMENT ..................................................................................................... 5

    A.  Rule 702 and *Daubert* Require the Exclusion of Unreliable Economic Expert Testimony ................................................................................................... 5

    B.  The Proffered Testimony of Dr. Sullivan Should Be Excluded as a Matter of Law Under the Principles of Rule 702 and *Daubert* ...................................... 7

        1.  Dr. Sullivan Is Not Qualified to Opine on Whether Ambu ███████ ████████ as a Result of the Alleged False Advertising ......................... 7

        2.  Dr. Sullivan's Calculations of LMA's ███████████████ Are Too Speculative and Unreliable to Be Admitted into Evidence . 8

            a.  ███████████████████████████████████ ███████████████████████████████████ ███████████████████████████████████

            b.  ███████████████████████████████████ ███████████████████████████████████ ███████████████████████████████████

            c.  Dr. Sullivan Fails to Take into Account Other Factors that Likely Affected Ambu's Sales Growth ...................................................... 14

            d.  Sales Trend Evidence Undermines Dr. Sullivan's Conclusions ..... 16

        3.  Dr. Sullivan's Opinion Regarding Corrective Advertising Costs Is Unreliable ................................................................................................ 17

V.  CONCLUSION .................................................................................................. 18

# TABLE OF AUTHORITIES

## CASES

*Blaine Larsen Processing, Inc. v. Hapco Farms, Inc.*,
   Civ. No. 97-0212, 1999 WL 34809532 (D. Idaho Oct. 18, 1999) ................................... 8

*Bracco Diagnostics, Inc. v. Amersham Health, Inc.*,
   No. 03-6025, 2009 WL 1743699 (D.N.J. June 5, 2009) ........................................... 8, 15

*Concord Boat Corp. v. Brunswick Corp.*, 207 F.3d 1039 (8th Cir. 2000) .................................... 6

*Crowley v. Chait*, 322 F. Supp. 2d 530 (D.N.J. 2006) ........................................................ 8

*Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579 (1993) ........................................... *passim*

*Elsayed Mukhtar v. Cal. State Univ. Hayward*, 299 F.3d 1053 (9th Cir. 2002) ........................... 1

*Gen. Elec. Co. v. Joiner*, 522 U.S. 136 (1997) ........................................................ 1, 2, 5

*In re Iridium Operating LLC*, 373 B.R. 283 (S.D.N.Y. 2007) ........................................ 13

*Joy v. Bell Helicopter Textron, Inc.*, 999 F.2d 549 (D.C. Cir. 1993),
   *modified on other grounds*, 40 F.3d 475 (D.C. Cir. 1994) ....................................... 6

*Kumho Tire v. Carmichael*, 526 U.S. 137 (1999) .................................................... 5, 6

*Lith. Commerce Corp. v. Sara Lee Hosiery*, 179 F.R.D. 450 (D.N.J. 1998) ........................... 16

*Martinez v. Rabbit Tanaka Corp.*, No. 04-61504-CIV,
   2006 WL 5100536 (S.D. Fla. Jan. 6, 2006) ....................................................... 6

*Masterson Mktg., Inc. v. KSL Recreation Corp.*,
   495 F. Supp. 2d 1044 (S.D. Cal. 2007) ........................................................... 6

*McGlinchy v. Shell Chem. Co.*, 845 F.2d 802 (9th Cir. 1988) ........................................ 6

*Oiness v. Walgreen Co.*, 88 F.3d 1025 (Fed. Cir. 1996) ......................................... 11, 16

*Oyster Software, Inc. v. Forms Processing, Inc.*,
   No. C-00-0724, 2001 WL 1736382 (N.D. Cal. Dec. 6, 2001) ....................................... 16

*Target Market Publ'g v. ADVO, Inc.*, 136 F.3d 1139 (7th Cir. 1998) ................................ 6

*Williams v. Rene*, 72 F.3d 1096 (3d Cir. 1995) .................................................... 6

## STATUTES

FED. R. EVID. 702 .................................................................................. *passim*

FED. R. EVID. 702, Advisory Committee Note (2000) .............................................. 1, 5

Pursuant to Federal Rule of Evidence 702, Plaintiffs/Counter-Defendants The Laryngeal Mask Company Ltd. and LMA North America, Inc. (collectively "LMA") respectfully move to exclude the expert testimony of Ryan Sullivan, Ph.D., whose testimony Defendants/Counterclaimants Ambu A/S, Ambu Inc., and Ambu Ltd. (collectively "Ambu") seek to offer on the issue of damages. LMA's motion is supported by this memorandum of points and authorities and by the Declaration of Joshua J. Stowell ("Stowell Decl.") and accompanying exhibits.

