1    DARRYL M. WOO (CSB NO. 100513)
     dwoo@fenwick.com
2    CHARLENE M. MORROW (CSB NO. 136411)
     cmorrow@fenwick.com
3    PATRICK E. PREMO (CSB NO. 184915)
     ppremo@fenwick.com
4    FENWICK & WEST LLP
     555 California Street, 12th Floor
5    San Francisco, CA 94104
     Telephone: (415) 875-2300
6    Facsimile:  (415) 281-1350
     Attorneys for Defendants and Counterclaimants
7    AMBU A/S, AMBU INC., AND AMBU LTD.

8

9                   UNITED STATES DISTRICT COURT

10                SOUTHERN DISTRICT OF CALIFORNIA

11

12   THE LARYNGEAL MASK COMPANY LTD.          Case No. 3:07-cv-01988 DMS (NLS)
     and LMA NORTH AMERICA, INC.,
13                                            Jury Trial Demanded

14              Plaintiffs,                   **DEFENDANTS' MEMORANDUM OF
                                              POINTS AND AUTHORITIES IN SUPPORT
15        v.                                  OF MOTION FOR SUMMARY JUDGMENT
                                              OF INVALIDITY FOR LACK OF WRITTEN
16   AMBU A/S, AMBU INC., AND AMBU LTD.,      DESCRIPTION**

17              Defendants,                   Date:        September 25, 2009
18                                            Time:        1:30 pm
                                             Courtroom:   10, 2nd Floor
19                                            Judge:       The Honorable Dana M. Sabraw

20   AND RELATED COUNTERCLAIMS.

21

22

23

24

25

26

27

28

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

# TABLE OF CONTENTS

**Page**

I.    STATEMENT OF RELIEF REQUESTED ........................................................ 1

II.   INTRODUCTION ........................................................................................ 1

III.  STATEMENT OF RELEVANT FACTS ........................................................ 2

    A.    Disclosure of the '100 Patent Specification ........................................ 2

    B.    The Asserted Claims and the Prosecution History of the '100 Patent .................... 5

IV.   ARGUMENT ............................................................................................. 7

    A.    Legal Standards ................................................................................ 7

    B.    Ambu Is Entitled to Summary Judgment That the Asserted Claims Are Invalid for Lack of Written Description ................................................. 8

        1.    The Asserted Claims Encompass Broad Genera of Laryngeal Masks with a Cuff Stiffener ................................................. 8

        2.    The '100 Patent Fails to Provide Written Description for the Full Scope of the Claimed Genera ........................................ 9

            a.    Summary Judgment of Invalidity for Lack of Written Description Is Appropriate Where the Specification Fails to Describe Species Covered by a Generic Claim ................................ 9

            b.    The Specification Fails to Provide Written Description for a Cuff Stiffener That Is Not Part of the Backplate ........................... 11

            c.    The '100 Patent Fails to Provide Written Description of a Cuff Stiffener Other Than a Narrow Distal Rib ........................... 15

        3.    The '100 Patent Fails to Adequately Describe That the Posterior Wall of the Cuff Itself Is Thicker and Stiffer Than Other Portions of the Cuff ................................................. 17

V.    CONCLUSION ........................................................................................ 18

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

# TABLE OF AUTHORITIES

Page(s)

## CASES

*Agilent Technologies, Inc. v. Affymetrix, Inc.*,
    567 F.3d 1366 (Fed. Cir. 2009) ................................................................................ 14

*Carnegie Mellon Univ. v. Hoffmann-La Roche, Inc.*,
    541 F.3d 1115 (Fed. Cir. 2008) ................................................................................ 10

*ICU Medical, Inc. v. Alarias Medical Systems, Inc.*,
    558 F.3d 1368 (Fed. Cir. 2009) ............................................................... 9, 10, 17, 18

*LizardTech v. Earth Resource Mapping Pty Ltd.*,
    424 F.3d 1336 (Fed. Cir. 2005) ..................................................................... 9, 10, 17

*Lockwood v. American Airlines, Inc.*,
    107 F.3d 1565 (Fed. Cir. 1997) ............................................................................ 10, 11

*MyMail, Ltd. v. Am. Online, Inc.*,
    476 F.3d 1372 (Fed. Cir. 2007) ................................................................................ 16

*National Recovery Techs. Inc. v. Magnetic Separation Sys. Inc.*,
    166 F.3d 1190 (Fed. Cir. 1999) ................................................................................ 15

*PIN/NIP, Inc. v. Platte Chemical Co.*,
    304 F.3d 1235 (Fed. Cir. 2002) .................................................................................. 9

*PowerOasis v. T-Mobile USA, Inc.*,
    522 F.3d 1299 (Fed. Cir. 2008) .......................................................................... *passim*

*SRI Int'l v. Matsushita Elec. Corp.*,
    775 F.2d 1107 (Fed. Cir. 1985) .................................................................................. 9

*Tronzo v. Biomet, Inc.*,
    156 F.3d 1154 (Fed. Cir. 1998) ..................................................................... 9, 17, 18

*Univ. of Rochester v. G.D. Searle & Co.*,
    358 F.3d 916 (Fed. Cir. 2004) ............................................................................... 9, 10

## STATUTES

35 U.S.C. § 112 ...................................................................................................... 1, 10

35 U.S.C. § 112, ¶ 1 ......................................................................................... 1, 10, 15

## OTHER AUTHORITIES

Fed. R. Civ. P. 56(c) .................................................................................................. 9

FENWICK & WEST LLP

ATTORNEYS AT LAW
MOUNTAIN VIEW

1

2

3

4

5

6

7

8

9

10

11

12

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## I.    STATEMENT OF RELIEF REQUESTED

Ambu brings this motion for summary judgment that each of the asserted claims 1-6 of U.S. patent No. 7,156,100 ("the '100 patent") is invalid for lack of written description under 35 U.S.C. § 112, ¶ 1.

