John B. Sganga (State Bar No. 116,211)
Frederick S. Berretta (State Bar No. 144,757)
Joshua J. Stowell (State Bar No. 246,916)
KNOBBE, MARTENS, OLSON & BEAR, LLP
550 West C Street
Suite 1200
San Diego, CA 92101
(619) 235-8550
(619) 235-0176 (FAX)

Vicki S. Veenker (State Bar No. 158,669)
Adam P. Noah (State Bar No. 198,669)
SHEARMAN & STERLING LLP
1080 Marsh Road
Menlo Park, CA 94025
(650) 838-3600
(650) 838-3699 (FAX)

Attorneys for Plaintiffs and Counter-Defendants
THE LARYNGEAL MASK COMPANY LTD.
and LMA NORTH AMERICA, INC.

IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| THE LARYNGEAL MASK COMPANY LTD. and LMA NORTH AMERICA, INC.,<br><br>Plaintiffs,<br><br>v.<br><br>AMBU A/S, AMBU INC., and AMBU LTD.,<br><br>Defendants.<br><br>AMBU A/S, AMBU INC., and AMBU LTD.,<br><br>Counterclaimants,<br><br>v.<br><br>THE LARYNGEAL MASK COMPANY LTD. and LMA NORTH AMERICA, INC.,<br><br>Counter-Defendants. | Civil Action No. 07 CV 1988 DMS (NLS)<br><br>**PLAINTIFFS' REPLY IN SUPPORT OF THEIR MOTION FOR SANCTIONS FOR LITIGATION MISCONDUCT AND TO COMPEL DISCOVERY**<br><br>**CONFIDENTIAL INFORMATION FILED UNDER SEAL**<br><br>Date: August 24, 2009<br>Time: 11:00 a.m.<br>Courtroom: F, 1st Floor<br>Honorable Nita L. Stormes |

**TABLE OF CONTENTS**

| | |
|---|---|
| I. | PRELIMINARY STATEMENT ................................................................................. 1 |
| II. | LMA HAS SHOWN GOOD GROUNDS FOR A SHORT EXTENSION OF THE TIMELINESS CUT-OFF DATE ................................................................................. 1 |
| III. | LMA IS ENTITLED TO SANCTIONS ....................................................................... 2 |
| | A. LMA's Factual Bases For Sanctions ............................................................. 2 |
| | B. The Law Supports Imposing Sanctions Here ................................................ 8 |
| IV. | MOTION TO COMPEL: UPDATED SURVEY RESULTS ....................................... 9 |
| V. | MOTION TO COMPEL: LOST CUSTOMER SPREADSHEET .............................. 9 |
| VI. | MOTION TO COMPEL: SALES REPRESENTATIVES' DOCUMENTS ............... 9 |
| VII. | MOTION TO COMPEL: BOARD DOCUMENTS ..................................................... 9 |
| VIII. | MOTION TO COMPEL: WRONGFULLY PRIVILEGED DOCUMENTS ........... 10 |
| IX. | MOTION TO COMPEL: PAPER DOCUMENTS AND FILE SERVERS .............. 10 |

# I. PRELIMINARY STATEMENT

The bulk of Ambu's response to LMA's motion can be summed up as follows: don't believe a word our witnesses said at their depositions. For virtually every line of Ambu testimony that LMA cited in its motion, Ambu asserts that its witnesses' sworn testimony was a "mistake":

- Ole Køhnke's testimony (1) that paper files were not searched, (2) that file servers were not searched, and (3) that there were updated versions of the Survey Results (Ambu Br. at 6-7, 15; Køhnke Decl. at ¶¶ 6-10);
- Frank Homa's testimony that (1) he created the Survey Results for business purposes, (2) he did nothing to prepare to testify with respect to certain 30(b)(6) matters, and (3) the lost customer spreadsheet was first created in 2004 (Ambu Br. at 14-18; Homa Decl. at ¶¶ 3, 6, 11);
- Henrick Wendler's testimony that he knew about the use of the LMA brochure in 2007 (Ambu Br. at 11-12; Wendler Decl. at ¶¶ 6-8).

