John B. Sganga (State Bar No. 116,211)
Frederick S. Berretta (State Bar No. 144,757)
Joshua J. Stowell (State Bar No. 246,916)
KNOBBE, MARTENS, OLSON & BEAR, LLP
550 West C Street
Suite 1200
San Diego, CA 92101
(619) 235-8550
(619) 235-0176 (FAX)

Vicki S. Veenker (State Bar No. 158,669)
Adam P. Noah (State Bar No. 198,669)
SHEARMAN & STERLING LLP
1080 Marsh Road
Menlo Park, CA 94025
(650) 838-3600
(650) 838-3699 (FAX)

Attorneys for Plaintiffs and Counter-Defendants
THE LARYNGEAL MASK COMPANY LTD.
and LMA NORTH AMERICA, INC.

# IN THE UNITED STATES DISTRICT COURT

# FOR THE SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| THE LARYNGEAL MASK COMPANY LTD. and LMA NORTH AMERICA, INC., <br><br> Plaintiffs, <br><br> v. <br><br> AMBU A/S, AMBU INC., and AMBU LTD., <br><br> Defendants. | Civil Action No. 07 CV 1988 DMS (NLS) <br><br> **PLAINTIFFS' RESPONSES TO DEFENDANTS' OBJECTIONS TO EVIDENCE SUBMITTED BY PLAINTIFFS IN OPPOSITION TO AMBU'S THREE PENDING MOTIONS FOR SUMMARY JUDGMENT** <br><br> **Date: September 18, 2009** <br> **Time: 1:30 p.m.** <br> **Courtroom 10, 2nd Floor** <br><br> **Honorable Dana M. Sabraw** |
| AMBU A/S, AMBU INC., and AMBU LTD., <br><br> Counterclaimants, <br><br> v. <br><br> THE LARYNGEAL MASK COMPANY LTD. and LMA NORTH AMERICA, INC., <br><br> Counter-Defendants. | **CONFIDENTIAL PORTIONS FILED UNDER SEAL** |

Plaintiffs The Laryngeal Mask Company Ltd. and LMA North America, Inc. ("LMA" or "Plaintiffs") hereby respond to the objections of Defendants Ambu A/S, Ambu, Inc., and Ambu Ltd. ("Ambu" or "Defendants") to certain evidence submitted by Plaintiffs in support of LMA's Oppositions to Ambu's Motion for Summary Judgment of Invalidity for Lack of Written Description [Dkt. # 295], Motion for Summary Judgment of Invalidity for Anticipation and Obviousness [Dkt. # 296], and Motion for Partial Summary Judgment of Non-Infringement [Dkt. # 297].

## A. Declaration of John B. Sganga in Support of Oppositions to Defendants' Three Pending Motions for Summary Judgment

1.  **Exhibit 8 at 380. Excerpt from *Understanding Anesthesia Equipment* bearing bates numbers AMBU258105-AMBU258118 ("If the tip fails to stay flattened or the cuff begins to roll over, the mask should be removed and reinserted…If resistance is felt, the tip may have folded over on itself.").**

Ambu's Objections

Hearsay (Fed. R. Evid. 802). Cited text portions are offered for the truth of the matter asserted and therefore constitute inadmissible hearsay.

LMA's Response

This statement is not hearsay because it is not being offered for the truth of the matter asserted, only to show that practitioners believed the mask tip foldover was a possible problem. Also, this is not hearsay under Fed. R. Evid 801(d)(2)(B) because Ambu manifested a belief in the truth of this statement by also recognizing that tip foldover was a significant problem. Ambu promoted the reinforced tip of its new product as ███

███████████████████████████████████████████████████████████████████

█████████████████████████████ Ex. 15. Ambu also prepared brochures touting the reinforced tip as helping to "prevent folds during insertion that can cause improper positioning and possible airway trauma" (Ex. 16), and enabling "fast and accurate positioning" (Ex. 17). This statement may also come under an exception to the hearsay rule under Fed. R. Evid 803(18) because it is found in a published treatise on medicine and may be relied upon by an expert witness at trial. The statement from a medical

treatise also has sufficient circumstantial guarantees of trustworthiness so falls under the residual exception of Fed. R. Evid. 807 to the hearsay rule.

### 2a. Exhibit 14 at 38-39. Excerpts from the May 22, 2009 deposition of Jens Frimann of Ambu.

<u>Ambu's Objections</u>

Irrelevant (Fed. R. Evid. 402). The exhibit is offered for the proposition that "Ambu began designing its first LM device in 2002." Opp. to 102/103 MSJ at 6. Ambu's early design efforts are irrelevant to the determination of anticipation or obviousness, which is based on the cited prior art references. *See KSR Int'l Co. v. Teleflex Inc.*, 550 U.S. 398, 406-07 (2007).

<u>LMA's Response</u>

Failed attempts and struggles of others to solve a problem are relevant to a determination of nonobviousness.

> It is jurisprudentially inappropriate to disregard any relevant evidence on any issue in any case, patent cases included. Thus evidence rising out of the so-called 'secondary considerations' must always when present be considered en route to a determination of obviousness. Indeed, evidence of secondary considerations may often be the most probative and cogent evidence in the record. It may often establish that an invention appearing to have been obvious in light of the prior art was not.

*Stratoflex, Inc. v. Aeroquip Corp*, 713 F.2d 1530, 1538 (Fed. Cir. 1983) (internal citations omitted). Evidence of "long-felt but unresolved need, failure of others, copying, and unexpected results" is relevant to nonobviousness. *Ruiz v. A.B. Chance Co*., 234 F.3d 654, 662-63 (Fed. Cir. 2000); *see also Apple Computer, Inc. v. Articulate Systems, Inc*., 234 F.3d 14, 26 (Fed. Cir. 2000).

### 2b. Exhibit 14 at 64-65. Excerpts from the May 22, 2009 deposition of Jens Frimann of Ambu.

<u>Ambu's Obejctions</u>

Irrelevant (Fed. R. Evid. 402). The exhibit is offered for the proposition that "Ambu's initial approach was to reinforce the entire cuff all the way around the backplate." Opp. to 102/103 MSJ at 6. Ambu's early design efforts are irrelevant to the determination of anticipation or obviousness which is based on the cited prior art references. *See KSR Int'l Co. v. Teleflex Inc.*, 550 U.S. 398, 406- 07 (2007).

LMA's Response

See LMA's response to 2a above.  Failed attempts and struggles of others to solve a problem are relevant to a determination of nonobviousness.  *See In re Piasecki*, 745 F.2d 1468, 1475 (Fed. Cir. 1984) (Failure of others to provide a feasible solution to a longstanding problem is probative of non-obviousness.)

**2c.    Exhibit 14 at 65-66. Excerpts from the May 22, 2009 deposition of Jens Frimann of Ambu.**

Ambu's Objections

Irrelevant (Fed. R. Evid. 402). The exhibit is offered for the proposition that "However, Ambu ultimately rejected this approach because the cuff was too stiff." Opp. to 102/103 MSJ at 6. Ambu's early design efforts are irrelevant to the determination of anticipation or obviousness which is based on the cited prior art references. *See KSR Int'l Co. v. Teleflex Inc.*, 550 U.S. 398, 406- 07 (2007).

LMA's Response

See LMA's responses to 2a and 2b above.  Failed attempts and struggles of others to solve a problem are relevant to a determination of nonobviousness.

**2d.    Exhibit 14 at 68. Excerpts from the May 22, 2009 deposition of Jens Frimann of Ambu.**

Ambu's Objections

Irrelevant (Fed. R. Evid. 402). The exhibit is offered for the proposition that ███ ████████████████████████████████████████████████████████████████ Opp. to 102/103 MSJ at 6. Ambu's early design efforts are irrelevant to the determination of anticipation or obviousness which is based on the cited prior art references. *See KSR Int'l Co. v. Teleflex Inc.*, 550 U.S. 398, 406- 07 (2007).