## I. PRELIMINARY STATEMENT

Under Federal Rule of Evidence 702 and *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 597 (1993), expert testimony must be "properly grounded, well-reasoned and not speculative." FED. R. EVID. 702 (2008), Advisory Committee Note (2000). Judicial analysis of the relevance and reliability of expert testimony is "vital to ensure accurate and unbiased decision-making by the trier of fact." *Elsayed Mukhtar v. Cal. State Univ. Hayward*, 299 F.3d 1053, 1063 (9th Cir. 2002). "[N]othing in either *Daubert* or the Federal Rules of Evidence requires a district court to admit opinion evidence which is connected to existing data only by the *ipse dixit* of the expert." *Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997).

The expert testimony Ambu seeks to offer in support of its damages claims falls far short of the above standards. Ambu brings counterclaims under the Lanham Act and state law based on alleged false advertising by LMA beginning in 2005. In addition to injunctive relief, Ambu seeks monetary relief in the form of unjust enrichment (LMA's profits), Ambu's lost profits, and future corrective advertising costs. To support its claims for monetary relief, Ambu proffers the testimony of Ryan Sullivan, Ph.D., an economist and professional expert witness. 

/ / /

Dr. Sullivan's opinions regarding the existence and the amount of damages in this case should be excluded under Rule 702 and *Daubert* for two reasons. *First* Dr. Sullivan is not qualified to opine on whether LMA gained or Ambu lost sales as a result of LMA's advertising, because he is merely an economist and has no special expertise or knowledge regarding the laryngeal mask market. *Second*, Dr. Sullivan's conclusions regarding the amount of damages Ambu incurred are based on insufficient and unreliable data, arbitrary assumptions, and faulty economic analysis. According to Dr. Sullivan, even though Ambu's sales did not decline after the dissemination of the alleged false advertising, Ambu would have achieved an even greater sales coup vis-a-vis LMA – to the tune of 33.8% – but for the alleged false advertising. Specifically, based on 14 months of wildly irregular and arbitrarily selected monthly sales made from the start of Ambu's business, Dr. Sullivan opines that but for the alleged false advertising, Ambu would have achieved a future monthly growth rate of 1%. He then goes on to assert, without any evidentiary foundation to support, that it is "reasonable" to assume that Ambu would have experienced that 1% monthly growth rate for at least three years.

Although Dr. Sullivan dresses up his damages calculations with economic equations and graphs, in fact, those calculations are nothing more than mere *ipse dixit* testimony.  The sales figures from Ambu's first 14 months of business simply make up too small and insignificant a sample upon which to predict a future growth rate. What is more, Dr. Sullivan has no basis for predicting that Ambu's growth rate would continue unabated for three years. Indeed, Ambu's own market share projections made *before* the distribution of the alleged false advertising, forecast a significantly larger market share than the one predicted by Dr. Sullivan's paid-for and self-serving "expert" opinion. In short, Dr. Sullivan's damages calculations are too unreliable and speculative to admit as "expert" testimony. "[T]here is simply too great an analytical gap between the data and the opinion proffered." *Joiner*, 522 U.S. at 146.

## II. FACTUAL BACKGROUND

The relevant facts of this case are set forth in LMA's two memoranda of law in support of its motions for summary judgment.