## II.    INTRODUCTION

The '100 patent is invalid under 35 U.S.C. section 112 because there are at least two critical disconnects between what LMA disclosed in the specification of the '100 patent, and what it claimed.  Each disconnect provides a separate and independent basis for determining that the asserted claims do not have adequate support in the specification.  First, the patent claims at issue require that part of the cuff of the claimed laryngeal mask be thicker and stiffer than the rest of the cuff.  There is no teaching in the patent specification of an embodiment that accomplishes this.  Accordingly, the asserted claims are invalid.

Second, at LMA's request, the patent claims in this case have been construed to cover both the disclosed distal rib formation, which is a physical extension of the backplate (the rigid area that is surrounded by the cuff), as well other non-disclosed designs without this feature.  Accordingly, the claims do not support the full scope of claims.  In its zeal to capture Ambu's stiffener, which does not extend from any backplate, LMA has thus invited the invalidity of its own patent.

Section 112, often referred to as the "written description" requirement, aims to protect the public from overzealous patent holders, like LMA here, who attempt to claim that which they did not invent.  Simply put, section 112 requires that the full scope of the claimed invention is described in the specification such that it can be ascertained that the inventor was in possession of the invention as claimed.  Patents that fail to meet the requirements of section 112 are invalid.

Invalidity under section 112, based on the absence of a complete written description of the claims as drafted and construed, is ripe for determination by the Court on a motion for summary judgment.  There can be, of course, no genuine dispute regarding the content of the '100 patent's specification.  Expert testimony cannot be used to vary that intrinsic record, and in fact under

1    either construction advanced by the experts, the same result obtains – the asserted claims are

2    invalid.  Thus, the only issues to be resolved by the Court are those of law:  the scope of the

3    claims and the application of Federal Circuit precedent on written description.

4    **III.    STATEMENT OF RELEVANT FACTS**

5        **A.  Prosecution of the '100 Patent**

6        The application for the '100 patent was filed by Dr. Archibald Brain on October 5, 1999.

7    The invention claimed in the '100 patent relates to a laryngeal mask airway device, an artificial

8    airway device used in anesthesia and emergency situations [Lampotang Decl. Ex. B, '100 patent,

9    col. 1, lines 10-14.]  Generally, a laryngeal mask comprises an airway tube and a mask portion

10   containing an inflatable cuff, and the device is inserted into a patient's throat when the cuff is

11   fully deflated.  [*Id.* at col. 1, lines 20-22; Figure 1.]

12       When the application was originally filed, and for two years thereafter, LMA sought to

13   obtain patent claims that related to several different features of a laryngeal mask other than those

14   that are presently claimed, such as an indentation structure for directing the backplate of the

15   device during insertion, an aperture bar to support the epiglottis after placement of the device, and

16   an inflatable back cushion.  These limitations were sought either alone or in combination with a

17   backplate extension in which the bowl of the backplate had a longitudinal distal rib.  The tactic of

18   claiming minor improvements in order to try to extend LMA's patent monopoly on the original

19   laryngeal mask device, culminated on November 7, 2001, when LMA received a communication

20   from the examiner indicating that the claims directed to the backplate extension were allowable.

21   [*See* Declaration of Darryl M. Woo in Support of Defendants' Motion for Summary Judgment of

22   Invalidity on Written Description Grounds ("Woo Decl."), Ex. M, '100 patent File History, June

23   17, 2005 Amendment at 4.]

24       On February 12, 2002, LMA then abandoned those allowed claims in favor of attempting

25   to patent a different feature, namely the indentation feature.  [*See* Woo Decl. Ex. N, '100 patent

26   File History, February 12, 2002 Amendment at 5.]

27       Ultimately, seven and half years after beginning prosecution and shortly after LMA was

28   assigned a different patent examiner, LMA drafted claims directed to the presently claimed

invention(s).  The originally filed claims that were drawn to the rib as a backplate extension all recited a limitation, "said bowl [of the backplate] having a longitudinal distal rib for longitudinally supporting the distal region of said main-cuff."  [*See* Woo Decl. Ex. O, '100 patent File History, Oct. 5, 1999 Application at 19-20 (claims 1-4).]  In April 2006, the applicant filed an amendment to cancel all prior claims and to propose a new set of claims which included new claims that were broader than those previously prosecuted and no longer expressly recited a limitation requiring that the longitudinal distal rib be an extension of the backplate.  [*See* Woo Decl. Ex. P, '100 patent File History, April 24, 2006 Amendment at 2-3.]  Instead, these proposed claims recited a limitation with a cuff wall with "at least a first portion of a wall of the cuff in the distal region being thicker and stiffer than other portions of the cuff."  [*Id.*]  The claims issued after the Examiner made an amendment to limit the "thicker and stiffer" portion of the cuff to the posterior wall of the cuff.  [*See* Woo Decl. Ex. Q, '100 patent File History, Aug. 23, 2006 Notice of Allowance at 2.]

**B.  The Specification of the '100 Patent**

During this lengthy patent prosecution, of course the substance of LMA's patent specification did not change.  That specification did recite that one problem purportedly addressed by the disclosed invention was that, during insertion of the device, the distal end of the deflated cuff may occasionally fold back on itself, resulting in trauma to the patient's throat and obstruction of the airway.  [Lampotang Decl. ¶ 49; Ex. B, '100 patent at col. 1, lines 27-43.]  The specification taught to address that problem by the use of a reinforcing rib, which is the improvement that LMA originally tried to claim:

> The present invention seeks to eliminate the disadvantages associated with such undesirable insertion by minimizing the risk of the deflated cuff formation becoming folding over on itself during the insertion procedure.  This is achieved by incorporating into the cuff at its distal end a reinforcing rib which serves to stiffen the leading end of the LMA-device during the course of the procedure for its insertion.