A party cannot provide sworn testimony at depositions (including testimony under Rule 30(b)(6)), allow that testimony to remain on the record uncorrected, and then, when the testimony is used in a way that is damaging to that party, simply disavow it and escape all consequences. Ambu's attempts to explain away its deponents' testimony defies credibility in light of the original testimony's clarity. Ambu cannot be permitted to avoid sanctions by this tactic; if anything, Ambu's late attempt to disavow so many different pieces of testimony only confirms the need for sanctions.

Moreover, Ambu has failed to overcome LMA's substantial factual showing in support of its motion for sanctions and to compel additional documents. Ambu essentially argues that its behavior was not bad enough to warrant sanctions. LMA believes that making misrepresentations to the Court, claiming privilege based on false assertions, disregarding a Court order not to unilaterally limit discovery requests, and making false representations about the contents of its production, among other examples, reflects a pervasive pattern of misconduct that warrants severe sanctions. Combined with the fact that much of its misconduct relates to LMA's efforts to discover the basis for Ambu's false advertising counterclaims – and that Ambu has failed to produce many critical documents relating thereto – dismissal of those counterclaims is an appropriate sanction.

## II. LMA HAS SHOWN GOOD GROUNDS FOR A SHORT EXTENSION OF THE TIMELINESS CUT-OFF DATE

Ambu urges the Court to deny most of LMA's motion for lack of timeliness. (D.I. 277 ("Ambu Br.") at 4-5.) LMA, however, has provided good grounds for permitting it to seek relief

with respect to events that occurred on June 5, 2009 or later. (D.I. 256 ("LMA Br.") at 1-2.) Ambu does not dispute those grounds, *i.e.*, that Ambu refused to participate in the requisite meet and confer for nearly a month despite multiple LMA requests. (*Id.*) Ambu merely argues that both parties were under a mistaken belief about the motion deadline and that, had they not been, "the parties would have adhered to different meet and confer deadlines." (Ambu Br. at 4.)

This argument is irrelevant and wrong. The record indisputably shows that LMA sought to conduct a meet and confer on these matters as early as June 12, 2009. (LMA Br. at 1.) The only reason a meet and confer did not occur then or soon after was due to Ambu. (*Id.*) Given LMA's need for discovery wrongfully withheld by Ambu, LMA wanted these issues resolved. Had a meet and confer occurred earlier, LMA could have filed its motion sooner, just as LMA moved promptly on an earlier dispute over fact depositions. (D.I. 203.) Indeed, LMA had substantially completed the drafting of its motion by June 18, and was prepared to file any time thereafter. Palfin Decl. ¶ 4-5.[1]

### III.    LMA IS ENTITLED TO SANCTIONS
####    A.    LMA's Factual Bases For Sanctions
#####       1.    Ambu's Representation to the Court Was False

In support of its July 11, 2008 motion for leave to assert its false advertising counterclaims, Ambu submitted a declaration of Ambu executive Henrick Wendler that asserted Ambu had only recently (*i.e.*, on July 1, 2008) learned LMA was using the brochure at issue. The purpose of this representation was to convince the Court that Ambu had good grounds for not asserting those counterclaims in its December 2007 answer. At his deposition in May 2009, however, Mr. Wendler testified that he had known of LMA's use of the brochure in 2007. (LMA Br. at 4.)

Ambu's sole response is that Mr. Wendler "simply failed to recall [at his deposition] that the activities reported in 2007 did not relate to the LMA Brochure." (Ambu Br. at 12.) That explanation is inconsistent with Mr. Wendler's clear testimony. REDACTED

---

[1] Ambu further complains that three of the factual bases for sanctions (out of the eleven asserted by LMA) would be untimely even if the Court grants LMA's request for a small extension. (Ambu Opp. at 5.) LMA has already addressed this point in its opening brief. (LMA Br. at 4 n.5.)

REDACTED Mr. Wendler's responses to these questions confirm he was indeed talking about *the brochure*; there is no equivocation in his testimony that would suggest any doubt about what he was saying. (LMA Br. at 4 (quoting Wendler's testimony).)