LMA's Response

See LMA's responses to 2a and 2b above.  Failed attempts and struggles of others to solve a problem are relevant to a determination of nonobviousness.

/ / /

/ / /

**2e.    Exhibit 14 at 73. Excerpts from the May 22, 2009 deposition of Jens Frimann of Ambu.**

Ambu's Objections

Irrelevant (Fed. R. Evid. 402). The exhibit is offered for the proposition that ████████

████████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████████

████████████████████████ Opp. to 102/103 MSJ at 6. Ambu's early design efforts are

irrelevant to the determination of anticipation or obviousness which is based on the cited prior

art references. *See KSR Int'l Co. v. Teleflex Inc.*, 550 U.S. 398, 406-07 (2007).

LMA's Response

See LMA's responses to 2a and 2b above.  Failed attempts and struggles of others to

solve a problem are relevant to a determination of nonobviousness.

**3.    Exhibit 15. Deposition exhibit number 75 used at the May 19, 2009 deposition of Henrik Wendler of Ambu bearing bates numbers AMBU0115837-AMBU0115852.**

Ambu's Obejctions

Irrelevant (Fed. R. Evid. 402, 403). The exhibit is offered for the proposition that

"Ambu promoted the reinforced tip of its new product as a 'unique selling point' because it

prevented folding during insertion, a problem it characterized as a 'one of the most common

reasons for misplacement.'" Opp. to 102/103 MSJ at 6. Ambu's marketing practices are

irrelevant to the determination of obviousness. The Court has already determined that the

laryngeal mask airway products referenced in this exhibit *do not infringe the patent-in-suit*.

*See* Dkt. No. 224. They are therefore irrelevant to show the commercial success of the

patented product, copying behavior by others, or any other secondary consideration of

nonobviousness. *See Ormco Corp. v. Align Tech., Inc.*, 463 F.3d 1299, 1311-12 (Fed. Cir.

2006) ("Evidence of commercial success, or other secondary considerations, is only

significant if there is a nexus between the claimed invention and the commercial success.").

Furthermore, the document is dated February 20, 2009 and is therefore irrelevant to show

Ambu's 2004-2005 marketing messaging.

LMA's Response

Ambu's recognition of the importance of the invention and praise for the invention are relevant to a determination of nonobviousness. *Gambro Lundia AB v. Baxter Healthcare Corp.*, 110 F.3d 1573, 1579 (Fed. Cir. 1997) ("[The accused infringer's] recognition of the importance of this advance is relevant to the determination of nonobviousness."); *Libbey-Owens-Ford Co. v. BOC Group Inc.*, 655 F. Supp. 897, 914 (D.N.J. 1987) ("[S]tatements of praise by the [accused infringer] made prior to the initiation of litigation are strong indication of the non-obviousness of [the] invention."). Ambu's accused products use the claimed cuff reinforcement so the nexus to commercial success is established despite lack of a "tube joint." *Syntex (U.S.A.) Inc. v. Paragon Optical Inc.*, 7 USPQ2d 1001, 1005 (D. Ariz. 1987) ("Commercial success of an invention is measured by the sales of the infringers as well as the sale by [patentee]."). Also, the AuraFlex has not been determined to be non-infringing and also uses the claimed invention. Also, ████████████████████████████ ████████████████ (AMBU0115837). It was printed from a native file on February 20, 2009 which is why that date also appears in the footer.

**4. Exhibit 16. Piece of Ambu marketing literature entitled "Ambu Laryngeal Mask" bearing bates number LMA00105743 (color highlighting added).**

Ambu's Objections

Irrelevant (Fed. R. Evid. 402, 403). The exhibit is offered for the propositions that "Ambu also prepared brochures touting the reinforced tip as helping to 'prevent folds during insertion that can cause improper positioning and possible airway trauma,'" and "Ambu also emphasized that the reinforced cuff tip enabled it to use a thinner and softer cuff which forms a better seal." Opp. to 102/103 MSJ at 6. Ambu's marketing practices are irrelevant to the determination of obviousness. The Court has already determined that the laryngeal mask airway products referenced in this exhibit *do not infringe the patent-in-suit*. *See* Dkt. No. 224. They are therefore irrelevant to show the commercial success of the patented product, copying behavior by others, or any other secondary consideration of nonobviousness. *See Ormco Corp. v. Align Tech., Inc.*, 463 F.3d 1299, 1311-12 (Fed. Cir. 2006) ("Evidence of

commercial success, or other secondary considerations, is only significant if there is a nexus between the claimed invention and the commercial success.").

LMA's Response

See LMA's response to 3 above. Ambu's recognition of the importance of the invention and praise for the invention are relevant to a determination of nonobviousness.

5. **Exhibit 17. "Ambu AuraFlex Brochure" downloaded from the Ambu website on May 28, 2009.**

Ambu's Objections

Irrelevant (Fed. R. Evid. 402, 403). The exhibit is offered for the proposition that "Ambu also prepared brochures touting the reinforced tip as…enabling 'fast and accurate positioning.'" Opp. to 102/103 MSJ at 6. LMA has failed to show that the commercial success of the remaining accused Flex product is either substantial or the result of the patented invention. (Dkt. # 294-3 at Ex. 2, Rebuttal Expert Report of Ryan Sullivan at 8, 10.) Nor is this relevant to any other secondary consideration of nonobviousness. *See Ormco Corp. v. Align Tech., Inc.*, 463 F.3d 1299, 1311-12 (Fed. Cir. 2006) ("Evidence of commercial success, or other secondary considerations, is only significant if there is a nexus between the claimed invention and the commercial success."). Furthermore, the document reflects the state of Ambu's website on May 28, 2009 and is therefore irrelevant to show Ambu's 2004- 2005 marketing messaging.

LMA's Response

See LMA's response to 3 above. Ambu's recognition of the importance of the invention and praise for the invention are relevant to a determination of nonobviousness.

6. **Exhibit 18. Expert Report of Creighton Hoffman Regarding Damages dated June 19, 2009.**

Ambu's Objections

Irrelevant (Fed. R. Evid. 402, 403). The exhibit is offered for the propositions that

████████████████████████████████████████████████████████

████████████████████████████████████████████ and

"Competitors…have extensive marketing capacity and ample capital available to pursue a

greater share of the laryngeal mask market…none has achieved anything even close to a 10% share of the market." Opp. to 102/103 MSJ at 6, 25. Ambu's market share is irrelevant to the determination of obviousness. The vast majority of revenue and market share represent sales of laryngeal mask airway products that the Court has already determined *do not infringe the patent-in-suit*. *See* Dkt. No. 224. Further, LMA has failed to show that the commercial success of the remaining accused Flex product is either substantial or the result of the patented invention. (Dkt. # 294-3 at Ex. 2, Rebuttal Expert Report of Ryan Sullivan at 8, 10.) Nor is this relevant to any other secondary consideration of nonobviousness. *See Ormco Corp. v. Align Tech., Inc.*, 463 F.3d 1299, 1311-12 (Fed. Cir. 2006) ("Evidence of commercial success, or other secondary considerations, is only significant if there is a nexus between the claimed invention and the commercial success.").

LMA's Response

See LMA's response to 3 above. "The commercial response to an invention is significant to determinations of obviousness, and is entitled to fair weight." *Demaco Corp. v. F. Von Langsdorff Licensing Ltd.*, 851 F.2d 1387, 1391 (Fed. Cir. 1988). Ambu's accused products use the claimed cuff reinforcement so the nexus to commercial success is established despite lack of a "tube joint." Also, the AuraFlex has not been determined to be non-infringing and also uses claimed invention. The sales numbers are sourced from Ambu's own document. Market share information was sourced from Ambu's own document and testimony of an Ambu employee.