# III. THE PROFFERED TESTIMONY OF DR. SULLIVAN





sales" separately for the LMA Unique, which competes with the Ambu AuraOnce, and for the LMA Classic, which competes with the Ambu Aura40. *Id.* at 27. Dr. Sullivan calculates the so-called "unjust sales" by assuming that LMA and Ambu are the only two sellers in the marketplace for laryngeal masks and then "determining Ambu's relative sales share that would have been realized in the absence of the alleged conduct." *Id.* at 26. Specifically, Dr. Sullivan "linearly interpolate[s] Ambu's relative sales share over a period of 36 months, starting from product inception [which Dr. Sullivan assumes to April 2004], to a value of 35.9%." *Id.* According to Dr. Sullivan, "[a] relative sales share of 35.6% comports with Ambu's sales performance prior to the alleged conduct and recognizes LMA's established market position." *Id.* After calculating a profit per unit for the LMA Unique and LMA Classic and applying it to the amount of unjust sales LMA allegedly gained, Dr. Sullivan asserts that LMA gained $7,734,703 in profits for the LMA Unique and $1,968,123 in profits for the LMA Classic as a result of the alleged false advertising during the period August 2005 to April 2009 (the time period he assumes to be the damages period for this case). *Id.* at 27.

Dr. Sullivan attempts to determine the second category of damages, *i.e.*, the profits Ambu allegedly lost as a result of LMA's conduct, in a similar manner as the first category. Assuming that "[b]ut for the alleged conduct engaged in by LMA, LMA's unjust sales would have been made by Ambu," Dr. Sullivan assumes that the amount of sales Ambu lost as a result of the alleged false advertising is the same as the amount LMA allegedly gained. *Id.* at 26. After calculating a profit per unit for the Ambu AuraOnce and the Ambu Aura40 and applying that rate to the amount of sales LMA allegedly gained, Dr. Sullivan claims that Ambu lost profits of $8,469,825 for the Ambu AuraOnce and an $1,931,778 for the Ambu Aura40 as a result of the alleged advertising between August 2005 to April 2009. *Id.*

With respect to the third category of relief, Dr. Sullivan claims that "[t]he expenses incurred by LMA to advertise, market, and promote the Lenox Study and the LMA Brochure, and the statements contained therein, provide a reasonable proxy for the expenditures that would be required by Ambu to correct the false and misleading statements." *Id.* Specifically, Dr. Sullivan asserts that LMA spent $601,441 in advertising expenses from June 2005 through December 2008



and that amount "is a lower bound on the expenditure that would be required by Anibu to correct the false and misleading statements." *Id.* at 22. Dr. Sullivan further asserts that LBIA has "average annual marketing expenses of approximately $1.9 million," and that this amount is "a reasonable estimate for the expenditure that would be required by Anibu to correct the false and misleading statements." *Id.*

## IV.    ARGUMENT

### A.    Rule 702 and *Daubert* Require the Exclusion of Unreliable Economic Expert Testimony

Federal Rule of Evidence 702 permits witnesses qualified as experts by "knowledge, skill, experience, training, or education" to testify "in the form of an opinion or otherwise" about "scientific, technical, or other specialized knowledge" if the knowledge will "assist the trier of fact to understand the evidence or to determine a fact in issue." FED. R. EVID. 702. The expert's testimony must be "based on sufficient facts or data" and "the product of reliable principles and methods." *Id.* Furthermore, the expert must apply these "principles and methods reliably to the facts of the case." *Id.* Thus, Rule 702 requires the trial judge to find that expert testimony is "properly grounded, well-reasoned and not speculative before it can be admitted." *Id.*, Advisory Committee Note (2000). The proponent of the proffered expert testimony has the burden of establishing the admissibility of the testimony by a preponderance of the evidence. *Id.*

Rule 702 was amended in response to and implements the principles of *Daubert*, which established a "gatekeeping role for the judge," whereby the court must evaluate proffered expert evidence in the first instance rather than leaving the task for the jury to sort through. 509 U.S. at 597; *see also Joiner*, 522 U.S. (reaffirming "the 'gatekeeper' role of the trial judge in screening such evidence"). To that end, the trial court must ensure that expert testimony "is not only relevant, but reliable." *Daubert*, 509 U.S. at 589. A court should exclude expert testimony if "there is simply too great an analytical gap between the data and the opinion proffered." *Joiner*, 522 U.S. at 146.