[*Id.* at col. 1, lines 48-55.]   The invention was further described as preferably making the distal rib by extending a portion of the relatively rigid backplate:  "In a preferred aspect, the mask

1    structure or backplate which is of a more rigid material than that of the soft and inflatable cuff

2    formation has its back extended to the distal end of the cuff, in order to form the reinforcing rib."

3    This "preferred aspect" describes a laryngeal mask having the backplate extended to the distal

4    end of the cuff to form the reinforcing rib.  [Lampotang Decl. ¶ 51; Ex. B, '100 patent at col. 1,

5    lines 64-67.]  It then explains that a laryngeal mask incorporating "such a reinforcing rib" has a

6    number of advantages over the prior art.  [*Id.* at col. 2, lines 1-12.]  Those include that "the

7    reinforcing rib largely eliminate[s] the likelihood of the distal end of the deflated cuff formation

8    folding over on itself during insertion of the LMA-device into the patient's throat."  [*Id.*]

9            The '100 specification goes on to describe and depict two embodiments of the reinforcing

10   rib, both involving a rib that extends from the backplate.  The first embodiment has a reinforcing

11   rib formed by extending the backplate through the interior of the distal region of the cuff.  [*Id.* at

12   col. 6, lines 31-33 ("The backplate 52 has a one-piece, integral spoon-shape including a bowl 90 .

13   . . .  The bowl 90 also has an elongate integral reinforcing distal rib 105."); col. 6, lines 3-10

14   ("The distal rib 105 extends through the interior of the main-cuff 55 to the distal surface of the

15   distal region 60.").]  This is shown below in Figure 5 and 6:

16



FIG. 5                    FIG. 6

28   Here, the "backplate 52 as a one-piece, integral spoon-shape including a bowl 90 and an external

1  tube-joint 92." [*Id.* at col. 6, lines 3-5.]  The patent contains a detailed description of the distal

2  rib, 105:

3

4  When the backplate 52 is attached to the main-cuff 55, the distal rib
   105 pierces the proximal surface of the distal region 60.  The edges

5  of the main-cuff 55 in the distal region 60 surrounding the distal rib
   105 are hermetically sealed to is such that the enclosure of the

6  main-cuff is defined in part by the distal rib.  The distal rib 105
   extends though the interior of the main-cuff 55 to the distal surface

7  of the distal region 60."

8  [*Id.* at col. 6, lines 26-34.]  This embodiment thus teaches a distal rib that extends from the

9  backplate to pierce the interior of the cuff.

10  The second embodiment uses a distal rib that projects on top of, rather than through, the

11  cuff.  [Lampotang Decl. ¶ 52; Ex. B, '100 patent at col. 7, line 65 – col. 1, line 1, refering to "the

12  distal rib 105a of the backplate 52a . . . applied to the posterior surface of the distal region 60a of

13  the main-cuff 55a."]  This is shown below in figures 10 and 11:

14

15

16

17  

18

19

20

21

22

23

24

25

26  As the patent explains,

27

28  The backplate 52a is similar to the backplate 52 illustrated in Figs.

5 and 6 except that the distal rib 105a of the backplate 52a is applied to the posterior surface of the distal region 60a of the main-cuff 55a, as shown in Fig. 10. … The distal rib 105a does not pierce the posterior surface of the distal region 60, in contrast to the embodiment show in Fig. 5, and is therefore separate from the interior of the main-cuff 55a. The distal rib 105a may be effectively constituted by a thickening of the posterior wall of the distal region 60a of the inflatable main-cuff 55a and, as shown, forms a distal extension of the bowl 90a of the backplate 52a. The distal rib 105a has a downturned profile by being incorporated into the posterior surface of the main-cuff 55a. The distal end of the distal rib 105a is spatulate.

[*Id.* at col. 7, line 65 – col. 8, line 16.] The patent goes on to describe how "The distal rib 105a may not be readily visible because it may appear to blend in with the posterior wall of the distal region 60. The spatulate of the distal portion of the distal rib 105a does not present any sharp edges or corners to the throat 22 the patient during insertion…." [*Id.* at col. 8, line 63 – col. 9, line 3.]

Thus, the only teachings in the '100 patent are of ribs that extend from the backplate and either lie along the surface of the cuff or extend into its interior. No other embodiments are disclosed.

**C. The Scope of the Asserted Claims**

LMA accuses Ambu of infringing claims 1 through 6 of the '100 patent. The only independent claim, claim 1, recites as follows:

A laryngeal-mask airway device comprising:

a backplate defining a passage;

an inflatable cuff, the cuff defining a distal region and a central opening at least when inflated, the cuff being attached to the backplate, the cuff being insertable through a mouth of a patient to an inserted location within the patient, an airway extending from a laryngeal inlet of the patient, through the central opening, to the passage when the cuff is inflated and at the inserted location, *at least a portion of the posterior portion of a wall of the cuff in the distal region being thicker and stiffer than other portions of the cuff*.

[*Id.* at col. 10, lines 15-26 (emphasis added).]

1    Dependent claims 2-4 include further limitations with respect to the "portion of the

2    posterior portion of the wall." Claim 2 requires that portion to be "more compliant than the

3    backplate," whereas claims 3 and 4 require it to form a "distal rib" and a "longitudinal distal rib,"

4    respectively. [*Id.* at col. 10, lines 27-34.] Dependent claims 5 and 6 do not include any additional

5    limitation related to the cuff stiffener limitation. [*Id.* at col. 10, lines 35-44.]