### 2. Ambu's False Representations that Ole Køhnke Was an Attorney Are Unjustifiable and Prejudiced LMA

Ambu misrepresented that Mr. Køhnke was an attorney for months. (LMA Br. at 5.) By its own admission, Ambu did not correct that misrepresentation when it purportedly learned Mr. Køhnke was not an attorney a few days before his deposition. (Ambu Br. at 12.) The truth was revealed only when LMA asked Mr. Køhnke the question point blank at his deposition. While Ambu now claims that they re-reviewed their privilege log "on their own initiative" after learning Mr. Køhnke was not an attorney, the fact remains that Ambu failed to take any steps to remedy until *after* the truth came out at Mr. Køhnke's deposition and *after* LMA sent a letter demanding the production of the documents wrongfully withheld. (LMA Br. at 5.)

Ambu's false representations resulted in nearly 500 documents being withheld from LMA for most of the discovery period on the ground they were privileged; and, indeed, over 200 such documents are *still* being withheld, albeit now under a totally different claim of privilege. In the face of these facts, Ambu makes two arguments: (1) that its false representations were "a quite understandable error" or "mistaken assumption" given that Mr. Køhnke's job involved interacting with Ambu counsel; and (2) that LMA was not prejudiced.[2] Neither is true.

An attorney has an obligation to engage in due diligence before making representations during discovery. Here, that due diligence merely required Ambu's counsel to pick up the phone and have a ten second conversation with its client. Ambu's lack of diligence is exacerbated by the fact that these false representations were made in multiple privilege logs. Parties should not be permitted to assert privilege over documents based on unfounded assumptions, only to escape any consequences by partially remedying when the truth comes out at the close of discovery.

---

[2] Ambu does not address its representation that certain documents were privileged due to the involvement of an unnamed "in-house counsel" – also revealed to be false at Mr. Kohnke's deposition. (LMA Br. at 7.) This further demonstrates that Ambu was either making intentionally false representations or engaged in grossly inadequate due diligence.

LMA continues to suffer substantial prejudice as a result of Ambu's false representations. As explained in LMA's opening brief, LMA was unable to use the withheld documents in depositions of Ambu witnesses, including Mr. Køhnke. (LMA Br. at 5.) Based on a review of Ambu's privilege log, many of the approximately 200 documents Ambu continues to wrongfully withhold appear to relate to important issues in this case. *See, e.g.*, Berretta Decl., Ex. M at Entry No. 6942 (describing document as "[c]ommunication regarding Ambu's false advertising claim," one of at least 17 improperly withheld documents that appear to relate to Ambu's false advertising counterclaims).

### 3. Ambu Has No Colorable Basis for its Assertion of Privilege in the Survey Results

Ambu asserted privilege in the Survey Results – critical documents in this litigation (*see* LMA Br. at 7) – on two grounds: (1) that they were sent to "in house counsel" Ole Køhnke; and (2) "[t]hey were prepared by Frank Homa for the purpose of obtaining legal advice." (LMA Br. at 6.) Assuming this was true, LMA filed a motion challenging the privilege assertion. Ambu subsequently induced LMA to enter into an agreement for the production of these documents in exchange for giving Ambu concessions. But these statements were not true, and thus there was never a legitimate privilege dispute. LMA should have never been required to go to the expense of filing a motion to challenge that privilege assertion. Ambu's only response is to assert that Frank Homa indeed prepared the Survey Results for the purpose of obtaining legal advice. (Ambu Br. at 14.) This excuse is flatly contradicted by his testimony quoted in LMA's opening brief (LMA Br. at 7), which Ambu utterly ignores. Ambu fails to establish it had a colorable privilege claim over these documents.