**7.     Exhibit 19. Ambu's May 7, 2009 company announcement no. 6-2008/09 entitled "Interim report for Q2 and Q1-Q2 2008/09 (1 October 2008 – 31 March 2009)."**

Ambu's Obejctions

Irrelevant (Fed. R. Evid. 402, 403). The exhibit is offered for the proposition that "Ambu decided to remove the reinforcement from the cuff tip to avoid liability." Opp. to 102/103 MSJ at 7. LMA has not accused the "tipless" version of this product as infringing, the Court has already determined that all but one of Ambu's products *do not infringe the patent-in-suit*. *See* Dkt. No. 224. Further, LMA has failed to show that the commercial

success of the remaining accused Flex product is either substantial or the result of the patented invention. (Dkt. # 294-3 at Ex. 2, Rebuttal Expert Report of Ryan Sullivan at 8, 10.) Nor is this relevant to any other secondary consideration of nonobviousness. *See Ormco Corp. v. Align Tech., Inc.*, 463 F.3d 1299, 1311-12 (Fed. Cir. 2006) ("Evidence of commercial success, or other secondary considerations, is only significant if there is a nexus between the claimed invention and the commercial success.").

LMA's Response

See LMA's responses to 3 and 6 above. ████████████████████████ ████████████████████████████████████████ shows that even Ambu believed the reinforced tip was an important selling feature as touted by Ambu's original sales literature. This form of continued recognition and praise for the invention is relevant to nonobviousness.

**8.** **Exhibit 20. Deposition exhibit number 417 used at the June 12, 2009 deposition of Allan Jensen of Ambu bearing bates number AMBU0083692-AMBU0083694.**

Ambu's Objections

Irrelevant (Fed. R. Evid. 402, 403). The exhibit is offered for the proposition that "Ambu decided to remove the reinforcement from the cuff tip to avoid liability." Opp. to 102/103 MSJ at 7. LMA has not accused the "tipless" version of this product as infringing. The Court has already determined that all but one of Ambu's products *do not infringe the patent-in-suit*. *See* Dkt. No. 224. Further, LMA has failed to show that the commercial success of the remaining accused Flex product is either substantial or the result of the patented invention. (Dkt. # 294-3 at Ex. 2, Rebuttal Expert Report of Ryan Sullivan at 8, 10.) Nor is this relevant to any other secondary consideration of nonobviousness. *See Ormco Corp. v. Align Tech., Inc.*, 463 F.3d 1299, 1311-12 (Fed. Cir. 2006) ("Evidence of commercial success, or other secondary considerations, is only significant if there is a nexus between the claimed invention and the commercial success.").

LMA's Response

See LMA's responses to 3 and 6 above.

**9.    Exhibit 21. Deposition exhibit number 418 used at the June 12, 2009 deposition of Allan Jensen of Ambu bearing bates numbers AMBU0101669-AMBU0101670.**

<u>Ambu's Objections</u>

Irrelevant (Fed. R. Evid. 402, 403). The exhibit is offered for the proposition that "Ambu deliberately hid the design change from its customers, instructing its sales force that 'they are not to alert their customers' to the removal of the tip." Opp. to 102/103 MSJ at 7. LMA has not accused the "tipless" version of this product as infringing. The Court has already determined that all but one of Ambu's products *do not infringe the patent-in-suit*. *See* Dkt. No. 224. Further, LMA has failed to show that the commercial success of the remaining accused Flex product is either substantial or the result of the patented invention. (Dkt. # 294-3 at Ex. 2, Rebuttal Expert Report of Ryan Sullivan at 8, 10.) Nor is this relevant to any other secondary consideration of nonobviousness. *See Ormco Corp. v. Align Tech., Inc.*, 463 F.3d 1299, 1311-12 (Fed. Cir. 2006) ("Evidence of commercial success, or other secondary considerations, is only significant if there is a nexus between the claimed invention and the commercial success."). Furthermore, evidence offered to show that Ambu "hid" design changes in its products is highly prejudicial and has no probative value with respect to any issue raised by the motion.

<u>LMA's Response</u>

See LMA's response to 7 above. ███████████████████ ███████████████████████████████████████████ shows that even Ambu believed the reinforced tip was an important selling feature as touted by Ambu's original sales literature. This form of continued recognition and praise for the invention is relevant to nonobviousness. Also, ███████████████████ no doubt bad for Ambu, but not "prejudical," and is highly probative of Ambu's own belief that the claimed invention was important to its customers.

/ / /

/ / /

/ / /

**10. Exhibit 22. Transcript from the August 5, 2009 deposition of Creighton G. Hoffman. a. 316:25-317:9.**

Ambu's Objections

Irrelevant (Fed. R. Evid. 402, 403). The exhibit is offered for the proposition that "Ambu was so desperate to conceal its design change that it unilaterally filled orders with the new design even when customers placed orders for the old, reinforced design." Opp. to 102/103 MSJ at 7. LMA has not accused the "tipless" version of this product as infringing. The Court has already determined that all but one of Ambu's products *do not infringe the patent-in-suit*. *See* Dkt. No. 224. Further, LMA has failed to show that the commercial success of the remaining accused Flex product is either substantial or the result of the patented invention. (Dkt. # 294-3 at Ex. 2, Rebuttal Expert Report of Ryan Sullivan at 8, 10.) Nor is this relevant to any other secondary consideration of nonobviousness. *See Ormco Corp. v. Align Tech., Inc.*, 463 F.3d 1299, 1311-12 (Fed. Cir. 2006) ("Evidence of commercial success, or other secondary considerations, is only significant if there is a nexus between the claimed invention and the commercial success."). Furthermore, evidence offered to show that Ambu "hid" design changes in its products or forced new models on its customers is highly prejudicial and has no probative value with respect to any issue raised by the motion. Lacks foundation (Fed. R. Evid. 601, 602). The witness is LMA's *damages expert* and Plaintiff has failed to establish he has personal knowledge regarding the alleged Ambu sales practices at issue. To the extent Mr. Hoffman has knowledge, it is based on the statements in the Rebuttal Expert Report of Ryan Sullivan—the deposition exhibit he is testifying about (*see* Ex. 22 at 244:9-15) and is therefore inadmissible hearsay. (Fed. R. Evid. 802).

LMA's Response

See LMA's responses to 7 and 9 above. Also, there is no doubt from Ambu's own documents that ███████████████████████████. Ex 21 (AMBU0101669-670). Mr. Hoffman had knowledge from his review of Ambu documents and testimony from Ambu witnesses. See Ex. 18 at 5-7.

**11.    Exhibit 23. Deposition exhibit number 413 used at the June 12, 2009 deposition of Allan Jensen of Ambu.**

Ambu's Objections

Irrelevant (Fed. R. Evid. 402, 403). The exhibit is offered for the proposition that "Ambu was undoubtedly reluctant to alert its customers that it had removed a 'key feature' of its laryngeal masks." Opp. to 102/103 MSJ at 7. LMA has not accused the "tipless" version of the products as infringing. The Court has already determined that the products represented in the exhibit *do not infringe the patent-in-suit*. *See* Dkt. No. 224. Ambu's design changes to its products cannot be offered as evidence of "design-around" efforts, and are not relevant to any other secondary consideration of nonobviousness. *See Ormco Corp. v. Align Tech., Inc.*, 463 F.3d 1299, 1311-12 (Fed. Cir. 2006) ("Evidence of commercial success, or other secondary considerations, is only significant if there is a nexus between the claimed invention and the commercial success."). Furthermore, evidence offered to show that Ambu did not reveal design changes in its products or forced new models on its customers is highly prejudicial and has no probative value with respect to any issue raised by the motion.

LMA's Response

See LMA's responses to 3, 6, 7 and 9 above.