The courts' gatekeeper function applies not only to cases involving "scientific" knowledge but also in cases involving "technical" and "other specialized" knowledge. *Kumho Tire v.*

1  *Carmichael*, 526 U.S. 137, 141 (1999). With respect to economic expert testimony, courts must

2  assess whether the expert relied on data reasonably used by economic experts and had good

3  grounds to rely on such data in drawing conclusions. Courts have not hesitated to exclude the

4  opinions of economic experts that are based on faulty assumptions, insufficient data, or

5  guesswork. *See, e.g., Concord Boat Corp. v. Brunswick Corp.*, 207 F.3d 1039, 1056-57 (8th Cir.

6  2000) (excluding expert economic testimony that did not consider all relevant facts in relevant

7  market when performing market share analysis; "[b]ecause of the deficiencies in the foundation of

8  the opinion, the expert's resulting conclusions were "mere speculation") (citation omitted); *Target*

9  *Market Publ'g v. ADVO, Inc.*, 136 F.3d 1139, 1143 (7th Cir. 1998) (excluding economic expert's

10 projections of lost profits that was unsupported and based on mere speculation); *Williams v. Rene*,

11 72 F.3d 1096, 1101-03 (3d Cir. 1995) (reversing admission of expert damages testimony where,

12 despite significant detail, underlying assumption was "unsupported and speculative"); *Joy v. Bell*

13 *Helicopter Textron, Inc.*, 999 F.2d 549, 569 (D.C. Cir. 1993) (finding that it was error to admit

14 expert damages testimony which was premised upon speculative earning estimates where "the

15 decision to receive expert testimony was simply tossed off to the jury under a 'let it all in'

16 philosophy" because "we must resist the temptation to answer objections to receipt of expert

17 testimony with the shorthand remark that the jury will give it the weight it deserves"), *modified on*

18 *other grounds*, 40 F.3d 475 (D.C. Cir. 1994); *Masterson Mktg., Inc. v. KSL Recreation Corp.*, 495

19 F. Supp. 2d 1044, 1051 (S.D. Cal. 2007) (excluding expert testimony regarding defendants' profits

20 in an infringement case where expert's opinions "[we]re not supported by any sort of reliable

21 principle and/or methodology but [we]re rather conclusions based on incomplete suppositions");

22 *Martinez v. Rabbit Tanaka Corp.*, No. 04-61504-CIV, 2006 WL 5100536, at *13 (S.D. Fla. Jan. 6,

23 2006) (excluding expert opinion on lost profits that "rest[ed] entirely on his recapitulation of the

24 facts . . ., and a wide variety of [unsupported] assumptions about the marketability of Plaintiffs'

25 products and the markets available for their distribution"); *see also McGlinchy v. Shell Chem. Co.*,

26 845 F.2d 802, 807 (9th Cir. 1988) (excluding expert's future lost profit forecasts that "rest[ed] on

27 unsupported assumptions and unsound extrapolation").

28 / / /

**B. The Proffered Testimony of Dr. Sullivan Should Be Excluded as a Matter of Law Under the Principles of Rule 702 and *Daubert***

In his report, Dr. Sullivan explains ███████████████████████████████████████ ████████████████████████████████████████████████████████████████ ████████████████████████ Toward that end, he offers opinions regarding the existence and amount of damages in this case. As explained below, Dr. Sullivan is not qualified to give an opinion regarding causation, and his opinions regarding the amount of damages allegedly caused in this case are the product of faulty economic analysis and wild speculation. Accordingly, Dr Sullivan's opinions must be excluded as a matter of law.

**1. Dr. Sullivan Is Not Qualified to Opine on Whether ████████████████ ██████████████ as a Result of the Alleged False Advertising**

As explained earlier, based on his purported review of documents produced in the case and deposition excerpts, Dr. Sullivan concludes that ███ █████████████████████████████ ███████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████████ ████████████████████████████████████

Dr. Sullivan does not have the requisite expertise or experience to render an opinion regarding whether the alleged false advertising in fact caused Ambu to lose (or LMA to gain) sales in the laryngeal mask market. In order to testify as an expert, a witness must be qualified by "knowledge, skill, experience, training, or education." FED. R. EVID. 702. ██████████████████ ████████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████████

whether LMA's advertising regarding the Ferson Study caused Ambu to lose (or LMA to gain)

sales. *See Blaine Larsen Processing, Inc. v. Hapco Farms, Inc.*, Civ. No. 97-0212-E-BLW, 1999

WL 34809532, at *5 (D. Idaho Oct. 18, 1999) (expert was not qualified "to testify about the cause

of market share loss in the Idaho fresh pack potato market" because he did not have "a thorough

knowledge of the Idaho fresh pack potato market").