6        The asserted claims that do not expressly recite that the cuff stiffener is extended from the

7    backplate[1] were not filed with the original application; rather, they were added years later during

8    prosecution. The originally filed claims that were drawn to an invention having a cuff stiffener

9    all recited a limitation, "said bowl [of the backplate] having a longitudinal distal rib for

10   longitudinally supporting the distal region of said main-cuff." [Woo Decl. Ex. O, '100 patent File

11   History, Oct. 5, 1999 Application at 19-20 (claims 1-4).] In April 2006, the applicant filed an

12   amendment that cancelled all prior claims and proposed a new set of claims which no longer

13   recited an express limitation requiring the backplate to have a longitudinal distal rib. ['100 Patent

14   File History, April 24, 2006 Amendment at 2-3.] Instead, these proposed claims recited the more

15   vaguely worded limitation, "at least a first portion of a wall of the cuff in the distal region being

16   thicker and stiffer than other portions of the cuff." [*Id.*] The claims issued after an amendment

17   by the Examiner to limit the "thicker and stiffer" portion of the cuff to the posterior wall of the

18   cuff. ." [Woo Decl. Ex. Q, '100 patent File History, Aug. 23, 2006 Notice of Allowance at 2.]

19       In 2004, Ambu started marketing one of the accused products, the Ambu Laryngeal Mask[2]

20   that had a broad reinforcement on part of the cuff. By March 2005, LMA had noticed this

21   product, which competed with the LMA Classic and Unique, and described it in LMA's own

22   training materials as having "an extra soft cuff with a reinforced tip to prevent folding." [*See id.*]

23   [*See* Woo Decl. Ex. R, LMA Training Module, dated March 2005 at LMA00006419.] Shortly

---

[1] As the Court is aware from the claim construction briefing, Ambu believes that the claims should have been construed to include the limitation that the stiffener is an extension of the backplate.

[2] The Ambu Laryngeal Mask, now marketed under the trade name AuraOnce, has since been held not to infringe LMA's patent. *See* Order Granting Defendants' Motion for Partial Summary Judgment of Non-Infringement, Docket No. 224, June 25, 2009**.**

1    thereafter in April 2006, as noted in the discussion of the file history above, LMA filed an

2    amendment that cancelled all prior claims and proposed a new set of claims which no longer

3    recited an express limitation requiring that the longitudinal distal rib be an extension of the

4    backplate.  [*See* Woo Decl. Ex. P, '100 Patent File History, April 24, 2006 Amendment at 2-3.]

5    As LMA has admitted, LMA itself has never used this product configuration.  [*See* Woo Decl.

6    Ex. S, LMA's Response to Interrogatory Nos. 4, 6.]

7         On March 17, 2009, the Court issued an Order construing the disputed claim terms of the

8    '100 patent, including the limitation "at least a portion of the posterior portion of a wall of the

9    cuff in the distal region being thicker and stiffer than other portions of the cuff."  [Order

10   Construing Patent Claims, Docket No. 171.]  Two aspects of the Court's construction are relevant

11   to this motion.  First, the Court adopted LMA's contention that the "thicker and stiffer" part of the

12   cuff need not be attached to the backplate.  [*Id.* at 9:3-5 ("Accordingly, the Court declines to find

13   that the "thicker and stiffer" portion of the cuff must be connected to the backplate.").]  Second, it

14   declined to place further constraints on the location of the "thicker and stiffer" limitation, holding

15   that it must be construed according to its plain meaning.  [*Id.* at 9:6-16.]

16        The parties recently exchanged expert reports, and are in the process of completing expert

17   depositions.  [Woo Decl. ¶ 2.]  LMA for some reason designated more than one expert to testify

18   about the validity of the '100 patent, William Rosenblatt and Herb D'Alo.[3]  Each claimed expert

19   has confirmed that they are taking the position that when the patent claim recites "at least a

20   portion of the posterior portion of the wall of the cuff in the distal region being thicker and stiffer

21   than other portions of the cuff," that this requires that the materials used in the cuff wall must be

22   thickened (and that thickening the cuff by placing glue on it or by attaching another material to it

23   is not reached by the claims).  For example, one of LMA's "experts," Mr. D'Alo, owns a

24   company that supplies airway products to LMA.  He testified that the asserted claims of the '100

25   patent do not cover either Figure 5 or Figure 10 from the patent.  [Woo Decl. Ex. T, D'Alo Depo.

26

27   ───────────────
     [3] This designation of cumulative experts is improper, and will be the subject of future motions

28   practice should this matter proceed to trial.

1  at 112:1-116:15.]  Similarly, LMA's second expert, Dr. Rosenblatt, stated both that in his view

2  the actual cuff wall has to be thicker and stiffer, and that none of the images in the patent teach

3  that (though he said he was unsure what one figure taught). [Woo Decl. Ex. U, Rosenblatt Depo.

4  at 102:16-21; 121:16-22 and 126:16-127:11.]

5      While Ambu disagrees with LMA's experts' interpretation, in the event that the Court

6  adopts LMA's interpretation, the patent should be held invalid for lack of written description.