### 4. Ambu's Current Assertion that It Has Produced All Survey Results is at Odds with its Witnesses' Testimony and its Attorneys' Representations

Mr. Køhnke testified at his deposition that he recalled seeing a version of the Survey Results dated 2008 and that he believes Ambu continues to update it today. Berretta Decl., Ex. L at 176, 182-83; LMA Br. at 7. Since these are critical documents, LMA sought these updated Survey Results from Ambu. At a July 8, 2009 meet and confer, ***Ambu's counsel confirmed the existence of the updated Survey Results*** and told LMA they were privileged. Sganga Decl., ¶ 16. Now Ambu asserts that there are no such updated versions. (Ambu Br. at 15.) This is inconsistent with both Mr. Køhnke's testimony and its own counsel's representations. (LMA Br. at 7.) With respect to Mr.

Køhnke's testimony, Ambu simply asserts that he was mistaken. (Ambu Br. at 15.) Ambu provides no explanation for *its own counsel's representation* that these documents exist. (*See id.*) Regardless, Ambu should be sanctioned for making a baseless assertion of privilege in these documents. If they exist, the privilege assertion is baseless for reasons stated in LMA's opening brief. (*Id.* at 8.)

### 5. Ambu Has No Colorable Grounds for its Assertion of Privilege Over the Lost Customer Spreadsheet

Ambu responds to the testimony of Mr. Homa (that establishes the lost customer spreadsheet is not privileged) by resorting to a similar refrain: he was wrong. (Ambu Br. at 8.) This not only defies credibility in view of the unequivocal nature of Mr. Homa's testimony (*see* LMA Br. at 8), it is also irrelevant. The document is a list of lost customers. Whether an attorney asked for it to be created (contrary to Mr. Homa's testimony) is irrelevant. It is factual information that is discoverable.[3] (*See* LMA Br. at 8.) The sworn testimony of Mr. Homa is that the spreadsheet actually has the information LMA needs. (LMA Br. at 8.) Ambu's failure to reveal the existence of this spreadsheet or to produce it (*see id.*), as well as its bogus privilege claim over it, are deserving of sanction.[4]

### 6. Ambu's Representations Concerning the Production of Its Sales Representatives' Documents Are False

As a threshold matter, contrary to Ambu's argument (Ambu Br. at 17), Ambu's misrepresentations concerning its sales representatives' documents raise a timely request for sanctions because Ambu made those false representations in a July 10, 2009 letter. (LMA Br. at 9.) Indeed, Ambu repeats those misrepresentations in its brief. (Ambu Br. at 17.) While Ambu says that

---

[3] Ambu relies on *Kintera, Inc. v. Convio, Inc.*, 219 F.R.D. 503 (S.D. Cal 2003), for the proposition that the spreadsheet is privileged. (Ambu Br. at 15-16.) *Kintera*, however, does not override the fundamental rule that the attorney-client privilege "does not protect disclosure of the underlying facts by those who communicated with the attorney." *E.g.*, *Upjohn Co. v. United States*, 449 U.S. 383, 395 (1981). While there is little detail in *Kintera* about the document at issue, it appears to have "contain[ed] admissions" by a party of a sensitive nature; *i.e.*, statements of a type a party would want to share in confidence with its attorneys. At issue here, however, is a list of customers Ambu lost that merely reflects "underlying facts" and is the type of document a company would create in the normal course of business. (*See* D.I. 193 at 13-15 (citing cases holding business documents created for both legal and non-legal purposes are not protected)).

[4] Ambu argues that LMA was not prejudiced because Ambu responded to an LMA interrogatory that sought similar information. (Ambu Br. at 10.) That interrogatory response, however, was grossly inadequate. LMA had asked Ambu to identify those customers who left Ambu because of the LMA advertising at issue. (D.I. 275 at 14 n.10.) Ambu's response merely listed *every* customer (over 1,600) who had left Ambu since LMA's advertising began. (*Id.*) There is no reason to believe that any, let alone all, of those customers left due to the LMA advertising. LMA had sought to compel a proper response to that interrogatory, only to withdraw that request because it was not timely. (*See* D.I. 275 at 13 n.7.)

it searched these key individuals' files, "including paper and electronic records" (Ambu Br. at 17), Ambu's own custodian log (as well as its production) tell an entirely different story. Its custodian log indicates that *no documents* were produced from three of the six sales reps (including Debbie Self, who is going to be deposed shortly), and only a *de minimis* number of pages were produced from the remaining three, **none of which are "electronic records**." Berretta Decl., Ex. W at 5; LMA Br. at 9. Ambu does not address the discrepancy between its statements and its custodian log.