**12.    Exhibit 24. Deposition exhibit number 374 used at the June 9, 2009 deposition of Frank Homa of Ambu bearing bates numbers AMBU0093132-AMBU0093135.**

Ambu's Objections

Irrelevant (Fed. R. Evid. 402, 403). The exhibit is offered for the propositions that:

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████    Opp. to 102/103 MSJ at 7. LMA has not accused the "tipless" version of the products as infringing. The Court has already determined that all but one of these products *do not infringe the patent-in-suit*. *See* Dkt. No. 224. Further, LMA

has failed to show that the commercial success of the remaining accused Flex product is either substantial or the result of the patented invention. (Dkt. # 294-3 at Ex. 2, Rebuttal Expert Report of Ryan Sullivan at 8, 10.) Nor is this relevant to any other secondary consideration of nonobviousness. *See Ormco Corp. v. Align Tech., Inc*., 463 F.3d 1299, 1311-12 (Fed. Cir. 2006) ("Evidence of commercial success, or other secondary considerations, is only significant if there is a nexus between the claimed invention and the commercial success."). Furthermore, evidence offered to show that Ambu's design changes in its products were unsafe is highly prejudicial and has no probative value with respect to any issue raised by the motion.

LMA's Response

See LMA's responses to 3, 6, 7 and 9 above.  Ambu's inability to design around the claimed invention is relevant to nonobviousness and the lack of noninfringing alternatives (the Court had not yet ruled that certain of Ambu's products did not infringe because of the "tube joint" limitation).  "Evidence of failed attempts of others could be determinative on the issue of obviousness." *Advanced Display Systems, Inc. v. Kent State University*, 212 F.3d 1272, 1285 (Fed. Cir. 2000), *cert. denied*, 532 U.S. 904 (2001). Also, evidence that ██████ ████████████████████████ no doubt bad for Ambu, but not "prejudical," and is probative of nonobviousness because it shows unexpected results also relevant to nonobviousness.  *In re Soni*, 54 F.3d 746, 750 (Fed. Cir. 1995).

13.    **Exhibit 25. Excerpts from the June 12, 2009 deposition of Allan Jensen of Ambu at 228:1-5.**

Ambu's Objections

Irrelevant (Fed. R. Evid. 402, 403). The exhibit is offered for the proposition that ████████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████ Opp. to 102/103 MSJ at 7. LMA has not accused the "tipless" version of the products as infringing. The Court has already determined that all but one of these products *do not infringe the patent-in-suit. See* Dkt. No. 224. Further, LMA has failed to show that the commercial success of the

remaining accused Flex product is either substantial or the result of the patented invention. (Dkt. # 294-3 at Ex. 2, Rebuttal Expert Report of Ryan Sullivan at 8, 10.) Nor is this relevant to any other secondary consideration of nonobviousness. *See Ormco Corp. v. Align Tech., Inc.*, 463 F.3d 1299, 1311-12 (Fed. Cir. 2006) ("Evidence of commercial success, or other secondary considerations, is only significant if there is a nexus between the claimed invention and the commercial success."). Furthermore, evidence offered to show that Ambu's design changes in its products were unsafe is highly prejudicial and has no probative value with respect to any issue raised by the motion. Lacks foundation (Fed. R. Evid. 601, 602). No testimony is introduced to establish what subject or document about which the witness is testifying.

LMA's Response

See LMA's response to 12 above. Also, it is clear from the objected to testimony that

███████████████████████████████████████████████

14. **Exhibit 26. Deposition exhibit number 92 used at the May 19, 2009 deposition of Henrik Wendler of Ambu bearing bates numbers AMBU017574-AMBU017577.**

Ambu's Objections

Irrelevant (Fed. R. Evid. 402, 403). The exhibit is offered for the proposition that

███████████████████████████████████████████████

███████████████████████████████████████████████

Opp. to 102/103 MSJ at 7. LMA has not accused the "tipless" version of the products as infringing. The Court has already determined that the products identified in this exhibit *do not infringe the patent-in-suit. See* Dkt. No. 224. Ambu's design changes to its products cannot be offered as evidence of "design-around" efforts, and are not relevant to any other secondary consideration of nonobviousness. *See Ormco Corp. v. Align Tech., Inc.*, 463 F.3d 1299, 1311-12 (Fed. Cir. 2006) ("Evidence of commercial success, or other secondary considerations, is only significant if there is a nexus between the claimed invention and the commercial success."). Furthermore, evidence offered to show that Ambu's design changes in its products were dangerous is highly prejudicial and has no probative value with respect to any issue

raised by the motion.

LMA's Response

See LMA's response to 12 above.

**15.      Exhibit 27. Deposition testimony of Herb D'Alo at 83:20-26.**

Ambu's Objections

Irrelevant (Fed. R. Evid. 402, 403). The testimony is offered in support of an interpretation of the originally-submitted Figure 10 (see Exhibit 46 below) and to support the proposition that the specification of the '100 discloses a cuff thickener separate from the backplate. The original drawing of Figure 10, and thus any testimony related thereto, is irrelevant because compliance with the written description requirement is based on the specification of the issued patent. *Univ. of Rochester v. G.D. Searle & Co., Inc.*, 358 F.3d 916, 927 (Fed. Cir. 2004) (compliance with section 112 is determined by the written description of the issued patent).

LMA Response

This testimony is relevant to the point that Ambu cannot use the figures in the issued patent to preclude disclosure of the claimed invention on summary judgment because figures in a patent may be imprecise and subject to different interpretations. *Varco, L.P. v. Pason Systems USA Corp.*, 436 F.3d 1368, 1375 (Fed. Cir. 2006) ("[The patent's] disclosure and corresponding Figures did not limit the invention."); *Anchor Wall Sys. V. Rockwood Retaining Walls, Inc.*, 340 F.3d 1298, 1306-07 (Fed. Cir. 2003) ("the mere fact that the patent drawings depict a particular embodiment of the patent does not operate to limit the claims to that specific configuration.").

**16.      Exhibit 41. Report of Ryan Sullivan, Ph.D., dated June 19, 2009.**

Ambu's Objections

Irrelevant (Fed. R. Evid. 402, 403). The exhibit is offered for the proposition that ███

████████████████████████████████████████████████████████████████████

████████████████████████████████████ Opp. to 102/103 MSJ at 6.

Ambu's market share is irrelevant to the determination of obviousness. The vast majority of

revenue and market share represent sales of laryngeal mask airway products that the Court has already determined *do not infringe the patent-in-suit*. *See* Dkt. No. 224. Further, LMA has failed to show that the commercial success of the remaining accused Flex product is either substantial or the result of the patented invention. (Dkt. # 294-3 at Ex. 2, Rebuttal Expert Report of Ryan Sullivan at 8, 10.) Nor is this relevant to any other secondary consideration of nonobviousness. *See Ormco Corp. v. Align Tech., Inc.*, 463 F.3d 1299, 1311-12 (Fed. Cir. 2006) ("Evidence of commercial success, or other secondary considerations, is only significant if there is a nexus between the claimed invention and the commercial success.")

LMA Response

See LMA's response to 6 above. "The commercial response to an invention is significant to determinations of obviousness, and is entitled to fair weight." *Demaco Corp. v. F. Von Langsdorff Licensing Ltd.*, 851 F.2d 1387, 1391 (Fed. Cir. 1988). Ambu's accused products use the claimed cuff reinforcement so the nexus to commercial success is established despite lack of a "tube joint." Also, the AuraFlex has not been determined to be non-infringing and also uses claimed invention.