Given Dr. Sullivan's lack of expertise concerning the laryngeal mask market, his proffered

testimony that LMA's advertising caused Ambu to lose (and LMA to gain) sales is nothing more

than a mere summary of – and impermissible spin on – the evidence produced in this case. Such

arm-chair expert testimony is inadmissible as a matter of law under the principles of Rule 702 and

*Daubert. See Bracco Diagnostics, Inc. v. Amersham Health, Inc.*, No. 03-6025, 2009 WL

1743699, at *35 (D.N.J. June 5, 2009) ("[T]o the extent that Mr. Russell's testimony reflected no

more than his summary of, and spin on, internal GEH documents . . ., the Court finds that such

testimony is unhelpful to the Court as the trier of fact and excludes such testimony from the

record. This is because the documents speak for themselves and do not require expert testimony to

discern what they mean."); *Crowley v. Chait*, 322 F. Supp. 2d 530, 553-54 (D.N.J. 2006) (No

expert or "any other witness will be permitted to simply summarize the facts and the depositions

of others. Such testimony comes 'dangerously close to usurping the [factfinder's] function' and

'implicates Rule 403 as a needless presentation of cumulative evidence and a waste of time.'")

(quoting *United States v. Dukagjini*, 326 F.3d 45, 54 (2d Cir. 2003)).

### 2. Dr. Sullivan's Calculations of ███████████████████ ██████████████ Are Too Speculative and Unreliable to Be Admitted into Evidence

In addition to speculating that ████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

[redacted]

is based on insufficient data, faulty economic reasoning, and pure speculation. As nothing more than a house of cards, it cannot stand.





growth rate results in "but-for-market" shares that are *less than* Anthon's actual market shares, completely negating Anthon's claims for lost profits or unjust enrichment. *See id.* at 6; Exs. E-1, D, F-1.

Accordingly, Dr. Sullivan's attempt to extrapolate a growth rate based on Anthon's first 14 months of business is thus inherently unreliable. *See Oiness v. Walgreen Co.*, 88 F.3d 1025, 1031-32 (Fed. Cir. 1996) (expert testimony was not sufficient to support award of lost profits to patent owner where expert improperly based growth rate for sales throughout life of patent on figures from period in which product was first introduced to market; expert's reliance on initial sales data to extrapolate future growth was improper in light of fact that "[t]he 1984-1985 start-up figures distort[ed] [the expert's] growth rate projections" and fact that expert failed to account for initial large sales of headrests to retail outlets rather than consumers).[3]



the lowering mask marker and criticizing the assumption of LMA's expert that LMA would have obtained 40% of Ambu's infringing sales).

Dr. Sullivan's projected growth rate is also unreliable to the extent he bases it on sales of the AuraOnce product, but applies it to the Aura40 product. Dr. Sullivan offers no explanation or justification for applying a growth rate trend on data from sales of a product between April 2004 and June 2005 to a different product that was not introduced until March 2006. *See* Stowell Decl., Ex. 3 at 9. Not only is there no basis to assume that the Aura40 product would have increased at the same rate as the AuraOnce product, but it is likely that sales of the former product negatively impacted sales of the latter.

In sum, the flaws in Dr. Sullivan's economic analysis are so fundamental as to render his entire paid-for prediction of a 1% future monthly growth rate entirely worthless. As LMA's expert explains, Dr. Sullivan's "economic" model is nothing more than "junk science." Stowell Decl., Ex. 4 at 189, 212, 112.