7  **IV.    ARGUMENT**

8      **A.    Summary Judgment of Written Description is Available**

9

10     Summary judgment is as appropriate in a patent case as in any other case.  Fed. R. Civ. P.

11 56(c); *SRI Int'l v. Matsushita Elec. Corp.*, 775 F.2d 1107, 1117 (Fed. Cir. 1985).  While written

12 description is a question of fact, it is amenable to summary judgment if no reasonable fact finder

13 could return a verdict for the non-moving party.  Indeed, the Federal Circuit has routinely upheld

14 summary judgment of invalidity on written description grounds.  *See, e.g., PowerOasis v. T-Mobile*

15 *USA, Inc.*, 522 F.3d 1299,  1306-1311 (Fed. Cir. 2008) (disclosure of multiple embodiments of a

16 user interface as part of a vending machine did not provide written description for claims reciting a

17 user interface located apart from the vending machine); *ICU Medical, Inc. v. Alarias Medical*

18 *Systems, Inc.*, 558 F.3d 1368, 1376-79 (Fed. Cir. 2009) (description of a medical valve operated

19 with a spike did not provide adequate written description for claims covering spikeless medical

20 valves); *LizardTech v. Earth Resource Mapping Pty Ltd.*, 424 F.3d 1336, 1344-45 (Fed. Cir. 2005)

21 (description of one method for creating a seamless discrete wave transform (DWT) did not entitle

22 the inventor to claim any and all means for achieving that objective); *Tronzo v. Biomet, Inc.*, 156

23 F.3d 1154, 1159-60 (Fed. Cir. 1998) (specification disclosing only conical shaped cup implants

24 failed to support claims reciting a generic cup shape).  Further, conclusory statements of experts are

25 insufficient to raise a genuine issue of material fact to defeat a summary judgment of invalidity for

26 lack of written description.  *See PowerOasis*, 522 F.3d at 1310.

27     It is not uncommon for a patent to be held invalid for failure to meet the written description

28 requirement based solely on the language of the patent specification.  *See Univ. of Rochester v.*

1    *G.D. Searle & Co.*, 358 F.3d 916, 927 (Fed. Cir. 2004); *PIN/NIP, Inc. v. Platte Chemical Co.*, 304

2    F.3d 1235 (Fed. Cir. 2002).  Under the patent law, a patent specification must provide a written

3    description of the invention.  35 U.S.C. § 112, ¶ 1.  A patent claim that either has no support in the

4    specification, or is so broad that it encompasses substantial subject matter that was not disclosed in

5    the specification, is invalid.

6         A touchstone requirement under section 112 is that the patentee show that he was "in

7    possession" of the invention as claimed.  *PowerOasis*, 522 F.3d at 1306.  To show that one is "in

8    possession" of the invention, the patent must describe all its claimed limitations.  *Id.*  "The written

9    description requirement is not a question of whether one skilled in the art might be able to

10   construct the patentee's device from the teachings of the disclosure.  Rather, it is a question

11   whether the application necessarily discloses that particular device."  *Id.* (quoting *Lockwood v.*

12   *American Airlines, Inc.*, 107 F.3d 1565, 1572 (Fed. Cir. 1997)).

13        The written description also limits the breadth of the claims that can be obtained.  "The

14   purpose of the written description requirement is to 'ensure that the scope of the right to exclude, as

15   set forth in the claims, does not overreach the scope of the inventor's contribution to the field of art

16   as described in the patent specification.'"  *ICU Medical* 558 F.3d at 1376 (quoting *Univ. of*

17   *Rochester* 358 F.3d at 920 ).  The mere description of one embodiment of the claimed subject

18   matter does not entitle a patentee to broadly claim beyond the scope of the invention(s) disclosed .

19   *See, e.g., LizardTech* 424 F.3d at 1346 ("[A] patentee cannot always satisfy the requirements of

20   section 112, in supporting expansive claim language, merely by clearly describing one embodiment

21   of the thing claimed.")  "To satisfy the written description requirement for a claimed genus, a

22   specification must describe the claimed invention in such a way that a person of skill in the art

23   would understand that the genus that is being claimed has been invented, not just a species of the

24   genus."  *Carnegie Mellon Univ. v. Hoffmann-La Roche, Inc.*, 541 F.3d 1115, 1124 (Fed. Cir. 2008).

25

26

27

28

**B.    Ambu Is Entitled to Summary Judgment That the Asserted Claims Are Invalid for Lack of Written Description.**

**1.    The '100 Patent Fails to Adequately Describe That the Posterior Wall of the Cuff Itself Is Thicker and Stiffer Than Other Portions of the Cuff.**

To satisfy the written description requirement, every claim limitation must be supported by the specification. *PowerOasis*, 522 F.3d at 1306 (quoting *Lockwood v. Am. Airlines, Inc.*, 107 F.3d 1565, 1571-72 (Fed. Cir. 1997)) ("While the meaning of terms, phrases, or diagrams in a disclosure is to be explained or interpreted from the vantage point of one skilled in the art, all the limitations must appear in the specification."). The specification need not contain precisely the same words as recited in the asserted claims but it must convey possession of the invention. *Id.*

Here, the parties are not in agreement over the application of the posterior cuff reinforcement limitation of claim 1. LMA submits that it requires a portion of the cuff wall itself, and not merely an extension of the backplate, be "thicker and stiffer" than other portions of the cuff. [Woo Decl. Ex. T, D'Alo Depo. at 112:1-116:15; Ex. U, Rosenblatt Depo. at 102:16-21, 121:16-22 and 126:16-127:11.] Indeed, LMA would urge that asserted claims 1-6 do not include any of the specification's disclosed embodiments where the cuff is thickened and stiffened by an extension of the backplate. [D'Alo Depo. at 112:1-116:15; Rosenblatt Depo. at 102:16-21, 121:16-22.]