Moreover, as explained in LMA's opening brief (LMA Br. at 9), it would defy credibility for Ambu to claim that these individuals simply had no documents (as Ambu appears to do in the declaration of Kimberly Culp). (*See* Culp Decl. ¶ 7.) These sales representatives should have voluminous communications with customers related to this case. Indeed, some highly relevant emails from these representatives were reprinted in other documents that were produced; yet the originals were not, indicating their files were not properly searched. (*See* LMA Br. at 9.) Because the evidence shows that Ambu's representations about this production were false, sanctions are warranted, particularly given that the individuals whose files are at issue are (by Ambu's own admission, *see id.*) critical witnesses for its false advertising claims.

7. **Ambu's 30(b)(6) Witnesses Were Not Properly Prepared to Testify About Important Matters Relating to its Counterclaims**

LMA cited testimony from several Ambu witnesses that they had done nothing to prepare to testify about certain topics. (LMA Br. at 10.) In response, Ambu argues that these individuals had personal knowledge of the topics at issue and thus did not need to do anything to prepare to testify on the topics. (Ambu Br. at 17-18.) This response, however, is flatly contradicted by the fact (already noted in LMA's opening brief, *see* LMA Br. at 10) that Ambu's witnesses were unable to provide any information about several topics of critical importance to Ambu's false advertising counterclaims. Moreover, Ambu's U.S. CEO squarely refuted Ambu's argument at his deposition.

**REDACTED**

### 8. Ambu Produced Significant Portions of Some Witnesses' Documents Shortly Before and After Their Depositions

In defending its failure to produce documents until after witness depositions, Ambu emphasizes the fact that it produced numerous document before witnesses' depositions as well and suggests that LMA was not prejudiced because the late-produced documents were irrelevant. (Ambu Br. at 18-21.) The fact that Ambu produced some documents before the deposition, however, hardly excuses producing substantial amounts after; and, for the most part, Ambu does not dispute that it indeed did produce many documents late, as established in LMA's brief (at 10-11) and in Berretta Decl., Ex. AA (letter to Ambu providing details of late-produced documents). Moreover, LMA was substantially prejudiced given the importance of many of the late-produced documents. For example, Ambu produced a document showing Ambu's analysis of Dr. Ferson's CT scans, which form the basis for the brochure Ambu challenges in its counterclaims, one day before the close of fact discovery. Palfin Decl., Ex. Rep-1. LMA is continuing to discover more failures to produce critical documents. During the August 14, 2009 deposition of Ambu Sales Manager Dan LeBrecque (deposed pursuant to Court order, D.I. 249), it was revealed that no one from Ambu ever collected numerous documents from him which contain information on sales of the Ambu laryngeal mask.[5] From Mr. LeBrecque's descriptions of these documents, they appear to be critical to evaluating Ambu's false advertising counterclaims. Ambu's failure to produce (or even collect) them is further evidence that Ambu's production is plagued by widespread, critical, and inexcusable deficiencies.

### 9. The Evidence Reveals That Ambu Failed to Search Obvious Sources of Responsive Material

Ambu's response to Mr. Køhnke's testimony that Ambu failed to search its paper files and file servers is that he was wrong. (Ambu Br. at 6.) Ambu's repeated attempts to disavow its witnesses' testimony defies credibility. That is particularly true here given that Mr. Køhnke was Ambu's *designated 30(b)(6) witness on Ambu's document production efforts.* (LMA Br. at 10.)