**17. Exhibit 42. Selected Ambu document production bearing bates numbers AMBU016563, AMBU138536, AMBU234453, AMBU309204 and AMBU309659.**

Ambu's Objections

Irrelevant (Fed. R. Evid. 402, 403). The exhibit is offered for the proposition that "Ambu's internal documents reflect positive feedback from clinicians regarding the reinforced cuff tip." Opp. to 102/103 MSJ at 25. Ambu's market share is irrelevant to the determination of obviousness. The vast majority of revenue and market share represent sales of laryngeal mask airway products that the Court has already determined *do not infringe the patent-in-suit*. *See* Dkt. No. 224. Further, LMA has failed to show that the commercial success of the remaining accused Flex product is either substantial or the result of the patented invention. (Dkt. # 294-3 at Ex. 2, Rebuttal Expert Report of Ryan Sullivan at 8, 10.) Nor is this relevant to any other secondary consideration of nonobviousness. *See Ormco*

*Corp. v. Align Tech., Inc.*, 463 F.3d 1299, 1311-12 (Fed. Cir. 2006) ("Evidence of commercial success, or other secondary considerations, is only significant if there is a nexus between the claimed invention and the commercial success.").

LMA's Response

See LMA's responses to 6 and 16 above.

**18.    Exhibit 43. Ambu document production bearing bates numbers AMBU247475-AMBU247480.**

Ambu's Objections

Irrelevant (Fed. R. Evid. 402, 403). The exhibit is offered for the proposition that "Competitors…have extensive marketing capacity and ample capital available to pursue a greater share of the laryngeal mask market…none has achieved anything even close to a 10% share of the market." Opp. to 102/103 MSJ at 25. Ambu's market share is irrelevant to the determination of obviousness. The vast majority of revenue and market share represent sales of laryngeal mask airway products that the Court has already determined *do not infringe the patent-in-suit*. *See* Dkt. No. 224. Further, LMA has failed to show that the commercial success of the remaining accused Flex product is either substantial or the result of the patented invention. (Dkt. # 294-3 at Ex. 2, Rebuttal Expert Report of Ryan Sullivan at 8, 10.) Nor is this relevant to any other secondary consideration of nonobviousness. *See Ormco Corp. v. Align Tech., Inc.*, 463 F.3d 1299, 1311-12 (Fed. Cir. 2006) ("Evidence of commercial success, or other secondary considerations, is only significant if there is a nexus between the claimed invention and the commercial success.").

LMA's Response

See LMA's responses to 6 and 16 above.

**19.    Exhibit 44. excerpts from the June 3, 2009 deposition of John Schmitz of Ambu.**

Ambu's Objections

Irrelevant (Fed. R. Evid. 402, 403). The exhibit is offered for the proposition that "[No competitor] has achieved anything even close to a 10% share of the market." Opp. to 102/103 MSJ at 25. Ambu's market share is irrelevant to the determination of obviousness.

The vast majority of revenue and market share represent sales of laryngeal mask airway products that the Court has already determined *do not infringe the patent-in-suit*. *See* Dkt. No. 224. LMA has also failed to show that the commercial success of the remaining accused Flex product is either substantial or the result of the patented invention. (Dkt. # 294-3 at Ex. 2, Rebuttal Expert Report of Ryan Sullivan at 8, 10.) Nor is this relevant to any other secondary consideration of nonobviousness. *See Ormco Corp. v. Align Tech., Inc.*, 463 F.3d 1299, 1311-12 (Fed. Cir. 2006) ("Evidence of commercial success, or other secondary considerations, is only significant if there is a nexus between the claimed invention and the commercial success.").

        LMA's Response

        See LMA's responses to 6 and 16 above.

        **20.    Exhibit 46. Original drawing of Figure 10 of the '100 patent.**

        Ambu's Objections

        Irrelevant (Fed. R. Evid. 402, 403). The exhibit is offered for the proposition that the specification of the '100 discloses a cuff thickener separate from the backplate. The original drawing of Figure 10 is irrelevant because compliance with the written description requirement is based on the specification of the issued patent. *Univ. of Rochester v. G.D. Searle & Co., Inc.*, 358 F.3d 916, 927 (Fed. Cir. 2004) (compliance with section 112 is determined by the written description of the issued patent).

        LMA's Response

        See LMA's response to 15 above.

        **21.    Exhibit 47. Drawing of Figure 4 of a British patent application.**

        Ambu's Objections

        Irrelevant (Fed. R. Evid. 402, 403). The exhibit is offered for the proposition that the specification of the '100 discloses a cuff thickener separate from the backplate. The drawing of Figure 4 from a foreign patent application is irrelevant because compliance with the written description requirement is based on the specification of the issued '100 patent, not on extrinsic evidence in the form of foreign patent applications. *Univ. of Rochester v. G.D.*

*Searle & Co., Inc.*, 358 F.3d at 927 (compliance with section 112 is determined by the written description of the issued patent).

LMA's Response

See LMA's response to 15 above.

**22.    Exhibit 48. Ambu document production bearing bates number AMBU002108-2113. Images of Ambu's devices in Opposition to MSJ of Invalidity for Lack of Written Description.**

Ambu's Objections

Irrelevant (Fed. R. Evid. 402, 403). The document is misquoted in LMA's brief.

Opp. to Written Descrip. MSJ at 16 (emphasis in original): "Our unique reinforced tip has been redesigned and the new tip has gone through a full technical and clinical evaluation. **The reinforced tip prevents foldover during insertion**."

Ex. 48 at AMBU002111: "Our unique reinforced tip has been redesigned and the new tip has gone through a full technical and clinical evaluation. The reinforced tip prevents folds during insertion."

The evidence pertaining to Ambu's devices is further irrelevant because extrinsic of devices developed years after the filing of the application of the '100 patent. *Univ. of Rochester v. G.D. Searle & Co., Inc.*, 358 F.3d 916, 927 (Fed. Cir. 2004) (compliance with section 112 is determined by the written description of the issued patent).

LMA Response

LMA agrees that the correct quote is "The reinforced tip prevents **folds** during insertion," but this typographical error does not alter the point that, with or without a gap between the reinforcement and the backplate, the goal of the invention to prevent the tip from folding during insertion is still achieved.  LMA's argument was responding to an argument by Ambu and its expert witness Dr. Lampotang.

/ / /

/ / /

/ / /

/ / /

23. **Exhibit 49. Excerpts from the May 20, 2009 deposition of Lasse Petersen of Ambu. a. 117:11-119:3; 139:24-140:18**

Ambu's Objections

Irrelevant (Fed. R. Evid. 402). The cited testimony fails to support the propositions for which it is cited. *See* Opp. to Non- Infringement MSJ at 9 (discussing "foldover"). Lacks foundation (Fed. R. Evid. 601, 602). Plaintiffs fail to introduce evidence that the witness has personal knowledge regarding whether Ambu's prototype devices prevented "foldover." The questioning at 139:24-140:5 is vague and ambiguous.

LMA's Response

The witness testified that ███████████████████████████████

█████████████████████████████████████████████████████████

█████████████████████████████████████████████████████████

████████████████

24. **Exhibit 52. Ambu AuraOnce Datasheet.**

Ambu's Objections

Irrelevant (Fed. R. Evid. 402, 403). The exhibit is offered for the proposition that "there is no debate that Ambu prominently featured the reinforced tip in its sales literature." Opp. to 102/103 MSJ at 25. Ambu's marketing practices are irrelevant to the determination of obviousness. The Court has already determined that the laryngeal mask airway product referenced in this exhibit *does not infringe the patent-in-suit*. *See* Dkt. No. 224. They are therefore irrelevant to show the commercial success of the patented product, copying behavior by others, or any other secondary consideration of nonobviousness. *See Ormco Corp. v. Align Tech., Inc.*, 463 F.3d 1299, 1311-12 (Fed. Cir. 2006) ("Evidence of commercial success, or other secondary considerations, is only significant if there is a nexus between the claimed invention and the commercial success.").

LMA's Response

See LMA's responses to 6 and 16 above.

/ / /

25.    **Exhibit 54. Excerpts from the May 19, 2009 Deposition of Henrik Wendler of Ambu.**

Ambu's Objections

Irrelevant (Fed. R. Evid. 402, 403). The exhibit is offered for the proposition that "Ambu finally launched its first commercial product in 2004." Opp. to 102/103 MSJ at 6. Ambu's early design efforts are irrelevant to the determination of anticipation or obviousness.