> ### b. Dr. Sullivan's Assumption that Ambu Would Have Continued to Increase Its Sales Share for Three Years Is Completely Speculative

Dr. Sullivan's damages analysis is not only unreliable insofar as it predicts Ambu would experience a future monthly growth rate of 1%, but also insofar as it assumes that growth rate would continue unabated to 2009 (thus, exponentially increasing the sales share Ambu's products actually obtained from 2006 to 2008). *See* Stowell Decl., Ex. 3, at Schedules 1, 3. Dr. Sullivan opines that "[a] relative sales share of 15.8% comports with Ambu's sales performance prior to the alleged conduct and recognizes LMA's established market position." Stowell Decl., Ex. 3 at 26. But he provides no basis for this conclusion. Dr. Sullivan's sole reason for choosing a three year period is that "[c]ontracts with group purchasing organizations typically have a length of three years" and "[a]ccordingly, there would be an opportunity for Ambu to engage business with all GPOs at some point in the three years following product inception." *Id.* But that fact does not mean that Ambu would have obtained any such contracts as they became available. Dr. Sullivan's opinion that Ambu would continue to experience steady growth for 36 months is simply purely

///

1  ██████████████ It does not comport with any real-world data relating to the experience of

2  Ambu or any other comparable seller.

3  ████████████████████████████████████████████████████████████████

4  ████████████████████████████████████████████████████████████████

5  ████████████████████████████████████████████████████████████████

6  ████████████████████████████████████████████████████████████████

7  ████████████████████████████████████████████████████████████████

8  ████████████████████████████████████████████████████████████████

9  ████████████████████████████████████████████████████████████████

10 ████████████████████████████████████████████████████████████████

11 ████████████████████████████████████ *See In re Iridium Operating LLC*, 373 B.R. 283

12 (S.D.N.Y. 2007) (expert's "opinions are suspect because he ignored or wrongly discarded [the

13 company's] projections and much of the contemporaneous market research underlying those

14 projections and instead created his own projections for litigation purposes").

15 The unreasonableness ███████████████████████████████████████████████

16 ████████████████████████████████████████████████████████████████

17 ████████████████████████████████████████████████████████████████

18 ████████████████████████████████████████████████████████████████

19 ████████████████████████████████████████████████████████████████

20 ████████████████████████████████████████████████████████████████

21 ████████████████████████████████████████████████████████████████

22 ████████████████████████████████████████████████████████████████

23 ████████████████████████████████████████████████████████████████

24 ████████████████████████████████████████████████████████████████

25 ████████████████████████████████████████████████████████████████

26 ████████████

27 / / /

28 / / /

### c. Dr. Sullivan Fails to Take into Account Other Factors that Likely Affected Ambu's Sales Growth

Dr. Sullivan's damages calculations are further unreliable to the extent that it assumes that the purported decline in Ambu's growth rate is entirely the result of the LMA Brochure and not other factors that affected the company's growth, including, among others, the superiority of LMA's product, the broad range of products offered by LMA and the limited line of products offered by Ambu, and the numerous clinical problems customers have experienced with Ambu's product. ████████████████████████████████████████████████████████████████████████ *See* Plaintiffs' Memorandum of Points and Authorities in Support of Their Motion for Summary Judgment on Ambu's Lanham Act and Related State Law Counterclaims for Failure to Establish Injury and Entitlement to Injunctive and Monetary Relief at 7. Indeed, the evidence shows that while customers may have been initially satisfied with Ambu's products, after a period time, they frequently switched back to LMA due to problems with the clinical performance of Ambu's products.[4]



[REDACTED] These failures further undermine Dr. Sullivan's damages analysis. *See Bracco*, 2009 WL 1743699, at *74 (finding that plaintiff did not show "that it was [the defendant's] false advertising and not the GPOs' independent evaluation of the various scientific studies which caused the loss of the contracts"); *id.* at *75 ("Bracco leaves the Court conjecturing the extent of the sales trend reflecting GEH's false advertising as opposed to the publication of NEHPRIC in the widely respected NEJM, as well as GEH's true messages taken from NEPHRIC and other articles. Without such showing, Bracco is not entitled to lost profits.").