On the other hand, Ambu submits that a cuff wall can be reinforced, and made "thicker and stiffer" within the meaning of claim 1, either by thickening the material of the cuff in the specific area, or by adhering to the cuff another material, such as glue, a rib such as is taught in the two patent drawings, or other reinforcing material. [Dr. Lampotang Decl. ¶ 19.] Interestingly, despite LMA's "plain meaning" interpretation of Claim 1, Mr. D'Alo conceded that if one were to glue a plywood board to a room wall, that would make the wall thicker and stiffer. [D'Alo Depo. at 68:18-69:7.] Both Mr. D'Alo and Dr. Rosenblatt further conceded that the patent claims did not require any particular manufacturing methodology to make the cuff wall thicker and stiffer, thus allowing for making the cuff wall stiffer and thicker by, as taught by the

1    '100 specification, extending a rib from the backplate to reinforce the distal tip of the cuff.  [*Id.*]

2         Ambu submits that if the Court determines that LMA is correct, the Court should grant

3    summary judgment of invalidity for lack of written description.[4]  First, as set forth above at pages

4    4-6, each of the Figures of the '100 patent recites a distal rib that extends from the backplate,

5    either through or over the cuff.  None of them shows a reinforcement of the cuff wall that is

6    achieved without use of a backplate extension.

7         Unable to identify any product designs in the '100 patent that meet the claim limitation as

8    they are applying it, LMA resorts to trying to conjure a third embodiment in the specification

9    where none exists.  What LMA does is point primarily to a single sentence in the '100

10   specification that states, in reference to Figure 10, that:

11            The distal rib 105a may be effectively constituted by a thickening
             of the posterior wall of the distal region 60a of the inflatable main-
12           cuff 55a and, as shown, forms a distal extension of the bowl 90a of
             the backplate 52a.
13

14   [Lampotang Decl. Ex. B, '100 patent, col. 8, lines 9-12.]  The plain language of the complete

15   sentence, however, states that the rib is a "distal extension of the bowl 90a of the backplate 52a."

16   The sentence furthermore refers to the "second" embodiment that places the distal rib extension

17   of the backplate along the surface of the cuff wall, as shown in Figures 10 and 11.  Also, this

18   sentence is contained in a paragraph beginning at col. 7, line 62, which refers to the second

19   embodiment for which two views are shown in Figures 10 and 11:

20

21

22

23

24

25

26   [4] Whether or not LMA's claim construction is correct, LMA's patent is also invalid over the prior
     art.  This is spelled out in more detail in Ambu's contemporaneous motion for summary judgment
27   on anticipation or obviousness.  [*See* Defendants' Motion for Summary Judgment of Invalidity
     for Anticipation and Obviousness.]
28



1
2
3
4
5
6
7
8
9
10
11
12





FIG. 10

FIG. 11

13  The patent itself explains that Fig. 10 is a "cross-sectional view of a second embodiment of the

14  device of Fig. 1…."  [*Id.* at col. 3, lines 51-53.]  Figure 11 is described as "an anterior plan view

15  of the backplate removed from the device shown in Fig.10."  [*Id.* at lines 55-56.]  The sentence at

16  column 8, lines 9-12 refers to distal rib 105a, and the description of figures 10 and 11 explain that

17  "The backplate 52a is similar to the backplate 52 illustrated in Figs. 5 and 6 *except that the distal*

18  *rib 105a of the backplate 52a is applied to the posterior surface of the distal region 60a of the*

19  *main-cuff 55a, as shown in Fig. 10*. The distal rib 105a has a concave anterior surface

20  corresponding to the adjoining convex posterior surface of the distal region 60a thereby limiting

21  the radial clearance between the distal region and end 60a, 105a. "  [*Id.* at col. 7, line 65 to col. 8,

22  line 5 (emphasis added).]  Thus, these drawings show that an extension of the backplate is placed

23  on top of the cuff in order to reinforce it.

24       As such, there is no third embodiment taught in the patent.  The sentence cited by LMA in

25  support of its argument is about a second backplate extension embodiment, not some phantom

26  embodiment where the cuff material itself has to be made thicker and stiffer.  LMA's argument

27  that a sentence fragment in the sentence quoted above – that first portion of the sentence that

28

1    states that as a result of giving the distal rib a shape similar to the shape of the cuff wall, the wall

2    in that region is thickened – should be rejected.

3         LMA's argument is just like that made by the patent holder in *Agilent Technologies, Inc.*

4    *v. Affymetrix, Inc.*, 567 F.3d 1366, 1380-83 (Fed. Cir. 2009), which argument was rejected by the

5    Federal Circuit, holding that the patent claims were not supported by the specification at issue.

6    *Agilent* involved a patent on preparing a fluid sample used in certain types of genetic testing.  The

7    claims required that this be done in a closed chamber and that bubble mixing be done.  The only

8    mention in the specification of bubbles was within an embodiment that was an open, not closed,

9    system, and the Court held that where such references to bubbles were "inextricably wedded" to

10   the specified open embodiments, they did not support the claim.  *Id.* at 1382.  Here, the reference

11   to cuff thickening is similarly inextricably wedded to the embodiment using a distal rib that

12   extends over the surface of the cuff wall, and cannot be read as teaching a third embodiment that

13   supports the claims as construed by LMA's experts.

14        Similarly, in *PowerOasis*, the Federal Circuit affirmed a summary judgment of invalidity

15   for anticipation on the ground that the original application, which the patentee relied on for

16   priority, disclosed only a "customer interface" as a display on a vending machine, but the claims

17   were construed to cover an interface apart from the vending machine.  522 F.3d at 1311.  While

18   the original application disclosed multiple embodiments of the "user interface," all such

19   embodiments described the user interface as part of a "unitary vending machine apparatus."  *Id.* at

20   1309.  There was no disclosure of a user interface "separate from the vending machine itself."  *Id.*

21   The court found that it was immaterial that a skilled person in the art would know how to

22   substitute a laptop computer for the user interface that is part of the unitary vending machine,

23   because "[o]bviousness simply is not enough; the subject matter must be disclosed to establish

24   possession."  *Id.* at 1310.