---

[5] Including critical information on how and why such business was won or lost. REDACTED

### 10. Ambu's Assertions that it Could Not Provide Custodian Information Due to Burden Were False

Ambu admits that it provided custodian information after asserting it would be too burdensome to do so. (Ambu Br. at 21.) Ambu argues that it was in fact burdensome because it ended up taking approximately 30 hours to compile the information. (*Id.*) That does not demonstrate the sort of burden that would justify refusing to respond to an interrogatory, especially given the extremely basic nature of the information requested and its importance. (*See* LMA Br. at 13.) Moreover, Ambu ignores LMA's explanation of how it was prejudiced by Ambu's refusal to provide this information until after the close of fact discovery. (*Id.*)

### 11. Ambu Failed to Produce Technical Documents by the Date Ordered

In granting in part an LMA motion to compel, the Court ordered that "[n]o later than **February 20, 2009**, Ambu shall provide supplemental responses as described herein." (D.I. 148 at 10.) Ambu admits that it did not produce documents subject to that order until months after that deadline. (Ambu Br. at 6.) Ambu argues that it nonetheless was not in violation of the Court's order because only its written objections to the RFPs were due by February 20, and it was free to produce the underlying documents at its leisure. (*Id.*) That interpretation of the Court's order is not defensible, especially in light of the fact that the Court also ordered Ambu to produce its privilege log (an act that occurs contemporaneously with or after a document production) by February 20 as well. (D.I. 148 at 10.) Indeed, under Ambu's interpretation, the Court never actually ordered it to produce documents – only to provide new written objections and its privilege log. (*See id.*)

### B. The Law Supports Imposing Sanctions Here

Ambu essentially argues that dismissal is a serious sanction that should not be imposed lightly. (Ambu Br. at 11.) LMA agrees and explicitly recognized that fact in its brief. (LMA Br. at 14.) Here, however, there is a pervasive pattern of misconduct (*e.g.*, misrepresentations to the Court, false assertions of privilege, repeated failures to produce – or even search – for important documents, violating a Court-imposed deadline for production, violating the Court's instruction not to unilaterally limit the scope of LMA's RFPs); and much of that misconduct relates to LMA's efforts to discover evidence relating to Ambu's false advertising counterclaims (*see* LMA Br. at 16). Dismissal of those counterclaims is thus an appropriate sanction that is commensurate with the

substantial and serious nature of Ambu's misconduct. This is especially true given that Ambu has failed to produce documents LMA would need to fairly try those claims.[6]

IV. **MOTION TO COMPEL: UPDATED SURVEY RESULTS**

Ambu now asserts these do not exist, contrary to the sworn testimony of Ambu's CEO and President and its counsel's own representations during a July 8, 2009 meet and confer. (*See supra*, Section III.A.4.) The Court should order Ambu to produce these to the extent they exist.

V. **MOTION TO COMPEL: LOST CUSTOMER SPREADSHEET**

Ambu refuses to produce this spreadsheet on the grounds that its current attorneys requested it be created for this litigation. That representation is flatly contradicted by sworn testimony of Ambu's CEO and President that this spreadsheet was created prior to retaining Ambu's current attorneys. (*See supra*, Section III.A.5; LMA Br. at 8.) Moreover, even if true, the spreadsheet should not be protected given that it reflects factual information of critical importance to the litigation that LMA cannot obtain elsewhere. (*See* LMA Br. at 8.)

VI. **MOTION TO COMPEL: SALES REPRESENTATIVES' DOCUMENTS**

The evidence shows that while Ambu repeatedly asserted that it had fully produced these documents, the custodian log it produced on July 17, 2009 establishes it did not. These individuals are critical witnesses for Ambu's false advertising counterclaims and their documents are equally important. Indeed, this Court recently granted LMA's request to depose one of these representatives, Debbie Self, yet Ambu's own custodian log shows that they have not produced a single document from her, despite ample indication (including from Ambu's own Rule 26 disclosures) that numerous responsive documents should exist. (LMA Br. at 10; *see also supra*, Section III.A.6.) The Court should order Ambu to produce these documents.

VII. **MOTION TO COMPEL: BOARD DOCUMENTS**

LMA seeks documents responsive to RFP Nos. 196, 197, and 198, which were propounded on May 13, 2009 and to which Ambu provided its written response on June 12, 2009. Ambu admits in its brief that it unilaterally narrowed these requests. Specifically, Ambu asserts that it only

---

[6] LMA continues to learn new information that further shows Ambu has utterly failed in its discovery obligations with respect to its false advertising claims. *See supra*, Section III.A.8 (citing August 14, 2009 testimony of an Ambu sales manager that numerous critical sales documents, **including documents relating to why Ambu customers were leaving Ambu**, were not collected or produced).)