LMA's Response

See LMA's responses to 2 and 3 above.

26.    **Exhibit 55. Ambu document production bearing bates number AMBU006325.**

Ambu's Objections

Irrelevant (Fed. R. Evid. 402, 403). The exhibit is offered for the proposition that █████

████████████████████████████████████████████████████████████████████

██████████████████████████████████ Opp. to 102/103 MSJ at 6. Ambu's market share is irrelevant to the determination of obviousness. The vast majority of revenue and market share represent sales of laryngeal mask airway products that the Court has already determined *do not infringe the patent-in-suit*. *See* Dkt. No. 224. LMA has also failed to show that the commercial success of the remaining accused Flex product is either substantial or the result of the patented invention. (Dkt. # 294-3 at Ex. 2, Rebuttal Expert Report of Ryan Sullivan at 8, 10.) Nor is this relevant to any other secondary consideration of nonobviousness. *See Ormco Corp. v. Align Tech., Inc.*, 463 F.3d 1299, 1311-12 (Fed. Cir. 2006) ("Evidence of commercial success, or other secondary considerations, is only significant if there is a nexus between the claimed invention and the commercial success.").

LMA's Response

See LMA's responses to 6 and 16 above.

/ / /

/ / /

/ / /

/ / /

**B.** **Declaration of Dihlan Kaylon, Ph.D. in Support of Plaintiffs' Opposition to**

**Motion for Partial Summary Judgment of Non-Infringement**

    **1.** **Kalyon Declaration, ¶ 12: "An additional question is whether the stiffener/reinforcement is "narrow." The AuraFlexTM device stiffener is shaped much like a human rib, and is relatively narrow when measured in a variety of ways. . ."**

<u>Ambu's Objections</u>

Improper Expert Opinion. (Fed. R. Evid. 702.) An expert's testimony must be (1) based upon sufficient facts or data, (2) the product of reliable principles and methods, and (3) demonstrate that the witness has applied the principles and methods reliably to the facts of the case. Fed. R. Evid. 702; *Daubert v. Merrell Dow Pharms., Inc.,* 509 U.S. 579, 590-91 (1993). At deposition, Dr. Kaylon testified that he did not understand now the meaning of "narrow" was to be interpreted within the context of the patent:

    **Q:** So you don't know what narrow is?

    **A:** I don't know how narrow an object should be to be considered narrow**.**

Kaylon Dep. at 136:2-4. Given that Dr. Kaylon has admitted he does not understand how the term "narrow" is to be understood, his expert opinion applying that concept is inherently unreliable. Further, Dr. Kaylon's declaration does not disclose any reasoning behind the criteria he applies in determining whether the stiffener/reinforcement is "narrow." As such, his unrebutted deposition testimony that he does not understand how to apply the concept renders his declaration testimony inadmissible.

<u>LMA's Response</u>

Dr. Kalyon explained in detail in his declaration how he determined that Ambu's rib was narrow by comparing its width to its total arc length, and also by comparing its width to that of the distal region it actually supports during use. Kalyon Decl., ¶¶ 12-14.

The snippet of quoted testimony from Dr. Kalyon is taken wholly out of context and apparently has not been submitted by Ambu. *See* Woo Decl, Ex. C. Dr. Kalyon testified as set forth in his declaration that ribs of the aspect ratio found in the Ambu devices are narrow. *See* Appendix A attached hereto (D. Kalyon Tr.) at 86-90, 129, 133 (stating generally that

aspect ratios of 10% to 20% would in his opinion be narrow). He only testified that as the length and width of a hypothetical rib begin to approach each other he would not know the limit of whether it could still be considered narrow. *Id.* at 134-136 (stating that it would be difficult to say whether an object with an aspect ratio over 60% could be considered narrow). That hypothetical limit is not relevant to the question of whether Ambu's actual products infringe for the reasons set forth in Dr. Kalyon's Declaration.

**2. Kalyon Declaration, ¶ 13: "The stiffener is also 'narrow' when compared to the width of the distal region it actually supports during use…"**

Ambu's Objections

Improper Expert Opinion. (Fed. R. Evid. 702.) Dr. Kaylon continues to opine on whether the accused device meets the claim limitation with respect to narrowness. This testimony is inadmissible for the same reasons discussed in the above objection to ¶ 12.

LMA's Response

See LMA's response to B.1 directly above.

**3. Kalyon Declaration, ¶ 14: "A comparison of the width of the stiffener to the width of the posterior surface of the cuff as a whole points to the same conclusion…"**

Ambu's Objections

Improper Expert Opinion. (Fed. R. Evid. 702.) Dr. Kaylon continues to opine on whether the accused device meets the claim limitation with respect to narrowness. This testimony is inadmissible for the same reasons discussed in the above objection to ¶ 12.

LMA's Response

See LMA's response to B.1 directly above.

**C. Declaration of Dr. Archibald Brain in Support of Plaintiffs' Opposition to Motion for Summary Judgment of Invalidity for Anticipation and Obviousness**

**1. Brain Declaration, ¶¶ 7, 9-13.**

Ambu's Obejctions

Irrelevant (Fed. R. Evid. 402, 403). The declaration paragraphs are irrelevant after-the-fact testimony by an inventor regarding the meaning of a reference. The Federal Circuit

has repeatedly deemed similar self-serving testimony irrelevant in a number of contexts. *See,*
*e.g., Solomon v. Kimberly- Clark Corp.,* 216 F.3d 1372, 1379 (Fed. Cir. 2000) ("It is
particularly inappropriate to consider inventor testimony obtained in the context of litigation
in assessing validity under 35 U.S.C. section 112, paragraph 2, in view of the absence of
probative value of such testimony."); *Markman v. Westview Instruments, Inc.,* 52 F.3d 967**,**
985 (Fed. Cir. 1995) (holding that inventor testimony as to "[t]he subjective intent of the
inventor when he used a particular term is of little or no probative weight in determining the
scope of a claim (except as documented in the prosecution history)").

LMA's Response

Dr. Brain's declaration testimony regarding "the Brain 1991 article" (his own article)
is relevant and probative of what his own 1991 article describes and discloses to one of skill
in the art. He is a fact witness with respect to these matters and obviously possesses first-
hand knowledge about his own article. The cases cited by Ambu concern only compliance
with claim definiteness (35 U.S.C. § 112, para 2) and claim interpretation. They do not
pertain to the author of a prior art reference explaining the work that was done and what the
reference discloses. *Markman v. Westview Instruments, Inc.,* 52 F.3d 967 (Fed. Cir. 1995),
did not preclude inventor testimony on factual matters and the technology in general:

> Although in *Markman* this court stated that "the subjective intent of the
> inventor when he used a particular term is of little or no probative weight in
> determining the scope of a claim," this statement does not disqualify the
> inventor as a witness, or overrule the large body of precedent that recognizes
> the value of the inventor's testimony. This court in *Markman* did not hold that
> the inventor can not explain the technology and what was invented and
> claimed; the Federal Circuit held only that the inventor can not by later
> testimony change the invention and the claims from their meaning at the time
> the patent was drafted and granted. . . . The testimony of the inventor may also
> provide background information, including explanation of the problems that
> existed at the time the invention was made and the inventor's solution to these
> problems. . . . Although Markman and other precedent caution the court
> against creative reconstruction of an invention by interested persons, courts are
> not novices in receiving and weighing expertise on both sides of an issue.

*Voice Technologies Group, Inc. v. VMC Systems, Inc.*, 164 F.3d 605, 616 (Fed. Cir. 1999).

Accordingly, Dr. Brain is a competent fact witness to testify about his own work.