Finally, Dr. Sullivan's damages calculations ignore the presence of other competing Ambu products [REDACTED]

Accordingly, there is simply no basis for Dr. Sullivan's attribution of the entire purported decline in Ambu's purported growth rate to the alleged false advertising. *See Bracco*, 2009 WL 1743699, at *34, 36 (excluding experts' testimony that decline in sales resulted from false advertising where experts "did not take into account numerous, or indeed, [the] most relevant factors as to causation" and failed to take into account the market effect of the defendant's proper

promotional efforts, and where expert had no basis for attributing 100% of the alleged drop-off in the plaintiff's sales to the false advertising at issue).

### d. Sales Trend Evidence Undermines Dr. Sullivan's Conclusions

Last but not least, Dr. Sullivan's opinion that ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ *Oiness*, 88 F.3d at 32. "[B]ecause [Dr. Sullivan's] projections of lost profits in the [laryngeal mask market] rest on faulty assumptions and a lack of reliable economic testimony relevant to this market," his testimony is insufficient to support an award of lost profits as a matter of law. *Id.* (finding expert's growth rate projections were too speculative to support award of lost profits); *see also Oyster Software, Inc. v. Forms Processing, Inc.*, No. C-00-0724 JCS, 2001 WL 1736382, at *6 (N.D. Cal. Dec. 6, 2001) (expert report was "insufficient to create a material issue of fact concerning [plaintiff's] lost profits because it is entirely speculative on the issue of causation of actual damages"); *Lith. Commerce Corp. v. Sara Lee Hosiery*, 179 F.R.D. 450, 461 (D.N.J. 1998) (excluding economic expert testimony that was based on unsupported and speculative assertions, including assumptions that the plaintiff's "share

of the Lithuanian market would have increased at a rate of 1% annually and that [the plaintiff's]

participation in various markets would last for certain durations").

### 3. Dr. Sullivan's Opinion Regarding Corrective Advertising Costs Is Unreliable

Like his opinions regarding the amount of profits that LMA purportedly gained (and Ambu

purportedly lost) as the result of LMA's alleged false advertising, Dr. Sullivan's opinion regarding

the amount that it would take to correct the effect of the advertising is totally divorced from

reality.



Dr. Sullivan's conclusions are completely unreliable. Ambu's false advertising claims arise

from LMA's use of a brochure and other statements concerning the Ferson Study. Dr. Sullivan is

not an advertising or marketing expert and it not qualified to opine on the amount required to

correct any effects of the alleged advertising.

/ / /

1      **V.      CONCLUSION**

2           For the reasons set forth above, LMA respectfully requests that the Court grant its motion

3      to exclude the testimony of Ryan Sullivan, Ph.D.

4

5                                          Respectfully submitted,

6                                          KNOBBE, MARTENS, OLSON & BEAR, LLP

7

8      Dated: August 14, 2009              By:  /s/ Frederick S. Berretta
                                               John B. Sganga
9                                              jsganga@kmob.com
                                               Frederick S. Berretta
10                                             fred.berretta@kmob.com
                                               Joshua J. Stowell
11                                             joshua.stowell@kmob.com

12                                         Attorneys for Plaintiffs and Counter-Defendants
                                           THE LARYNGEAL MASK COMPANY LTD.
13                                         and LMA NORTH AMERICA, INC.

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

# CERTIFICATE OF SERVICE

I hereby certify that on August 14, 2009, I caused the foregoing **PLAINTIFFS'**
**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF THEIR**
**DAUBERT MOTION TO EXCLUDE THE EXPERT TESTIMONY OF RYAN SULLIVAN**
to be electronically filed with the Clerk of the Court using the CM/ECF system which will send
electronic notification of such filing to the applicable registered filings users, including the counsel
identified below:

> Darryl M. Woo
> dwoo@fenwick.com
> Charlene Morrow
> cmorrow@fenwick.com
> FENWICK & WEST LLP
> 555 California Street, 12th Floor
> San Francisco CA 94104
> T: 415-875-2300
> F: 415-281-1350

I declare that I am employed in the office of a member of the bar of this Court at whose
direction the service was made.

Dated: August 14, 2009

Claire A. Stoneman