25        If the claims, as LMA contends, require that the material of the cuff wall itself be

26   thickened to the exclusion of any use of a backplate extension, there is no teaching of such in the

27   specification and the claims are invalid.  Moreover, LMA cannot defeat summary judgment by

28   pointing to the opinions of its experts, as cited above.  In *PowerOasis*, the Federal Circuit held

1    that an expert's declaration failed to raise a genuine issue of fact as to whether a specification

2    disclosed a customer interface located on a customer laptop, where the declaration pointed to only

3    figures and discussions showing a user interface located on a vending machine.  Similarly, here,

4    LMA's experts point to nothing but an embodiment that does not support their claims.

5             Accordingly, there is no genuine issue of material fact that the specification fails to

6    provide adequate written description that the posterior wall of the cuff itself has a portion "thicker

7    and stiffer" than other portions of the cuff, and summary judgment is appropriate.  In addition,

8    because the dependent claims depend from invalid claim 1, they are invalid as well.  *See National*

9    *Recovery Techs. Inc. v. Magnetic Separation Sys. Inc.*, 166 F.3d 1190, 1198 (Fed. Cir. 1999)

10   (holding that, for purposes of 35 U.S.C. § 112, paragraph 1, dependent claims stand or fall with

11   the claim from which they depend) (citing § 112, paragraph 4).

12   
13              **2.      The '100 Patent Fails to Provide Written Description for the Full
                         Scope of the Claimed Genera.**

14            To satisfy the written description requirement, the '100 patent specification must fully

15   describe each limitation of the asserted claims.  *See id.* at 1306.  While the specification only

16   describes the use of a narrow reinforcing rib extended from the backplate to the distal end of the

17   cuff, the asserted claims, as construed, recite a limitation that broadly encompasses a cuff

18   stiffener that is not part of the backplate.

19            The asserted claims 1 through 6 recite the limitation that "at least a portion of the posterior

20   portion of a wall of the cuff in the distal region being thicker and stiffer than other portions of the

21   cuff".  [Lampotang Decl. Ex. B, '100 patent, col. 10, lines 24-26.]  During claim construction,

22   LMA urged and obtained a broad construction of this limitation.  [Order Construing Claims at 9.]

23   In particular, the Court held that the claim does not require that the "thicker and stiffer" portion of

24   the cuff be connected to the backplate.  [*Id.* at 8-9.]  Instead, the "thicker and stiffer" portion can

25   be located anywhere on the posterior wall of the cuff in a region distal to the backplate.[5]  [*Id.*]

26   

27   
28   [5] The Court has construed the term "distal region" as "the region of the cuff distal to the
     backplate, *i.e.*, the leading edge of the cuff."  [Order Construing Claims at 8.]

1    There is no teaching, however, of such a "disconnected" stiffener.  The '100 patent

2    specification repeatedly and consistently describes a cuff stiffener as a reinforcing rib that is an

3    integral part of the backplate extending to the distal region of the cuff.  The section of the

4    specification describes two specific embodiments, both having a backplate extended to the distal

5    end of the cuff to form a reinforcing rib.  The first embodiment is described as having a

6    "backplate 52 [that] has a one-piece, integral spoon-shape including a bowl 90" which in turn

7    "has an elongate integral reinforcing distal rib 105."  [Lampotang Decl. Ex. B, '100 patent, col. 6,

8    lines 3-4, 9-10.]  As illustrated by Figures 5 and 6, set forth above on page 4, 105 is a distal

9    extension of the backplate 52 extending through the interior of the cuff.

10    The second embodiment is described as having a backplate 52a "similar to the backplate

11    52 [of the first embodiment] except that the distal rib 105a of the backplate 52a is applied to the

12    posterior surface of the distal region 60a of the main-cuff 55a."  [*Id.* at col. 7, line 65 – col. 8, line

13    1 (emphasis added).]  This description makes clear that, just like the distal rib 105 of the first

14    embodiment, the distal rib 105a of the second embodiment is also an integral part of the backplate

15    52a.  In addition, figures 10 and 11 set forth above at page 13, depicting the second embodiment

16    and related text, show that the distal rib 105a is an extension of the backplate.

17    LMA's experts cannot raise a triable issue of fact on this point.  *See MyMail, Ltd. v. Am.*

18    *Online, Inc.*, 476 F.3d 1372, 1378 n.1 (Fed. Cir. 2007) (holding that expert testimony that

19    contradicts the specification cannot raise a genuine issue of material fact to defeat summary

20    judgment).  Indeed, LMA's designated expert, Mr. D'Alo (President and CEO of LMA supplier

21    M.E.M., Incorporated), admitted that the '100 specification does not teach any embodiment

22    where a posterior cuff reinforcement is not connected to the backplate.  [*See* Woo Decl. Ex. T,

23    D'Alo Depo. at 104] ("Q. Does the '100 patent teach any embodiment where the posterior cuff

24    reinforcement element is not connected to the backplate?  A. ^ Check.  I don't believe it teaches

25    it.").  Second, LMA's other designated expert, Dr. Rosenblatt, attempted to disagree, but was able

26    to identify only the same sentence fragment referred to above as possibly teaching any third

27    alternative.  [Woo Decl. Ex  U, Rosenblatt Depo. at 122:2-14.]  As noted above, however, that

28    sentence fragment, read in its entirely, refers instead to the second embodiment where the

1   reinforcement is an extension of the backplate placed along the posterior surface of the cuff.  (*See*

2   *supra* at p. 12.)