1  searched for documents relevant to the AuraFlex, because LMA's claims against other products were
2  dismissed on summary judgment. (Ambu Br. at 24.) However, while the Court's summary judgment
3  order limited the products at issue in the case, the same patent issues remain. Thus, documents
4  relating to patent infringement generally or with respect to other products could still be relevant,
5  particularly in light of the expansive standard for relevance under the Federal Rules. *See* Fed. R. Civ.
6  P. 26.

7  Moreover, these requests also sought Ambu board documents relating to other matters,
8  including "any business transaction with [LMA parent] LMA International N.V." (Berretta Decl.,
9  Ex. E), parts of the requests that Ambu totally ignored. This Court previously warned that "Ambu's
10 arrogation of the Court's right to limit the duty to respond to discovery is improper." (D.I. 148 at 6
11 n.3.) By its own admission, Ambu has defied this Court's warning and improperly produced what
12 Ambu, in its view alone, considered relevant. This Court should order Ambu to respond to these
13 RFPs without limitation.

14 **VIII. MOTION TO COMPEL: WRONGFULLY PRIVILEGED DOCUMENTS**

15 Ambu withheld hundreds of documents based on the assertion that Mr. Køhnke was an
16 attorney or that the document reflected advice of an unnamed in-house counsel. Those assertions
17 were false, and all documents subject to those claims should be produced. In its brief, Ambu
18 continues to justify withholding over 200 such documents by pointing to its new assertion of
19 privilege that the documents convey the advice of counsel. (Ambu Br. at 12.) Ambu, however, does
20 not respond to LMA's arguments that the documents should be produced (1) as a sanction for the
21 prior improper privilege assertion; (2) because this new assertion of privilege was made too late;
22 and/or (3) because the new assertion of privilege is not adequately supported given that Ambu has
23 failed to identify the attorney whose advice is at issue. (*See* LMA Br. at 8.) All of these documents,
24 listed in Berretta Decl., Ex. M, should be produced.

25 **IX. MOTION TO COMPEL: PAPER DOCUMENTS AND FILE SERVERS**

26 The evidence shows Ambu did not search these sources. (*See supra*, Section III.A.9; LMA
27 Br. at 11-12.) It should be ordered to do so.

28

| | | |
|---|---|---|
| 1 | | Respectfully submitted, |
| 2 | | KNOBBE, MARTENS, OLSON & BEAR, LLP |
| 3 | Dated: August 17, 2009 | By: /s/ Frederick S Berretta |
| 4 | | John B. Sganga |
| | | jsganga@kmob.com |
| 5 | | Frederick S. Berretta |
| | | fred.berretta@kmob.com |
| 6 | | Joshua J. Stowell |
| | | joshua.stowell@kmob.com |
| 7 | | Attorneys for Plaintiffs |
| 8 | | THE LARYNGEAL MASK COMPANY LTD. and LMA NORTH AMERICA, INC. |

# CERTIFICATE OF SERVICE

I hereby certify that on August 17, 2009, I caused the foregoing **PLAINTIFFS' REPLY IN SUPPORT OF THEIR MOTION FOR SANCTIONS FOR LITIGATION MISCONDUCT AND TO COMPEL DISCOVERY** to be electronically filed with the Clerk of the Court using the CM/ECF system which will send electronic notification of such filing to the applicable registered filings users, including the counsel identified below:

Darryl M. Woo
dwoo@fenwick.com
Patrick E. Premo
ppremo@fenwick.com
Bryan Kohm
bkohm@fenwick.com
FENWICK & WEST LLP
555 California Street, 12th Floor
San Francisco CA 94104
T: 415-875-2300
F: 415-281-1350

I declare that I am employed in the office of a member of the bar of this Court at whose direction the service was made.

Dated: August 17, 2009

*Megan Ptacin*
Megan Ptacin

7654381
081709