/ / /

**D.    Conclusion**

Based on the reasons and arguments presented herein, the Court is respectfully requested to overrule Ambu's objections to the evidence submitted by LMA in opposition to Ambu's three pending motions for summary judgment.

Respectfully submitted,

KNOBBE, MARTENS, OLSON & BEAR, LLP

Dated:  September 11, 2009                  By:  s/Frederick S. Berretta
                                            John B. Sganga
                                            jsganga@kmob.com
                                            Frederick S. Berretta
                                            fred.berretta@kmob.com
                                            Joshua J. Stowell
                                            joshua.stowell@kmob.com

                                            Attorneys for Plaintiffs
                                            THE LARYNGEAL MASK COMPANY LTD.
                                            and LMA NORTH AMERICA, INC.

7785631
091009

# APPENDIX A

IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| THE LARYNGEAL MASK COMPANY LTD,<br>and LMA NORTH AMERICA, INC.,<br><br>          Plaintiffs,<br><br>          -vs-<br><br>AMBU A/S, AMBU INC., and<br>AMBU LTD.,<br><br>          Defendants. | )<br>)<br>)<br>)<br>)<br>) No. 07 CV<br>) 1988 DMS<br>) (NLS)<br>)<br>)<br>) |
| AMBU A/S, AMBU INC., and AMBU LTD., | ) |
| <br>          Counterclaimants,<br><br>          -vs-<br><br>THE LARYNGEAL MASK COMPANY LTD<br>and LMA NORTH AMERICA, INC., | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

VIDEO DEPOSITION OF DILHAN M. KALYON

Tuesday, July 28, 2009

San Diego, California

Reported by:
DEBERA ANNE DORAN
CSR No. 7821

1         IN THE UNITED STATES DISTRICT COURT

2       FOR THE SOUTHERN DISTRICT OF CALIFORNIA

3     _____

4 THE LARYNGEAL MASK COMPANY LTD, )
  and LMA NORTH AMERICA, INC., )
                     )
5          Plaintiffs, )
                     )
6          -vs- ) No. 07 CV
                     ) 1988 DMS
7 AMBU A/S, AMBU INC., and ) (NLS)
  AMBU LTD., )
                     )
8         Defendants. )
     _____)
9 AMBU A/S, AMBU INC., and AMBU LTD.,)
                     )
10        Counterclaimants, )
                     )
11                     )
          -vs- )
12                     )
  THE LARYNGEAL MASK COMPANY LTD )
13 and LMA NORTH AMERICA, INC., )
                     )
14    _____)

15        Video Deposition of DILHAN M. KALYON,
16      taken on behalf of Defendants, at 550
        West C Street, Suite 1200, San
17      Diego, California, beginning at
        9:30 a.m. and ending at 3:15 p.m.
18      on Tuesday, July 28, 2009, before
        DEBERA ANNE DORAN, Certified
19      Shorthand Reporter No. 7821.

20

21

22

23

24

25

1   BY MR. KOHM:

2        Q    We'll mark as Exhibit 478 the Rule 26 A2B

3   report. Can you tell me what this is, professor?

4        A    It's a report dated -- there's a signature

5   date which is June 19. So it's my report dated June 19,

6   2009.

7        Q    This report -- your report, Exhibit 478,

8   does it contain the same opinions that are contained in

9   your declaration?

10       A    Yes.

11       Q    Does it contain any additional opinions?

12       A    No.

13       Q    So let me get back to my other question.

14   What other opinions are provided in your declaration and

15   report?

16       A    The second area covered is the stiffening of

17   the cuff element at its distal end.

18       Q    And what opinion were you asked to provide?

19       A    The opinion -- the court had construed the

20   distal rib as narrow. And I guess the general question

21   was whether the Ambu devices were stiffened and thickened

22   at their distal ends and whether this was narrow or not.

23       Q    Okay. And what special expertise do you

24   have to provide an opinion on what constitutes something

25   being narrow?

1       A    It's a very amorphous area.  I don't think

2    you will find two experts who will agree as to what

3    narrow is, especially if they are at the other side of

4    the table.  It's a very amorphous term.  But, in general,

5    I mean the first thing I did was to look up in the

6    dictionary to see how the Webster or Mirriam, et cetera,

7    defines the word "narrow."  And basically, the way the

8    dictionary defines it is a width versus a width of an

9    object to be construed as narrow versus another length.

10    For example, you can talk about a narrow road.  The

11    length is long and the width is relatively small in

12    comparison to length.  Or you could talk about a narrow

13    table.  If you were to, for example, shorten this, there

14    is a certain length, there is a certain width.

15         So it's a comparison of a width of

16    dimension, characteristic dimension with another

17    characteristic dimension.  And, again, it's not clear how

18    narrow is an object supposed to be to be narrow.  Or how

19    wide an object is supposed to be to be wide.

20         I don't think you will find -- well, yeah.

21    So, in summary, what I am saying is that there doesn't

22    seem to be a subspecialty in narrowness.

23        Q    Okay.  So are you saying that in the context

24    of the '100 patent it's unclear what constitutes narrow,

25    a narrow stiffener?

1        A    There are certain indications as to -- as to

2    what narrow is. I mean that's -- but the hundred -- '100

3    patent does not specify, for example, saying that it has

4    to have such-and-such dimensions to be considered narrow.

5        Q    So if you were reading the '100 patent and

6    let's say you also had the court's claim construction in

7    hand and you were trying to figure out what constituted a

8    narrow stiffener, would you be able to do so?

9        A    Yes. Basically, that's what I've done.

10        Q    Well, you've presented three different

11    possibilities. I guess my question is: Would you

12    understand what the patent is -- excuse me. Would you

13    understand what is meant by a narrow stiffener in the

14    context of the '100 patent?

15        MR. BERRETTA: I guess I'm going to object.

16    It assumes facts not in evidence. You can answer.

17    BY MR. KOHM:

18        Q    Let me put it this way. If you read the

19    '100 patent and you read the court's claim construction

20    order, would it be readily apparent to you what a narrow

21    stiffener would be as opposed to a broad stiffener?

22        A    Yes. In terms of -- not in terms of numbers

23    per se, but in terms of, for example, being able to

24    compare the width of the stiffener versus other relevant

25    dimensions. I mean this is typically what is done in

1  engineering analysis. You take the relevant

2  characteristic dimension and you compare it with another

3  characteristic dimension. For example, fibers, it would

4  be the length divided by the diameter which would be the

5  aspect ratio, right, which would be important.

6      Q    Okay. We're talking about several different

7  issues. When you read the '100 patent and the court's

8  claim construction order, is it readily apparent to

9  you -- let me step back.

10         You said that, in order to determine narrow,

11  you have to compare it to some other structure or some

12  other dimension, whether it's the length of the stiffener

13  or it's in comparison to some other object. Is that

14  correct?

15      A    I said the width of the stiffener has to be

16  compared with a relevant dimension in the cuff of the

17  laryngeal mask airway device.

18      Q    When you read the '100 patent, is it clear

19  to you what that relevant dimension is?

20      A    Are you asking quantitative numbers?

21      Q    No. I'm asking that relative dimension,

22  what you used to come up with that relative dimension.

23  Is it clear to you what that is when you read the '100

24  patent?

25      A    I mean I guess a general understanding from

1   the preferred aspect that the patent is describing a

2   narrow object, basically the extension of this backplate

3   and the longitudinal direction. Without really

4   specifying how wide that ought to be, but wide enough to

5   do the job. I guess that's probably -- it's like -- I

6   mean you want to stiffen this object, and the stiffening

7   is going to be a function of the geometry. And I am

8   assuming -- well, basically what the patent is teaching

9   is -- it's teaching two different mechanisms of

10  stiffening so that it becomes a successfully stiff distal

11  tip so it wouldn't fold over. So you could -- I'm sorry.