3          Where, as here, the specification only describes subject matter with a specific feature, but

4   the patent claim has been construed as covering much broader subject matter, the patent claim is

5   invalid for lack of written description.  Here, the posterior cuff reinforcement limitation has been

6   construed as having broad scope, but the '100 specification only teaches embodiments where the

7   posterior cuff reinforcement is connected to the backplate.  The mere description of one species

8   within the limitation (backplate extensions as a means of thickening and stiffening a cuff) is not

9   enough to support a broad genus claim covering any and all species of that limitation (all manners

10  of cuff thickening and stiffening), *see LizardTech*, 424 F.3d at 1346, much less LMA's tightrope

11  walking, which attempts to construe claims 1-6 as not including any form of thickening through

12  backplate extension, but only thickening (and stiffening) of the cuff wall itself.

13         Under these circumstances, summary judgment is appropriate.  The Federal Circuit has

14  repeatedly upheld summary judgment of invalidity on written description grounds where the

15  specification describes only a subject matter with a specific feature, but the claims refer to the

16  subject matter generically, covering those with and without that specific feature.  *See, e.g.,*

17  *PowerOasis*, 522 F.3d at 1306-1311; *ICU Medical*, 558 F.3d at 1376-79; *LizardTech*, 424 F.3d at

18  1344-45; *Tronzo*  156 F.3d at 1159-60.

19         On strikingly similar facts, in *ICU Medical*, the Federal Circuit affirmed a summary

20  judgment of invalidity for lack of written description where the patent specification described

21  only medical valves with spikes but the claims at issue did not include a spike limitation.  558

22  F.3d at 1376-79.  These "spikeless claims" would encompass medical valves generically covering

23  valves that operate with a spike and those that operate without spike.  *Id.* at 1378.  As the court

24  noted, these "spikeless claims" were not filed with the original application on which the asserted

25  claims relied on for priority; rather, they were added years later during prosecution.  *Id.* at 1377.

26  The court rejected the patentee's argument that figures and description including spikes somehow

27  showed that the inventor possessed a medical valve that operated without a spike.  *Id.* at 1378.

28  Furthermore, the court held that the fact that a spikeless valve might be obvious in view of a

1   disclosed embodiment was insufficient to satisfy the written description requirement.  *Id.* at 1378-

2   79 ("[A]n applicant complies with the written description requirement by describing the

3   invention, with all its claimed limitations, not that which makes it obvious.") (internal quotation

4   omitted).

5        Similarly, here the '100 specification describes two embodiments of the invention, each of

6   which uses a backplate extension. As such, the specification does not provide written description

7   for the later-filed claims that cover a cuff stiffener not extended from the backplate.  *See id.; see*

8   *also ICU Medical*, 558 F.3d at 1376-79 (description of a medical valve operated with a spike did

9   not provide adequate written description for claims covering spikeless medical valves); *Tronzo.*,

10   156 F.3d at 1159-60 (specification disclosing only a conical shaped cup implant failed to support

11   claims reciting a generic cup shape).

12        Indeed, the specification makes clear that the advantages of the claimed invention over the

13   prior art are attributed not to a generic reinforcing rib, but to the one specifically described in the

14   "preferred aspect."  Immediately following the description of the preferred aspect of a laryngeal

15   mask with a reinforcing rib extended from the backplate, the specification touts the laryngeal

16   mask "incorporating such a reinforcing rib" as having a number of advantages over the prior art

17   in solving the fold over problem.  [*See* Lampotang Decl. Ex. B, '100 patent, at col. 1, line 64 –

18   col. 2, line 3.]  *See also Tronzo*, 156 F.3d at 1159 (holding that claims reciting cup implants with

19   a generic shape were invalid for lack of written description where the specification touted the

20   advantages of a conical shaped cup over the prior art and described the conical shape design as an

21   "extremely important aspect" of the invention).

22        Moreover, the thicker and stiffer reinforcement of the cuff wall must extend from the

23   backplate to the cuff in order for the invention to achieve its purported goal.  The '100 patent

24   purportedly teaches solving the problem of cuff folding over through an extension of the

25   backplate.  [*See* Dr. Lampotang Decl. ¶ 19.]  If there is a gap in the reinforcement between the

26   distal end of the backplate and the cuff, then the fold over will occur at the gap, and the goal of

27   the invention would not be achieved.  [*See id.*]  In fact, Mr. D'Alo admits that a person of

28   ordinary skill in the art in 1998 who was trying to reinforce the cuff to prevent folding over would

not choose to take material away from the cuff reinforcement to provide a gap between the backplate and the cuff.  [*See* Woo Decl. Ex. V, D'Alo Aug.6  Depo. at 208:17-209:6]:

> Q.     . . . Which way would be more intuitive to a person of ordinary skill, back in '98, if the purpose was to prevent foldover? Would they find it intuitive to choose – to have a gap or not to have a gap?

> Mr. Noah: The same objection.

> A.     If I'm trying to reinforce something, I would normally not try to achieve that by taking material away, which would be providing a gap.

> Q.     So, a person of ordinary skill would choose not to have a gap.  Yes?

> A.     That's what I would choose.

Accordingly, there is no genuine issue of material fact that the '100 patent fails to fully support the scope of the claimed invention with respect to the cuff stiffener limitation.

## V.    CONCLUSION

For the foregoing reasons, Ambu's motion for summary judgment of invalidity for lack of written description should be granted in its entirety, and the Court should hold that asserted claims 1-6 are invalid for lack of written description.

DATED: August 14, 2009                    FENWICK & WEST LLP

By:    ___*/s/ Darryl M. Woo*_____

Darryl M. Woo
Attorneys for Defendants and Counterclaimants
AMBU A/S, AMBU INC., AND AMBU LTD.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that all counsel of record who are deemed to have

consented to electronic service are being served with a copy of this document via the Court's

CM/ECF system per Local Rule 5.2 on August 14, 2009.

By:    ___*/s/ Darryl M. Woo*_____

Darryl M. Woo
Email:  dwoo@fenwick.com

---

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Fenwick & West LLP
Attorneys At Law
San Francisco