12  Is there another question?

13       Q   I'm trying to figure -- we're talking about

14  something being narrow. And you say that, in order to

15  determine what is narrow, it's a comparative analysis.

16  Is that correct? It's comparative to either the length

17  or some other relevant dimension.

18       A   Yeah, in my analysis, I took, for example,

19  the length of the stiffener in terms of its arc length.

20       Q   Right.

21       A   So I took the length and divided it by the

22  arc length which gave one measure. And these were

23  numbers like 10 percent, 12 percent. So we are talking

24  about relatively small numbers. Suggesting to me that

25  the stiffener is narrow.

1     cuff -- I mean the width of the stiffener compared to the

2     width of the airway tube. What must the ratio be in

3     order for the stiffener to be deemed narrow in your view?

4          A     There is no quantitative number.

5          Q     All right. Thank you.

6          Let's go on to number three then. The

7     perimeter of the cuff approach. Can you explain to me

8     what you're measuring with this approach?

9          A     Number three was the width divided by the

10     arc length. Right? Or did I miss it? I'm sorry.

11     Perimeter. You're right. Okay.

12          Q     Yeah.

13          A     So basically what we are measuring here is

14     the width of this --

15          Q     Could we use a cross-section AA? I think

16     this will be useful one here. On Exhibit 16 of Exhibit

17     480. Here, why don't we use a blue pen. That will make

18     it show up a little bit easier. So I understand, the

19     width of the stiffener, I understand what you're

20     measuring there. Explain to me the perimeter of the

21     cuff.

22          A     The perimeter is this one.

23          Q     Okay. And so is there any sort of -- what

24     ratio of the width of the cuff compared to the width of

25     the perimeter must there be in order for it to constitute

1    narrow in your opinion?

2          A    Again, there is no definition.

3          Q    There is no definition.  So how do you

4    determine what is narrow?

5          A    We are going back to -- all the way to the

6    beginning.  There's really no standard definition here.

7          Q    I'm not asking standard definition.  In your

8    opinion, how do you determine whether something is

9    narrow?

10          A    Is narrow, okay.  So in this particular

11    case, when you look at these numbers, you see numbers

12    like ten percent.  For example, you take the width of the

13    stiffener.  You divide it by its arc length, which is an

14    inverse of aspect ratio, and the number is like ten

15    percent.

16          Q    Okay.

17          A    So that says, okay, it's close to zero.

18    Farther away from one.  So that to me constitutes a

19    narrow object.

20          Q    Where -- what is the threshold between

21    narrow and not narrow?  Where would you draw that?

22          A    It's a relative term.

23          Q    I'm asking you.  In your opinion, when does

24    narrow no longer -- I'm sorry.  When does the width of

25    the stiffener and compare it ratio to the perimeter no

1   understand the question.

2   BY MR. KOHM:

3       Q   All right.  You've been retained by LMA to

4   give an opinion as to whether something is narrow or not.

5   Is that correct?

6       A   I don't think that was the mission for me to

7   come in and define whether an object is narrow or not.

8   But that became part of the task.

9       Q   I'm sorry.  Could you please read line three

10  to me?

11      A   The remaining question is thus whether the

12  stiffener reinforcement is narrow.

13      Q   Okay.  So are you answering that question in

14  this paragraph?

15      A   I'm trying to, yeah.

16      Q   Okay.  Can you tell me right now what aspect

17  ratio constitutes being narrow?

18      A   I am very comfortable in --

19      Q   It's yes or no.  Let's start with that.  Can

20  you tell me that?

21      A   I'm comfortable in saying anything close to

22  point one with divided by either the perimeter or the

23  width divided by the length around point one, I'm very

24  comfortable in saying it's narrow.

25      Q   Okay.  At what point are you no longer

1  comfortable saying it's narrow?

2          A    It's a hypothetical.  I'm not going to

3  answer that.

4          Q    You have to answer my question, sir.

5          A    Well --

6          Q    You are under oath and retained as an expert

7  to provide your opinion, and I'm asking you what you

8  understand narrow to be.  You can't refuse to answer my

9  question.

10         A    But you're asking the same question over and

11 over again.

12         Q    Because you won't answer my question.  I'm

13 asking you.  What do you view to be narrow?  If you say

14 you don't know, I'm done.  I'll stop asking the question.

15 But until you answer the question --

16         A    Okay.

17         Q    -- I'm going to keep asking it.

18         A    Okay.  Anything around point one is --

19         Q    Okay.  Let's do it this way.  Point one is

20 narrow?

21         A    Point one is narrow.

22         Q    What is point two?  Is that narrow or not?

23         A    I guess -- you would really need some

24 additional criteria to be able to build this all the way

25 up to one.  I mean where do you cut off?  Point two, yes,

1    in my mind, that's narrow also.

2            Q    Okay.  What about point three?

3            A    Point three, yeah.  I mean clearly point one

4    is narrower than point three.  By definition is point

5    three narrow.  Yeah, I would say it's narrow.

6            Q    What about point four?

7            A    It's narrow.

8            Q    Point five?

9            A    I think it's narrow.

10           Q    Point six?

11           A    Yeah, where do you draw the line?  Where is

12   it sufficiently narrow and how do you define that?  With

13   the present set of information that's available, it's a

14   very difficult question to answer.  I don't know.

15           Q    You don't know the answer?

16           A    If point six is narrow sufficiently.

17           Q    What about point seven?

18           A    If I said point six I cannot answer, I don't

19   know the answer, point seven would be the same thing.

20           Q    What about point eight?

21           A    Same answer.

22           Q    What about point nine?

23           A    Same answer.

24           Q    Aren't we getting close to one?  You said

25   one is not narrow or anything close to one is not narrow.

1        A    Yeah, I don't know.

2        Q    So you don't know what narrow is?

3        A    I don't know how narrow an object should be

4   to be considered narrow.

5        Q    Okay.  Thank you.  Let's move on.

6        A    In this context obviously.  Whether it's

7   point one or one point zero is clear.  But point six

8   versus point 65, it's not clear.

9        Q    What aspect ratio would be broad?

10       A    By aspect ratio, you mean what?  The

11  perimeter divided by --

12       Q    The same thing that we've been discussing,

13  the width as compared to some other length.  What aspect

14  ratio would constitute being broad?

15       A    See, that's -- yeah, I really don't get the

16  question.  Because how can a width be greater than the

17  perimeter.  I mean what kind of --

18       Q    We're not talking about greater --

19       A    -- aspect ratio is greater than one, how is

20  the width going to be greater than the perimeter.  That's

21  exactly what you asked.

22       Q    I'm sorry.  I don't believe I asked that.

23  If I did, it was my mistake.  What I meant to ask was:

24  What aspect ratio would constitute broad?  Assuming it's

25  less than --

## CERTIFICATE OF SERVICE

I hereby certify that on September 11, 2009, I caused a redacted version of the foregoing **PLAINTIFFS' RESPONSES TO DEFENDANTS' OBJECTIONS TO EVIDENCE SUBMITTED BY PLAINTIFFS IN OPPOSITION TO AMBU'S THREE PENDING MOTIONS FOR SUMMARY JUDGMENT** to be electronically filed with the Clerk of the Court using the CM/ECF system which will send electronic notification of such filing to the applicable registered filing users.

Darryl M. Woo
dwoo@fenwick.com
Patrick E. Premo
ppremo@fenwick.com
Bryan Kohm
bkohm@fenwick.com
FENWICK & WEST LLP
555 California Street, 12th Floor
San Francisco CA 94104
T: 415-875-2300
F: 415-281-1350

Additionally, I hereby certify that on September 11, 2009, I caused an unredacted version of the foregoing document to be served via E-Mail and U.S. Mail to Defendants' counsel as listed above.

I declare that I am employed in the office of a member of the bar of this Court at whose direction the service was made.

Dated: September 11, 2009

Linda Ponce de Leon-Garcia